UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL CONTI,

                 Plaintiff,

      -against-

JOHN DOE,

                 Defendant.

No. 17-CV-9268 (VEC)

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

## TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ................................................................................................ii-vii

PRELIMINARY STATEMENT ............................................................................................1

FACTS ...................................................................................................................................3

LEGAL STANDARD.............................................................................................................5

ARGUMENT .........................................................................................................................5

    I.      CONTI FAILS TO STATE A CLAIM FOR HARASSMENT.............................5

          A.      There Is No Such Claim Under New York Law........................................6

          B.      To the Extent Such a Cause of Action Exists in New York, There Is a Conflict of Laws that Prevents the Application of New York Law.............7

          C.      Even if a Cause of Action Exists and New York Law Applies, Conti Fails To Plausibly Allege Criminal Harassment........................................12

               1.      Conti Had No Objectively Reasonable Fear of Physical Injury ....12

               2.      Conti Does Not Plausibly Allege Alarm or Serious Annoyance, Especially Within the Context of This Treatment Relationship ...................................................................................13

    II.     CONTI FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ..........................................................................16

          A.      Conti Not Only Fails to Plausibly Allege "Severe Emotional Distress," But He Affirmatively Alleges Its Absence ...............................................18

          B.      Under All of the Circumstances, Doe's Conduct Does Not Rise To the Extreme Level Necessary to Support an IIED Claim ...............................19

               1.      Doe's Communications Are Not Sufficiently Extreme and Outrageous In Any Context ........................................................20

               2.      Doe's Communications Are Not Sufficiently Extreme and Outrageous Within the Context of a Psychiatrist-Patient Relationship ...................................................................................22

          C.      Conti's IIED Claim Should Be Dismissed Because It Is an Improperly Repackaged Defamation Claim ..............................................................23

i

III.    CONTI'S CLAIM FOR "PERMANENT INJUNCTION" HAS NO
        INDEPENDENT FORCE ........................................................................................25

CONCLUSION ........................................................................................................................25

TABLE OF AUTHORITIES

PAGE NO.

**Cases**

*2002 Lawrence R. Buchalter Alaska Trust v. Phila. Fin. Life Assur. Co.*,
    96 F. Supp. 3d 182 (S.D.N.Y. 2015)................................................................ 17

*Agerbrink v. Model Serv. LLC*,
    No. 14-CV-7841, 2015 WL 3750674 (S.D.N.Y. June 16, 2015) ...................... 7

*AroChem Int'l, Inc. v. Buirkle*,
    968 F.2d 266 (2d Cir. 1992)............................................................................ 10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................... 5, 18

*Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
    813 F.3d 98 (2d Cir. 2016)............................................................................. 10

*Bacon v. Nygard*,
    140 A.D.3d 577 (1st Dep't 2016) ................................................................... 23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................................... 5

*Biberaj v. Pritchard Indus., Inc.*,
    859 F. Supp. 2d 549 (S.D.N.Y. 2012)............................................................. 20

*Blasetti v. Pietropolo*,
    213 F. Supp. 2d 425 (S.D.N.Y. 2002)............................................................... 6

*Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
    369 F.3d 212 (2d Cir. 2004)............................................................................ 19

*Bob Godfrey Pontiac, Inc. v. Roloff*,
    630 P.2d 840 (Or. 1981) ................................................................................... 8

*Bunker v. Testa*,
    234 A.D.2d 1004 (4th Dep't 1996).................................................................. 21

*Cablevision Sys. Corp. v. Commc'ns Workers of Am. Dist. 1*,
    131 A.D.3d 1087 (2d Dep't 2015) .................................................................... 6

*Calautti v. Grados*,
    32 Misc. 3d 1205(A), 2011 WL 2556950 (Sup. Ct. Westchester Cnty. May 5, 2011) ...... 6

*Chambers v. Time Warner, Inc.*,
      282 F.3d 147 (2d Cir. 2002)............................................................................ 5

*Chanko v. Am. Broad. Cos.*,
      27 N.Y.3d 46 (2016) ............................................................................... 19, 21

*Chiste v. Hotels.com L.P.*,
      756 F. Supp. 2d 382 (S.D.N.Y. 2010)........................................................... 25

*Cooney v. Osgood Machinery, Inc.*,
      81 N.Y.2d 66 (1993) ............................................................................... 10, 11

*Craig v. Yale Sch. of Med.*,
      838 F. Supp. 2d 4 (D. Conn. 2011) ............................................................... 18

*D.K. ex rel. L.K. v. Teams*,
      260 F. Supp. 3d 334 (S.D.N.Y. 2017)........................................................... 22

*Daniels v. Safir*,
      175 F. Supp. 2d 474 (E.D.N.Y. 2001) ............................................................ 6

*De Sesto v. Slaine*,
      171 F. Supp. 3d 194 (S.D.N.Y. 2016)................................................. 17, 19, 20

*DeMasi v. Rogers*,
      34 A.D.3d 720 (1st Dep't 2006) ................................................................... 10

*Doe v. Am. Broad. Cos.*,
      152 A.D.2d 482 (1st Dep't 1989) ................................................................. 20

*Douglas v. N.Y. State Adirondack Park Agency*,
      895 F. Supp. 2d 321 (N.D.N.Y. 2012)........................................................... 18

*Doyle v. City of Medford*,
      337 P.3d 797 (Or. 2014) ........................................................................... 8, 9

*Edelstein v. Farber*,
      27 A.D. 3d 202 (1st Dep't 2006) .................................................................... 6

*Elevator Antitrust Litig. v. United Techs. Corp.*,
      502 F.3d 47 (2d Cir. 2007)............................................................................ 5

*Elmowitz v. Exec. Towers at Lido, LLC*,
      571 F. Supp. 2d 370 (E.D.N.Y. 2008) ...................................................... 18, 20

*Fargas v. Cincinnati Mach., LLC*,
      986 F. Supp. 2d 420 (S.D.N.Y. 2013)........................................................... 11

*Fischer v. Maloney*,
43 N.Y.2d 553 (1978) .......................................................................................... 23

*Five Star Dev. Resort Cmtys., LLC v. iStar RC Paradise Valley*,
No. 09-CV-2085, 2010 WL 2697137 (S.D.N.Y. July 6, 2010) ........................................ 25

*Fox v. Hayes*,
600 F.3d 819 (7th Cir. 2010) ............................................................................... 22

*Gibson v. Campbell*,
16 Misc. 3d 1123(A), 2007 WL 2316477 (Sup. Ct. N.Y. Cnty. 2007) ......................... 21

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*,
449 F.3d 377 (2d Cir. 2006)................................................................................. 11

*Goldstein v. Tabb*,
177 A.D.2d 470 (2d Dep't 1991) ............................................................................ 6

*Guthrie v. U.S. Fed. Bureau of Prisons*, No. 09-CV-990,
2010 WL 339759 (S.D.N.Y. Jan. 26, 2010) ............................................................ 18

*Harbor Dist. Corp. v. GTE Operations Support Inc.*,
176 F. Supp. 3d 204 (E.D.N.Y. 2016) ..................................................................... 25

*Hartman v. 536/540 E. 5th St. Equities, Inc.*, 19 A.D.3d 240 (1st Dep't 2005) ........................... 6

*Harvey v. Cramer*,
235 A.D.2d 315 (1st Dep't 1997) .......................................................................... 22

*Hetfeld v. Bostick*,
901 P.2d 986 (Or. Ct. App. 1995)........................................................................... 17

*Hirsch v. Arthur Andersen & Co.*,
72 F.3d 1085 (2d Cir. 1995).................................................................................. 19

*Howell v. N.Y. Post Co.*,
81 N.Y.2d 115 (1993) ............................................................................ 16, 17, 19, 25

*Hulec v. J.H. Bennett & Co.*,
No. 14-CV-492, 2014 WL 2918542 (N.D. Oh. June 26, 2014)....................................... 9

*In re Allstate Ins. Co.*,
81 N.Y.2d 219 (1993) ............................................................................................ 7

*K.T. v. Dash*,
37 A.D.3d 107 (1st Dep't 2006) .............................................................................. 9

*Kwan v. Schlein*,
No. 05-CV-459, 2008 WL 4755345 (S.D.N.Y. Oct. 30, 2008)...................................... 25

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    739 F.3d 45 (2d Cir. 2013) ........................................................................... 9, 10

*Lynch v. Ackley*,
    No. 3:12-CV-537, 2013 WL 6732540 (D. Conn. Dec. 19, 2013) ................................... 18

*McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*,
    256 A.D.2d 269 (1st Dep't 1998) ............................................................... 17, 24

*McNamee v. Clemens*,
    762 F. Supp. 2d 584 (E.D.N.Y. 2011) ............................................................... 23

*Memorial Drive Consultants, Inc. v. ONY Inc.*,
    29 F. App'x 56 (2d Cir. 2002) ......................................................................... 7

*Neumeier ex rel. Neumeier v. Keuhner*,
    31 N.Y.2d 121 (1972) ................................................................................. 11

*Nevin v. Citibank, N.A.*,
    107 F. Supp. 2d 333 (S.D.N.Y. 2000) ............................................................... 17

*Noto v. St. Vincent's Hosp. & Med. Ctr. of N.Y.*,
    142 Misc. 2d 292 (1988) ............................................................................. 22

*Nunez v. A-T Fin. Info., Inc.*,
    957 F. Supp. 438 (S.D.N.Y. 1997) ................................................................. 21

*Owen v. Leventritt*,
    174 A.D.2d 471 (1st Dep't 1991) ................................................................... 20

*Padula v. Lilarn Props. Corp.*,
    84 N.Y.2d 519 (1994) ................................................................................. 11

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992) ................................................................................... 16

*Schultz v. Boy Scouts of Am. Inc.*,
    65 N.Y.2d 189 (1985) ......................................................................... 9, 10, 11

*Serles v. Beneficial Or., Inc.*,
    756 P.2d 1266 (Or. Ct. App. 1988) ........................................................... 8, 9, 11

*State ex rel. Bailey v. Oh. Parole Bd.*,
    --- N.E. 3d ----, 2017 WL 6631614 (Oh. 2017) ............................................... 9, 11

*Sweeney v. Prisoners' Legal Servs. of N.Y., Inc.*,
    146 A.D.2d 1 (3d Dep't 1989) ....................................................................... 23

*TBA Global, LLC v. Proscenium Events, LLC*,
    114 A.D.3d 571 (1st Dep't 2014) ................................................................. 17

*Tyrone T. v. Katherine M.*,
    78 A.D.3d 545 (1st Dep't 2010) ............................................................ 12, 13

*Turley v. ISG Lackawanna, Inc.*,
    774 F.3d 140 (2d Cir. 2014).......................................................... 17, 20, 22

*Walther v. Maricopa Int'l Inv. Corp.*,
    No. 97-CV-4816, 1998 WL 689943 (S.D.N.Y. Sept. 30, 1998)...................... 20

*Youngman v. Robert Bosch LLC*,
    923 F. Supp. 2d 411 (E.D.N.Y. 2013) ............................................................ 12

*Zhao v. City of New York*,
    656 F. Supp. 2d 375 (S.D.N.Y. 2009).......................................................... 23

*Zherka v. Amicone*,
    634 F.3d 642 (2d Cir. 2011)......................................................................... 16

**Other Authorities**

Am. Psych. Ass'n, The Principles of Medical Ethics With Annotations Especially Applicable
    to Psychiatry § 1.2 (2013 ed.) ..................................................................... 15

Gregory P. Brown et al., *Threats Against Clinicians: A Preliminary Descriptive Classification*,
    24 Bull. Am. Acad. Psych L. 367 (1996)........................................................ 15

Paola Rocca et al., *Managing the Aggressive and Violent Patient in the Psychiatric
    Emergency*, 30 Progress in Neuro-Psychopharm. & Bio. Psych. 586 (2006) ................. 15

Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 46........................ 22

Robert I. Simon, *Patient Violence Against Health Care Professionals*, Psych. Times.
    (Mar. 2011) ................................................................................................ 16

Tricia L. Park & Thomas L. Schwartz, *Patient Violence in Psychiatric Residency: A
    Nationwide Survey*, Jefferson J. Psych. (Jan. 2001) ....................................... 16

**Regulations**

CPLR § 302....................................................................................................................24

**Statutes**

N.Y. Penal Law § 240.25 ....................................................................................... 12, 13

N.Y. Penal Law § 240.26 ............................................................................ 6, 12, 13, 16

Or. Rev. Stat. § 166.065.................................................................................................... 8

Ohio R.C. § 2917.21 ....................................................................................................... 9

## PRELIMINARY STATEMENT

Psychiatrist Paul Conti's lawsuit against his patient, John Doe, is groundbreaking in its cruelty and spitefulness.  Psychiatrists do not sue their patients for being troubled.  And psychiatrists do not go out of their way to disclose the most sensitive details of their patients' diagnoses, treatment, addictions, family strife, or other problems in public lawsuits.  Conti's effort to use the power of the federal courts to humiliate John Doe, impose still more suffering on him, and extract money from him and his prominent parents, is without precedent and beyond the pale.

It is also legally meritless, on several grounds.  While Conti seeks money damages for the "severe emotional distress" he claims to have suffered as a result of a series of crude and regrettable emails and text messages sent by his patient, Doe, over the course of eight months (the "Messages"), his Complaint fails to allege that the Messages alarmed him or made him fearful.  Nor can it.  In contemporaneous emails, Conti stated, *inter alia,* that: (i) he "*d[id] not mind*" the curse words and insults found in the Messages; (ii) a particularly unfortunate Message "led to a few good teaching moments in [his] office;" (iii) in his experience, patients "often . . . assail" their treaters; and, perhaps most tellingly, (iv) "with all [his] heart, training and experience," he believed that the Messages were merely reflective and  "illustrative" of the distress that Doe was then suffering.  Compl. Exs. C, E.[1]  On this basis, among others, Conti's claims for harassment and intentional infliction of emotional distress must be dismissed.  *See infra* §§ I, II.

But, for Conti, all of this seems quite beside the point.  His Complaint seems designed mostly to reveal Doe's family conflicts, clinical diagnosis, his addiction, his darkest thoughts, and the detailed contents of his confidential sessions with his treating professionals.  *See* Compl.

---

[1]    Citations to the Complaint are to the publicly filed version (Dkt. #13).

¶¶ 3, 17, 24, 25, 29, 30, 32.  For good measure, it also contains salacious—and false—tales of sex, drugs, and rock 'n' roll that have nothing to do with the matter at hand.  *See id.* ¶ 27. Conti's pleading reveals his true intent: to load up the Complaint with personal secrets and tawdry stories, and extract money from Doe's wealthy family through a pre-filing demand.

But that gambit failed.  Conti is now stuck litigating a Complaint that is as cavalier with the law as it is with Doe's privacy.  In his First Claim for Relief, Conti claims that Doe harassed him, invoking a New York penal statute in a dispute between an Oregonian (Conti) and an Ohioan (Doe) about treatment that occurred in Portland.  No such civil cause of action exists—in New York, Oregon, *or* Ohio—and, even if one did, Conti cannot satisfy its elements.  *See infra* § I.  Likewise, Plaintiff's Third Claim for Relief for a "permanent injunction" is not a freestanding cause of action at all; it is a *remedy* and "cannot stand" on its own.  *See infra* § III.

That leaves Conti's Second Claim for Relief for intentional infliction of emotional distress (IIED), the last refuge of plaintiffs with nothing else to plead.  IIED claims almost always fail, and this one fails resoundingly.  A psychiatrist who agrees to treat a person for certain clinical behaviors cannot then turn around and plausibly claim that those very behaviors outrageously exceeded all bounds of civilized decency and caused him severe distress.  This is especially so when the psychiatrist states in writing that they did not.  *See infra* § II.

Conti's duty as a psychiatrist was to try to heal John Doe—or at least to try to minimize his suffering.  This unprecedented lawsuit does precisely the opposite.  It weaponizes the sensitive information that Conti learned during the treatment relationship, all in service of a Complaint that cannot withstand legal scrutiny.   Whether Conti's conduct is consistent with his ethical obligations as a physician is for others to decide.  On the law, the decision for this Court is easy.  This ill-conceived case warrants swift dismissal.

2

**FACTS**

Conti is a psychiatrist who lives and has his office in Portland, Oregon. Compl. ¶ 10. In the spring of 2016, Doe's parents grew concerned about Doe's behavior and contacted Conti to seek treatment for their son. *Id.* ¶¶ 4, 15. Conti and Doe initially met in New York in May 2016, *id.* ¶ 17, and, shortly thereafter, Doe, a citizen of Ohio, *id.* ¶ 11, moved to Portland to engage in intensive treatment with Conti and his colleagues, *id.* ¶ 19. In the fall of 2016, Doe left Portland to travel, *see id.* ¶ 24, but he later returned to continue treatment, *id.* ¶ 28. In approximately March 2017, under Conti's supervision, Doe began reducing his dosage of psychiatric medication, a process that is sometimes called "titration" or "tapering." *Id.* ¶ 31 & Ex. C. During that difficult process, Doe became upset that Conti was unreachable and felt abandoned by his doctor. *See id.* Exs. B, F.

In early April 2017, Doe began sending the Messages to Conti—fourteen electronic communications over the course of approximately eight months. The first was a text message on April 6, to which Conti responded by writing to Doe and his parents. *Id.* Exs. A & D. Conti explained that he regarded the first Message as "primarily" reflecting Doe's "suffering"—i.e., as a manifestation of the illness that Conti was hired to treat. *Id.* Doe sent an inappropriate email back. *Id.* Ex. E. Conti responded by promising not to read further emails from Doe unless they stated in the subject line that they concerned transitioning care to another provider. *Id.* Conti's phone also allowed him to block messages from Doe. *See id.* Ex A (offering "Block this Caller" option). Conti does not allege whether he availed himself of this option—or, if not, why not.

Two and a half months went by. *Id.* ¶ 38. Doe sent Conti another inappropriate email on June 13, 2017, copying several other people. *Id.* Ex. F. Conti replied to all, stating that he was "not going to engage with Doe." *Id.* Ex. C. Conti again blamed the Message on Doe's illness, explaining: "[I]t doesn't require any formal training to see that he does not want a dialogue, but

3

wants instead to assail me, which I believe with all of my heart, training, and experience, arises

from the distress inside of him . . . ." *Id.* Conti continued, "I do not mind him insulting or

cursing at me," and explained that one of Doe's earlier emails had "led to a few good teaching

moments in my office about maintaining perspective and not letting negative emotion drive us to

the painful and punishing position our patients are often in when they assail us." *Id.*

Doe continued to send sporadic and generally shorter emails to Conti—one more in June,

two in July, two in August, and one in September. *See id.* ¶¶ 40-45 & Exs. G-K. After Conti

threatened to sue Doe, *id.* ¶ 47, Doe sent Conti three one-paragraph emails in November 2017

telling Conti, in crude terms, that he welcomed the litigation and did not want to settle, *id.* ¶¶ 49-

51 & Exs. M-O.

Conti alleges that, because Doe frequently traveled to New York, at least one of the

Messages could have been sent from New York. *Id.* ¶ 14.

Concurrent with the filing of this fully dispositive motion to dismiss, Plaintiff will seek a

stay of discovery. Discovery in this case would afford Conti an opportunity to further utilize

Doe's medical and personal information against him and would compound the harm that the

filing of the case has already inflicted upon Doe. Having confided his most private fears in

Conti, Doe has now seen them disclosed in a public court filing. Discovery will touch upon the

most sensitive details of Doe's life, including purported facts about his psychiatric diagnosis,

treatment, addiction, and family strife. Forcing Doe to submit to discovery while this motion,

which we believe is likely to succeed, is pending would result in unnecessary emotional injury

for no purpose.

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge' [a plaintiff's] claims across the line from conceivable to plausible." *Elevator Antitrust Litig. v. United Techs. Corp.*, 502 F.3d 47, 50 (2d Cir. 2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). The text messages and emails attached to the Complaint are considered part of the pleadings. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

Thus, while the Court must accept the facts alleged in the Complaint as true, it must also examine whether those alleged facts add up to a *plausible* claim for relief. Conti's allegations do not pass this test.

**ARGUMENT**

**I.   CONTI FAILS TO STATE A CLAIM FOR HARASSMENT**

Conti's First Claim for Relief alleges that Plaintiff committed harassment in violation of sections 240.25 and 240.26 of the New York Penal Law. *See* Compl. ¶¶ 54-56. This claim fails for three reasons. First, New York does not recognize a civil tort claim for harassment. Second, even if New York did recognize the tort of harassment, New York substantive law would not apply to these facts. Conflicts-of-law principles dictate that, in this case, the substantive law of either Oregon or Ohio applies—and neither recognizes such a claim. Third, were this Court to apply New York substantive law, dismissal of the First Claim would still be required. The

5

Complaint fails to plausibly allege that Doe's conduct satisfies the elements of the offense under the New York Penal Law.

### A.    There Is No Such Claim Under New York Law

The New York State appellate courts have spoken: "New York does not recognize a common-law cause of action for harassment." *Edelstein v. Farber*, 27 A.D. 3d 202, 202 (1st Dep't 2006); *accord Hartman v. 536/540 E. 5th St. Equities, Inc.*, 19 A.D.3d 240, 240 (1st Dep't 2005); *Goldstein v. Tabb*, 177 A.D.2d 470, 471 (2d Dep't 1991), *lv. to appeal denied*, 80 N.Y.2d 753 (1992). In a diversity action where this court is bound to apply state law, this ends the matter.

Plaintiff seeks to "plead around" this bedrock proposition by invoking the criminal harassment statutes—sections 240.25 and 240.26 of the New York Penal Law—as if to suggest that such statutes give rise to a civil claim. They do not. Here again the case law is clear: the provisions of the Penal Law that criminalize harassment do *not* create a private cause of action and are *not* enforceable by a civil plaintiff. *See Cablevision Sys. Corp. v. Commc'ns Workers of Am. Dist. 1*, 131 A.D.3d 1087, 1088 (2d Dep't 2015) (affirming dismissal of numerous claims "alleging violations of the Penal Law," including one alleging harassment in violation of Penal Law § 240.26, "on the ground that the subject Penal Law provisions do not create a private right of action"); *see also Calautti v. Grados*, 32 Misc. 3d 1205(A), 2011 WL 2556950, at *2 (Sup. Ct. Westchester Cnty. May 5, 2011) (dismissing counterclaims for harassment and aggravated harassment under the Penal Law).[2]

---

[2]    While some federal District Court cases have suggested that such a private right of action exists, *see, e.g.*, *Blasetti v. Pietropolo*, 213 F. Supp. 2d 425, 428 (S.D.N.Y. 2002); *Daniels v. Safir*, 175 F. Supp. 2d 474, 481 (E.D.N.Y. 2001), those cases are inapposite for two reasons. First, they do not actually cite any New York state court cases so holding. Second, they predate the holding of the Appellate Division, Second Department in *Cablevision* that the Penal Law does *not* create a private right of action for harassment. *See* 131 A.D.3d at 1088. "In matters of

For these reasons, the First Claim for Relief must be dismissed.

**B.    To the Extent Such a Cause of Action Exists in New York, There Is a Conflict of Laws that Prevents the Application of New York Law**

Plaintiff's harassment claim faces a second insurmountable obstacle: if such a cause of action did exist under New York law, New York law would conflict with Oregon and Ohio law, and New York law would not apply.

"In the absence of an express choice of law by the parties, a federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits." *Memorial Drive Consultants, Inc. v. ONY Inc.*, 29 F. App'x 56, 62 (2d Cir. 2002). Under New York choice-of-law rules, "[t]he first step . . . is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *In re Allstate Ins. Co.*, 81 N.Y.2d 219, 223 (1993). Here, there is such a conflict—or, more correctly, there *would be* one if the court concludes that an implied right of action for harassment exists under the New York Penal Law. Neither Oregon, which is where Plaintiff resides and where the alleged injury occurred, nor Ohio, which is where Doe resides, recognize a private right of action to enforce each state's criminal harassment statute. Given these facts, and in the face of such a conflict between New York on the one hand, and Oregon and Ohio on the other, New York substantive law does not apply to this case.

To begin, this case has virtually nothing to do with New York. Plaintiff maintains his "primary practice" in Portland, Oregon, and Doe, as his patient, "traveled to Portland" for treatment. Compl. ¶ 19. While an initial meeting between doctor and patient took place in New York, the *only* allegation connecting New York to Conti's claims of harassment-by-electronic-message is the following: "[O]n information and belief that is based in part upon the sheer

---

state law, this Court is generally bound to follow the holdings of the New York Appellate Division." *Agerbrink v. Model Serv. LLC*, No. 14-CV-7841, 2015 WL 3750674, at *3 n.6 (S.D.N.Y. June 16, 2015).

number of harassing communications and Defendant's extensive travel and repeated stays in

New York, Doe sent some of the emails and texts that give rise to these claims while Defendant

was physically present in New York State." *Id.* ¶ 14.  In other words, because Doe *sometimes*

travels to New York, it is *possible* that one of the fourteen Messages sent by Doe may have

emanated from New York.  *See id.*

This slim reed aside, as a citizen of Oregon who claims injury in Oregon, *id.* ¶ 10, Conti

could only reasonably expect that the substantive law of Oregon would apply to his claims.  And

Oregon law takes a dim view of implied causes of action like the one sought to be asserted here.

"If . . . a statute is silent as to private enforcement rights, courts may recognize a private claim

only when it is *necessary* to carry out the policy of the statute."  *Serles v. Beneficial Or., Inc.*,

756 P.2d 1266, 1270 (Or. Ct. App. 1988) (emphasis added).

For example, in *Serles*, the court held that, because the director of the Oregon

Department of Insurance and Finance has the authority to enforce Oregon's statutory prohibition

against false advertising, no implied right of action to enforce it exists.  *See id.*  "[T]here is no

need to recognize a private cause of action to carry out the statutory policy."  *Id.*  There is also no

private right of action to enforce the statutory provisions setting forth attorneys' ethical duties

because they can be enforced through the attorney discipline process.  *Bob Godfrey Pontiac, Inc.*

*v. Roloff*, 630 P.2d 840, 848-50 (Or. 1981).  Nor is there a private right of action to enforce a

statute that requires municipalities to make health insurance available to retired employees, as

other existing causes of action make it unnecessary.  *See Doyle v. City of Medford*, 337 P.3d 797,

818-19 (Or. 2014) (en banc).

From these precedents, it follows that no private right of action exists under Oregon's

criminal statute prohibiting harassment, Or. Rev. Stat. § 166.065.  Prosecutors can enforce that

law in criminal cases, so no additional enforcement mechanism is "necessary" to carry out the policy of the statute.  *See, e.g.*, *Doyle*, 337 P.3d at 818-19; *Serles*, 756 P.2d at 1270.

The law of Ohio, where Doe resides, is equally clear, and equally inhospitable to a claim of this sort.  Compl. ¶ 11.  In Ohio, there is no private right of action to enforce a criminal statute unless the statute specifically so provides.  *See State ex rel. Bailey v. Oh. Parole Bd.*, --- N.E. 3d ----, 2017 WL 6631614, at *3 (Oh. 2017).  The Ohio criminal statute concerning "telecommunications harassment," Ohio R.C. § 2917.21, which would govern the conduct alleged here if anything did, contains no such cause of action and is not privately enforceable. *See Hulec v. J.H. Bennett & Co.*, No. 14-CV-492, 2014 WL 2918542, at *2 (N.D. Oh. June 26, 2014).

Under New York choice-of-law rules, this Court must determine which jurisdiction's law to apply.  New York adopts an "interest-analysis approach" to conflicts of law.  *E.g.*, *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013), under which "[t]he law of the jurisdiction having the greatest interest in the litigation will be applied . . . ."  *Id.* (quoting *Schultz v. Boy Scouts of Am. Inc.*, 65 N.Y.2d 189, 197 (1985)).  This approach is "flexible" and is designed "to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the *greatest concern* with the specific issue raised in the litigation."  *Id.* (emphasis added) (quotation marks omitted).

The flexible "interest analysis" is conducted differently when the conflict of laws involves "conduct-regulating rules" than when the conflict involves "loss-allocating rules."  *Licci ex rel Licci v. Lebanese Canadian Bank*, 672 F.3d 155, 158 (2d Cir. 2012).  "Conduct-regulating rules are those that people use as a guide to governing their primary conduct," i.e., that determine whether conduct is unlawful.  *Id.* (quoting *K.T. v. Dash*, 37 A.D.3d 107, 112 (1st Dep't 2006)).

Where conduct-regulating rules are at issue, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Cooney v. Osgood Machinery, Inc.*, 81 N.Y.2d 66, 72 (1993).

"Loss-allocating rules," in contrast, "are laws that prohibit, assign, or limit liability after the tort occurs." *Licci*, 672 F.3d at 158 (quoting *DeMasi v. Rogers*, 34 A.D.3d 720, 721 (1st Dep't 2006)). Where loss-allocating rules are at issue, "other factors are taken into consideration" when determining the applicable law, "chiefly the parties' domiciles." *Cooney*, 81 N.Y.2d at 72.

No elaborate analysis is necessary in this case because New York is *neither* the site of the tort *nor* the domicile of either party. It is simply the location of Conti's lawyer's office and, perhaps, the site of the first meeting between the parties, which predates the conduct at issue by a year. Black-letter law provides that the site (or "locus") of a tort is the place where the *injury* occurs. *See, e.g.*, *Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 109 (2d Cir. 2016); *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 271 (2d Cir. 1992); *Cooney*, 81 N.Y.2d at 73; *Schultz*, 65 N.Y.2d at 195. The purported "injury" that gives rise to Conti's harassment claim, is, one presumes, the fear or annoyance that Conti purportedly experienced when he *received* Doe's communications. *See infra* § I.C. That injury occurred—if it occurred at all—in Oregon, where Conti resides and practices. *See* Compl. ¶ 10; *see also id.* ¶ 28 ("Dr. Conti insisted that if he was going to continue treating him, Doe must stay in Portland, Oregon . . . .").

In this case, Oregon is both the locus of the tort and the Plaintiff's domicile, and Ohio is where the Defendant is domiciled. A choice-of-law analysis generally involves choosing *among* the locus of the tort, the plaintiff's domiciliary, and the defendant's domiciliary—not importing

the law of another jurisdiction entirely. *See, e.g.*, *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377 (2d Cir. 2006) (Florida plaintiff, New York locus, New York defendant; New York law applies); *Cooney*, 81 N.Y.2d 66 (Missouri plaintiff, Missouri locus, New York defendant; Missouri law applies); *Schultz*, 65 N.Y.2d at 201-02 (New Jersey plaintiff, New York locus, New Jersey defendant; New York law applies). Under these circumstances, there is no argument whatsoever for injecting the conflicting substantive law of New York into the dispute. More to the point, Doe is unaware of *any* case applying New York law where New York is neither the locus of the tort nor the domicile of either party and the laws of the locus and domiciliary jurisdictions are all in harmony.

In the end, on the question whether a criminal statute gives rise to an implied civil tort claim, it is immaterial whether Oregon law or Ohio law applies, because the two are fully aligned. Both produce the same result: Conti's First Claim for Relief must be dismissed because, in either state, there is no private right of action to enforce criminal prohibitions against harassment in a civil tort case.[3] *See, e.g*, *Bailey*, 2017 WL 6631614, at *3; *Serles*, 756 P.2d at 1270.

---

[3]     A more detailed analysis yields the same conclusion.

Here, the conflict between Oregon and Ohio law, on the one hand, and New York law, on the other, concerns whether the law prohibits or authorizes civil tort liability for a violation of a penal statute. That is a conflict over loss-allocating rules. *See, e.g.*, *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 522 (1994) (citing examples of loss-allocating rules, such as charitable immunity rules, wrongful death statutes, and contribution rules); *Fargas v. Cincinnati Mach., LLC*, 986 F. Supp. 2d 420, 424-25 (S.D.N.Y. 2013) (conflict of loss-allocating rules existed where Ohio statute of repose would bar claim and New York law would allow it).

To resolve this conflict, the Court would apply the principles set forth in *Neumeier ex rel. Neumeier v. Keuhner*, 31 N.Y.2d 121 (1972), which are as follows: (1) If the parties share a domicile, its law applies; (2) If the parties have different domiciles and the law of each domicile favors its home litigant, the law of the locus of the tort applies; and (3) In other situations, the law of the locus of the tort presumptively applies. *See Youngman v. Robert Bosch LLC*, 923 F.

### C.   Even if a Cause of Action Exists and New York Law Applies, Conti Fails To Plausibly Allege Criminal Harassment

Assuming *arguendo* that a civil cause of action exists under the anti-harassment provisions of the New York Penal Law, and that the conflict of laws is somehow resolved in New York's favor, Conti's first cause of action *still* must be dismissed—because Conti fails to plausibly allege that Doe committed harassment in the first degree, N.Y. Penal Law § 240.25, or harassment in the second degree, *id.* § 240.26.

### 1.   Conti Had No Objectively Reasonable Fear of Physical Injury

"A person is guilty of harassment in the first degree when he or she intentionally and repeatedly harasses another person by following such person in or about a public place . . . or by engaging in a course of conduct or by repeatedly committing acts which places such person in *reasonable fear of physical injury.*"  *Id.* § 240.25 (emphasis added).  There being no allegation that Doe followed Conti about in a public place, the Complaint, in order to make out a claim under § 240.25, must plausibly allege facts supporting a reasonable inference that (1) Conti feared physical harm from Doe and (2) that fear was "objectively reasonable."  *Tyrone T. v. Katherine M.*, 78 A.D.3d 545, 545 (1st Dep't 2010).

Conti's Complaint does not satisfy either prong.  Nowhere in the Complaint does Conti allege, even in bare conclusory terms, that he feared Doe would physically harm him.  None of the Messages attached to the Complaint contain threats of violence, force, or any kind of physical confrontation.  And, while the Complaint does include, in its blunderbuss opening paragraph, a single conclusory reference to "threats of physical . . . harm," Compl. ¶ 1, there are

---

Supp. 2d 411, 419 (E.D.N.Y. 2013).  This case probably falls within the third category, which leads to the application of Oregon law.  The rationale animating the first category also applies, since the laws of the parties' domiciles are not in conflict, which further suggests the application of Oregon or Ohio law.

absolutely *no* specific factual allegations of any threat of violence by Doe against Conti either in the pleading itself or in the Messages attached.  *See id.* Exs. A-O.  At most, what the Complaint reveals are threats by Doe of *litigation* or other entirely *lawful* action not involving physical force.  *See, e.g., id.* ¶ 41 ("I'm waiting for you to engage with your lawyer."); *id.* ¶ 42 ("[Y]ou better get your leg[a]l counsel."); *id.* ¶¶ 43-44 (same); *id.* ¶ 45 (discussing putting up billboards in Portland "centered on" Conti).[4]

Conti understood perfectly well that the Messages did not threaten him with physical harm.  Indeed, the Complaint expressly alleges that Conti understood Doe to be threatening professional and reputational harm, not physical violence.  According to Conti, Doe's statement, "You better f*cking fear me.  You put a narrative on me you mother f*ck[er] I'm going to destroy your a**," made Doe's "*intention to ruin* Dr. Conti unmistakably plain."  *Id.* ¶ 46 (emphasis added).  Section 240.25 does not criminalize a promise to "ruin" someone's career or sue them for malpractice.  It criminalizes threats of violence—threats that were not levelled here. Conti had no subjective fear of physical harm, and, on these facts, no such fear would have been objectively reasonable.  *See* N.Y. Penal Law § 240.25; *Tyrone T.*, 78 A.D.3d at 545.

### 2. Conti Does Not Plausibly Allege Alarm or Serious Annoyance, Especially Within the Context of This Treatment Relationship

Because the Complaint does not allege that Doe made physical contact with Conti or threatened to do so, *see* N.Y. Penal Law § 240.26(1), or that Doe followed Conti around a public place, *see id.* § 240.26(2), the only potentially applicable prong of the second-degree harassment statute is subsection three: "He or she engages in a course of conduct or repeatedly commits acts which *alarm or seriously annoy* such other person and which serve no legitimate purpose."  *Id.* § 240.26(3) (emphasis added).

---

[4]        Such statements were made in response to Conti's threats to sue Doe.

Conti fails to plausibly allege that Doe's communications alarmed or seriously annoyed him. The Complaint does not contain even a *conclusory* allegation of alarm or serious annoyance, much less lodged one with any specificity. Indeed, the Complaint's attachments— the Messages—demonstrate the exact opposite, namely that Conti *was not disturbed* by Doe's communications at all, but rather regarded them (correctly) as a clinical manifestation of Doe's illness. In his emails to Doe's parents and others, Conti acknowledges what is commonsensical to anyone with any familiarity with psychiatry: that he and other mental health professionals often receive hostile communications from patients in distress, that such communications typically reflect the patient's underlying distress, and that receiving such communication is an occupational hazard for mental health professionals, and that they should not trouble Conti, as he affirmatively asserts they do not.

On April 6, 2017, after receiving one of the Messages from Doe that he now sues over, Conti wrote an email to Doe and to his parents. Compl. Ex. D. In that email, Conti provided what he called a "thorough clinical assessment," explaining that Doe's condition led him to "use[] anger, and the threat of anger, to control people." *Id.* Conti explained that Doe's Message was "illustrative" of these issues." *Id.* Addressing Doe directly, Conti wrote: "[W]hile it is hard not to find [this message] offensive, *I see in it primarily your suffering,* and it moves me to even greater hope that you will at some point engage in real treatment." *Id.* (emphasis added).

On June 14, 2017, Conti wrote again to Doe, Doe's parents, and two others. There, Conti stated that he would not continue to engage with Doe, who "does not want a dialogue, but wants instead to assail me." *Id.* Ex. C. Conti explained that he understood Doe's desire to "assail" him as a manifestation of Doe's illness: "I believe with all of my heart, training and experience [that it] arises from the distress inside of him that we have talked about on so many occasions." *Id.*

14

In the same email, Conti disclaims having been harmed or even annoyed by Doe's Messages. "*I do not mind* [Doe] insulting or cursing at me," he wrote. *Id.* (emphasis added). "In fact," Conti goes on to say, "the infamous 'f*ckface' email [from Doe] . . . led to a few good teaching moments in my office about maintaining perspective and not letting negative emotion drive us to the painful and punishing position our patients *are often in when they assail us*." *Id.* (emphasis added). Conti could not be more clear: he has been "assail[ed]" by patients in distress before, and, as a psychiatrist, it is part of his professional reality. By Conti's own account, such conduct does not bother him. *See id.* He "do[es] not mind." *Id.*

To the extent that Conti now seeks to argue he was "alarmed" or "seriously annoyed" by the Messages—an assertion that appears nowhere in the Complaint—such a claim is wholly implausible in light of Conti's own words, and of Conti's training, experience, and chosen field. Psychiatrists treat persons with mental illness. The relationship between a patient and a treating psychiatrist is "essentially private, highly personal, and sometimes highly emotional." Am. Psych. Ass'n, The Principles of Medical Ethics With Annotations Especially Applicable to Psychiatry § 1.2 (2013 ed.). Providing psychiatric treatment means discussing extremely sensitive matters and providing sometimes unwelcome advice to people whose judgment and impulse control may be clinically impaired. Under those circumstances, it is not unexpected that some patients may respond to their psychiatrists with ugly words of disappointment and anger— or worse.[5] More than anyone else, psychiatrists are equipped to understand such behavior as a manifestation of mental illness rather than a personal affront.

---

[5]     So endemic to psychiatric practice is the phenomenon of patient aggression that a vast body of literature exists on this issue. *See, e.g.*, Paola Rocca et al., *Managing the Aggressive and Violent Patient in the Psychiatric Emergency*, 30 Progress in Neuro-Psychopharm. & Bio. Psych. 586 (2006); Gregory P. Brown et al., *Threats Against Clinicians: A Preliminary Descriptive Classification*, 24 Bull. Am. Acad. Psych L. 367 (1996); Tricia L. Park & Thomas L. Schwartz,

This case illustrates the absurdity of a psychiatrist suing his own patient for causing "alarm or serious annoy[ance]."  N.Y. Penal Law § 240.26(3).  Conti—by his own account—entered into this treatment relationship with his eyes wide open.  According to the Complaint, Conti allegedly knew *before* agreeing to treat Doe that Doe "was causing increasingly intolerable distress through . . . profanely insulting" others, was repeatedly using a vile term to refer to a member of his family, and was experiencing conflicts with business associates because of his "erratic and unpredictable" behavior.  Compl. ¶ 16.  While, as a matter of *fact*, the Complaint's wild claims about Doe's alleged misbehavior are false, for purposes of this motion, that is beside the point.  The point here is that a psychiatrist who signs up to *treat* a patient for such behavior cannot plausibly find the behavior alarming enough to sue the patient for doing exactly what brought him to treatment in the first place.  In this particular case, as alleged in the Complaint and the attachments, this particular psychiatrist did not find the behavior alarming or seriously annoying.[6]

## II.    CONTI FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff's Second Claim for Relief is for intentional infliction of emotional distress ("IIED").  IIED claims are "highly disfavored under New York law."[7]  *Nevin v. Citibank, N.A.*,

---

*Patient Violence in Psychiatric Residency: A Nationwide Survey*, Jefferson J. Psych. (Jan. 2001); Robert I. Simon, *Patient Violence Against Health Care Professionals*, Psych. Times. (Mar. 2011) ("[C]linicians inevitably encounter disgruntled, angry, and deranged patients.").

[6]    Finally, any conclusion that Doe's Messages violated a criminal statute would raise serious First Amendment concerns, as applied to the facts of this case.  Doe's grievances about being abandoned by Conti do not fall into the category of obscenity, "fighting words," defamation, or any other form of unprotected speech.  *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 382-83 (1992).  Speech does not lose its protected character merely because it is coarse and insulting.  *See Zherka v. Amicone*, 634 F.3d 642, 646 (2d Cir. 2011).

[7]    There is no conflict of laws among Oregon, Ohio, or New York with respect to IIED.  All three jurisdictions recognize the tort with essentially the same elements.  *See Howell v. N.Y. Post*

107 F. Supp. 2d 333, 345 (S.D.N.Y. 2000).   The tort is "problematic" by nature because its limits are "poorly defined" and because "excruciatingly insulting speech causing hurt feelings" is, unfortunately, common in daily life. *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158-60 (2d Cir. 2014).   IIED "is to be invoked only as a last resort." *Id.* (quoting *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 256 A.D.2d 269, 270 (1st Dep't 1998)).

"When pleading [IIED], the bar is extremely high, and [the] cause of action is almost never successful." *De Sesto v. Slaine*, 171 F. Supp. 3d 194, 201-02 (S.D.N.Y. 2016) (quotation marks omitted).   "Indeed, such claims are routinely dismissed on pre-answer motion." *Id.* (quotation marks omitted).   To state a claim, Conti must allege: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *See Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993).

To support an IIED claim, the defendant's conduct must, in light of all the circumstances, "so transcend[] the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Turley*, 774 F.3d at 157 (quotation marks omitted).   This threshold is "extreme." *Id.* at 161.   Each and every time it has considered an IIED claim, the New York Court of Appeals has held that the conduct in question was *not* sufficiently extreme or outrageous to give support a finding of liability. *See Howell*, 81 N.Y.2d at 122.

---

*Co.*, 81 N.Y.2d 115, 121 (1993); *Russ v. TRW, Inc.*, 570 N.E.2d 1076, 1082 (Oh. 1991); *Hetfeld v. Bostick*, 901 P.2d 986, 987 (Or. Ct. App. 1995).   Absent any conflict, the Court should apply New York law as the law of the forum state. *See, e.g., 2002 Lawrence R. Buchalter Alaska Trust v. Phila. Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 218 (S.D.N.Y. 2015); *TBA Global, LLC v. Proscenium Events, LLC*, 114 A.D.3d 571, 572 (1st Dep't 2014).

**A.    Conti Not Only Fails to Plausibly Allege "Severe Emotional Distress," But He Affirmatively Alleges Its Absence**

Conti's Complaint makes one—and only one—allegation concerning the severity of the "distress" he purportedly suffered: "Defendant's conduct has caused Dr. Conti severe emotional distress."  Compl. ¶ 59.  This perfunctory and non-specific allegation is the very picture of a "[t]hreadbare recital" of an element of a cause of action, "supported by mere conclusory statements," that does not suffice to state a plausible claim.  *Iqbal*, 556 U.S. at 678.

Such a pleading warrants dismissal of the claim.  An IIED claim that merely pleads "severe emotional distress," unsupported by any specific facts, cannot survive a motion to dismiss.  *See Lynch v. Ackley*, No. 3:12-CV-537, 2013 WL 6732540, at *3 (D. Conn. Dec. 19, 2013) (dismissing IIED claim for failure to plausibly allege severe emotional distress); *Douglas v. N.Y. State Adirondack Park Agency*, 895 F. Supp. 2d 321, 389 (N.D.N.Y. 2012) (dismissing IIED claim because plaintiff "do[es] not allege facts plausibly suggesting that he experienced emotional distress that was *severe* in nature"); *Guthrie v. U.S. Fed. Bureau of Prisons*, No. 09-CV-990, 2010 WL 339759, at *4 (S.D.N.Y. Jan. 26, 2010) ("Without plausible allegations of severe emotional distress, there can be no claim of [IIED]."); *Elmowitz v. Exec. Towers at Lido, LLC*, 571 F. Supp. 2d 370, 379 (E.D.N.Y. 2008) ("Assuming, *arguendo*, that Defendant['s] conduct does constitute extreme and outrageous behavior, Plaintiff has done nothing more than recite the remaining three elements of an IIED claim . . . .  Such pleadings are insufficient to state a plausible cause of action for IIED."); *cf. Craig v. Yale Sch. of Med.*, 838 F. Supp. 2d 4, 12-13 (D. Conn. 2011) (detailed allegations of trauma, sleeplessness, loss of appetite, and other injury sufficient to allege severe emotional distress).  On this basis alone, Conti's Second Cause of Action must be dismissed.

Moreover, as explained above, *see supra* § I.C.2, Conti's own words, as documented in the Complaint and its attachments, make clear that he was *not* severely distressed by the Messages.  Conti was clear that he believed the Messages "primarily" reflected Doe's "suffering," Compl. Ex. D, and he stated unequivocally that he "believe[d] with all of my heart, training, and experience [that the Messages] arise[] from the distress inside of [Doe]," *id.* Ex. C. Moreover, Conti disclaimed any harm from the Messages:  he "d[id] not mind [Doe] cursing at me" and viewed it as a normal part of treating a distressed patient that "led to a few good teaching moments" with his colleagues.  *Id.*

Because Conti's own words contradict his (lone, threadbare) allegation of "severe emotional distress," his IIED claim must be dismissed.  *See Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 222 (2d Cir. 2004) (complaint failed to state claim where plaintiff's own statements in documents annexed to and incorporated within the complaint "belied" any inference of wrongdoing); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("General, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint.").

### B.    Under All of the Circumstances, Doe's Conduct Does Not Rise To the Extreme Level Necessary to Support an IIED Claim

While regrettable and inappropriate, John Doe's fourteen electronic communications to Conti do not rise to the level of conduct that is so extreme and outrageous as to be regarded as atrocious and utterly intolerable in a civilized society.[8]  *See Howell*, 81 N.Y.2d at 122.  This is an "exceedingly high legal standard."  *Chanko v. Am. Broad. Cos.*, 27 N.Y.3d 46, 57 (2016).  Conti

---

[8]    New York courts have become "much more stringent" in applying this standard after the Court of Appeals' decision in *Howell*, and "a number of courts in this district have questioned the value" of pre-*Howell* cases in determining whether to dismiss a cause of action for IIED.  *De Sesto*, 171 F. Supp. 3d at 203 (collecting cases).

fails to meet this "particularly high bar." *Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 564 (S.D.N.Y. 2012).

> **1.    Doe's Communications Are Not Sufficiently Extreme and Outrageous In Any Context**

The list of conduct that New York courts have held *in*sufficient to state an IIED claim is a veritable encyclopedia of human cruelty.  It includes:

- Broadcasting recognizable images of rape victims on television after repeatedly assuring them that their identities would be kept confidential.  *Doe v. Am. Broad. Cos.*, 152 A.D.2d 482, 483 (1st Dep't 1989).

- Demonstrating daily outside an elderly Holocaust survivor's private home, deliberately involving anti-Semitic organizations, accusing her of being a wage thief, shouting her name into a bullhorn, and inviting her to come down to face the "angry mob." *De Sesto*, 171 F. Supp. 3d at 198-99.

- Making "repeated verbal threats such as 'cocksucker, you're gonna pay,' unannounced visits to [plaintiff]'s home at late-night hours, persistent telephone calls to [plaintiff]'s home . . . , and harassment of [plaintiff]'s doorman at his apartment house." *Walther v. Maricopa Int'l Inv. Corp.*, No. 97-CV-4816, 1998 WL 689943, at *4 (S.D.N.Y. Sept. 30, 1998).

- Publicly threatening to kill a pregnant woman if she did not discontinue a lawsuit. *Owen v. Leventritt*, 174 A.D.2d 471, 472 (1st Dep't 1991).

- Referring to a female employee as "bitch," "slut," "whore," "animal" and "monkey face" and routinely telling her "you are shit" and "you are nothing." *Biberaj*, 859 F. Supp. 2d at 557, 565.  In *Biberaj*, the court concluded that there was no extreme and outrageous conduct even though the employee was repeatedly subjected to these slurs by her supervisor while working overnight as an office cleaner. *See id.* at 555.  Here, in contrast, Conti was in a position of power over Doe, and Conti had the ability to avoid or ignore Doe's Messages.

- Hitting someone multiple times with a telephone, sticking a camera in his face, and shouting derogatory remarks about him in public. *Elmowitz*, 571 F. Supp. 2d at 379.

In the extremely rare cases in which courts conclude that conduct was outrageous enough to state a claim for IIED, the plaintiff has generally been subject to threats of violence, actual violence against person or property, or both. *See, e.g., Turley*, 774 F.3d at 146-47 (multiyear campaign of extreme racial harassment including death threats, the hanging of a noose from

plaintiff's car, and repeated vandalism against plaintiff's property); *Bunker v. Testa*, 234 A.D.2d 1004, 1004 (4th Dep't 1996) (defendant followed plaintiff and her children home, refused to leave the premises, and told plaintiff that he knew where her children went to school and when they got out of school); *Gibson v. Campbell*, 16 Misc. 3d 1123(A), 2007 WL 2316477, at *2 (Sup. Ct. N.Y. Cnty. 2007) (defendant "hit [plaintiff] repeatedly and threatened her with further physical violence").

Doe did not threaten violence or physical harm to Conti at any time. *See supra* § I.C.1. In the absence of physical threats or violence, "[t]he New York courts appear to require that plaintiffs allege . . . an unrelenting campaign of day in, day out harassment." *Nunez v. A-T Fin. Info., Inc.*, 957 F. Supp. 438, 442 (S.D.N.Y. 1997). That standard was likewise not satisfied on the facts as alleged here. Doe's Messages to Conti were sporadic, comprising fourteen communications over the course of almost eight months. And, unlike plaintiffs who experienced protracted harassment at work or by neighbors, Conti had the power to entirely avoid Doe's unwelcome communications by simply deleting, blocking, or not reading Doe's emails. According to the Complaint, Conti was aware of this option and promised to take advantage of it. *See* Compl. Ex. E ("I will not read further emails from you, unless they carry in the subject line a request for transition of care work on my part.").

Doe's Messages, while regrettable, fail to meet the "exceedingly high" standard of conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as utterly intolerable in a civilized society. *Chanko*, 27 N.Y.3d at 57. The IIED claim must be dismissed.

### 2.    Doe's Communications Are Not Sufficiently Extreme and Outrageous Within the Context of a Psychiatrist-Patient Relationship

Even if messages of the sort Doe sent could give rise to liability if sent to a co-worker, ex-girlfriend, or stranger, they cannot do so under the circumstances of this case for one critical reason: Conti was Doe's treating psychiatrist. *See Turley*, 774 F.3d at 161 (whether conduct was extreme and outrageous is determined "in light of all the circumstances"). That fact, more than any other, demonstrates why this case is legally meritless, and misguided from its inception.

The relationship between the plaintiff and the defendant is a critical factor in determining whether the defendant's conduct can give rise to an IIED claim. "Whether an actor's conduct is extreme and outrageous depends on the facts of each case, including the relationship of the parties, whether the actor abused a position of authority over the other person, [and] whether the other person was especially vulnerable . . . ." Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 46; *see also Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010) (explaining that "whether a defendant abused a position of authority" is an "important factor" in determining whether his conduct is intolerable in a civilized community); *D.K. ex rel. L.K. v. Teams*, 260 F. Supp. 3d 334, 365 (S.D.N.Y. 2017) (holding that non-verbal, developmentally disabled persons stated IIED claim against staff of group home who serially physically abused them, "particularly given the vulnerability of the alleged[] victims").

Consistent with this principle, courts sometimes uphold IIED claims *by patients against doctors* who abuse the authority, trust, and confidence inherent in the doctor-patient relationship. *See, e.g.*, *Harvey v. Cramer*, 235 A.D.2d 315, 316 (1st Dep't 1997) (patient had valid IIED claim against physician for intentionally misdiagnosing him as HIV-positive); *Noto v. St. Vincent's Hosp. & Med. Ctr. of N.Y.*, 142 Misc. 2d 292, 295-96 (1988) (patient stated IIED claim against psychiatrist for inducing her to relapse into drug and alcohol dependency and coercing her into a

22

sexual relationship).  Doe is unaware of *any* case in *any* jurisdiction in which a doctor has even

asserted an IIED claim against a patient on *any* set of facts, let alone one where such a claim has

survived a dispositive motion.  An IIED claim by a *psychiatrist* against a patient for sending

unpleasant emails is even more untenable.  As explained above, the Complaint alleges that Conti

consented to *treat* Doe for the very behavior that he now claims is so extreme and intolerable as

to exceed all bounds of decency in a civilized society.  *See supra* § I.C.2.  Accounting for the

context of a psychiatrist-patient relationship, as the Court must, Conti's IIED claim fails.

### C.    Conti's IIED Claim Should Be Dismissed Because It Is an Improperly Repackaged Defamation Claim

Because IIED claims are strongly disfavored under New York law, "a cause of action for

intentional infliction of emotional distress should not be entertained 'where the conduct

complained of falls well within the ambit of other traditional tort liability.'"  *Sweeney v.

Prisoners' Legal Servs. of N.Y., Inc.*, 146 A.D.2d 1, 7 (3d Dep't 1989) (emphasis omitted)

(quoting *Fischer v. Maloney*, 43 N.Y.2d 553, 558 (1978)); *see also Zhao v. City of New York*,

656 F. Supp. 2d 375, 404-05 (S.D.N.Y. 2009) (collecting cases).  For this reason, New York

courts routinely dismiss IIED claims as duplicative of parallel claims for defamation.  *See, e.g.*,

*Bacon v. Nygard*, 140 A.D.3d 577, 577 (1st Dep't 2016); *McNamee v. Clemens*, 762 F. Supp. 2d

584, 608 (E.D.N.Y. 2011).  Conti's attempt to repackage a meritless defamation claim as an even

more meritless IIED claim fares no better.

To the extent this lawsuit is about anything other than Conti's desire to extract money

from John Doe's wealthy family by threatening embarrassment, humiliation, and psychological

harm, it is really about Conti's reputation.  Conti clearly is peeved that Doe copied "renowned"

and "noted" attorney Alan Dershowitz on certain emails.  Compl. ¶ 6.  Conti further complains

that Dr. Michael Jenike, another recipient of some emails, "is a professor of psychiatry—which

is Dr. Conti's field—at one of the most renown [*sic*] medical schools in the world."  *Id.* ¶ 7.  And Conti asserts that Doe "maximized the professional and reputational injury that he has inflicted." *Id.*

Indeed, in his June 14, 2017 email to Doe's parents, Conti was candid about why he is reacting differently to Doe than he does to other distressed patients who send him unpleasant communications, namely that Doe is wealthy, and Conti is supposedly worried about his own reputation.  While explaining that "I do not mind [Doe] insulting or cursing at me," Conti wrote, "[I] cannot let myself be intimidated by wealth that someone . . . has threatened to use against me, nor can I let myself be *slandered or defamed*, or whatever other word may technically apply."  Compl. Ex. C (emphasis added).  Conti griped that Doe was "telling lies about me to a Harvard professor," referring, apparently, to Dershowitz.  *Id.*  He also baselessly speculated: "I would be ignorant if I did not wonder who else may have heard his stories—other Harvard professors?  Stanford colleagues?  People who might otherwise hire me?"  *Id.*

Yet, Conti has chosen not to sue for defamation.  Perhaps that is because Doe's statements are not factual, or are, to the extent they are factual, true.  Perhaps it is because Conti knows his reputation was not actually damaged by series of private emails from an obviously distressed person to a handful of close associates—including Doe's own attorney (Dershowitz) and Doe's new treating psychiatrist (Jenicke).  Or perhaps it is because New York's long-arm statute does not apply to defamation claims against non-domiciliaries and any attempt to bring such a claim against Doe in New York would be patently frivolous. *See* CPLR §§ 302(a)(2), (3).

Regardless of his motivation, Conti's pleading gambit cannot subvert New York law. "[I]ntentional infliction of emotional distress is a theory of recovery that is to be invoked only as a last resort."  *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 256 A.D.2d 269, 270 (1st

Dep't 1998).  To be clear, Conti does not have a viable defamation claim against Doe.  Any such claim would be dismissed.  But to the extent Conti wants to file a meritless lawsuit for the injuries alleged in his Complaint, that claim sounds in defamation as a matter of first resort and may not be tactically recast as IIED.  *Cf. Howell*, 81 N.Y.2d at 125 ("Defendants would have our analysis end here—without considering whether plaintiff has stated a cause of action for [IIED]—arguing that the tort may not be used as an end run around a failed right to privacy claim.  Insofar as plaintiff's claim is based on the publication of her photograph, we agree . . . ."); *Murphy*, 58 N.Y.2d at 303 ("[I]n light of our holding . . . that there is . . . no cause of action . . . for abusive or wrongful discharge of an at-will employee, plaintiff should not be allowed to evade that conclusion or to subvert the traditional at-will contract rule by casting his cause of action in terms of [IIED].").

## III.   CONTI'S CLAIM FOR "PERMANENT INJUNCTION" HAS NO INDEPENDENT FORCE

"A permanent injunction is clearly a form of remedy, rather than a cause of action." *Kwan v. Schlein*, No. 05-CV-459, 2008 WL 4755345, at *4 (S.D.N.Y. Oct. 30, 2008); *accord Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010); *Five Star Dev. Resort Cmtys., LLC v. iStar RC Paradise Valley*, No. 09-CV-2085, 2010 WL 2697137, at *4 (S.D.N.Y. July 6, 2010).  A cause of action for a permanent injunction "cannot stand" on its own; it must be dismissed if the plaintiff's "substantive causes of action have been dismissed."  *Harbor Dist. Corp. v. GTE Operations Support Inc.*, 176 F. Supp. 3d 204, 217 (E.D.N.Y. 2016).

Because Conti's harassment and IIED claims fail, his third cause of action for "permanent injunction," Compl. ¶¶ 62-65, has no independent force and must also be dismissed.

## CONCLUSION

This lawsuit should never have been filed.  It should now be dismissed.

Dated: January 26, 2018
       New York, New York

                                    EMERY CELLI BRINCKERHOFF
                                    & ABADY LLP


                                    _____/s/_____
                                    Andrew G. Celli, Jr.
                                    Katherine Rosenfeld
                                    Douglas E. Lieb

                                    600 Fifth Avenue, 10th Floor
                                    New York, New York 10020

                                    (212) 763-5000

                                    *Attorneys for Defendant*