UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

DR. PAUL M. CONTI,

                    *Plaintiff,*

        – against –

JOHN DOE,

                  *Defendant.*

--------------------------------------------------------X

**FIRST AMENDED
ANONYMIZED COMPLAINT**

Case No. 17-cv-9268

**JURY TRIAL DEMANDED**

Plaintiff Dr. Paul M. Conti ("Dr. Conti" or "Plaintiff") as and for his First Amended Anonymized Complaint against Defendant John Doe ("Defendant" or "Doe"), which is filed as of right pursuant to Fed.R.Civ.P. 15(a), alleges as follows:

## INTRODUCTION

1.     Doe has engaged in a shocking campaign of harassment coupled with criminal threats of physical and emotional harm to Dr. Conti, a highly respected and competent psychiatrist, who was sought out by Doe's parents to help their son address his drug addiction and increasingly dangerous, offensive and unbalanced behavior. As described below, Dr. Conti worked tirelessly to help Doe -- ultimately to no avail, because Doe would not cooperate with treatment and his parents consistently rewarded and enabled him regardless of how outrageous his conduct was.

2.     Doe's life is a tragedy, as is the damage he has inflicted upon his extraordinarily wealthy family. But neither his drug addiction, his severe psychiatric problems, nor his parents' wealth entitled him to inflict the damage he has caused Dr. Conti, or the damage he is likely to inflict in the future unless he is prevented from doing so.

3.    Doe is 32 years of age.  He was born into a life of incredible luxury.  He is a son of one of the wealthiest families [redacted] and known for [redacted].  Doe's parent's youngest son, Doe, is every parent's nightmare.  Clinically, he suffers from Narcissistic Personality Disorder, including Borderline and Antisocial traits.  His condition manifests itself in a variety of ways, including an addiction to Xanax, frequent cocaine use (often with prostitutes), thefts of money from his parents, multi-million dollar gambling losses, as well as violent, abusive and threatening behavior.

4.    As detailed below, by the Spring of 2016, Doe's family was in crisis because Doe was spinning out of control in a host of ways.  Doe's father is very protective of his family's reputation, and he was desperate to avoid the public scandal which was becoming almost inevitable given Doe's increasingly reckless and erratic behavior.  Having heard about Dr. Conti's sterling reputation, they reached out and asked him to treat their son.  Dr. Conti agreed to treat Doe on the condition that he would have the autonomy and latitude to treat Defendant as he deemed appropriate.  Those promises were given, but they proved to be illusory.

5.    As for Doe, while he claimed that he wanted treatment, he unremittingly rebelled against any effort to curb his drug use, or otherwise limit any of his destructive behaviors.  When Dr. Conti's therapy conflicted with Doe's hedonistic lifestyle, he began a campaign of intimidation against Dr. Conti by, *inter alia*, threatening him with bodily harm and false criminal charges, and also by copying third-parties on his scurrilous communications.  Just by way of example, Doe sent the following text to Dr. Conti while copying his parents:

> Your a pussy bitch mother fucker
>
> If you were a real man the way you spoke about me you would come and say it to my fucking face you fucking faggot ass cunt
>
> I will fuckong destroy you

2

Face fuck YOU back to where you fucking belong you son of a Bitch * * *

Your lucky call your fucking lawyer you fucking pussy * * *

Every fucking billboard I'm working to put you woody wood pecker faggot ass

face to get you * * *

I hope you getting fucking gang raped by the fucking gay community of SAN

Fran ***

I'm going to fucking destroy u and put your ass behind bars your fraudulent fuck

Call the cops u mother fucker

Call them

I get your ass behind bars

(*See* Exhibit A hereto, a true and accurate copy of this text).[1]

6.      The above-quoted text is only the tip of the iceberg when it comes to Defendant's

appalling conduct.   Indeed, in seeking to ruin Dr. Conti's reputation and livelihood, Doe has

copied on his lurid publications Dr. Conti's colleagues, as well as renowned attorney Alan

Dershowitz, and two different medical professionals affiliated with Harvard University.  Again,

just by way of example, on June 15, 2017, Defendant sent an email copying Mr. Dershowitz, Dr.

Michael A. Jenike ("Dr. Jenike"), Professor of Psychiatry and Senior Consultant with Harvard

Medical School, and Dovi Meyer ("Mr. Meyer"), one of Doe's sycophants, stating in relevant

part:

And you fuck face responsibility, what the fuck have you done in your life??
Bilked people out of money. Do you know how hard it is to wake up to meetings

---

[1]      We have not corrected the many grammatical and spelling errors that appear throughout
Defendant's writings, but rather have presented them verbatim.  The use of the term "*sic*" should
be deemed to apply to every such error in the communications from Doe to Dr. Conti (and
others) quoted in this Amended Complaint.

for a company I started on 5 mgs of xanax. You little fuck. You cunt mother fucker. You couldn't last two minutes in my world you little fucking bitch. You have zero fucking idea what it's like u mother fucking son of god damm bitch . * * * I realized you equate everything to money you whore. You know a whore is more honest than your ass and I have a lot more respect for a whore than you. A whore you at least you know what your getting. Your a fucking fraud that abandoned me in treatment so who the fuck do you think you are. * * * And your fraudulent mother fucming ass was not there.

(*See* Exhibit B hereto, a true and accurate copy of Defendant's June 15, 2017 email).

       7.      In assessing how devastating this email is for Dr. Conti, it is important to note that Dr. Jenike is a professor of psychiatry – which is Dr. Conti's field – at one of the most renowned medical schools in the world.  Dr. Jenike is also a physician, like Dr. Conti.  Therefore, in selecting an audience for his publications, Doe has maximized the professional and reputational injury that he has inflicted upon Dr. Conti.

       8.      Dr. Conti has no recourse against Doe's appalling conduct other than to bring this lawsuit.  Doe is carrying out a personal vendetta against Dr. Conti, **one that has continued as recently as November 23, 2017** – even after counsel for Dr. Conti alerted counsel for Doe that Dr. Conti was going to sue Doe unless adequate protections for Dr. Conti were put in place.  In harassing Dr. Conti, Doe has violated 18 U.S.C. § 2261A.  While this Complaint does not seek damages based upon § 2261A because there is no private right of action authorized by the statute, the criminal nature of Doe's conduct provides solid reasons for both injunctive relief and an award of punitive damages.

       9.      As for Doe's family, they have exacerbated their son's problems because they have at all times refused to take effective action, despite entreaties by Dr. Conti to help stop their son's egregious threats.  For example, Dr. Conti sent a June 14, 2017 email to, *inter alia*, Doe's family seeking "some reassurance" that Defendant would be dissuaded from making false personal attacks against him.  (*See* Exhibit C hereto, a true and accurate copy of this e-mail).

Given the conduct which followed, Doe's parents have responded with a refusal or inability to restrain their son. To the contrary, on information and belief, they have only emboldened him by continuing to provide him with virtually unlimited access to money and its trappings, such as private air travel.

## THE PARTIES

10.    Dr. Conti is a citizen of the State of Oregon. He is a graduate of Stanford University School of Medicine. He completed his training at Stanford and at Harvard University, where he served as Chief Resident of the Hospital Psychiatric Unit at Beth Israel Deaconess Medical Center. He then worked in private practice while serving on the medical faculty at Harvard. Dr. Conti was named one of Oregon's Top Psychiatrists in 2008, his first full year of practice in Oregon. Operating his practice through Pacific Premier Group, LLC ("Pacific"), Dr. Conti is a general psychiatrist, treating all aspects of both mental illness and the impact of life stressors. In addition to clinical treatment, Dr. Conti provides business related and legal consulting services. He has been an advisor to several national level charitable causes, and serves as medical director of the DePaul Treatment Center, a non-profit organization treating people who are homeless or do not have money or insurance.

11.    On information and belief, Defendant is a citizen of the State of [redacted].

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 in that it is a civil action between citizens of different States and involves an amount in controversy excess of $75,000.

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

14.    This Court has personal jurisdiction over Doe with regard to Plaintiff's claims pursuant to CPLR 302(a)(2). In this regard, on information and belief that is based in part upon the sheer number of harassing communications and Defendant's extensive travel and repeated stays in New York, Doe sent some of the emails and texts that give rise to these claims while Defendant was physically present in New York State. Additionally, Doe has waived any defense of lack of personal jurisdiction by filing a pre-answer motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), while failing to seek dismissal on the grounds of an alleged lack of personal jurisdiction.

## FACTS RELEVANT TO ALL CLAIMS FOR RELIEF

15.    By the Spring of 2016, Doe's family had become overwhelmingly alarmed by Doe's increasingly erratic and destructive behavior. While they were accustomed to having to bail him out of his various failed business ventures, they could financially afford to do that. However, apart from concern for their son, they feared that Doe might be a threat to the safety of others.

16.    In late May of 2016, Dr. Conti met with Doe's family in New York City. They described the situation with Doe, as they understood it, telling Dr. Conti that:

   a.    Doe was causing increasingly intolerable distress through verbally and profanely insulting and threatening his parents and others around him;

   b.    He was repeatedly using the words "fuck", "bitch", and "cunt" towards his mother, as well as any other woman who did not meet what he thinks are his needs;

   c.    He had disrupted family events, at times causing extremely high levels of fear and distress among family members, often because of profane yelling,

aggressive physical posturing, and a progressively lower threshold for losing control of himself;

d.   He had been erratic and unpredictable in the business his family effectively provided for him, as well as in the broader family businesses, resulting in conflict with employees, high costs, and bad outcomes;

e.   He was addicted to Xanax;

f.   His theft of money from his family and gambling had cost Doe's family millions of dollars; and

g.   His hostility, verbal cruelty, and vindictive behavior was cresting to levels that led his parents to fear that he or others could be imminently hurt.

17.   Dr. Conti then met Doe for the first time later that week in New York City. He presented in a very benign manner, externalizing blame and talking readily about childhood stressors such as his grandfather's death and fear of the dark. He talked about being mocked in school, and about his shame and insecurity. He complained about his mother and an ex-girlfriend who had stolen from him. He acknowledged his Xanax addiction and stated that he wanted this to change.

18.   Thereafter, Dr. Conti continued to meet with Doe. Their initial meetings were similar to the first, as Dr. Conti tried to get to know him. However, nothing ever advanced from there, despite intense effort from Dr. Conti and two other therapists employed by Pacific, which is, as noted, the business vehicle for Dr. Conti's practice.

19.   At the behest of his parents, Doe traveled to Portland, Oregon, where Dr. Conti's primary practice is located. Doe came to therapy sessions, but resisted meaningful treatment. Essentially, he told the same story over and over and over, replaying a few, seemingly rehearsed

lines, *e.g.*: "I got the best heart of anyone, and no one understands, but I got the best heart of anyone" and "[m]y mom's a bitch and this is all her fault."

20.     Notwithstanding Dr. Conti's efforts, Doe would never accept responsibility for any of his conduct, instead surrounding himself with bought "friends" and bought women, while continuing to abuse Xanax and cocaine – including when he was gambling away millions of dollars.

21.     Further, while Doe had claimed that he wanted to decrease his use of Xanax, in reality, he adamantly refused to do so, and it became increasingly clear that Defendant was unwilling to engage in effective treatment.

22.     In August 2016, Doe's mother asked to see Dr. Conti, and he met with her on the family yacht, which was docked at Chelsea Piers in Manhattan.  During this meeting, she cried when detailing the constant barrage of profane insults to which Doe was subjecting her, and she told Dr. Conti that she could no longer stand it.

23.     Doe's father later joined the meeting at the Chelsea Piers.  He stated that he was fearful of taking significant steps to curb his son's behavior because he had been scarred by a devastating family suicide when he was younger, and he was afraid that Doe was going to take his own life.  Doe is aware of his father's concerns about him, and threatens suicide on an almost daily basis in order to get what he wants from his father.

24.     In the Fall of 2016, and against Dr. Conti's strong advice, Doe traveled to Israel. During the trip, Dr. Conti and his colleagues stayed in close contact with Doe's family, who were concerned about Doe's increasing use of hostile language towards his mother, and his unhinged, volatile behavior.  Doe's trip to Israel was a disaster.  After threatening to kill himself, he had to be chased down by family and friends.

25.    Following the family's return from Israel, Doe's family engaged in conversations with Dr. Conti about the details of his conclusion that Doe suffers from Narcissistic Personality Disorder, including Borderline and Antisocial traits.  Doe's parents agreed that the diagnosis made perfect sense, explaining everything they had seen over the years -- including erratic and impulsive behavior, intense selfishness, vindictive and ruthless behavior without remorse, verbal threats, drug abuse, poor role performance on personal and business fronts, excessive gambling and lack of stable relationships.  They expressed relief over finally understanding why their son acted as he did.

26.    However, Doe's parents were resistant to using their leverage to promote compliance with Dr. Conti's recommendations that (a) Doe stop using Xanax through a deliberate process of tapering his use of the drug so that it would be used in lower and lower doses until it was eliminated altogether, (b) the Xanax not be replaced with other medications, and (c) Doe's parents set behavioral boundaries for him.

27.    Instead, Doe's parents continued to enable him.  To provide a few, pertinent examples, which occurred during various times relevant to this Complaint:

        a.    In or around the Fall of 2016, when Doe wanted a certain Rabbi to come from Israel to visit him, Doe's parents flew him into the United States. Unbeknownst to Doe's parents, the Rabbi secretly delivered Doe unprescribed, illicit Xanax upon his arrival.  The Rabbi's outrageous behavior was revealed in November 2016, when, as retaliation for the Rabbi having revealed to others that Doe was still gambling, Doe told his father that the Rabbi had supplied him with the illicit Xanax.  When Doe's parents learned that the Rabbi had provided Doe with the Xanax, they

appropriately cut off all ties with him.  Yet, they took no action so that Doe would feel the consequences of his own misconduct;

b.    In 2016, Doe stole in excess of $1 million from his parents and gambled away that money in Las Vegas, as well as additional monies he secured on credit.  The monies secured on credit added several million more dollars to the loss.  On December 28, 2016, Doe told a therapist affiliated with Pacific that the total amount he had lost was approximately $10 million, and that he had obtained credit both from casinos and from other individuals to whom he alluded as being members of organized crime.  A family employee later described these lenders as indeed being members of organized crime, and that this was not a new circumstance.  Doe's parents paid all monies that had been secured on credit from both legitimate and, upon information and belief, illegal sources.  There were no consequences to Doe, however, other than vague statements by Doe's father that the money could possibly be deducted from his inheritance;

c.    The closest Doe's father came to setting boundaries was, on one occasion for a limited period of time, prohibiting Doe from using one of his **two** Lamborghinis.  However, Doe's extravagant lifestyle, including a private jet and unlimited cash, has remained unchanged; and

d.    In February 2017, Doe's parents asked one of the therapists employed by Pacific to accompany Doe to Las Vegas, where he was going again against Dr. Conti's advice and despite the problems noted above.  The goal was to try to keep Doe out of trouble.  The therapist, an experienced man in his

early sixties, was marginalized because of his unwillingness to participate in Doe's and his companions' gambling, cocaine use, and sex with prostitutes. He witnessed Doe punch an employee in the face after the employee's dog showed dominant behavior over Doe's dog, and the employee commented upon the dogs' interactions. The therapist was also punched in the chest with significant force by one of Doe's employees after the therapist had sought to stop some of Doe's companions from grabbing the breasts and crotches of non-consenting women. On information and belief, Doe gambled and lost between $600,000 and $1,000,000 on that particular trip. Again, though, Doe suffered no consequences.

28. Turning back to the Fall of 2016, Dr. Conti agreed to continue treating Doe, while agreeing to defer his plan to slowly end Doe's use of Xanax because his parents had asked for more time for things to calm down after the disastrous trip to Israel. However, Dr. Conti insisted that if he was going to continue treating him, Doe must stay in Portland, Oregon, for treatment. Doe's parents agreed to this condition, and Doe did as well. Thus, for a period of time, Doe did reside in Portland, although his attendance at treatment was sporadic.

29. In or around March 2017, with Doe continuing to resist treatment, Dr. Conti strongly recommended that he enter the residential program at Alina Lodge in northern New Jersey, which provides excellent treatment for individuals suffering from addiction plus personality disorders. Doe, however, refused to go, and Doe's parents refused to make significant efforts to require him to undergo treatment – such as threatening to cut him off financially unless he did so. Instead, they continued to enable him as described above.

30.     By March 2017, Dr. Conti advised Doe's parents that he could not ethically continue treating their son unless (a) Doe's Xanax use was tapered-off and then discontinued, with the process starting immediately, and (b) Doe engaged in treatment in earnest.  Doe's parents agreed to these conditions.

31.     Working closely with Doe's parents, one of Dr. Conti's colleagues drew up a contract stating that Doe would taper Xanax, submit to drug screens, not gamble, and speak respectfully to his mother, *etc.*  The first draft of the agreement was distributed on or about March 8, 2017.  This type of agreement is standard when clinicians are near the end of the road with a patient with a personality disorder who is being destructive.  Doe knew that the agreement was being prepared, but he vehemently opposed it.

32.     During this same March 2017 time frame, when it appeared that he might be forced into giving up the Xanax and curbing his behavior, Doe told his father that he had a gun and was going to kill himself.  On information and belief, Doe did not have a gun, and was making these statements as leverage to obtain what he wanted from his father.

33.     Nonetheless, around this same time, Doe telephoned Dr. Conti, who was in London, and stated that he wanted to work on his treatment as he had not done before.  Dr. Conti was conciliatory, and essentially agreed to start anew.  Doe later falsely claimed, and falsely communicated to employees and clinicians at Pacific, that Dr. Conti was drunk when he answered the phone in London.  In addition, Defendant falsely claimed, and communicated to employees and clinicians at Pacific, that Dr. Conti was in the company of prostitutes while in London.

34.     Doe then abruptly and without notice left Portland and moved to a luxury hotel in Los Angeles.  While Dr. Conti told Doe's parents that he no longer thought he could help Doe,

they begged him not to give up by promising that they would go to Los Angeles to convince Doe to return to Portland and agree to the stipulations in the proposed contract. However, Doe refused to return to Portland. Instead, he began his assault upon Dr. Conti.

35.     Thus, Doe sent Dr. Conti an outrageous text message on April 6, 2017, stating in relevant part: "Let me say one thing to first start. Your one big fucking fraud. You're a fucking con. That's it. A fucking fraud. What the narrative you put on me about being a gambler??? Addicted to xanax?? You dumb fuck Steve wonder could see that from a fucking mile you little fucking faggott." (*See* Exhibit D hereto, a true and accurate copy of the text message as pasted into an email from Dr. Conti to Doe's parents, at p. 3).

36.     Dr. Conti confirmed in an email that he sent to Doe's parents that same day of April 6, 2017, that he had to end treatment of Doe. (*See id*. at p. 1). In an initial response, Doe told Dr. Conti by the telephone that he, just like Doe's mother, was a "cunt."

37.     Doe also sent Plaintiff an email the next day, April 7, 2017, copying not only Doe's parents, but a number of Dr. Conti's colleagues at Pacific, stating in relevant part:

> My parents like you. Why? Your good at what you do. Your a con? Your supposed to like the con men. That's how they get in. Because they are con men. They do a good Jon wiggling there way in. My whole life I have always have had good intuition on people. THAT DOESNT MEAN YOU FAGGOTT I HAVE ALWAYS MADE THE RIGHT CHOICE. But my intuition has been right on people. For months and months I have always thought you have been a fucking fraud. Now I'm going to advise you one thing. I'm working to bring you down on malpractice. That's my goal. That's it. * * * You don't think with all the pain I have in me I'm going to let a little faggott like you tell me who I'm. You will never define who I'm. You couldn't last two mins in my world you little bitch. * * * To be honest if I had your pulpit I would be a lot more efficent. Yoy known me for 9 months. I don't give you that much credit. But def have weakened me but I will get back up and shove my success down your fucking face. Fuck off. Your scum.

(Exhibit E hereto is a true and accurate copy of this April 7, 2017 email).

38.     Doe was then quiet for more than a month, until June 2017, when he started up

again, sending Dr. Conti a series of threatening emails and texts.

39.     On June 13, 2017, Defendant copied, *inter alia*, Dr. Jenike, Mr. Dershowitz and

Mr. Meyer on an email which stated, in relevant part:

> Your nothing but a coward. Simply put you're a false prophet. You know it's easy
> to write a narrative on me. Very easy. And your entitled to your opinion. I have a
> gambling problem????? Really Mr Conti? Like I said I didn't need to go to
> Portland to get that assessment. I have a XANAX problem??? Really?? I didn't
> need to go to Portland to get that assessment. You are beyond brilliant Mr Conti,
> your diagrams that my 8 year old nephew can do better than that. WHAT DID
> YOU TELL ME ABOUT MYSELF THAT I HADN'T ALREADY KNOWN. * *
> * come on your such a fraud. * * * G-D works in mysterious ways and had my
> parents not seen your pure negligence you mother fucker I would probably be
> under the care of your incompetent ass. It's funny no one told you to take me on. I
> asked actually for a new dr because I knew you were a fraud. * * * Your a
> coward. That's it. Your a fucking coward. Shame on you. SHAME SHAME
> FUCKING SHAME ON YOU. * * * Your a scared little fucking coward. Fuck
> you you piece of shit. I'm in the hell of all hells and the only reason you
> terminated treatment was because my parents caught you on your bullshit. Now I
> know you will go back to he's a gambler he s impulsive. We all know that. And
> now I'm fighting for my life more hopeless than ever and I do put the fucking
> square blame on you. I get enough shit. This one is on you. * * * Your a coward
> and a fraud. SHAME ON you for abandoning a vulnerable person in misery. You
> knew for how much you loved to hear the sound of your voice I would be forced
> to find another ave. SHAME SHAME SHAME ON YOU

(Exhibit F hereto is a true and accurate copy of this email).

40.     In this same email, Doe also wrote that Dr. Conti's "work at brighams women's

hospital I hear you didn't the most bang up job." (*See id.*).  While Brigham and Women's

Hospital is part of the Harvard system in which Dr. Conti worked, he did no clinical work at that

particular hospital, and the statement was thus patently false.  In this same email, Doe further

falsely accused Dr. Conti of abandoning him as a patient: "You abandoned me when I could

have gotten out.  You piece of shit.  You abandoned your patient when he got himself from 5mgs

to 1.5mgs." (*See id.*).  In fact, notwithstanding Dr. Conti's efforts, Doe had never successfully

reduced his Xanax use.

41.    Five days later, Doe sent Dr. Conti another email:

Dearest Dr CON-ti

Just wanted to wish my favorite fraudulent dr a happy Father's Day. Go stock up
on your attorney you piece of shit malpracticeing mother fucker. I'm waiting for
you to engage with your lawyer. I'm waiting for his call you fucking Con

(Exhibit G hereto is a true and accurate copy of this email).  On this email, in addition to, *inter*

*alia*, his parents, Doe once again copied Dr. Jenike and Mr. Meyer.

42.    Then, on July 14, 2017, with a copy to Mr. Dershowitz and Dr. Robin A. Lippert

("Dr. Lippert"), a clinical psychologist affiliated with Harvard, Doe emailed Dr. Conti as

follows:

And why would anyone want to think about themselves as this horrible human
being so you knew what you were doing. You were putting the nail on my coffin

Now when I have called you out had I not done that, would you have ended
treatment. You got caugggt MALPRACTICE.

Now you wrote the reason for ending treatment was I wasn't following the
titration process, another fucking poor attempt of deflection and now I found out
this week the real reason was because in February you didn't want to continue
treatment.   You dumb shit get your fucking story straight another poor attempt of
deflection MALPRACTICE

WHICH YOU COCKSUCKER brings me back to two points, I have witnesses of
when in remember in January I asked for a new dr. And you said no. It's all or
none. So I had no choice

And secondly WHY THE FUCK IF YOU DID NOT WANT TO TREAT ME IN
FEBRUARY SAY SO. Do you realize the cruelty you did. No one forced you to
take this and it's funny it's not like you felt intimidated. It's not like you didn't
have a voice. You had no problem writing a fucking narrative about me that
shamed me. Your a coward a fraud and you better get your legel counsel. I want
to show the people the fraud you are. You must be pissed off that a guy like
yourself with such amazing credentials was called out by a piece of shit xanax
gambling impulsive fucker. All those diplomas on your wall. Burn them. That

must suck. I would rather me real and be me than your sorry fake ass. I'm advising you get a legel team because I'm coming with everything I can to make sure the pain you caused me you won't do to anyone else and I want to drain you of all your resources so you can't stand on your fake pulpit. Your scum. These are not threats. I'm doing this. So I'm advising let's go. You make the first move. You caused so much pain in me and shame that I won't forget. You really thought you were cute. My legel team is ready. Let's get it going.

(Exhibit H hereto, a true and accurate copy of this email, at p. 2).

43.    On July 28, 2017, with a copy to Mr. Dershowitz, Mr. Meyer, and others, Doe

wrote Dr. Conti:

WE all know with the greatest certainty you got red handed caught. Had I not written that email I would still be under your care. You know when you stopped the treatment it killed me. * * * Your smart, I think it was a part of your plan only to further your attempt to shame me. That's all you ever were good at was SHAME. So you know that when you ended treatment again because you were called out you know what I would do. Gamble crazy and go right back up on my xanax to quench the anxiety I had of being in no mans land. * * * That's pure cruelty. Your a disgusting human being. I ask you to get your legel counsel because Dr Conti you committed malpractice? * * * It's SHAMEFUL. Go get your legel counsel. Thank you for making me and putting me as hopeless as ever. Fuck YOU you fucking piece of shit. Your not a Dr, you're a fucking coward. You have no idea this struggle. Was it a game?? That's all it was to you. But maybe you should understand the power of this so awful drug I was so close to getting off without your help. Burn in fucking hell because I'm in hell to.

(Exhibit I hereto is a true and accurate copy of this email).

44.    Then, on August 10, 2017, once again copying Mr. Dershowitz and Mr. Meyer,

Doe emailed Dr. Conti:

Where's your legal team. Your a fucking true definition of cruelty. You bashed my name. You alienated me against my family. You flat out lied about the titration. And you had my family going that I was this and I was that. You spoke with such confidence. And you got caught. Those are facts. But at the same time. Why when you were so eagrily you mother fucking cock sucker could bash my name to my parents and keep me at a distance with my family. How come all these ideas of who I'm go out the window?? The therapy was not even with me. Your correspondence was with my parents. So it's amazes me how you so suave knew this and that about me. I still ask myself why when I wrote the letter did you end treatment?? Was it because it was disrespectful? Was it you were spending to much time on my case shaming me. NO ITS YOU GOT CAUGHT.. So now you

will use dr patient privilege because your a con. But you had no problem telling them how no fucking good I was. And how come treatment ended did my parents still not get one letter. Phone call? You were caught red handed. Get your legel team because I'm getting mine. You have caused me pain you have no idea. The only word I can use is cruel. I'm going to ruin your fucking name. Come after me. I'm going to ruin your god damm name . A name which means shit anyway so go get your team. Have them come and tell me I'm this or that. I have my witnesses to. But it's ain't slander if it's the truth. The pain you caused me every fucking banner in Portland I'm going to fucking buy you fucking coward little bitch. Fucking cruel piece of shit

(Exhibit J hereto is a true and accurate copy of this email).

45.     Eight days later, on August 18, 2017, Defendant wrote Dr. Conti, copying Mr. Dershowitz and Mr. Meyer yet again:

You fucking fuck face piece of shit cock sucker. I hope you fucking will pay for the shit you have done. You take a vulnerable person and pin them up against family members. You won. Fuck you. Your a thief a bum and one of the worst humans I have ever met. Burn in fucking hell and I'm coming for you. Your fucking Portland billboards are going to be spotlight centered on your fraudulent ass. Fucking piece of shit cock sucker. I will fucking bury your ass alive. You mother fucker. The pain and depression you caused me you will pay in court of law. Fuck you.

(Exhibit K hereto is a true and accurate copy of this e-mail).

46.     In an email sent on September 7, 2017, with copies to his parents, Doe made his intention to ruin Dr. Conti unmistakably plain, writing: "You better fucking fear me. . You put a narrative on me you mother fucking I'm going to destroy your ass[.]"  (Exhibit L hereto is a true and accurate copy of this email).

47.     On or about November 6, 2017, counsel for Dr. Conti was provided the name of Doe's attorneys, and settlement discussions ensued.  In the course of these discussions, counsel for Dr. Conti sent Doe's counsel copies of the offending texts and emails referenced above, but did not send a draft copy of the complaint against Doe which had been prepared.

48.     Even faced with the possibility of a lawsuit, Doe continued his abusive conduct.

49.    On November 9, 2017, at 1:35 p.m., Doe sent an email to Dr. Conti, with copies to his parents and Mr. Dershowitz, stating:

> Fuck you conti. I'm waiting to tell expose the pain you have caused me. Bring it on you mother fucker. You got no idea how much you have damaged me. Bring your lawsuit and your shake down to me. I'm waiting. You have zero idea the alienation you have caused and me not wanting to live in the world anymore. You make get your wish. Bring it on [Doe] Ps may god damm you.

(Exhibit M hereto is a true and accurate copy of this email).

50.    Approximately 20 minutes later, on November 9, 2017, Doe sent a second email to Dr. Conti, this time copying his parents, Mr. Dershowitz, Dr. Lippert, Dr. Jenike, Mr. Meyer, and an individual who has an email address at a clothing company [redacted] in which, on information and belief, Doe has an ownership interest.  This email stated:

> You set me up for failure. I want you to bring this to me. I want you to tell them how bad of a person im. I want it. I will fight with everything everything I have against you. Settle I will kill myself because of the titration you abandoned me on before I ever settle. I still wouldn't piss on you if you were on fire. Liable. When im done with you your integrity is shit. You see this email. This is no game. This is real pain you caused a real human being. Is it erratic. I don't know. But this is not a business dealing. Your reading this. This is mental pain you caused a human being under your watch. You could have backed out at any minute or time. Instead you abandoned me. And now I'm stuck with pain. Bring it on. Bring your cowardly ass to [redacted].

(Exhibit N hereto is a true and accurate copy of this email).

51.    Two weeks later, on November 23, 2017, which was Thanksgiving, Doe struck again, sending an email to Dr. Conti, with copies to his parents, Mr. Dershowitz, Dr. Lippert, Dr. Jenike, Mr. Meyer, and [redacted].  This email stated:

> You fucking coward go bring your shakedown to any city. I promise the alienation and lack of sense of self you gave me and abandoneing me during the titration I'm going to do everything in the power of the law to destroy not your character because you for no god damm character but destroy your con artist self you mother fucker. You take away a persons sense of self and abandon them during titration that's criminal. Bring it on I want you to file. Because don't make me beat you to the punch

(Exhibit O hereto is a true and accurate copy of this email).

52.     On that same day, counsel for Dr. Conti informed Doe's counsel that Dr. Conti was left with no choice other than to sue Doe on November 27, 2017, because Doe's parents were unwilling or unable to restrain him.

53.     Not having received any assurances that Doe would stop harassing Dr. Conti, this action follows.

### AS AND FOR A FIRST CLAIM FOR RELIEF

#### (Defamation Per Se)

54.     Plaintiff repeats and realleges the allegations set forth in the foregoing Paragraphs as if fully and completely restated herein.

55.     Defendant's statements about Plaintiff set forth above that Defendant published to third parties constitute defamation *per se* because they were false, Defendant was at least negligent in publishing them, and the statements on their face reflect upon Plaintiff's character in a manner that will cause him to be ridiculed, hated, or held in contempt, or in a manner that will injure Dr. Conti in his trade or profession.

56.     In particular, while certain of Defendant's statements are opinion or egregious insults, others have a defamatory meaning.   In this regard, at least the following written publications are defamatory, thereby constituting libel:

A.     Defendant's June 13, 2017 email falsely asserted that Plaintiff committed malpractice by abandoning Defendant's treatment for medically invalid reasons and general incompetence:

> had my parents not seen your pure negligence you mother fucker I would probably be under the care of your incompetent ass. * * * I'm in the hell of all hells and the only reason you terminated treatment was because my parents

19

> caught you on your bullshit. Now I know you will go back to he's a gambler he s
> impulsive. We all know that. And now I'm fighting for my life more hopeless
> than ever and I do put the fucking square blame on you. I get enough shit. This
> one is on you. * * * Your a coward and a fraud. SHAME ON you for abandoning
> a vulnerable person in misery. * * * You abandoned me when I could have gotten
> out. You piece of shit. You abandoned your patient when he got himself from 5
> mgs to 1.5 mgs.

(*See* Exhibit F hereto).

B.      Defendant's June 15, 2017 email falsely asserted that Plaintiff committed

malpractice by abandoning Defendant's treatment for medically invalid reasons, and

engaged in fraudulent billing:

> I realized you equate everything to money you whore. You know a whore is more
> honest than your ass and I have a lot more respect for a whore than you. A whore
> you at least you know what your getting. Your a fucking fraud that abandoned me
> in treatment so who the fuck do you think you are. * * * And your fraudulent
> mother fucming ass was not there.

(*See* Exhibit B hereto).

C.      Defendant's July 14, 2017 email falsely asserted that Plaintiff committed

malpractice by abandoning Defendant's treatment for medically invalid reasons and

engaging in professional misconduct by lying about the reasons for discontinuing

treatment:

> And why would anyone want to think about themselves as this horrible human
> being so you knew what you were doing. You were putting the nail on my coffin
>
> Now when I have called you out had I not done that, would you have ended
> treatment. You got caugggt MALPRACTICE.
>
> Now you wrote the reason for ending treatment was I wasn't following the
> titration process, another fucking poor attempt of deflection and now I found out
> this week the real reason was because in February you didn't want to continue
> treatment. You dumb shit get your fucking story straight another poor attempt of
> deflection MALPRACTICE

> WHICH YOU COCKSUCKER brings me back to two points, I have witnesses of when in remember in January I asked for a new dr. And you said no. It's all or none. So I had no choice
>
> And secondly WHY THE FUCK IF YOU DID NOT WANT TO TREAT ME IN FEBRUARY SAY SO. Do you realize the cruelty you did. No one forced you to take this and it's funny it's not like you felt intimidated. It's not like you didn't have a voice. You had no problem writing a fucking narrative about me that shamed me. Your a coward a fraud and you better get your legel counsel. I want to show the people the fraud you are.
>
> (*See* Exhibit H hereto at p. 2) (all capitals in original).

D.      Defendant's July 28, 2017 email falsely asserted that Plaintiff committed malpractice by abandoning Defendant's treatment for medically invalid reasons and general incompetence, and further engaged in professional misconduct by intentionally causing harm to Defendant:

> WE all know with the greatest certainty you got red handed caught. Had I not written that email I would still be under your care. You know when you stopped the treatment it killed me. * * * Your smart, I think it was a part of your plan only to further your attempt to shame me. That's all you ever were good at was SHAME. So you know that when you ended treatment again because you were called out you know what I would do. Gamble crazy and go right back up on my xanax to quench the anxiety I had of being in no mans land. * * * That's pure cruelty. Your a disgusting human being. I ask you to get your legel counsel because Dr Conti you committed malpractice?
>
> * * *
>
> It's SHAMEFUL. Go get your legel counsel. Thank you for making me and putting me as hopeless as ever. Fuck YOU you fucking piece of shit. Your not a Dr, your a fucking coward.
>
> (*See* Exhibit I hereto) (all capitals in original).

E.      Defendant's August 10, 2017 email falsely asserted that Plaintiff committed professional misconduct by lying about Defendant's treatment:

> You flat out lied about the titration. And you had my family going that I was this and I was that. You spoke with such confidence. And you got caught. Those are facts.

(*See* Exhibit J hereto).

57.     Separate and apart from these written defamatory statements constituting libel, Defendant also slandered Plaintiff by orally publishing false statements that Dr. Conti engaged in a therapeutic telephone call while "drunk," and also solicited prostitutes while on a work trip.

58.     In addition, Defendant published these statements with ill-will, vengefulness, hatred, or reckless disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages as determined by the jury.

### AS AND FOR A SECOND CLAIM FOR RELIEF

**(Recovery Under Ohio Revised Code ("R.C.") § 2307.60(A)(1) for Defendant's Violation of R.C. § 2917.21)**

59.     Plaintiff repeats and realleges the allegations set forth in the foregoing Paragraphs as if fully and completely restated herein.

60.     In moving to dismiss, Defendant admitted that it would be appropriate for this Court to apply Ohio law to the parties' dispute.  Plaintiff accepts Defendant's admission that Ohio law applies, which is based upon facts that are peculiarly within Defendant's knowledge.  Therefore, Plaintiff is asserting claims under Ohio law.

61.     Defendant's statements to Plaintiff as alleged above violated the following provisions of R.C. § 2917.21:

(A) No person shall knowingly make or cause to be made a telecommunication, or knowingly permit a telecommunication to be made from a telecommunications device under the person's control, to another, if the caller does any of the following:

(1) Makes the telecommunication with purpose to harass, intimidate, or abuse any person at the premises to which the telecommunication is made, whether or not actual communication takes place between the caller and a recipient;

(2) Describes, suggests, requests, or proposes that the caller, the recipient of the telecommunication, or any other person engage in sexual activity, and the

22

recipient or another person at the premises to which the telecommunication is made has requested, in a previous telecommunication or in the immediate telecommunication, that the caller not make a telecommunication to the recipient or to the premises to which the telecommunication is made;

(3) During the telecommunication, violates section 2903.21 of the Revised Code ["Aggravated menacing"];

* * *

(6) Knowingly makes any comment, request, suggestion, or proposal to the recipient of the telecommunication that is threatening, intimidating, menacing, coercive, or obscene with the intent to abuse, threaten, or harass the recipient.

62.    Defendant's violations of R.C. § 2917.21 constitute criminal acts which have injured Plaintiff in his person or property, and accordingly he may recover against Defendant pursuant to R.C. § 2307.60(A)(1), which provides as follows:

Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the revised code.

63.    In addition, Defendant made the statements set forth above with ill-will, vengefulness, hatred, or reckless disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages as determined by the jury.

## AS AND FOR A THIRD CLAIM FOR RELIEF

### (Recovery Under Ohio Revised Code ("R.C.") § 2307.60(A)(1)
for Defendant's Violation of R.C. § 2903.22)

64.    Plaintiff repeats and realleges the allegations set forth in the foregoing Paragraphs as if fully and completely restated herein.

65.    Defendant's statements to Plaintiff set forth above violated R.C. § 2903.22, which provides, in relevant part, as follows:

(A) No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family. In addition to any other basis for the other person's belief that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family, the other person's belief may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

66.     Defendant's violations of R.C. § 2903.22 constitute criminal acts that have injured Plaintiff in his person or property, and accordingly he may recover against Defendant pursuant to R.C. § 2307.60(A)(1).

67.     In addition, Defendant made the statements set forth above with ill-will, vengefulness, hatred, or reckless disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages as determined by the jury.

## AS AND FOR A FOURTH CLAIM FOR RELIEF

### (Recovery Under Ohio Revised Code ("R.C.") § 2307.60(A)(1) for Defendant's Violation of R.C. § 2903.21)

68.     Plaintiff repeats and realleges the allegations set forth in the foregoing Paragraphs as if fully and completely restated herein.

69.     Defendant's statements to Plaintiff set forth above violated R.C. § 2903.21, which provides, in relevant part, as follows:

(A) No person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family. In addition to any other basis for the other person's belief that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family, the other person's belief may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

70.     Defendant's violations of R.C. § 2903.21 constitute criminal acts that have injured Plaintiff in his person or property, and accordingly he may recover against Defendant pursuant to R.C. § 2307.60(A)(1).

71.     In addition, Defendant made the statements set forth above with ill-will, vengefulness, hatred, or reckless disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages as determined by the jury.

### AS AND FOR A FIFTH CLAIM FOR RELIEF

**(Recovery Under Ohio Revised Code ("R.C.") § 2307.60(A)(1)**
**for Defendant's Violation of R.C. § 2903.211)**

72.     Plaintiff repeats and realleges the allegations set forth in the foregoing Paragraphs as if fully and completely restated herein.

73.     Defendant's statements to Plaintiff set forth above violated R.C. § 2903.211, which provides, in relevant part, as follows:

> (A)(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's family or household member or mental distress to the other person or the other person's family or household member, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

74.     Defendant's violations of R.C. § 2903.211 constitute criminal acts that have injured Plaintiff in his person or property, and accordingly he may recover against Defendant pursuant to R.C. § 2307.60(A)(1).

75.    In addition, Defendant made the statements set forth above with ill-will, vengefulness, hatred, or reckless disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages as determined by the jury.

## AS AND FOR A SIXTH CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress)

76.    Plaintiff repeats and realleges the allegations set forth in the foregoing Paragraphs as if fully and completely restated herein.

77.    Defendant has engaged in a course of conduct towards Plaintiff that is so extreme and outrageous as to go beyond all possible bounds of decency, with the intention of causing, or with reckless disregard for the probability of causing, severe emotional distress to Plaintiff.

78.    Defendant's extreme and outrageous conduct directly caused Plaintiff damage in the form of severe emotional distress that no reasonable person could be expected to endure.

79.    In addition, Defendant's extreme and outrageous conduct was carried out with ill-will, vengefulness, hatred, or reckless disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages as determined by the jury.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF

### (Injunction)

80.    Plaintiff repeats and realleges the allegations set forth in the foregoing Paragraphs as if fully and completely restated herein.

81.    Defendant has harassed, bothered, and annoyed Plaintiff in a manner that violates R.C. §§ 2917.21, 2903.22, 2903.21, and 2903.211, and is likely to continue doing so in the future.  As a result of said actions and likely future actions, Defendant has created a continuing nuisance to Plaintiff that constitutes irreparable harm with no adequate remedy at law.

82.    Defendant has made and will likely continue to make defamatory statements about Plaintiff that have interfered, are interfering, and will continue to interfere with Dr. Conti's right to continue practicing as a psychiatrist in a manner that has caused Plaintiff irreparable harm with no adequate remedy at law.

83.    Plaintiff is therefore entitled to an injunction barring Defendant from (a) communicating with Dr. Conti in any manner, whether in person, or by telephone, facsimile, or any other mechanical or electronic means, anywhere or at any time, including, but not limited to, his home or place of work; and (b) making defamatory statements to third persons about Dr. Conti.

**WHEREFORE**, Plaintiff demands judgment as follows:

A.    On Plaintiff's First, Second, Third, Fourth, Fifth, and Sixth Claims for Relief, an award of compensatory and punitive damages against Defendant as determined by a jury;

B.    On Plaintiff's Seventh Claim for Relief, an injunction barring Defendant from (i) communicating with Dr. Conti in any manner, whether in person, or by telephone, facsimile, or any other mechanical or electronic means, anywhere or at any time, including, but not limited to, his home or place of work; and (ii) making defamatory statements to third persons about Dr. Conti.

C.    An award of costs, disbursements, and attorneys' fees; and

D.    A judgment granting such other and further relief as deemed just and proper by this Court.

Dated: February 7, 2018
       New York, New York

                                        Yours, etc.,

                                        JUDD BURSTEIN, P.C.


                                        By:_____
                                               Judd Burstein (JB-9585)
                                        5 Columbus Circle, Suite 1501
                                        New York, New York 10019
                                        (212) 974-2400
                                        (212) 974-2944 (Fax)
                                        jburstein@burlaw.com