I35HABCC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  DR. PAUL M. CONTI,

4                  Plaintiff,

5            v.                              17 Civ. 268 (VEC)

6
   JOHN DOE,
7                                    Telephone Conference

8                  Defendant.

9  ------------------------------x
                                     New York, N.Y.
10                                   March 5, 2018
                                     5:22 p.m.
11
   Before:
12
                       HON. VALERIE E. CAPRONI,
13
                                         District Judge
14
                             APPEARANCES
15
   JUDD BURSTEIN, P.C.
16      Attorneys for Plaintiff
   BY:  PETER B. SCHALK
17
   EMERY CELLI BRINCKERHOFF & ABADY, LLP
18      Attorneys for Defendant
   BY:  KATHERINE R. ROSENFELD
19

20

21

22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

I35HABCC

```
 1              (In chambers)
 2              THE COURT:  Hi.  This is Judge Caproni.
 3              MR. SCHALK:  Peter Schalk for the plaintiff.
 4              MS. ROSENFELD:  Good afternoon, Judge.  Katie
 5    Rosenfeld for defendant, John Doe.
 6              THE COURT:  My law clerk just started telling me what
 7    the issue is.  I gather the plaintiff wants certain discovery
 8    to be attorney's eyes only, and the defendant is objecting.  Is
 9    that right?
10              MR. SCHALK:  Yes.
11              MS. ROSENFELD:  Correct, your Honor.  This is Katie
12    Rosenfeld for the defendant.  We have negotiated a protective
13    order and worked well together, and there's a single remaining
14    issue of dispute, which is what you just described.  The
15    plaintiff would like the medical records of Dr. Conti that
16    would be produced by his mental health treatment to be
17    attorney's eyes only, and we have instead suggested attorney's
18    possession only, whereby we would retain all of these documents
19    and not provide any copies to the client, but that we would be
20    able to review them in our office with him and discuss their
21    contents.  We think this is appropriate here because the
22    information about Dr. Conti's mental health has really been
23    relevant to this case, whether he was suffering intentional
24    infliction of emotional distress by my client sending him text
25    messages.
```

I35HABCC

1          We don't think that our client can fairly participate

2    in the case and make tactical decisions and understand what's

3    going on in the litigation without having access, in our

4    presence and in a controlled setting, to these documents.  And,

5    you know, I would note that we take seriously our obligations

6    to keep documents that we so designated in this way, and we

7    certainly don't want to be careless in any way with them, but

8    we do think it's very important that Mr. Doe be able to discuss

9    this relevant evidence and make intelligent litigation

10   decisions based on it.

11          MR. SCHALK:  Judge, if I could respond, Peter Schalk.

12   I trust my adversary.  I don't trust the client, and that's

13   really the issue.  I think the APO actually creates more

14   problems than it solved in that at that point he could say

15   whatever he's claiming is in the documents to anybody and is

16   really -- at that point I don't think there's anything we can

17   do with it.  I don't know if you've seen some of the

18   communications that are attached to our complaint, but they

19   have been very direct threats made by their client about our

20   client that he should fear them, that he's going to bury them,

21   that he's going to bash him into the curb, etc.  Anything can

22   set this individual off.  There are cell phones.  Even if

23   they're being careful, he could take pictures of records is

24   another issue.

25          We're certainly not planning to abuse this.  We just

I35HABCC

1    want to have the option of designating certain medical records

2    AEO.  This is not a case where the defendant has any specific

3    knowledge about mental health issues that he could really help

4    counsel with these records.  Counsel is very able counsel.

5    They're certainly going to have an expert who can help them go

6    over these records.  They don't really need to share them with

7    the plaintiff at all to help with this case.  There's a lot of

8    case law that goes to the fact that you can -- even though

9    we're not denying his mental health is an issue, we're

10   producing the records, we just don't want them shared with this

11   defendant at this point, certainly, at the beginning of

12   discovery.  Trial's a different issue, but right now, at the

13   very beginning of discovery, to have our client have to share

14   his mental records with the defendant in particular, not with

15   counsel, is inappropriate at this time.

16            In addition, the proposed order we have, there are

17   mechanisms if they think something should be de-designated for

18   a specific issue, they can come to us, and if we don't agree,

19   they can go to the Court.  It's not a be-all or end-all.  We

20   want to have the option.

21            MS. ROSENFELD:  Your Honor, may I respond?

22            THE COURT:  Yes.  The notion that your client, who I

23   think everyone agrees has mental health issues -- it is not at

24   all clear to me why, across the board, he should have access to

25   Dr. Conti's mental health records and why it doesn't adequately

I35HABCC

| | |
|---|---|
| 1 | answer your concern that if there are particular records or |
| 2 | there are particular issues that you need to be able to discuss |
| 3 | with your client, you can either try to work them out with the |
| 4 | plaintiff or if you can't work it out with the plaintiff, then |
| 5 | on a sort of individual document-by-document basis, you can |
| 6 | raise the issue with the Court. |
| 7 | MS. ROSENFELD:  Well, your Honor, there's a couple of |
| 8 | reasons.  The first reason is that it's obviously not just the |
| 9 | documents themselves that would be attorneys' eyes only, but |
| 10 | it's the information contained in the documents.  So, for |
| 11 | example, if the records show emotional injury to Dr. Conti or |
| 12 | not, if they describe encounters with our client that did or |
| 13 | didn't happen, if they dictate a certain strategic path, let's |
| 14 | say, that Dr. Conti suffered enormous mental injury that's been |
| 15 | documented that would somehow dictate a certain strategic |
| 16 | decision we need to make, the substance of the information is |
| 17 | also confidential, your Honor, not, obviously, just the |
| 18 | physical document.  So we are very concerned about not being |
| 19 | able to have an adequate dialogue with our client about how |
| 20 | litigation is proceeding, what decisions we advise, and just |
| 21 | general participation in this case which really turns on the |
| 22 | substance of whether Dr. Conti suffered a severe emotional |
| 23 | injury. |
| 24 | I would note, your Honor, that my client also has |
| 25 | produced and will be producing all of his own mental health |

I35HABCC

1    records to Dr. Conti.  I'd also note that my client has not had

2    any contact with Dr. Conti since November of 2017 and that

3    there's no indication that he is not able to follow a court

4    order or properly participate in this litigation subject to the

5    rules that the Court brings up.  And I'm reluctant, your Honor,

6    to create a system where these mental health records and the

7    substance contained therein are attorneys' eyes only and then

8    we have to burden the Court with applications.  Counsel should

9    be able to use their judgment about what they designate

10   attorneys' possession only, and we will use our judgment about

11   what is appropriate to share with our client substance-wise so

12   that he can participate effectively in this case.

13        I don't think it's reasonable in a case where the

14   first cause of action in the original complaint was intentional

15   infliction of emotional distress.  I believe our client does

16   get to know what the emotional distress at issue is being

17   claimed is.

18        THE COURT:  I don't think that's an accurate statement

19   of what attorneys' eyes only would do.  It is not the case that

20   you would be precluded from having any meaningful conversation

21   with your client.  Discovery proceeds with attorneys' eyes only

22   provisions all the time.

23        MS. ROSENFELD:  Your Honor, that's true, and I'm sure

24   your Honor is more than aware it's generally in the context of

25   trade secrets or something of the nature where there's

I35HABCC

1    confidential commercial information.  Those are the cases that

2    I have found the Second Circuit case, *In Re City of New York*,

3    607 F.3d 923, that states the disclosure of confidential

4    information on an attorneys' eyes only basis is a routine

5    feature of civil litigation involving trade secrets.  I do

6    think the intention of this provision, and Mr. Schalk should

7    correct me if I'm wrong, is not just that I cannot show these

8    medical mental health documents to my client but also that I

9    cannot discuss their substance.  So, for example, if there's a

10   document that says Dr. Conti went to a psychiatrist and

11   complained of X, Y, Z event involving my client and then took

12   certain medication to address that, my understanding is that I

13   would not be able to share with my client what that record

14   states is designated AEO.

15            MR. SCHALK:  Well, if I can respond, in the first

16   instance, it's clearly not -- there's a lot of cases where

17   mental health records that are AEO.  This one in particular,

18   *Bagley v. Yale University*, the District of Connecticut.

19   There's a Westlaw Cite, 2016 WL 1531341.

20            THE COURT:  Read that number again.

21            MR. SCHALK:  So it's 2016 WL 1531341, case Nos.

22   3:13-CV-1890.  And there's a holding there that "because the

23   only stated and discernible need for this discovery is to allow

24   the defense counsel to prepare a defense in the emotional

25   distress claim, the production made by this ruling will be for

I35HABCC

1    attorneys' eyes only."  I can give your Honor other cites.  It

2    just seems to me, their issue going against the emotional

3    distress claims, it's clear that medical records produced, even

4    by a plaintiff in that context, it's appropriate to have them

5    be attorneys' eyes only.  And if there's some legitimate need

6    for some item, they can come to me.  I'll work with them.  I

7    have no problem with that.

8         But to say, out of the box, we're precluded, with this

9    defendant in particular, I just don't think -- we're not

10   fighting that there's an issue; we're not fighting that they're

11   entitled to that information.  There are some real risks with

12   this individual.  And the fact that he has been a little more

13   behaved recently, I just have no idea what could set him off.

14   And if he starts, we can't really put the cow back in the barn,

15   or at that point if he starts saying or if he claims

16   something's in the records and he doesn't even have copies of

17   them, we can't even disprove that.  So it's --

18        MS. ROSENFELD:  Your Honor, the case that Mr. Schalk

19   cites involves an ongoing employment relationship where the

20   plaintiff was currently employed by the university as a

21   professor, I believe, and then there was an issue about whether

22   the current employer should have access to the employee's

23   mental health records.  I think it's a different situation than

24   here.  The fact is Dr. Conti has placed all this information at

25   issue by filing this lawsuit against my client, including my

I35HABCC

1   client's full mental health history in the public docket, and

2   we can't adequately represent him and have discussions about

3   strategic advice if those key documents are confidential in the

4   way that I understand them to be under the provision that

5   plaintiff wants.

6           MR. SCHALK:  Judge, if I just could respond on the

7   issue as to the employer-employee relation?

8           THE COURT:  No, I don't need you to respond on that.

9   I do need you to respond in terms of what you think how broad

10  this is.  Do you think an attorneys' eyes only prohibition

11  would prohibit the attorneys for the defendant telling the

12  defendant that based on their review of your client's medical

13  records, he has been damaged by the defendant's conduct?

14          MR. SCHALK:  No, I don't think it's that broad, and if

15  your Honor wants, we can put something in to make that clear.

16  I don't have a problem with counsel even summarizing

17  information in that way at all.  But if he comes into their

18  office and sits down and starts going through mental health

19  records, I don't know what he's going to tell people about what

20  he sees there.

21          MS. ROSENFELD:  I don't think there's --

22          MR. SCHALK:  Sorry.

23          MS. ROSENFELD:  I don't think there's a distinction

24  between what our client can tell people based on what I tell

25  him and what he can tell people based on looking at a piece of

I35HABCC

1    paper.  The fact is your client, unfortunately, decided to sort

2    of open the Pandora's box of claiming that he was injured, and

3    we should be able to freely discuss the facts of the case which

4    are contained in those records with our client --

5              THE COURT:  OK.

6              MS. ROSENFELD:  -- in a controlled setting that

7    doesn't involve emailing him copies.  I completely agree with

8    that.

9              MR. SCHALK:  That's not what the -- said --

10             THE COURT:  Folks.

11             MS. ROSENFELD:  Well, the only case you sent me was

12   that one, so --

13             THE COURT:  All right.  Stop.

14             MR. SCHALK:  Sorry.

15             THE COURT:  Stop.  If you all want to argue with each

16   other, you don't need me on the phone.

17             I am inclined to agree with the plaintiff.  I think I

18   am going to encourage the plaintiff to be forthcoming when the

19   defendants ask for the ability to share certain kind of

20   particularized information, but I think, given the facts, given

21   sort of the undisputed facts, whether plaintiff was actually

22   injured or not, I don't think there's any real dispute about

23   the texts and emails that the defendant sent out.  Now, it

24   could be, Ms. Rosenfeld, that you now have him completely under

25   control and he's not doing things like that.  I would just note

I35HABCC

1    that if that's true, it makes his conduct all the more

2    inexplicable at the period of time that he was sending the

3    emails that are at issue in this case.  But be that as it may,

4    it seems to me that, like many attorneys, you can manage to

5    review the discovery materials, make reasoned decisions about

6    what your client needs access to and what they don't need

7    access to.  If the plaintiff won't agree that the information

8    can be shared with the client, you can always come to me for an

9    exception to the attorneys' eyes only rule on a case by case,

10   particularized information by particularized information.  But

11   I just see no reason why the defendant himself needs access to

12   all of the plaintiff's psychological records or psychiatric

13   records.

14           MS. ROSENFELD:  Your Honor, I assume that this

15   designation, the idea that Mr. Schalk mentioned that we could

16   summarize information that we believe is tactically important

17   and provide it to our client, that we can try and work out some

18   language to that effect?

19           THE COURT:  Absolutely.

20           MS. ROSENFELD:  Obviously, your Honor, this is a

21   bilateral confidentiality agreement, and so if we believe that

22   there are similar things that are highly sensitive that should

23   also be AEO, that we would also be able to use the designation

24   appropriately also.

25           THE COURT:  Of course.

I35HABCC

1              MR. SCHALK:  Of course.  It's a --

2              MS. ROSENFELD:  Thank you, your Honor, for your time.

3              THE COURT:  Thank you.  Sorry I had to delay a couple

4      times.

5              MR. SCHALK:  Hope everything's going well with your

6      trial, Judge.

7              THE COURT:  Thanks.

8              (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25