UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL CONTI,

                    Plaintiff,

      -against-

JOHN DOE,

                  Defendant.

No. 17-CV-9268 (VEC)

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

**TABLE OF CONTENTS**

PAGE NO.

TABLE OF AUTHORITIES ........................................................................................iii-viii

PRELIMINARY STATEMENT ....................................................................................1

ALLEGED FACTS............................................................................................................3

ARGUMENT ....................................................................................................................4

    I.      CONTI FAILS TO STATE A CLAIM FOR DEFAMATION ............................4

           A.      Doe's Challenged Statements Are Opinion and Hyperbole and Cannot
Reasonably Be Understood As Defamatory in Context .............................5

                  1.      Properly Viewed As a Whole, the Messages Do Not State
Facts .................................................................................................6

                  2.      Even In Isolation, Conti's Chosen Fragments Do Not State
Facts .................................................................................................8

           B.      The Common Interest Privilege Shields Doe's Messages ........................11

           C.      Conti's Claim With Respect to Alleged "Slander" Lacks Sufficient
Specificity ................................................................................................12

    II.      CONTI FAILS TO STATE CLAIMS FOR VIOLATIONS OF OHIO
STATUTES............................................................................................................13

           A.      Conti Ignores Settled Choice-of-Law Principles ....................................13

           B.      Ohio Penal Statutes Do Not Apply to This Oregon-Centered
Dispute .....................................................................................................14

           C.      Even If Conti Has a Private Right of Action Under Ohio Law, He
Fails To State a Statutory Claim ..............................................................17

                  1.      No Relevant Conduct Is Alleged to Have Occurred in Ohio.........18

                  2.      Conti Fails to Plausibly Allege Physical Fear or Significant
Distress...........................................................................................18

                          a.      Conti Does Not Plausibly Allege Fear of Physical
Harm ..................................................................................18

                          b.      Conti Does Not Plausibly Allege Mental Distress............19

III.    CONTI FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION
        OF EMOTIONAL DISTRESS ............................................................................21

        A.    Conti's IIED Claim Is Impermissibly Duplicative of His Defamation
              Claim.......................................................................................................22

        B.    Doe's Conduct Does Not Meet the "Extreme" Threshold for IIED
              Liability..................................................................................................23

        C.    Conti Alleges the Absence of "Severe Emotional Distress" ....................25

IV.     CONTI'S "PERMANENT INJUNCTION" CLAIM HAS NO WEIGHT...........25

# TABLE OF AUTHORITIES

**PAGE NO.**

**Cases**

*2002 Lawrence R. Buchalter Alaska Trust v. Phila. Fin. Life Assur. Co.*,
      96 F. Supp. 3d 182 (S.D.N.Y. 2015)................................................................ 5

*600 W. 115th St. Corp. v. Von Gutfeld*,
      80 N.Y.2d 130 (1992) ...................................................................................... 8

*Antaeus Enters., Inc. v. SD-Bam Real Estate LLC*,
      480 F. Supp. 2d 734 (S.D.N.Y. 2007)....................................................... 16, 17

*Aronson v. Wiersma*,
      65 N.Y.2d 592 (1985) ...................................................................................... 5

*Ashcroft v. Iqbal*,
      556 U.S. 662 (2009)..................................................................................... 4, 25

*Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
      813 F.3d 98 (2d Cir. 2016)............................................................................. 17

*Bacon v. Nygard*,
      140 A.D.3d 577 (1st Dep't 2016) ................................................................... 22

*Bell Atl. Corp. v. Twombly*,
      550 U.S. 544 (2007)......................................................................................... 4

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*,
      151 F. Supp.3d 287 (E.D.N.Y. 2015) .............................................................. 8

*Berwick v. New York Network Int'l, Ltd.*,
      No. 06-CV-2641, 2007 WL 949767 (S.D.N.Y. Mar. 28, 2007)..................... 13

*Biberaj v. Pritchard Indus., Inc.*,
      859 F. Supp. 2d 549 (S.D.N.Y. 2012)............................................................ 23

*Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
      369 F.3d 212 (2d Cir. 2004)........................................................................... 25

*Bob Godfrey Pontiac, Inc. v. Roloff*,
      630 P.2d 840 (Or. 1981) ................................................................................. 15

*Brian v. Richardson*,
      87 N.Y.2d 46 (1995) ................................................................................... 6, 7

*Bunker v. Testa,*
    234 A.D.2d 1004 (4th Dep't 1996)...................................................................... 23

*Cablevision Sys. Corp. v. Commc'ns Workers of Am. Dist. 1,*
    131 A.D.3d 1087 (2d Dep't 2015)..................................................................... 16

*Celle v. Filipino Reporter Enter. Inc.,*
    209 F.3d 163 (2d Cir. 2000)............................................................ 6, 10, 11

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002)................................................................................ 4

*Church of Scientology Int'l v. Eli Lilly & Co.,*
    778 F. Supp. 661 (S.D.N.Y. 1991)....................................................................... 7

*Cooney v. Osgood Mach., Inc.,*
    81 N.Y.2d 66 (1993) ................................................................................. 14, 17

*D.K. ex rel. L.K. v. Teams,*
    260 F. Supp.3d 334 (S.D.N.Y. 2017).................................................................. 24

*Davis v. Jacobs,*
    710 N.E.2d 1185 (Oh. Ct. App. 1998) ................................................................. 5

*De Sesto v. Slaine,*
    171 F. Supp. 3d 194 (S.D.N.Y. 2016)........................................................... 22, 23

*Dillon v. City of New York,*
    261 A.D.2d 34 (1st Dep't 1999) .......................................................................... 5

*Doe v. Am. Broad. Cos.,*
    152 A.D.2d 482 (1st Dep't 1989) ...................................................................... 23

*Doe v. Delta Airlines, Inc.,*
    129 F. Supp. 3d 23 (S.D.N.Y. 2015).................................................................. 13

*Douglas v. N.Y. State Adirondack Park Agency,*
    895 F. Supp. 2d 321 (N.D.N.Y. 2012)............................................................... 25

*Doyle v. City of Medford,*
    337 P.3d 797 (Or. 2014) .............................................................................. 16, 17

*Elmowitz v. Exec. Towers at Lido, LLC,*
    571 F. Supp. 2d 370 (E.D.N.Y. 2008) ........................................................... 23, 25

*Ferrara v. Esquire Bank,*
    153 A.D.3d 671 (2d Dep't 2017)........................................................................ 11

*Fischer v. Maloney,*
    43 N.Y.2d 553 (1978) ................................................................................. 22

*Flamm v. Am. Ass'n of Univ. Women,*
    201 F.3d 144 (2d Cir. 2000) ....................................................................... 7

*Frechtman v. Gutterman,*
    115 A.D.3d 102 (1st Dep't 2014) ............................................................ 8, 9

*Gentile v. Grand St. Med. Assocs.,*
    38 Misc. 3d 1207(A), 2009 WL 8748651 (Sup. Ct. Ulster Cnty. Aug. 24, 2009)........... 10

*Goetz v. Kunstler,*
    164 Misc. 2d 557 (Sup. Ct. N.Y. Cnty. 1995) ........................................... 10

*Gross v. N.Y. Times Co.,*
    82 N.Y.2d 146 (1993) ............................................................................. 5, 6

*Guthrie v. U.S. Fed. Bureau of Prisons,*
    No. 09-CV-990, 2010 WL 339759 (S.D.N.Y. Jan. 26, 2010) ..................... 25

*Harbor Dist. Corp. v. GTE Operations Support Inc.,*
    176 F. Supp. 3d 204 (E.D.N.Y. 2016) ...................................................... 25

*Harvey v. Cramer,*
    235 A.D.2d 315 (1st Dep't 1997) .............................................................. 24

*Hawkins v. City of New York,*
    No. 99-CV-11704, 2005 WL 1861855 (S.D.N.Y. Aug. 4, 2005)................. 12

*Herrera v. C&M Victor Co.,*
    337 P.3d 154 (Or. 2014) ............................................................................. 5

*Hetfeld s Bostick,*
    901 P.2d 986 (Or. Ct. App. 1995) ............................................................. 21

*Hobbs v. Imus,*
    266 A.D.2d 36 (1st Dep't 1999) .................................................................. 7

*Howell v. N.Y. Post Co.,*
    81 N.Y.2d 115 (1993) ........................................................................... 22, 23

*Hulec v. J.H. Bennett & Co.,*
    No. 14-CV-492, 2014 WL 2918542 (N.D. Oh. June 26, 2014)................... 15

*Kenny v. Cleary,*
    47 A.D.2d 531 (2d Dep't 1975) ................................................................. 12

*Konikoff v. Prudential Ins. Co. of Am.*,
    234 F.3d 92 (2d Cir. 2000) ........................................................................ 12

*Kwan v. Schlein*,
    No. 05-CV-459, 2008 WL 4755345 (S.D.N.Y. Oct. 30, 2008) ...................................... 25

*Landon v. Kroll Lab. Specialists, Inc.*,
    22 N.Y.3d 1 (2013) ................................................................................ 11

*Levy v. Educ. Records Bureau, Inc.*,
    269 A.D.2d 277 (1st Dep't 2000) .................................................................. 12

*Liberman v. Gelstein*,
    80 N.Y.2d 429 (1992) .............................................................................. 11

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL* (*Licci II*),
    739 F.3d 45 (2d Cir. 2013) ............................................................... 13, 14, 16

*Lynch v. Ackley*,
    No. 3:12-CV-537, 2013 WL 6732540 (D. Conn. Dec. 19, 2013) .................................... 25

*Mann v. Abel*,
    10 N.Y.3d 271 (2008) ........................................................................... 6, 7

*Matter of Allstate Ins. Co.*,
    81 N.Y.2d 219, 223 (1993) ................................................................... 13, 15

*McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*,
    256 A.D.2d 269 (1st Dep't 1998) ............................................................ 21, 23

*McNamee v. Clemens*,
    762 F. Supp. 2d 584 (E.D.N.Y. 2011) .............................................................. 22

*Memorial Drive Consultants, Inc. v. ONY Inc.*,
    29 F. App'x 56 (2d Cir. 2002) .................................................................... 13

*Neumeier ex rel. Neumeier v. Keuhner*,
    31 N.Y.2d 121 (1972) ............................................................................. 16

*Nevin v. Citibank, N.A.*,
    107 F. Supp. 2d 333 (S.D.N.Y. 2000) .............................................................. 21

*Noto v. St. Vincent's Hosp. & Med. Ctr. of N.Y.*,
    142 Misc. 2d 292 (Sup. Ct. N.Y. Cnty. 1988) ...................................................... 24

*Nunez v. A-T Fin. Info., Inc.*,
    957 F. Supp. 438 (S.D.N.Y. 1997) ................................................................. 24

*O'Mahony v. Whiston*,
    No. 652621/2014, 2016 WL 5931368 (Sup. Ct. N.Y. Cnty. Oct. 7, 2016) ...................... 8

*Owen v. Leventritt*,
    174 A.D.2d 471 (1st Dep't 1991) ................................................................................. 23

*Padula v. Lilarn Props. Corp.*,
    84 N.Y.2d 519 (1994) ................................................................................................. 16

*Pontos Renovation Inc. v. Kitano Arms Corp.*,
    226 A.D.2d 191 (1st Dep't 1996) ................................................................................. 9

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992) ................................................................................................... 21

*Russ v. TRW, Inc.*,
    570 N.E.2d 1076 (Oh. 1991) ...................................................................................... 21

*Sabharwal & Finkel, LLC v. Sorrell*,
    117 A.D.3d 437 (1st Dep't 2014) ........................................................................... 10, 11

*Sabratek Corp. v. Keyser*,
    No. 99-CV-8589, 2000 WL 423529 (S.D.N.Y. Apr. 19, 2000) ...................................... 8

*Sandals Resorts Int'l Ltd. v. Google, Inc.*,
    86 A.D.3d 32 (1st Dep't 2011) ..................................................................................... 8

*Schultz v. Boy Scouts of Am. Inc.*,
    65 N.Y.2d 189 (1985) ................................................................................................. 14

*Serles v. Beneficial Or., Inc.*,
    756 P.2d 1266 (Or. Ct. App. 1988) .......................................................................... 15, 16

*Slover v. Or. State Bd. of Clinical Soc. Workers*,
    927 P.2d 1098 (Or. Ct. App. 1996) .............................................................................. 5

*Sorvillo v. St. Francis Preparatory Sch.*,
    607 Fed.App'x 22 (2d Cir. 2015) ................................................................................. 11

*State v. Cody*,
    34 N.E.3d 189 (Oh. Ct. App. 2015) ............................................................................ 18

*Sweeney v. Prisoners' Legal Servs. of N.Y., Inc.*,
    146 A.D.2d 1  (3d Dep't 1989) ................................................................................... 22

*Turley v. ISG Lackawanna, Inc.*,
    774 F.3d 140 (2d Cir. 2014).......................................................................... 21, 22, 23, 24

*Wahrendorf v. City of Oswego*,
   72 A.D.3d 1604 (4th Dep't 2010) ................................................................ 7

*Wampler v. Higgins*,
   752 N.E.2d 962 (Oh. 2001) ......................................................................... 5

*Youngman v. Robert Bosch LLC*,
   923 F. Supp. 2d 411 (E.D.N.Y. 2013) ................................................... 16, 17

*Zherka v. Amicone*,
   634 F.3d 642 (2d Cir. 2011) ....................................................................... 21

**Statutes**

29A Ohio Jur. 3d: Criminal Law § 4 ............................................................. 18

Fed. R. Civ. P. 8 ......................................................................................... 13

Oh. Rev. Code § 2093.21 ............................................................................. 18

Oh. Rev. Code § 2093.22 ............................................................................. 18

Ohio Revised Code § 2307.60 ...................................................................... 15

Or. Rev. Stat. § 166.065 .............................................................................. 15

**Other Authorities**

Am Psych. Ass'n, The Principles of Medical Ethics with Annotations Especially
   Applicable to Psychiatry (2013 ed.) ....................................................... 10, 20

Restatement (Second) of Torts § 565 ............................................................. 5

Restatement (Second) of Torts § 566 ............................................................. 5

Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 46 ......... 24

## PRELIMINARY STATEMENT

Psychiatrist Paul Conti's lawsuit against his patient, John Doe, is groundbreaking. Psychiatrists do not sue their patients for being troubled.  And psychiatrists do not go out of their way to disclose the most sensitive details of their patients' diagnoses, treatment, addictions, or family strife in public lawsuits.  Conti's effort to use the power of the federal courts to extract money from Doe and his prominent parents is without precedent.

Conti's Complaint reveals Doe's family conflicts, clinical diagnosis, his addiction, his darkest thoughts, and the detailed contents of his confidential sessions with his treating professionals.  *See* Am. Compl. (Dkt. #31) ¶¶ 3, 17, 24, 25, 29, 30, 32.  For good measure, it also contains salacious—and false—allegations that have nothing to do with the matter at hand.  *See id.* ¶ 27.  Conti's pleading reveals his true intent: to load up the Complaint with private and painful allegations, and extract money from Doe's wealthy family through a pre-filing demand.

But that gambit failed.  Conti is stuck litigating a case that is as reckless with the law as it is with Doe's privacy.  Conti began this action by asserting claims for intentional infliction of emotional distress and harassment under the New York Penal Law.  *See* Compl. (Dkt. #13). After Doe's initial motion to dismiss demonstrated the deficiency of those pleadings, Conti overhauled his complaint to jettison his New York statutory claims and focus on defamation and alleged violations of Ohio penal statutes.  Conti's do-over fares no better.

Conti's meritless claims arise from a series of fourteen crude and regrettable emails and text messages sent by his patient, Doe, over the course of eight months (the "Messages").  In his First Cause of Action, Conti claims to have been "defamed" by the Messages.  But no reasonable reader of Doe's insults, stream-of-consciousness fulminating, and over-the-top statements of opinion would understand the Messages as *factual*.  In addition, the Messages at issue are privileged because the only people to whom they were published were Doe's lawyer, his doctors,

his personal assistant, and his parents, all of whom share a common interest in his well-being and psychiatric care.  *See infra* § I.

Conti's continued refusal to take choice-of-law principles seriously compels the dismissal of the Second through Fifth Causes of Action—all Ohio statutory claims.  The laws of various jurisdictions are not an *a-la-carte* menu from which Conti can choose as he wishes.  Absent any conflict, this Court applies New York law.  With respect to claims where there *is* a conflict of laws, on this record, the law of Oregon—the locus of the injury—applies.  Ohio law, if it ever were to apply, comes in dead last, and affords Conti no relief in any event.

Here, Conti's claims fail because Oregon law affords him private no right of action.  Even if Ohio law were held to apply, the Amended Complaint cannot not satisfy the statutory elements because Conti does not—and cannot—allege that the Messages caused him fear, alarm, or distress.  In contemporaneous emails, Conti stated, *inter alia,* that: (i) he "*d[id] not mind*" the curse words and insults found in the Messages; (ii) in fact, a particularly unfortunate Message "led to a few good teaching moments in [his] office"; (iii) in his experience, patients "often . . . assail" their treaters; and, perhaps most tellingly, (iv) "with all [his] heart, training and experience," he believed that the Messages merely reflected Doe's distress.  *See infra* § II.

The Sixth Cause of Action for intentional infliction of emotional distress (IIED) fails for three independent reasons: *first*, because it lacks a credible allegation of distress; *second*, because it is duplicative of the defamation claim; and *third*, because a psychiatrist who agrees to treat a person for certain clinical behaviors cannot then turn around and plausibly claim that those very behaviors outrageously exceeded all bounds of civilized decency.  *See infra* § III.

Conti's duty as a psychiatrist was to try to heal John Doe—or at least to try to minimize his suffering.  This unprecedented lawsuit does precisely the opposite.  It weaponizes the

sensitive information that Conti learned during the treatment relationship, all in service of a case that cannot withstand legal scrutiny.  Whether Conti's conduct is consistent with his ethical obligations as a physician is for others to decide.  On the law, the decision for this Court is easy. This ill-conceived case warrants swift dismissal.

## ALLEGED FACTS

Conti is a psychiatrist who lives and practices in Portland, Oregon.  Am. Compl. ¶ 10.  In the spring of 2016, Doe's parents grew concerned about Doe's behavior and contacted Conti to seek treatment for their son.  *Id.* ¶¶ 4, 15.  Conti and Doe initially met in New York in May 2016, *id.* ¶ 17, and, shortly thereafter, Doe, a citizen of Ohio, *id.* ¶ 11, moved to Portland for intensive treatment with Conti and his colleagues, *id.* ¶ 19.  In the fall of 2016, Doe left Portland to travel, *see id.* ¶ 24, but he later returned to continue treatment, *id.* ¶ 28.  In approximately March 2017, under Conti's supervision, Doe began reducing his dosage of psychiatric medication, a process known as "titration" or "tapering."  *Id.* ¶ 31 & Ex. C.  During that difficult process, Doe became upset that Conti was unreachable and felt abandoned by his doctor.  *See id.* Exs. B, F.

In early April 2017, Doe began sending the Messages to Conti—fourteen electronic communications over the course of approximately eight months.  The first was a text message on April 6, to which Conti responded by writing to Doe and his parents.  *Id.* Exs. A, D.  Conti explained that he regarded the first Message as "primarily" reflecting Doe's "suffering"—*i.e.*, as a manifestation of the illness that Conti was hired to treat.  *Id.* Ex. D.  Doe sent an inappropriate email back.  *Id.* Ex. E.  Conti responded by promising not to read further emails from Doe unless they stated in the subject line that they concerned transitioning care to another provider.  *Id.* Conti's phone also allowed him to block messages from Doe.  *See id.* Ex A (offering "Block this Caller" option).  Conti does not allege whether he availed himself of this option—or, if not, why not.

3

Two and a half months went by. *Id.* ¶ 38.  Doe sent Conti another inappropriate email on June 13, 2017, copying several other people. *Id.* Ex. F.  Conti replied to all, stating that he was "not going to engage with Doe." *Id.* Ex. C.  Conti again blamed the Message on Doe's illness, explaining: "[I]t doesn't require any formal training to see that he does not want a dialogue, but wants instead to assail me, which I believe with all of my heart, training, and experience, arises from the distress inside of him . . . ." *Id.*  Conti continued, "I do not mind him insulting or cursing at me," and explained that one of Doe's earlier emails had "led to a few good teaching moments in my office about maintaining perspective and not letting negative emotion drive us to the painful and punishing position our patients are often in when they assail us." *Id.*

Doe continued to send sporadic, shorter emails to Conti—one more in June, two in July, two in August, and one in September. *See id.* ¶¶ 40-45 & Exs. G-K.  After Conti threatened to sue Doe, *id.* ¶ 47, Doe sent Conti three one-paragraph emails in November 2017 telling Conti, in crude terms, that he welcomed the litigation and did not want to settle, *id.* ¶¶ 49-51 & Exs. M-O.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).  The Messages attached to the Complaint are considered part of the pleadings. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

## ARGUMENT

## I.   CONTI FAILS TO STATE A CLAIM FOR DEFAMATION

Conti's defamation claims fail because the Messages—read in their full context, as they

4

must be—are not factual in nature and because they were privileged based on the "common interest" in Doe's mental health treatment and well-being shared among their recipients.

### A. Doe's Challenged Statements Are Opinion and Hyperbole and Cannot Reasonably Be Understood As Defamatory in Context

Defamation is the publication of verifiably false facts.  Pure opinion and hyperbole are not actionable under the laws of any state.  *See* Restatement (Second) of Torts §§ 565, 566. Absent any actual conflict of laws, the Court will apply New York law as the law of the forum. *See 2002 Lawrence R. Buchalter Alaska Trust v. Phila. Fin. Life Assur. Co.*, 96 F. Supp. 3d 182, 218 (S.D.N.Y. 2015).  There being no conflict among the laws of the states on these bedrock principles of constitutional and tort law,[1] in this case, this Court must apply the law of New York, which is well developed in this arena.

"Whether particular words are defamatory presents a legal question to be resolved by the court in the first instance."  *Aronson v. Wiersma*, 65 N.Y.2d 592, 593 (1985).  Allegedly defamatory words "must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader"; if such statements are not "reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction."  *Dillon v. City of New York*, 261 A.D.2d 34, 38 (1st Dep't 1999).

"Since falsity is a necessary element of a defamation cause of action and only 'facts' are capable of being proven false, it follows that *only statements alleging facts can properly be the subject of a defamation action*."  *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 152-53 (1993) (emphasis added) (quotation marks omitted).  "Expressions of opinion, as opposed to assertions

---

[1] The elements of defamation are the same in New York, Oregon, and Ohio.  *See Davis v. Jacobs*, 710 N.E.2d 1185, 1186 (Oh. Ct. App. 1998); *Herrera v. C&M Victor Co.*, 337 P.3d 154, 159 (Or. 2014).  Like New York law, Oregon and Ohio law recognize that only false statements of *fact* are actionable.  *See Wampler v. Higgins*, 752 N.E.2d 962, 970-71 (Oh. 2001); *Slover v. Or. State Bd. of Clinical Soc. Workers*, 927 P.2d 1098, 1100-01 (Or. Ct. App. 1996).

of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008). Rhetorical hyperbole, like opinion, is "simply not actionable" for defamation. *Gross*, 82 N.Y.2d at 152.

Four factors dictate whether a statement is an actionable statement of fact: (1) "whether the specific language has a precise meaning which is readily understood or whether it is indefinite and ambiguous"; (2) whether the statement can be objectively characterized as true or false; (3) the full context of the communication; and (4) "the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact." *Celle v. Filipino Reporter Enter. Inc.*, 209 F.3d 163, 178-79 (2d Cir. 2000).

### 1.    Properly Viewed As a Whole, the Messages Do Not State Facts

The Amended Complaint isolates five fragments of the Messages and claims that they are defamatory. *See* Am. Compl. ¶ 56. While we address these separately in turn, *infra* § I.A.2, the correct way to determine whether Doe made statements reasonably susceptible of a defamatory meaning is to evaluate the Messages *in their entirety*. In determining whether statements are reasonably susceptible of a defamatory meaning, the Court's task is not to "sift[] through a communication for the purpose of isolating and identifying assertions of fact." *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995). Rather, it must "look to the over-all context in which the assertions were made" and determine how a reasonable reader would view them as a whole. *Id.*

Here, the Messages are a series of stream-of-consciousness, late-night emails sent to a handful of close associates by a person with diagnosed mental illness who was venting his frustration and engaging in name-calling. *See* Am. Compl. Exs. B-O. Because of the tenor,

nature, and content of the Messages, any reasonable reader would understand that Doe was expressing his opinion and hurling rhetorical insults, not stating facts or factual conclusions.

The "tenor" of the Messages compels the conclusion that they are protected opinion in their totality. *Mann*, 10 N.Y.3d at 277. The use of caustic, over-the-top language—like calling a property a "garbage heap" and its owner a "slumlord" or "sociopath"—indicates to a reasonable reader that a communication as a whole is an expression of opinion. *Wahrendorf v. City of Oswego*, 72 A.D.3d 1604, 1605 (4th Dep't 2010). Far from taking the "business-like and solemn" tone that might lead a reasonable reader to believe they were factual in nature, *Church of Scientology Int'l v. Eli Lilly & Co.*, 778 F. Supp. 661, 668 (S.D.N.Y. 1991), the Messages are a collection of crudity that has no pretense of accuracy, let alone objectivity. *See, e.g.*, Am. Compl. Ex. D ("I wouldn't piss on you if you were on fire . . . . Have a great Easter holiday fuck face"); *cf. Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 151 (2d Cir. 2000) (statement that attorney was "ambulance chaser" could be understood as factual within a publication containing only factual information).

The *kind* of communication also matters. A reasonable reader will understand the same assertion differently if it appears in a letter to the editor (designed as a vehicle to express one's opinion) than in a well-researched news story (designed as an authoritative presentation of fact). *See Brian*, 87 N.Y.2d at 52-53. A series of late-night email rants with non-linear contents, frequent misspellings, questionable grammar, and over-the-top vulgarity are *not* the kind of communications within which a reasonable reader would expect objective facts to be presented. *See Hobbs v. Imus*, 266 A.D.2d 36, 37 (1st Dep't 1999) (reasonable listener would understand remarks by radio "shock jocks" who trade in insults to be hyperbole, not factual pronouncements). Indeed, the Messages are the written equivalent of a "rambling, table-slapping

7

monologue" or an "angry, unfocused diatribe"—precisely the sort of communication that a reasonable reader would view "with an appropriate amount of skepticism" and would not understand as factual.  *600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 144 (1992).

New York courts have also widely recognized that "[t]he culture of Internet communications . . . has been characterized as encouraging a freewheeling, anything-goes writing style."  *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 43 (1st Dep't 2011); *see Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp.3d 287, 295 (E.D.N.Y. 2015).  For example, public Facebook comments calling people "low lifes," accusing them of "stabbing me in the back," and claiming that they "steal my money" have been held not actionable because a reasonable reader would understand them to be grounded in opinion. *O'Mahony v. Whiston*, No. 652621/2014, 2016 WL 5931368, at *3-4 (Sup. Ct. N.Y. Cnty. Oct. 7, 2016).  The same logic applies to the Messages—Doe's impulsive online communications with his parents, his lawyer, his treating psychiatrists, and his personal assistant.  *See infra* § I.B.

> ### 2.    Even In Isolation, Conti's Chosen Fragments Do Not State Facts

Even viewed in isolation, the five allegedly defamatory portions of the Messages identified in the Amended Complaint are not reasonably susceptible of being read as anything other than protected opinion or nonactionable hyperbole.  *See* Am. Compl. ¶ 56.

First, in the context of angry and profanity-laced emails and text messages, statements about "MALPRACTICE," "negligence," "incompetence," and "fraud" are not actionable.  *See Sabratek Corp. v. Keyser*, No. 99-CV-8589, 2000 WL 423529, at *6 (S.D.N.Y. Apr. 19, 2000) ("liar," "fraud," and "cheat" are nonactionable rhetorical hyperbole).  Doe's statements are more clearly hyperbolic than those held non-actionable in *Frechtman v. Gutterman*, 115 A.D.3d 102 (1st Dep't 2014).  There, a client sent an attorney a letter terminating their relationship; the letter included a variety of allegedly false accusations about the attorney's performance, such as "We

believe your failure to act in our best interest . . . may equate to misconduct, malpractice, and negligence." *Id.* at 104.  The court concluded that, in the context of a dispute between an attorney and a former client, where fiery rhetoric and recriminations might be expected, the statements were nonactionable opinion because they "amount[ed] to the opinions and beliefs of dissatisfied clients about their attorney's work." *Id.* at 106.  Here, too, a dissatisfied patient expressed his opinion about the nature and quality of his former doctor's work; a reasonable reader would understand him to be offering, at most, his individualized and subjective opinion of Conti's work, not a literal claim that Conti's conduct met the elements of the tort of malpractice.

Nor did Doe imply that his opinions were based upon undisclosed facts unknown to the reader.  To the contrary, Doe made clear what he was concerned about, namely Conti's unavailability, his failure to timely prescribe prescription medication, and the inaccurate statements he made to Doe's parents—none of which Conti alleges in his Amended Complaint to be factually untrue.  *See* Am. Compl. Exs. F, H;  *Pontos Renovation Inc. v. Kitano Arms Corp.*, 226 A.D.2d 191, 191-92 (1st Dep't 1996) (contractor's statements that subcontractor was "terrible," "incompetent," and "caused . . . a lot of problems" were non-actionable opinion when made at a project meeting in which the participants had knowledge of the underlying facts).

Doe's statements about Conti's alleged reasons for discontinuing treatment are also not defamatory.  Conti alleges that Doe defamed him on June 13, 2017 by asserting that "the only reason you terminated treatment was because my parents caught you on your bullshit," Am. Compl. ¶ 56(A); on July 14 by claiming that "the real reason" Conti discontinued treatment was "because in February you didn't want to continue treatment," *id.* ¶ 56(C); and on July 28 by asserting that Conti ended treatment because he was "called out" by Doe in an email, *id.* ¶ 56(D).

Under New York law, statements about a person's motivation for certain conduct—which is exactly what the above remarks are—are generally not actionable because they are non-factual and thus non-verifiable.  *See Sabharwal & Finkel, LLC v. Sorrell*, 117 A.D.3d 437, 437-38 (1st Dep't 2014) (statement that lawsuit was attempt to "extort" money was nonactionable statement of opinion about motivation); *Gentile v. Grand St. Med. Assocs.*, 38 Misc. 3d 1207(A), 2009 WL 8748651, at *2-3 (Sup. Ct. Ulster Cnty. Aug. 24, 2009) (statement that plaintiff was among a handful of people who "do not want to work, hold jobs and want to make easy money" was nonactionable opinion); *Goetz v. Kunstler*, 164 Misc. 2d 557, 564 (Sup. Ct. N.Y. Cnty. 1995) ("Speculations as to [Bernard] Goetz's motives for doing what he did are not readily verifiable and are therefore intrinsically unsuited as a foundation for defamation.").  And even if one could find that such statements are somehow factual, the particular *reason* behind Conti's termination of his treatment relationship with Doe is not defamatory as a matter of law: it doesn't hold Conti up to ridicule, opprobrium, or obloquy.  *See Celle*, 209 F.3d at 179-80.  A physician is free to choose what patients to serve and may freely terminate a patient relationship if he transitions care responsibly.[2]  A psychiatrist's internal musings or reasoning as to whether to end treatment is, by definition, his own choice, not something that third parties can properly criticize even if they knew about it.  Claiming that a physician lawfully ended a treatment relationship for a different reason than he told his patient does not imply that the physician is professionally unfit.

Finally, for much the same reason, Doe's June 15, 2017 assertion that Conti "equate[s] everything to money" and is, in essence, a "whore" for money, Am. Compl. ¶ 56(B), cannot be defamatory because it is not falsifiable and not factual.  There is no way to *objectively* determine whether Conti "equates everything to money"—or even what, precisely, that might mean.  *See*

_____

[2] *See* Am Psych. Ass'n, The Principles of Medical Ethics with Annotations Especially Applicable to Psychiatry § 6 (2013 ed.), https://www.psychiatry.org/File%20Library/Psychiatrists/Practice/Ethics/principles-medical-ethics.pdf.

*Celle*, 209 F.3d at 178.  Doe's speculation about Conti's motivation is plainly a matter of opinion.  *See Sabharwal & Finkel*, 117 A.D.3d at 437-38.  The factual basis for that opinion—Conti's refusal to discuss the transfer of care with Doe's new psychiatrist, Dr. Michael Jenike, without first getting paid—is disclosed on the face of the Message in question.  See Am. Compl. Ex. B (Conti email to Jenike regarding payment).  As statements of opinion without any implication that they are based upon undisclosed facts unknown to the reader, Doe's "whore" comments are not actionable.  *See Sorvillo v. St. Francis Preparatory Sch.*, 607 Fed.App'x 22, 24 (2d Cir. 2015).

### B.   The Common Interest Privilege Shields Doe's Messages

"A communication made by one person to another upon a subject in which both have an interest is protected by a qualified privilege."  *Ferrara v. Esquire Bank*, 153 A.D.3d 671, 673 (2d Dep't 2017).  The privilege attaches when the speaker (or writer) communicates with people "with a common interest in a particular subject matter about matters that the speaker may reasonably believe the listener is entitled to know."  *Landon v. Kroll Lab. Specialists, Inc.*, 22 N.Y.3d 1, 13 (2013) (internal quotation marks omitted).  "The rationale for applying the privilege in these circumstances is that so long as the privilege is not abused, the flow of information between persons sharing a common interest should not be impeded."  *Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992).

The common-interest privilege applies to all five allegedly defamatory emails about which Conti complains.  *See* Am. Compl. ¶ 56.  The first of the five, *id.* Ex. F, was sent to Conti; his colleague Mark Schorr, a therapist on Conti's staff who primarily treated Doe, *id.* ¶ 27d; Doe's parents; Doe's lawyer Alan Dershowitz; and Doe's new treating psychiatrist Dr. Jenike, *see id*. Ex. B (discussing transfer of care to Jenike).  The second email removed Schorr and added Dovi Meyer, Doe's personal assistant.  *Id.*  The third email omitted Schorr and Meyer and

added Dr. Robin Lippert, Jenike's colleague and another member of Doe's treatment team.  *Id.*

Ex. H.  The fourth email was sent to Conti, Jenike, Dershowitz, Meyer, and Doe's parents.  *Id.*

Ex. I.  The fifth email went to Conti, Meyer, Dershowitz, and Doe's parents.  *Id.* Ex J.

Doe's parents, his lawyer, his personal assistant, and his treating psychiatrists and mental

health professionals share a common interest in Doe's health and well-being.  *See, e.g.*, *Levy v.*

*Educ. Records Bureau, Inc.*, 269 A.D.2d 277, 278 (1st Dep't 2000) (parents and testing company

had common interest in integrity of testing process and test's effects on child's education);

*Kenny v. Cleary*, 47 A.D.2d 531, 532 (2d Dep't 1975) (statements by defendant to lawyer were

qualifiedly privileged); *see also Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 99 (2d Cir.

2000) (common interest privilege historically extended to private persons with an "immediate

relationship to the speaker, such as a family member or an employer's own employees").  If Doe

believed that Conti abandoned him in treatment, lied to him, or mistreated him, he is *entitled* to

share those views with his parents (who arranged for Conti to treat him, *see* Am. Compl. ¶ 4), his

lawyer, his current treaters, and his employee who handles his most sensitive personal affairs on

his behalf, all without fear that he will be tagged with a claim for defamation.

### C.    Conti's Claim With Respect to Alleged "Slander" Lacks Sufficient Specificity

To the extent Conti's First Cause of Action is based upon allegedly slanderous oral

statements purportedly made by Doe, it must be dismissed for lack of specificity.  Conti alleges

that, at some unspecified time to some unspecified person, Doe said that Conti "engaged in a

therapeutic telephone call while 'drunk' and also solicited prostitutes while on a work trip."  Am.

Compl. ¶ 57.  "Failure to state the particular person or persons to whom the allegedly slanderous

or libelous comments were made as well as the time and manner in which the publications were

made warrants dismissal."  *Hawkins v. City of New York*, No. 99-CV-11704, 2005 WL 1861855,

at *18 (S.D.N.Y. Aug. 4, 2005).  Such generic allegations do not state a claim because they do

not fairly put Doe on notice of what statements Conti claims are slanderous, or their precise

context. *See* Fed. R. Civ. P. 8; *Berwick v. New York Network Int'l, Ltd.*, No. 06-CV-2641, 2007

WL 949767, at *12 (S.D.N.Y. Mar. 28, 2007).

Moreover, whether Conti had contact with prostitutes has no bearing on his fitness or

competence as a psychiatrist; because Conti fails to plead special damages, this alleged statement

cannot give rise to a claim for slander. *See Doe v. Delta Airlines, Inc.*, 129 F. Supp. 3d 23, 43

(S.D.N.Y. 2015) (statement that person was drunk in public is not defamatory *per se* of

*professional* reputation absent nexus between statement and qualifications for the profession).

## II.   CONTI FAILS TO STATE CLAIMS FOR VIOLATIONS OF OHIO STATUTES

Conti's claims invoking Ohio criminal statutes must fail because Oregon law governs

whether a private right of action exists to enforce criminal statutes—and no such right of action

exists under Oregon law.  Even if Ohio law were held to apply and a private right of action were

deemed to exist, the Complaint fails to state a claim.

### A.   Conti Ignores Settled Choice-of-Law Principles

Conti cannot pick and choose which state's law he wants to invoke when he finds it

convenient.  A court sitting in diversity must apply its local choice-of-law rules—here, New

York's—to determine which jurisdiction's law governs the plaintiff's claims.  *Memorial Drive*

*Consultants, Inc. v. ONY Inc.*, 29 F. App'x 56, 62 (2d Cir. 2002).

Under New York law, "[t]he first step in any case presenting a potential choice of law

issue is to determine whether there is an actual conflict between the laws of the jurisdictions

involved."  *Matter of Allstate Ins. Co.*, 81 N.Y.2d 219, 223 (1993).  If there is a conflict, the

Court must apply New York's "interest-analysis approach" to resolve it.  *Licci ex rel. Licci v.*

*Lebanese Canadian Bank, SAL* (*Licci II*), 739 F.3d 45, 48 (2d Cir. 2013).  Under this "flexible"

approach, the Court will apply the law of the jurisdiction "which, because of its relationship or

contact with the occurrence or the parties, has the *greatest concern* with the specific issue raised

in the litigation." *Id.* (quoting *Schultz v. Boy Scouts of Am. Inc.*, 65 N.Y.2d 189, 196 (1985)).

The "interest analysis" is conducted differently when the conflict of laws involves

"conduct-regulating rules" than when it involves "loss-allocating rules." *Licci ex rel Licci v.*

*Lebanese Canadian Bank* (*Licci I*), 672 F.3d 155, 159 (2d Cir. 2012).  For conduct-regulating

rules—rules that determine *whether* certain conduct is unlawful—"the law of the jurisdiction

where the tort occurred will generally apply because that jurisdiction has the greatest interest in

regulating behavior within its borders." *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72

(1993).  For loss-allocating rules—"laws that prohibit, assign, or limit liability after the tort

occurs," *Licci I*, 672 F.3d at 158—"other factors are taken into consideration, chiefly the parties'

domiciles." *Cooney*, 81 N.Y.2d at 72.

Conti's assertion that Doe "admitted . . . that Ohio law applies" to this case is a

fabrication.  Am. Compl. ¶ 60.  Doe did no such thing.  In his initial motion to dismiss,

consistent with New York choice-of-law principles, Doe explained that the Court should apply

New York laws when there is no actual conflict among New York (the forum), Oregon (Conti's

domicile), and Ohio (Doe's alleged domicile).  *See* Def.'s Memo. of Law In Support of Mot. to

Dismiss ("MTD Br.," Dkt. #29) 16-17 & n.7.  Doe further explained that, in the event of a

conflict between (1) New York law and (2) the harmonious laws of Ohio and Oregon, New York

law would not apply because New York law has little interest in this dispute, and it is immaterial

whether Oregon or Ohio law applies *if they are the same*. *See id.* at 9-11.

### B.    Ohio Penal Statutes Do Not Apply to This Oregon-Centered Dispute

This case presents the question whether criminal statutes prohibiting harassment can be

enforced by a private plaintiff in a civil damages action.  Here, because conflicts rules dictate

that Oregon law applies, and Oregon does not recognize a private cause of action in these circumstances, Conti's claims for alleged violations of penal statutes must be dismissed.

The first step in New York conflicts analysis is to determine whether the laws of the relevant states are, in fact, in conflict. *Matter of Allstate Ins. Co.*, 81 N.Y.2d at 223. Here, they are. Ohio Revised Code § 2307.60(a)(1) provides a private right of action to enforce criminal prohibitions against harassment,[3] but, under Oregon law, there is no private right of action to enforce criminal statutes. The Oregon rule is clear: "[i]f . . . a statute is silent as to private enforcement rights, courts may recognize a private claim only when it is *necessary* to carry out the policy of the statute." *Serles v. Beneficial Or., Inc.*, 756 P.2d 1266, 1270 (Or. Ct. App. 1988) (emphasis added). In *Serles*, for example, the court held that, because the director of the Oregon Department of Insurance and Finance has the authority to enforce Oregon's statutory prohibition against false advertising, no implied right of action to enforce it exists. *See id.* "[T]here is no need to recognize a private cause of action to carry out the statutory policy." *Id.* Likewise, in *Bob Godfrey Pontiac, Inc. v. Roloff*, 630 P.2d 840, 848-50 (Or. 1981), the Oregon Supreme Court held that there was no private right of action to enforce the statute setting forth attorneys' ethical duties because the statute can be enforced through the attorney discipline process.

As these precedents show, it is well settled that Oregon will not recognize a private right of action arising from Oregon's criminal statute prohibiting harassment, Or. Rev. Stat. § 166.065. Because prosecutors can and do enforce that law in criminal cases, no additional (*i.e.*, private) enforcement mechanism is "necessary" to carry out the policy of the statute.[4] *See, e.g.*,

---

[3] Relying on *Hulec v. J.H. Bennett & Co.*, No. 14-CV-492, 2014 WL 2918542 (N.D. Oh. June 26, 2014), Doe argued in his initial motion to dismiss that Ohio law does not recognize a cause of action to enforce criminal anti-harassment statutes. Now that Conti has invoked Ohio Revised Code § 2307.60, as later construed by the Ohio Supreme Court, Doe acknowledges that such a cause of action exists.

[4] Similarly, the provisions of the New York Penal Law that criminalize harassment are not enforceable by a private civil plaintiff. *See Cablevision Sys. Corp. v. Commc'ns Workers of Am. Dist. 1*, 131 A.D.3d 1087, 1088 (2d Dep't

*Doyle v. City of Medford*, 337 P.3d 797, 824 (Or. 2014) (en banc); *Serles*, 756 P.2d at 1270.

The next step is to apply New York's "interest-analysis approach" to resolve the conflict between Oregon law, which would prohibit claims of the sort asserted here, and Ohio law, which would permit them. *Licci II*, 739 F.3d at 48. Because the conflict concerns whether a defendant can be held liable for allegedly unlawful conduct, not whether the conduct is lawful at all, it is a conflict over loss-allocating rules—"laws that prohibit, assign, or limit liability after the tort occurs." *Licci I*, 672 F.3d at 158; *see Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 522 (1994).

The principles set forth by the New York Court of Appeals in *Neumeier ex rel. Neumeier v. Keuhner*, 31 N.Y.2d 121 (1972), govern the resolution of this conflict: (1) If the parties share a domicile, that state's law applies; (2) if the parties have different domiciles and the law of each domicile favors its home litigant, the law of the locus of the tort applies; and (3) in other situations, the law of the locus of the tort presumptively applies. *See Youngman v. Robert Bosch LLC*, 923 F. Supp. 2d 411, 419 (E.D.N.Y. 2013).

Here, the conflict falls into the third *Neumeier* category. According to the Amended Complaint, Conti's domicile is Oregon, and Doe's domicile is Ohio. Am. Compl. ¶¶ 10-11. On the instant facts, the law of each party's home domicile is unfavorable to him: the law of Oregon, where Conti lives, favors Doe, while the law of Ohio, where Doe has his home, favors Conti. Under *Neumeier*, then, the law of the locus of the tort presumptively applies—*i.e.*, it applies unless Conti can show that applying a different jurisdiction's law "will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." *Youngman*, 923 F. Supp. 2d at 419 (quoting *Antaeus Enters., Inc. v. SD-Bam Real Estate LLC*, 480 F. Supp. 2d 734, 743 (S.D.N.Y. 2007)).

---

2015) (affirming dismissal of numerous claims "alleging violations of the Penal Law," including one concerning Penal Law § 240.26, "on the ground that the subject Penal Law provisions do not create a private right of action").

Oregon is the locus of the tort, and in this case, Oregon's law should apply.  *See id*.  The locus of a tort is the place where the *injury* occurs.  *See Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 109 (2d Cir. 2016); *Cooney*, 81 N.Y.2d at 73.  The alleged injury that gives rise to Conti's statutory claims is the fear or annoyance that he purportedly experienced when he *received* Doe's communications.  *See infra* § II.B.2.  That injury occurred—if at all—in Oregon, where Conti lives and works.  *See* Am. Compl. ¶¶ 10, 28.

Conti cannot overcome the presumption that Oregon law applies because applying the law of Ohio would thwart, not advance, the relevant purposes underlying Oregon law.  Oregon has determined that statutes do not give rise to a private civil cause of action unless an implied private claim would be "necessary" to enforce them.  *E.g.*, *Doyle*, 337 P.3d at 801.  Conti, a citizen of Oregon, seems to believe he has been the victim of a crime.[5]  Oregon has made the considered judgment that prosecutors and law enforcement officials, not private individuals, are empowered to enforce the criminal laws.  Applying Ohio law to this dispute, and thereby permitting private enforcement, would undermine that judgment, *Youngman*, 923 F. Supp. 2d at 419, and it would not advance any relevant interest of Ohio.  As explained below, Conti *does not even allege* that any of Doe's allegedly unlawful conduct occurred in Ohio.

Because Oregon law applies and recognizes no private right of action to enforce criminal statutes, Conti's Second through Fifth Causes of Action must be dismissed.

**C.      Even If Conti Has a Private Right of Action Under Ohio Law, He Fails To State a Statutory Claim**

Assuming that Conti has a private right of action to enforce Ohio penal statutes in this case, his Second through Fifth Causes of Action must nonetheless be dismissed.  *First*, Conti alleges no conduct that occurred in Ohio.  *Second*, Conti does not plausibly allege facts

---

[5] It is revealing that Conti has never alleged that he contacted the police in Oregon—or anywhere—at any time about Doe's behavior before sending his pre-suit demand for money to Doe's lawyers.

17

supporting a reasonable inference that Doe violated the Ohio menacing statutes.

### 1. No Relevant Conduct Is Alleged to Have Occurred in Ohio

Ohio's criminal laws—like most states'—do not apply to wholly extraterritorial conduct. *See, e.g.*, *State v. Cody*, 34 N.E.3d 189, 192-93 (Oh. Ct. App. 2015); 29A Ohio Jur. 3d Criminal Law § 4. Conti fails to allege anywhere in the Amended Complaint that any of Doe's purportedly criminal conduct occurred in Ohio. That omission defeats all of his statutory claims.

### 2. Conti Fails to Plausibly Allege Physical Fear or Significant Distress

Conti invokes four Ohio penal statutes: Revised Code sections 2917.21 (telecommunications harassment), 2093.22 (menacing), 2903.21 (aggravated menacing), and 2903.211 (menacing by stalking). To hold Doe liable under § 2093.22, Conti must show that Doe knowingly caused him to believe that Doe would cause him physical harm. Oh. Rev. Code §§ 2093.22(a). Under § 2903.21, the harm in question must be "serious." *Id.* § 2093.21(a). Under § 2903.211, Conti must show that Doe knowingly caused Conti fear of physical harm or mental distress. *Id.* § 2093.211(a). Because Conti does not plausibly allege facts supporting a violation of these statutes, his Third, Fourth, and Fifth Causes of Action must be dismissed.[6]

#### a. Conti Does Not Plausibly Allege Fear of Physical Harm

Nowhere in the Amended Complaint does Conti allege, even in bare conclusory terms, that Doe knowingly set out to cause Conti fear of physical harm. None of the Messages contain threats of violence, force, or any kind of physical confrontation. And, while the pleading does include, in its blunderbuss opening paragraph, a single conclusory reference to "threats of physical . . . harm," Am. Compl. ¶ 1, there are absolutely *no* specific factual allegations of any threat of violence by Doe against Conti either in the pleading itself or in the Messages attached.

---

[6] Doe does not dispute that the Amended Complaint would state a cause of action for "telecommunications harassment" under § 2917.21 *if* Ohio law applied, which it does not, and *if* Doe's conduct occurred in Ohio, which the Amended Complaint does not allege it did.

*See id.* Exs. A-O.  At most, the Amended Complaint reveals threats by Doe of *litigation* or other entirely *lawful* action in response to Conti's own threat to sue.  *See, e.g.*, *id.* ¶ 41 ("I'm waiting for you to engage with your lawyer."); *id.* ¶ 42 ("[Y]ou better get your leg[a]l counsel."); *id.* ¶¶ 43-44 (same); *id.* ¶ 45 (discussing putting up billboards in Portland "centered on" Conti).

More important, Conti understood perfectly well that the Messages *did not* threaten him with physical harm.  The Complaint expressly alleges that Conti understood Doe to be threatening professional and reputational harm, not physical violence.  According to Conti, Doe's statement, "You better f*cking fear me.  You put a narrative on me you mother f*ck[er] I'm going to destroy your a**," made Doe's "intention *to ruin* Dr. Conti unmistakably plain." *Id.* ¶ 46 (emphasis added).  But Ohio's menacing statutes do not criminalize a promise to "ruin" someone's career or sue them for malpractice; they only criminalize knowingly putting another person in fear of physical harm.  Conti does not plausibly allege that he experienced such fear.

### b.    Conti Does Not Plausibly Allege Mental Distress

Nor does Conti plausibly allege that the Messages caused him mental distress.  Indeed, the Messages demonstrate that Conti *was not disturbed* by Doe's communications at all, but rather regarded them as a clinical manifestation of Doe's illness.  In his emails to Doe's parents and others, Conti acknowledges what is commonsensical to anyone with any familiarity with psychiatry: that he and other mental health professionals often receive hostile communications from patients in distress; that such communications typically reflect the patient's underlying distress; that receiving such communication is an occupational hazard for mental health professionals; and that they do not trouble Conti, as he affirmatively asserts they do not.

On April 6, 2017, after receiving one of the Messages from Doe that he now sues over, Conti wrote an email to Doe and to his parents.  Am. Compl. Ex. D.  There, Conti provided what he called a "thorough clinical assessment," explaining that Doe's condition led him to "use[]

19

anger, and the threat of anger, to control people." *Id.* Conti explained that Doe's Message was

"illustrative" of these issues." *Id.* Addressing Doe directly, Conti wrote: "[W]hile it is hard not

to find [this message] offensive, *I see in it primarily your suffering,* and it moves me to even

greater hope that you will at some point engage in real treatment." *Id.* (emphasis added).

On June 14, 2017, Conti wrote again to Doe, Doe's parents, and two others.  Conti stated

that he would not continue to engage with Doe, who "does not want a dialogue, but wants

instead to assail me." *Id.* Ex. C.  Conti explained that he understood Doe's desire to "assail" him

as a manifestation of Doe's illness: "I believe with all of my heart, training and experience [that

it] arises from the distress inside of him that we have talked about on so many occasions." *Id.*

In the same email, Conti disclaims having been harmed or even annoyed by Doe's

Messages.  "*I do not mind* [Doe] insulting or cursing at me," he wrote.  *Id.* (emphasis added).

"In fact," Conti goes on to say, "the infamous 'f*ckface' email [from Doe] . . . led to a few good

teaching moments in my office about maintaining perspective and not letting negative emotion

drive us to the painful and punishing position our patients *are often in when they assail us*." *Id.*

(emphasis added).  Conti could not be clearer:  he has been "assail[ed]" by patients in distress

before, and, as a psychiatrist, it is part of his professional reality.  By Conti's own account, such

conduct does not bother him.  *See id.*  He "*do[es] not mind*." *Id.* (emphasis added)*.

Conti's claims of distress are implausible in light of his own words and his training,

experience, and chosen field.  Psychiatrists treat persons with mental illness.  The relationship

between a patient and a treating psychiatrist is "essentially private, highly personal, and

sometimes highly emotional."  Am. Psych. Ass'n, The Principles of Medical Ethics with

Annotations Especially Applicable to Psychiatry, § 1.2 (2013 ed.).  Providing psychiatric

treatment means discussing sensitive matters and providing unwelcome advice to people whose

20

judgment and impulse control may be impaired.  Under those circumstances, it is predictable

(and common) that some patients may respond to their psychiatrists with ugly words of

disappointment and anger—or worse.  More than anyone else, psychiatrists are equipped to

understand such behavior as a manifestation of mental illness rather than a personal affront.

This case illustrates the absurdity of a psychiatrist suing his own patient for insulting

communications.  Conti—by his own account—entered into this treatment relationship with his

eyes wide open.  According to the pleadings, Conti allegedly knew *before* agreeing to treat Doe

that Doe "was causing increasingly intolerable distress through . . . profanely insulting" others,

was repeatedly using a vile term to refer to a member of his family, and was experiencing

conflicts with business associates because of his "erratic and unpredictable" behavior.  Am.

Compl. ¶ 16.  While the Amended Complaint's wild claims about Doe's alleged misbehavior are

false, for purposes of this motion, that is beside the point.  The point here is that a psychiatrist

who signs up to *treat* a patient for such behavior cannot plausibly find it distressing enough to

accuse the patient of a crime for doing what brought him to treatment in the first place.[7]

## III.   CONTI FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Conti's Sixth Cause of Action is for IIED.[8]  IIED claims are "highly disfavored under

New York law."  *Nevin v. Citibank, N.A.*, 107 F. Supp. 2d 333, 345 (S.D.N.Y. 2000).  The tort is

"problematic" by nature because its limits are "poorly defined."  *Turley v. ISG Lackawanna,*

*Inc.*, 774 F.3d 140, 159 (2d Cir. 2014).  IIED "is to be invoked only as a last resort."  *Id.* at 158

(quoting *McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 256 A.D.2d 269, 270 (1st Dep't

---

[7] Any conclusion that Doe's Messages violated a criminal statute would also raise serious First Amendment concerns, as applied to the facts of this case.  Doe's grievances about being abandoned by Conti do not fall into the category of obscenity, "fighting words," defamation, or any other form of unprotected speech.  *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 382-83 (1992).  Speech does not lose its protected character merely because it is coarse and insulting.  *See Zherka v. Amicone*, 634 F.3d 642, 646 (2d Cir. 2011).

[8] There is no conflict of laws with respect to IIED.  *See Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993); *Russ v. TRW, Inc.*, 570 N.E.2d 1076, 1082 (Oh. 1991); *Hetfeld s Bostick*, 901 P.2d 986, 987 (Or. Ct. App. 1995).

1998)). "When pleading [IIED], the bar is extremely high, and [the] cause of action is almost never successful." *De Sesto v. Slaine*, 171 F. Supp. 3d 194, 201-02 (S.D.N.Y. 2016) (quotation marks omitted).  "Indeed, such claims are routinely dismissed on pre-answer motion." *Id*.

To state a claim, Conti must allege: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) causation; and (4) severe emotional distress.  *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993).  To support an IIED claim, the defendant's conduct must "so transcend[] the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Turley*, 774 F.3d at 157 (quotation marks omitted).  Every time it has considered an IIED claim, the New York Court of Appeals has held that the conduct in question was *not* sufficiently extreme to give rise to liability.  *See Howell*, 81 N.Y.2d at 122.

### A.    Conti's IIED Claim Is Impermissibly Duplicative of His Defamation Claim

Because IIED claims are strongly disfavored, "a cause of action for intentional infliction of emotional distress should not be entertained 'where the conduct complained of falls well within the ambit of other traditional tort liability.'" *Sweeney v. Prisoners' Legal Servs. of N.Y., Inc.*, 146 A.D.2d 1, 7 (3d Dep't 1989) (emphasis omitted) (quoting *Fischer v. Maloney*, 43 N.Y.2d 553, 558 (1978)).  For this reason, New York courts routinely dismiss IIED claims as duplicative of parallel claims for defamation.  *See, e.g.*, *Bacon v. Nygard*, 140 A.D.3d 577, 577 (1st Dep't 2016); *McNamee v. Clemens*, 762 F. Supp. 2d 584, 608 (E.D.N.Y. 2011).

To the extent this lawsuit is about anything other than Conti's desire to extract money from Doe's wealthy family, it is really about Conti's reputation.  Conti is peeved that Doe copied "renowned" and "noted" attorney Alan Dershowitz on certain Messages.  Am. Compl. ¶ 6.  He complains that Jenike "is a professor of psychiatry—which is Dr. Conti's field—at one of the most renown [*sic*] medical schools in the world." *Id.* ¶ 7.  And Conti asserts that Doe "maximized the professional and reputational injury that he has inflicted." *Id.*  At bottom, this

case is a meritless defamation action about hyperbolic Messages stating opinions to a handful of people. Conti cannot replead these claims as IIED. *See McIntyre*, 256 A.D.2d at 270.

### B.     Doe's Conduct Does Not Meet the "Extreme" Threshold for IIED Liability

While regrettable and inappropriate, Doe's fourteen Messages to Conti do not rise to the level of conduct that is so extreme and outrageous as to be regarded as atrocious and utterly intolerable in a civilized society. *See Howell*, 81 N.Y.2d at 122.

The list of conduct that New York courts have held *in*sufficient to state an IIED claim is a veritable encyclopedia of human cruelty. It includes:

- A television network broadcasting recognizable images of ordinary women who were rape survivors after repeatedly assuring them that their identities would be kept confidential. *Doe v. Am. Broad. Cos.*, 152 A.D.2d 482, 483 (1st Dep't 1989).

- Protesters demonstrating daily outside an elderly Holocaust survivor's home, deliberately involving anti-Semitic organizations, calling her a thief, and inviting her to come down to face the "angry mob." *De Sesto*, 171 F. Supp. 3d at 198-99.

- A woman publicly threatening to kill her pregnant neighbor if she did not discontinue a lawsuit. *Owen v. Leventritt*, 174 A.D.2d 471, 472 (1st Dep't 1991).

- Supervisors referring to a female employee as "bitch," "slut," "whore," "animal" and "monkey face" and routinely telling her "you are shit" and "you are nothing." *Biberaj v. Pritchard Indus., Inc.*, 859 F. Supp. 2d 549, 557, 565 (S.D.N.Y. 2012).

- A landlord's agent hitting a tenant multiple times with a phone, sticking a camera in his face, and shouting derogatory remarks about him in public. *Elmowitz v. Exec. Towers at Lido, LLC*, 571 F. Supp. 2d 370, 379 (E.D.N.Y. 2008).

In the extremely rare cases in which courts conclude that conduct was outrageous enough to state an IIED claim, the plaintiff has generally been subject to threats of violence, actual violence against person or property, or both. *See, e.g.*, *Turley*, 774 F.3d at 146-47 (multiyear campaign of extreme racial harassment including death threats, hanging of noose, and repeated vandalism); *Bunker v. Testa*, 234 A.D.2d 1004, 1005 (4th Dep't 1996) (defendant followed plaintiff and children home, refused to leave, and said he knew where children went to school).

Doe never threatened violence or physical harm to Conti.  *See supra* § II.C.2.a.  Absent

physical threats or violence, "[t]he New York courts appear to require that plaintiffs allege . . . an

unrelenting campaign of day in, day out harassment."  *Nunez v. A-T Fin. Info., Inc.*, 957 F. Supp.

438, 442 (S.D.N.Y. 1997).  That standard was not satisfied on the facts alleged here.  The

Messages were sporadic, comprising fourteen communications over the course of almost eight

months.  And, unlike plaintiffs who suffered protracted harassment at work or by neighbors,

Conti had the power to avoid Doe's unwelcome conduct entirely by deleting, blocking, or

ignoring the Messages.  *See* Am. Compl. Ex. E ("I will not read further emails from you").

Moreover, even if messages of the sort Doe sent could give rise to liability if sent to a co-

worker or ex-girlfriend, they cannot do so in the context of a psychiatrist-patient relationship.

*See Turley*, 774 F.3d at 161 (whether conduct was extreme and outrageous is determined "in

light of all the circumstances").  The "relationship of the parties" is a critical factor in

determining whether the defendant's conduct constitutes IIED.  Restatement (Third) of Torts:

Liability for Physical and Emotional Harm § 46; *see D.K. ex rel. L.K. v. Teams*, 260 F. Supp.3d

334, 365 (S.D.N.Y. 2017) (non-verbal, developmentally disabled persons stated IIED claim

against abusive staff of group home, "particularly given the[ir] vulnerability").

Consistent with this principle, courts sometimes uphold IIED claims *by patients against*

*doctors* who abuse the authority, trust, and confidence inherent in the doctor-patient relationship.

*See, e.g.*, *Harvey v. Cramer*, 235 A.D.2d 315, 316 (1st Dep't 1997) (physician intentionally

misdiagnosed patient as HIV-positive); *Noto v. St. Vincent's Hosp. & Med. Ctr. of N.Y.*, 142

Misc. 2d 292, 295-96 (Sup. Ct. N.Y. Cnty. 1988) (psychiatrist induced patient to relapse and

coerced her into sex).  Doe is unaware of *any* case in *any* jurisdiction in which a doctor has even

asserted an IIED claim against a patient, let alone survived a dispositive motion, on *any* facts.  A

24

claim by a *psychiatrist* against a patient for sending unpleasant emails is even more untenable.

### C.    Conti Alleges the Absence of "Severe Emotional Distress"

Conti's Complaint makes one—and only one—allegation concerning the severity of the "distress" he purportedly suffered: "Defendant's conduct has caused Dr. Conti severe emotional distress."  Am. Compl. ¶ 59.  This perfunctory and non-specific allegation is the very picture of a "[t]hreadbare recital" of an element of a cause of action, "supported by mere conclusory statements," that warrants dismissal.  *Iqbal*, 556 U.S. at 678.  An IIED claim that merely pleads "severe emotional distress," unsupported by specific facts, cannot survive a motion to dismiss.[9]

Moreover, as explained above, Conti's own words, documented in the pleadings, make clear that he was *not* severely distressed by the Messages.  *Supra* § II.C.2.b.  Conti was clear that he believed the Messages "primarily" reflected Doe's "suffering," Am. Compl. Ex. D, and that he "believe[d] with all of my heart, training, and experience [that the Messages] arise[] from the distress inside of [Doe]," *id.* Ex. C.  Because Conti's own words "belie[]" his threadbare allegation of severe distress, his IIED claim must be dismissed.  *Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 222 (2d Cir. 2004).

## IV.    CONTI'S "PERMANENT INJUNCTION" CLAIM HAS NO WEIGHT

"A permanent injunction is clearly a form of remedy, rather than a cause of action." *Kwan v. Schlein*, No. 05-CV-459, 2008 WL 4755345, at *4 (S.D.N.Y. Oct. 30, 2008).  A cause of action for a permanent injunction "cannot stand" on its own; it must be dismissed if the plaintiff's "substantive causes of action have been dismissed."  *Harbor Dist. Corp. v. GTE Operations Support Inc.*, 176 F. Supp. 3d 204, 217 (E.D.N.Y. 2016).  Because Conti's other claims fail, his Seventh Cause of Action for "permanent injunction" must also be dismissed.

---

[9] *See Lynch v. Ackley*, No. 3:12-CV-537, 2013 WL 6732540, at *3 (D. Conn. Dec. 19, 2013); *Douglas v. N.Y. State Adirondack Park Agency*, 895 F. Supp. 2d 321, 389 (N.D.N.Y. 2012); *Guthrie v. U.S. Fed. Bureau of Prisons*, No. 09-CV-990, 2010 WL 339759, at *4 (S.D.N.Y. Jan. 26, 2010); *Elmowitz*, 571 F. Supp.2d at 379.

## CONCLUSION

This lawsuit should never have been filed.  It should now be dismissed.

Dated: March 23, 2018
       New York, New York

                              EMERY CELLI BRINCKERHOFF
                              & ABADY LLP

                              _____/s/_____
                              Andrew G. Celli, Jr.
                              Katherine Rosenfeld
                              Douglas E. Lieb

                              600 Fifth Avenue, 10th Floor
                              New York, New York 10020

                              (212) 763-5000

                              *Attorneys for Defendant*