UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

DR. PAUL M. CONTI,

                              *Plaintiff*,

                                                    Case No. 17-cv-9268

               – against –

JOHN DOE,

                              *Defendant*.

------------------------------------------------------X

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

JUDD BURSTEIN, P.C.
5 Columbus Circle, Suite 1501
New York, New York 10019
(212) 974-2400
(212) 974-2944 (Fax)
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

POINT I

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

POINT II

CONTI HAS STATED A CLAIM FOR DEFAMATION PER SE . . . . . . . . . . . . . . . . . . . . . 6

     A.    General Principles Concerning The Law Of Defamation . . . . . . . . . . . . . . . . . . 6

     B.    The Defamatory Statements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     C.    The Publications Are Defamatory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     D.    Defendant's Arguments In Support of Dismissal Are Unavailing . . . . . . . . . . . 12

POINT III

DOE HAS STATED CLAIMS FOR VIOLATION OF OHIO CRIMINAL STATUTES . . . . . 19

POINT IV

DR. CONTI HAS STATED A CLAIM FOR INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

TABLE OF AUTHORITIES

<u>CASES</u>

*Albert v. Loksen,*
    239 F.3d 256 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 18

*Antares Mgmt. LLC v. Galt Global Capital, LLC,*
    No. 12-V-6075 (TPG),
    2013 WL 1209799 (S.D.N.Y. Mar. 22, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC,*
    151 F. Supp. 3d 287 (E.D.N.Y. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Chiavarelli v. Williams,*
    256 A.D.2d 111 (N.Y. App. Div. 1st Dep't 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Colantonio v. Mercy Med. Ctr.,*
    115 A.D.3d 902 (N.Y. App. Div. 2d Dep't 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Corp. Training Unlimited, Inc. v. Nat'l Broad. Co., Inc.,*
    981 F. Supp. 112 (E.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Davis v. Boeheim,*
    24 N.Y.3d 262 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Demas v. Levitsky,*
    291 A.D.2d 653 (N.Y. App. Div. 3d Dep't 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ferrara v. Esquire Bank,*
    153 A.D.3d 671 (N.Y. App. Div. 2d Dep't 2017) . . . . . . . . . . . . . . . . . . . . . . . . 17-18, 19

*Frenchtman v. Gutterman,*
    115 A.D.3d 102 (N.Y. App. Div. 1st Dep't 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Grayson v. Ressler & Ressler,*
    271 F. Supp. 3d 501 (S.D.N.Y. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Hobbs v. Imus,*
    266 A.D.2d 36 (N.Y. App. Div. 1st Dep't 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kenny v. Cleary*,
   47 A.D.2d 531 (N.Y. App. Div. 2d Dep't 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Koch v. Christie's Int'l PLC*,
   699 F.3d 141 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Konikoff v. Prudential Ins. Co. of Am.*,
   234 F.3d 92 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Levy v. Educ. Records Bur., Inc.*,
   269 A.D.2d 277 (N.Y. App. Div. 1st Dep't 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Liberman v. Gelstein*,
   80 N.Y.2d 429 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

*Mann v. Abel*,
   10 N.Y.3d 271 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*McNamee v. Clemens*,
   762 F. Supp. 2d 584 (E.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*O'Mahony v. Whiston*,
   No. 652621/2014,
   2016 WL 5931368 (Sup. Ct. N.Y. Cty. Oct. 7, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pontos Renovation Inc. v. Kitano Arms Corp.*,
   226 A.D.2d 191 (N.Y. App. Div. 1st Dep't 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Public Relations Soc. of Am., Inc. v. Road Runner High Speed Online*,
   799 N.Y.S.2d 847 (Sup. Ct. N.Y. Cty. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13, 14

*Restis v. Am. Coalition Against Nuclear Iran, Inc.*,
   54 F. Supp. 3d 705 (S.D.N.Y. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 12

*Rutman v. Giedel*,
   67 A.D.2d 662 (N.Y. App. Div. 2d Dep't 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Sabratek Corp. v. Keyser*,
   No. 99-CV-8589,
   2000 WL 423529 (S.D.N.Y. Apr. 19, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

*Sandals Resorts Int'l Ltd. v. Google, Inc.*,
    86 A.D.3d 32 (N.Y. App. Div. 1st Dep't 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

*Stern v. Cosby*,
    645 F. Supp. 2d 258 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

*Wahrendorf v. City of Oswego*,
    72 A.D.3d 1604 (N.Y. App. Div. 4th Dep't 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wilcox v. Newark Valley Cent. Sch. Dist.*,
    74 A.D.3d 1558 (N.Y. App. Div. 3d Dep't 2010) . . . . . . . . . . . . . . . . . . . . . . . 14-15, 18

*Zervos v. Trump*,
    No. 150522/17,
    2018 WL 1404883 (N.Y. Sup. Ct. Mar. 20, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*600 W. 115th St. Corp. v. Von Gutfeld*,
    80 N.Y.2d 130 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## STATUTES AND OTHER AUTHORITIES

*Prosser and Keeton on the Law of Torts* § 112, at 791 (5th ed. 1984) . . . . . . . . . . . . . . . . . . . . . 9

R.C. § 2903.21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

R.C. § 2903.211 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

R.C. § 2903.22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22, 23

R.C. § 2917.21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 19, 22

## INTRODUCTION

Plaintiff Dr. Paul M. Conti ("Plaintiff" or "Dr. Conti") respectfully submits this Memorandum of Law ("MOL") in opposition to the Motion to Dismiss the First Amended Complaint ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendant John Doe ("Defendant" or "Doe"); together with such other and further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

The FAC states claims for (a) defamation, (b) violations of various Ohio criminal statutes, which afford Plaintiff a private right of action, and (c) intentional infliction of emotional distress. These claims are well-pled. To distract from that fact, Defendant seeks to transform this case into a referendum on whether a psychiatrist has any right to litigate against a former patient, no matter how egregious the alleged conduct may be. In response, we ask the Court to assume, *arguendo*, that Defendant had paid one of his mob associates to assault Dr. Conti and he suffered a permanent injury. Plainly, under that scenario, Defendant would not get off scot free just because he happened to be a former patient. Accordingly, it is undeniable that given appropriate circumstances, conduct by a psychiatrist's former patient is actionable, and the conduct alleged herein qualifies.

Moreover, Plaintiff had good reason to be fearful of Defendant's violent tendencies. One of Defendant's handlers assaulted a colleague of Plaintiff, who had accompanied him to Las Vegas in an effort to maintain some behavioral controls during a trip that Defendant had insisted on taking despite Dr. Conti's opposition. On the same trip, Plaintiff's colleague also witnessed Defendant assault his subordinate simply because he commented about a dog's behavior. As Dr. Conti well knows, Defendant suffers from personality disorders which manifest themselves, in part, through his abuse of Xanax and cocaine. Defendant's resulting instability and lack of impulse control give rise to credible threats of violence. This is especially so in light of Defendant's ties to organized crime,

and how he routinely pays criminals large sums of money in connection with his gambling debts. It would be a simple thing for Defendant to pay to have violence done against Plaintiff.

As for his legal arguments, Defendant generally misconstrues the liberal standard afforded Plaintiff in defending this motion. As the movant, Defendant is not the one entitled to beneficial inferences. Yet, on many issues, Defendant simply posits factual assertions that are contrary to the FAC's allegations, and for which there is no support in the record other than Defendant's MOL.

With regard to defamation, Defendant argues that nothing he says can be defamatory, because nobody takes him seriously. But an objective analysis confirms that the statements are defamatory. Defendant also argues that his "speech" is protected by the common interest privilege. To credit that defense, the Court would have to accept, **as a matter of law**, that Defendant sent all of the communication exhibited to the FAC in furtherance of his treatment. The notion that Defendant was seeking out Dr. Conti's medical advice when he sent him vicious emails with a copy to Alan Dershowitz does not pass the laugh test. By this point in time, Defendant had already burned his bridges with Dr. Conti – with napalm. Defendant did not "cc" Alan Dershowitz because he wanted his medical opinion. He was sending Plaintiff a threat, and not a veiled one.

Defendant also facilely asserts that Plaintiff should have simply blocked his communications, but that was not a realistic option. Plaintiff could not afford to remain wilfully blind to the various falsehoods that Defendant was spreading about him to Alan Dershowitz and prominent members of Dr. Conti's field. Blocking Doe's communications also could have left Plaintiff – a father and a husband – unaware of a credible and imminent threat of physical harm.

In arguing for dismissal of Plaintiff's claims under various Ohio criminal statutes, Defendant abandons his prior position that Ohio criminal law governs Defendant's alleged conduct. In support

2

of his original motion to dismiss, Defendant had been unequivocal: "**The Ohio criminal statute concerning 'telecommunications harassment,' Ohio R.C. § 2917.21, <u>which would govern the conduct alleged here if anything did</u>, contains no such cause of action and is not privately enforceable.**" (*See* Doc. No. at 9) (emphasis supplied).   As is also evidenced by this quote, Defendant argued that Ohio criminal law applied because he erroneously thought that it did not provide for a private right of action. (*See id.*: "Ohio R.C. § 2917.21 ... is not privately enforceable.")

Now, Defendant tries to walk back his prior admission, and instead argues that Oregon law governs his criminal conduct.   The reason for the about face is obvious – since he filed his first motion to dismiss, Defendant has learned that Ohio criminal law is, in fact, privately enforceable. Specifically, after Defendant acknowledged in his original MOL in support of dismissal that Ohio's criminal statutes applied to Defendant's conduct, Plaintiff responded by filing the FAC as of right, which specifically adopted Ohio law in reliance upon Defendant's admission. (*See* Doc. No. 31, FAC, at ¶ 60).   In opposing Defendant's motion to stay discovery, Plaintiff further explained how Ohio law allows for a private right of enforcement.   (Doc. No. 32 at 3-6).   Indeed, Defendant now admits that this is the case. (*See* Defendant's MOL in Support at 15, n. 3: "Doe acknowledges that such a cause of action exists.").

Defendant's choice of law reversal notwithstanding, he was clearly correct the first time around.   Doe is admittedly a resident of Ohio, and Ohio has a far more significant interest in the enforcement of its criminal laws than Oregon.   At a minimum, Plaintiff must be allowed to take discovery of Defendant as to where he was when he sent various harassing communications in violation of Ohio law.   Fundamentally, the case law relied upon by Defendant in his choice of law

3

analysis all concerns torts – none of the authority is based on criminal violations. Consequently, Defendant's choice of law analysis and the authority it relies upon are inapposite.

Regardless, the Court should find that estoppel principles bar Defendant from changing his position. Plaintiff reasonably relied to his detriment upon Defendant's prior representation that Ohio law governs by filing the FAC – and exercising his opportunity to amend as of right under Fed.R.Civ.P. 15(a). (*See* Doc. No. 31). Defendant, in turn, received the reciprocal benefit of getting Plaintiff to cash in his one chit to amend as of right. Now, Defendant wants to take advantage of Plaintiff's reasonable reliance to obtain dismissal of the FAC based on his new claim that Oregon law controls. This is a classic bait and switch, and it would be inequitable for the Court to allow it.

As for the intentional infliction of emotional distress claim, the issue boils down to whether the Court finds that the alleged conduct is sufficiently egregious to state a claim. Here, it is.

## STATEMENT OF FACTS

Dr. Conti graduated from the Stanford University School of Medicine and completed his training at Stanford and at Harvard University, where he served as Chief Resident of the Hospital Psychiatric Unit at Beth Israel Deaconess Medical Center. (FAC ¶ 10). He also has served on the medical faculty at Harvard. (*Id.*). Dr. Conti has practiced in Oregon for over a decade, where, during his first full year of practice in 2008, he was named one of the state's top psychiatrists. (*Id.*).

Doe is the youngest son of a fabulously wealthy, high-profile family. (*Id.* ¶ 3). Clinically, Doe suffers from Narcissistic Personality Disorder, including Borderline and Antisocial traits. (*Id.* ¶ 3). His condition manifests itself in a variety of destructive ways, including an addiction to Xanax, frequent cocaine use, solicitation of prostitutes, thefts of money from his parents, multi-million dollar gambling losses, as well as violent, abusive, and threatening behavior. (*Id.* ¶ 3).

4

By the spring of 2016, Doe's family was in crisis because Doe was spinning out of control in a host of ways. (*Id.* ¶ 4).  Having heard about Dr. Conti's sterling reputation, Doe's parents reached out to ask him to treat their son. (*Id.*).  Dr. Conti agreed to treat Doe. (*Id.*).  Doe initially attended therapy sessions, but resisted meaningful treatment. (*Id.* ¶ 19).

In the fall of 2016, Dr. Conti engaged in conversations with the family about the details of his conclusion that Doe suffers from Narcissistic Personality Disorder, including Borderline and Antisocial traits. (*Id.* ¶ 25).  Doe's parents agreed that the diagnosis made perfect sense and expressed relief over finally understanding why their son acted as he did. (*Id.*)  However, Doe's parents resisted using their leverage to crack down on his behavior and promote compliance with Dr. Conti's recommendations that Doe be tapered off of using Xanax, be subject to behavioral boundaries, and stay in Portland, Oregon, for treatment. (*Id.* ¶¶ 26, 28).

In or around March 2017, Dr. Conti advised Doe's parents that he could not ethically continue treating their son unless (a) Doe's Xanax use was tapered-off and then discontinued, and (b) Doe engaged in treatment in earnest. (*Id.* ¶ 30).  Doe's parents agreed to these conditions. (*Id.*). Around this same time, Doe telephoned Dr. Conti, who was in London at the time, and stated that he wanted to work on his treatment as he had not done before. (*Id.* ¶ 33).  Dr. Conti agreed to start anew. (*Id.*).  That plan soon changed, though, as Doe abruptly and without notice left Portland and moved to a luxury hotel in Los Angeles. (*Id.* ¶ 34).  In light of this new development, Dr. Conti told Doe's parents that he no longer thought he could help Doe. (*Id.* ¶ 34).  Doe's parents begged him not to give up by promising that they would convince Doe to return to Portland and agree to the stipulations about Doe's care. (*Id.*).  However, Doe refused to return to Portland, and instead began his assault on Dr. Conti. (*Id.*).

5

On April 6, 2017, Doe sent Dr. Conti an outrageous text message stating, in relevant part: "Your one big fucking fraud. You're a fucking con. That's it. A fucking fraud. What the narrative you put on me about being a gambler??? Addicted to xanax?? You dumb fuck Steve wonder could see that from a fucking mile you little fucking faggott." (*Id.* ¶ 35).  That same day, Dr. Conti emailed Doe's parents that he had to end treatment.  (*Id.* ¶ 36).  Despite Dr. Conti's intention to end treatment, Doe's campaign of harassment and defamation continued.  These messages are annexed to the FAC and incorporated herein by reference.

## ARGUMENT

**POINT I:    STANDARD OF REVIEW**[1]

**POINT II:    CONTI HAS STATED A CLAIM FOR DEFAMATION *PER SE***

**A.    General Principles Concerning The Law Of Defamation**

Under New York law, to establish a claim for defamation a party must allege: "(1) a false statement of fact, (2) about plaintiff, (3) published to a third party without authorization or privilege, (4) through fault amounting to at least negligence, and (5) causing defamation per se or special harm." *Antares Mgmt. LLC v. Galt Global Capital, LLC*, No. 12-V-6075 (TPG), 2013 WL 1209799, at *13 (S.D.N.Y. Mar. 22, 2013).  A statement that "'tend[s] to injure another in his or her trade, business or profession is defamatory *per se*.'" (*Id.*) (quoting *Stern v. Cosby*, 645 F. Supp. 2d 258,

---

[1]     When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 513 (S.D.N.Y. 2017) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  To survive the motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted).  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Id.*).

273 (S.D.N.Y. 2009) (internal quotes omitted)).  "In such a situation, the plaintiff need not prove

special damages, *i.e.*, economic or financial loss." (*Id.*).  As stated in W. Page Keeton et al., *Prosser*

*and Keeton on the Law of Torts* § 112, at 791 (5th ed. 1984):

> [I]t is actionable without proof of damage to say of a physician that he is a butcher
> . . . , of an attorney that he is a shyster, of a school teacher that he has been guilty of
> improper conduct as to his pupils, of a clergyman that he is the subject of scandalous
> rumors, of a chauffeur that he is habitually drinking, of a merchant that his credit is
> bad or that he sells adulterated goods, of a public officer that he has accepted a bribe
> or has used his office for corrupt purposes . . . – since these things discredit [one] in
> his chosen calling.[2]

Expressions of pure opinion, as opposed to statements of fact, are not actionable, and receive

full constitutional protection. *Restis v. Am. Coalition Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705,

718 (S.D.N.Y. 2014).  Whether a statement is an opinion or fact depends on "(1) whether the specific

language at issue has a precise meaning which is readily understood or whether it is indefinite and

ambiguous; (2) whether the statement is capable of being objectively characterized as true or false;

(3) examination of the full context of the communication; and (4) consideration of the broader social

context or setting surrounding the communication." *Grayson*, 271 F. Supp. 3d at 516.  Furthermore,

while a pure opinion cannot be the subject of a defamation claim, an opinion that "implies that it is

based upon facts which justify the opinion but are unknown to those reading or hearing it, . . . is a

'mixed opinion' and is actionable." *Davis v. Boeheim*, 24 N.Y.3d 262, 269 (2014) (citations and

internal quotation marks omitted).  "What differentiates an actionable mixed opinion from a

privileged, pure opinion is the implication that the speaker knows certain facts, unknown to [the]

---

[2]      Consistent with his shifting views on choice of law, Defendant asserts that New York
law applies to Plaintiff's defamation claim because there is no discernible difference between it and
the law of Ohio or Oregon.  Plaintiff does not dispute this contention, and will address Defendant's
defamation arguments under New York law.  However, Plaintiff reserves the right to change his
position if the facts revealed in discovery, or relevant legal principles, should warrant it.

audience, which support [the speaker's] opinion and are detrimental to the person being discussed." (*Id.*) (citations and internal quotation marks omitted). "'When the criticism takes the form of accusations of criminal or unethical conduct, or derogation of professional integrity in terms subject to factual verification, the borderline between fact and opinion has been crossed.'" (*Id.*) (quoting *Restis*, 53 F. Supp. 3d at 721-22).

On a motion to dismiss, "[i]t is for the court to decide whether a statement, in the context of the overall publication or broadcast, is reasonably susceptible to defamatory meaning." *Corp. Training Unlimited, Inc. v. Nat'l Broad. Co., Inc.*, 981 F. Supp. 112, 118 (E.D.N.Y. 1997). Dismissal of a defamation claim on a Rule 12(b)(6) motion is only appropriate if the statements are not "reasonably susceptible to defamatory meaning." (*Id.*) "If the statement is subject to defamatory meaning, it is then for the jury to determine ...." (*Id.*).

## B.     **The Defamatory Statements**

Several of Doe's statements assert outright falsehoods or opinions that imply facts unknown to the persons who received the messages, and are actionable. These alleged defamatory statements and the underlying publications are as follows:

(a)     *Defendant published that Plaintiff committed malpractice by abandoning his treatment for medically invalid reasons and general incompetence*

The statements supporting this claim are contained in Defendant's June 13, 2017 email to his parents, Dr. Conti, Schorr, Jenike, and Dershowitz, where he wrote that:

> [H]ad my parents not seen your pure negligence you mother fucker I would probably be under the care of your incompetent ass. . . . I'm in the hell of all hells and the only reason you terminated treatment was because my parents caught you on your bullshit. . . . Your a coward and a fraud. SHAME ON you for abandoning a vulnerable person in misery. . . . You abandoned me when I could have gotten out.

(FAC ¶ 56(A) and Exhibit F thereto).

In that same email, Doe states that "[y]ou were playing a mind game with me and you work at brighams women's hospital I hear you didn't the most bang up job." (Exhibit F to the FAC). While Brigham and Women's Hospital is part of the Harvard system in which Dr. Conti worked, he did no clinical work at that particular hospital, and the statement was thus unquestionably false.[3]

(b)   *Defendant published that Dr. Conti engaged in fraudulent billing*

The statements supporting this claim are contained in the June 15, 2017 email Doe sent to his parents, Dr. Conti, Meyer, Jenike, and Dershowitz, where he wrote that:

> I realized you equate everything to money you whore. You know a whore is more honest than your ass and I have a lot more respect for a whore than you. A whore you at least you know what your getting. Your a fucking fraud that abandoned me in treatment so who the fuck do you think you are.

(FAC ¶ 56(B) and Exhibit B thereto).

(c)   *Defendant published that Plaintiff engaged in professional misconduct by lying about the reasons for discontinuing treatment*

The statements supporting this claim are contained in a July 14, 2017 email Doe sent to his parents, Dr. Conti, Jenike, Lippert, and Dershowitz, where he wrote that:

> [Y]ou knew what you were doing. You were putting the nail on my coffin
>
> Now when I have called you out had I not done that, would you have ended treatment. You got caugggt MALPRACTICE.

---

[3]   Consequently, Doe does not even contest that this is a patently false statement of fact. Moreover, the statement implies that other, undisclosed people, for undisclosed reasons, hold a low opinion of Dr. Conti's performance at the hospital. This plainly implies that the statement is based on undisclosed facts. *See Public Relations Soc. of Am., Inc. v. Road Runner High Speed Online*, 799 N.Y.S.2d 847, 853 (Sup. Ct. N.Y. Cty. 2005) ("The writer of the e-mail implies that his opinion, as a whole, is shared by other persons in the organization, who are not named. Thus, there is a basis on which the reader can evaluate the opinion of others alleged to share the same views as the writer of the e-mail. Such statements of mixed opinion are actionable.").

9

> Now you wrote the reason for ending treatment was I wasn't following the titration process, another fucking poor attempt of deflection and now I found out this week the real reason was because in February you didn't want to continue treatment.   You dumb shit get your fucking story straight another poor attempt of deflection MALPRACTICE
>
> ***
>
> And secondly WHY THE FUCK IF YOU DID NOT WANT TO TREAT ME IN FEBRUARY SAY SO. * * * Your a coward a fraud and you better get your legel counsel. I want to show the people the fraud you are.

(FAC ¶ 56(C) and Exhibit H thereto).

      (d)    *Defendant published that Plaintiff committed malpractice by abandoning Doe's treatment for medically invalid reasons and general incompetence, and further* <u>*engaged in professional misconduct by intentionally causing harm to Doe*</u>

The statements supporting this claim are contained in Defendant's July 28, 2017 email to

Plaintiff, Dershowitz, and Meyer, where he wrote that:

> WE all know with the greatest certainty you got red handed caught. * * * You know when you stopped the treatment it killed me. * * * Your smart, I think it was a part of your plan only to further your attempt to shame me. That's all you ever were good at was SHAME. So you know that when you ended treatment again because you were called out you know what I would do. * * * That's pure cruelty. Your a disgusting human being. I ask you to get your legel counsel because Dr Conti you committed malpractice?
>
> * * *
>
> It's SHAMEFUL. Go get your legel counsel. Thank you for making me and putting me as hopeless as ever. Fuck YOU you fucking piece of shit. Your not a Dr, your a fucking coward.

(FAC ¶ 56(D) and Exhibit I thereto).

      (e)    *Defendant published that Dr. Conti committed professional misconduct by lying* <u>*about Doe's treatment*</u>

The statements supporting this claim are contained in an August 10, 2017 email Doe sent to

his father, Dr. Conti, Dershowitz, and Meyer, where he wrote that:

> You flat out lied about the titration. And you had my family going that I was this and I was that. You spoke with such confidence. And you got caught. Those are facts.

10

(FAC ¶ 56(E) and Exhibit J thereto).

Separate and apart from these written defamatory statements, Doe also slandered Plaintiff by orally publishing false statements to Dr. Conti's colleagues stating that Dr. Conti engaged in a therapeutic telephone call while "drunk," and solicited prostitutes on a work trip. (FAC ¶¶ 33, 57).

## C.    The Publications Are Defamatory

Plaintiff is a psychiatrist. Accusations that Dr. Conti is unfit to practice because he intentionally harmed a patient under his care, lied about treatment, and then abandoned treatment when the patient was most vulnerable are devastating to his reputation. The Second Circuit's opinion in *Albert v. Loksen*, 239 F.3d 256 (2001), is instructive. In that case, the plaintiff, Albert, worked as a physicist in a hospital's radiology department and was fired. (*Id.* at 261). Albert subsequently sued his supervisor, Loksen, for defamation arising from allegedly false accusations Loksen made to the hospital's administrator and others. (*Id.* at 267). The Second Circuit reversed the trial court's grant of summary judgment on the defamation claim, reasoning that "[a]ccusing a hospital worker such as Albert of compromising the welfare of patients ... may 'induce an evil opinion of him in the minds of right-thinking persons,'. . . and are therefore capable of a defamatory meaning." (*Id.* at 267) (citation omitted). As in *Albert*, Defendant in this case does not make blanket, general assertions that Dr. Conti was negligent, engaged in malpractice, *etc.* Instead, Doe states that Dr. Conti lied to him, abandoned him, and intentionally harmed him with specific supporting facts alleged. These are accusations that are capable of being proven true or false.[4]

---

[4]    *See Grayson*, 271 F. Supp. 3d at 516 ("Grayson also alleges that Defendants claimed she as acting unethically because she was conflicted in her representation of TW Airlines as a result of her purported violations of the settlement agreement and protective order in the *Jet Star* Action. Whether an individual was subject to a conflict of interest has a precise meaning that can be true or

(continued...)

For example, Doe's statement that Dr. Conti was dishonest with him in an attempt to cover up his reason for ending treatment is certainly actionable. *Albert v. Loksen*, 239 F.3d 256, 267 (2d Cir. 2001) (holding that an accusation that a hospital worker, *inter alia*, was "dishonest with respect to a specific set of statements that he made in an effort to cover up his safety violations" was actionable); *Zervos v. Trump*, No. 150522/17, 2018 WL 1404883, at *5 (N.Y. Sup. Ct. Mar. 20, 2018) ("A reader or listener, cognizant that defendant knows exactly what transpired, could reasonably believe what defendant's statements convey: that plaintiff is contemptible because she 'fabricated' events for personal gain."). Furthermore, the claim that Dr. Conti ended treatment because he committed misconduct is, at minimum, an actionable mixed opinion because a reasonable reader would not know what "bullshit" Doe's parents "caught" Dr. Conti on, or for what Dr. Conti supposedly "got red handed caught [sic]". Whether Dr. Conti indeed was "caught" for doing something, and whether it constitutes misconduct, is subject to factual verification. *See Restis*, 53 F. Supp. 3d at 721-22 (holding that accusations of unethical conduct or derogation of professional integrity "in terms subject to factual verification" are actionable).

## D.   Defendant's Arguments In Support of Dismissal Are Unavailing

Defendant does not dispute that most of the allegedly defamatory statements would tend to injure Dr. Conti in his chosen profession, or that the statements were "crude and regrettable" (Defendant's MOL, at 1) – nor could he do so plausibly. Instead, Defendant argues that he gets a

---

[4](...continued)
false."); *Chiavarelli v. Williams*, 256 A.D.2d 111, 113 (N.Y. App. Div. 1st Dep't 1998) (Defendant's "assertion that plaintiff would misuse his supervisory power over residents to obtain sexual favors clearly reflected adversely on plaintiff's integrity as a physician and professor of medicine."); *Restis*, 53 F. Supp. 3d at 721-22 ("[W]hen the criticism takes the form of accusations of criminal or unethical conduct, or derogation of professional integrity in terms subject to factual verification, the borderline between fact and opinion has been crossed.").

mulligan because his statements were so caustic, over-the-top, and vulgar that no reasonable reader would understand him to be stating facts. (*Id.* at 6-8.) If Defendant were correct, all a potential defamation defendant would have to do to escape liability would be to sprinkle some over-the-top insults along with the defamatory statements.

A potentially defamatory email "must be viewed as a whole and [in] the context in which it is written, in a light most favorable to [plaintiff]." *See Public Relations Soc. of Am., Inc. v. Road Runner High Speed Online*, 799 N.Y.S.2d 847, 852 (Sup. Ct. N.Y. Cty. 2005). By way of contrast, in the cases Doe cites in support of his argument, the context in which the defamatory statements were made would clearly indicate to the recipient that the statement was protected opinion or hyperbole.[5] Nor does the fact that most of the statements happen to have been transmitted through the Internet somehow magically excuse them. Doe cites to several cases for the proposition that "'[t]he culture of Internet communications . . . has been characterized as encouraging a freewheeling, anything-goes writing style.'" (Defendant's MOL, at 8 (quoting *Sandals Resorts Int'l Ltd. v. Google*,

---

[5]      *See Mann v. Abel*, 10 N.Y.3d 271, 276-77 (2008) (statements at issue were included in a column on the opinion page of a newspaper and accompanied by an editor's note that the article was an expression of opinion by the author); *Wahrendorf v. City of Oswego*, 72 A.D.3d 1604, 1605 (N.Y. App. Div. 4th Dep't 2010) ("Here, the tone of the statements at issue is ironic, sarcastic and caustic; it is evident that the [statements were] intended to be invective expressed in the form of heavy-handed and nonsensical humor.") (citations and internal quotation marks omitted); *Hobbs v. Imus*, 266 A.D.2d 36, 37 (N.Y. App. Div. 1st Dep't 1999) (statements must be "considered in the context of the ribald radio 'shock talk' show in which they were made"); *600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 141 (1992) ("[T]he relevant circumstances were that (1) the speakers were citizens, (2) the debate was heated, and (3) the forum was an official governmental session.").

In contrast, the statements made by Doe (a) were not published in the opinion section of a newspaper, and certainly were not accompanied by an "Editor's Note"; (b) were not an attempt at heavy-handed, nonsensical humor; (c) were not made on a well-known "shock jock" radio show; and (d) were not expressions of citizens on matters of public concern made during a heated community board hearing. Instead, they were emails and oral statements made to people who had no reason to believe that Doe would lie about what occurred during his (formerly) confidential relationship.

*Inc.*, 86 A.D.3d 32, 43 (N.Y. App. Div. 1st Dep't 2011))).  However, there is no rule that "no comments posted on an online forum can ever be found to be defamatory." *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 295 (E.D.N.Y. 2015).  Furthermore, the statements at issue in the cases Doe cites were not transmitted by an identified individual through his private email directly to identifiable individuals whom the defendant had selected.[6]

Turning to specifics, Doe contends that the portions of the e-mails accusing Dr. Conti of negligence, incompetence, fraud, and malpractice cannot be susceptible to a defamatory connotation. (Defendant's MOL at 8; *see also* Exhibits F, B, H, I to the FAC).  In isolation, such statements might not be actionable: "courts have found general statements that someone acted unprofessionally or unethically are opinions." *Grayson*, 271 F. Supp. 3d at 516.  However, Doe did more than make general statements of opinion calling Dr. Conti unfit to practice psychiatry.  Instead, Doe attributed to Dr. Conti specific, false acts underscoring his assertion that Dr. Conti is professionally unfit.  Such statements have been held to be defamatory.  *See Public Relations Soc. of Am., Inc. v. Road Runner High Speed Online*, 799 N.Y.S.2d 847, 853 (Sup. Ct. N.Y. Cty. 2005) (citing *Chiavarelli v. Williams*, 256 A.D.2d 111, 113 (N.Y. App. Div. 1st Dep't 1998)).

Furthermore, while Doe claims that Dr. Conti was negligent and committed malpractice because of his abandonment, intentional harm, and lies, Doe does not provide a full factual basis for these accusations.  "[I]nasmuch as each statement [is] unaccompanied by a full recitation of the facts

---

[6]     *See Sandals*, 86 A.D.3d at 34 (claim arises "out of an e-mail sent to multiple undisclosed recipients" by an "unknown writer"); *Bellavia Blatt & Crossett, P.C.*, 151 F. Supp. 3d at 290 (statement was made in the "comment" section appended to a news story published online); *O'Mahony v. Whiston*, No. 652621/2014, 2016 WL 5931368, at *6 (Sup. Ct. N.Y. Cty. Oct. 7, 2016) (potentially defamatory statements were published on Facebook and primarily constituted pejoratives and insults).

and implie[s] a basis in those undisclosed facts, they constitute an actionable mixed opinion." *Wilcox v. Newark Valley Cent. Sch. Dist.*, 74 A.D.3d 1558, 1562 (N.Y. App. Div. 3d Dep't 2010).

However, Doe claims that he made clear what he was concerned about, "namely Conti's unavailability, his failure to timely prescribe prescription medication, and the inaccurate statements he made to Doe's parents[.]" (Defendant's MOL, at 9). While Defendant's MOL does mention that Doe thinks that Dr. Conti has been unavailable and that he is angry that Dr. Conti called in a prescription late on one occasion, a reasonable reader would not believe that Doe's vitriolic accusations are based on those incidents alone – even if a mere MOL was sufficient to support those allegations. As for the alleged "inaccurate statements" Dr. Conti made to Doe's parents, they remain unidentified. A reasonable reader would further believe that there are undisclosed facts bolstering Doe's claims because Doe threatens Dr. Conti with a lawsuit throughout his emails.[7]

The cases Doe cites for the proposition that the alleged defamatory statements do not state facts are inapposite. In *Sabratek Corp. v. Keyser*, No. 99-CV-8589, 2000 WL 423529 (S.D.N.Y. Apr. 19, 2000), the court held oral statements made by defendant generally accusing plaintiff of being a liar were not actionable. (*Id.* at *6). The court further held that written statements made in a newsletter were not actionable because they were accompanied by a full recitation of the facts. (*Id.*). These facts are not analogous to ours. The court in *Sabratek* also took into account the context in which the written statements were made – a newsletter – and determined that they were

---

[7]     Doe's contention that Dr. Conti has not alleged falsity is patently untrue. Dr. Conti unequivocally pleads that Doe "falsely asserted" that Dr. Conti abandoned Doe, intentionally causing harm to Doe, and lying about Doe's treatment. (*See* FAC ¶¶ 56(A), (D), (E)).

appropriately characterized as opinion. (*Id.*). Here, the context in which Doe's statements were made does not excuse him from being held accountable.[8]

Doe argues that any statement he made ascribing to Dr. Conti an improper motive for terminating treatment is not actionable because "statements about a person's motivation for certain conduct . . . are generally not actionable because they are non-factual and thus non-verifiable." (Defendant's MOL, at 10). But the statements at issue here do not constitute pure speculation about Dr. Conti's reasons for ending treatment. Instead, Doe falsely accused Dr. Conti of (a) lying about the reasons he ended treatment (*see* Exhibit H to the FAC); and (b) ending treatment because he was caught while engaged in professional misconduct. (*See* Exhibit F to the FAC).

Doe contends that his statement calling Dr. Conti a "whore" who "equate[s] everything to money" (*see* Exhibit B to the FAC) cannot be defamatory because there is no way to objectively determine whether Conti "equates everything to money." (Defendant's MOL, at 10-11). However, earlier in the same email, Doe asks Dr. Conti: "[W]hat the fuck have you done in your life?? Bilked people out of money." (Exhibit B to the FAC). Thus, read in context, Doe's accusation that Dr. Conti is a "whore" for money would lead a reasonable reader to believe that Dr. Conti is overly

---

[8]        Similarly, in *Frenchtman v. Gutterman*, 115 A.D.3d 102 (N.Y. App. Div. 1st Dep't 2014), the court dismissed a defamation claim arising from statements made by a former client in a letter to an attorney because, "viewed in their context, these statements amount to the opinions and beliefs of dissatisfied clients about their attorney's work." (*Id.* at 106). However, there was no indication that defendant's letter disclosed the grounds for his opinions about plaintiff's work that were capable of being proven true or false. Moreover, the court held that the statements would have been protected by the qualified privilege because the only third parties they were allegedly published to were defendant's employees. (*Id.* at 106-07). *See also Pontos Renovation Inc. v. Kitano Arms Corp.*, 226 A.D.2d 191 (N.Y. App. Div. 1st Dep't 1996). There, the persons attending a meeting at which the allegedly defamatory statements were made had knowledge of the underlying facts. (*Id.* at 191-92). In the present case, there is no indication in the pleading that any of the parties – save perhaps Dr. Conti, Doe, and Doe's parents and Dr. Conti's employees in some instances – had knowledge of the underlying facts. Accordingly, dismissal on this ground would be inappropriate.

motivated by money, and therefore has no qualms about "bilking" his patients.  Such an accusation

is clearly injurious to Dr. Conti's reputation.  *See McNamee v. Clemens*, 762 F. Supp. 2d 584, 600

(E.D.N.Y. 2011) ("Accusations of venality have long been considered defamatory when not

grounded in truth or reasonable basis." (citing cases)).

Doe argues that Plaintiff has not stated a claim for slander based on Doe's alleged statements

to Dr. Conti's employees that he was drunk and in the company of prostitutes while on a therapeutic

call.  Doe asserts that these allegations do not fairly put Doe on notice of what statements Dr. Conti

claims are slanderous, or their precise context.  (Defendant's MOL, at 13).  However, this argument

falls short, because Dr. Conti has pleaded that this statement was made to employees and clinicians

at Pacific at some point after Doe telephoned Dr. Conti in London.  (FAC ¶¶ 33, 57).  Moreover, Doe

repeated this accusation in an April 7, 2017 email: "Now I don't know if you were drunk or not but

that girl didn't seem to a girl of moral fiber."  (Exhibit E to the FAC).

Doe further argues that the statement is not actionable because "whether Conti had contact

with prostitutes has no bearing on his fitness or competence as a psychiatrist[.]" (Defendant's MOL,

at 13).  However, Paragraph 57 of the FAC and Exhibit E thereto make clear that Doe was accusing

Dr. Conti of being drunk and with a prostitute while he was on a therapeutic telephone call with Doe

in London.  An accusation that Dr. Conti was engaged in such salacious conduct while trying to treat

a patient is actionable as defamation *per se*.  *See Rutman v. Giedel*, 67 A.D.2d 662, 662 (N.Y. App.

Div. 2d Dep't 1979) ("The false accusation that a police officer was drunk or intoxicated while on

duty is slanderous per se and requires no allegation or proof of special damages.").

Doe argues that none of the statements at issue are actionable because they are protected by

the qualified privilege that attaches to statements "made by one person to another upon a subject in

17

which both have an interest[.]" *Ferrara v. Esquire Bank*, 153 A.D.3d 671, 673 (N.Y. App. Div. 2d Dep't 2017). However, any such argument turns on issues of fact, and is therefore wholly inappropriate to be decided on a motion to dismiss. Here, moreover, it is facially apparent that Defendant was not undergoing therapy when he defamed and harassed Plaintiff. Instead, Defendant was seeking a pound of flesh by copying a prominent attorney and humiliating Dr. Conti before his peers. Importantly, the Appellate Division of the New York State Supreme Court has stated unequivocally that "[a] claim of qualified privilege is an affirmative defense to be raised in defendants' answer and 'does not lend itself to a preanswer motion to dismiss pursuant to CPLR 3211(a).'" *See Wilcox v. Newark Valley Cent. Sch. Dist.*, 74 A.D.3d 1558, 1562 (N.Y. App. Div. 3d Dep't 2010) (quoting *Demas v. Levitsky*, 291 A.D.2d 653, 661-62 (N.Y. App. Div. 3d Dep't 2002)). "[D]efendants must plead the privilege as an affirmative defense and thereafter move for summary judgment on that defense[.]" (*Id.*). Accordingly, it is unsurprising that Doe does not cite a single case where a pre-answer motion to dismiss was granted on qualified privilege grounds.[9]

Regardless, a defendant "forfeits this qualified privilege by making a false, defamatory statement with 'malice' of either the common-law or constitutional variety." *Albert v. Loksen*, 239 F.3d 256, 272 (2d Cir. 2001) (quoting *Liberman*, 80 N.Y.2d at 437-38)). Common-law malice "'mean[s] spite or ill will,' and defeats the privilege only if it is 'the one and only cause for the publication.'" (*Id.*) (quoting *Liberman*, 80 N.Y.2d at 437, 439). "Constitutional or 'actual' malice

---

[9]      *See Ferrara*, 153 A.D.3d at 673 (denying motion to dismiss); *Landon v. Kroll Lab. Specialists, Inc.*, 22 N.Y.3d 1, 3 (2013) (denying motion to dismiss); *Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992) (summary judgment case); *Levy v. Educ. Records Bur., Inc.*, 269 A.D.2d 277, 277 (N.Y. App. Div. 1st Dep't 2000) (summary judgment case); *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 94 (2d Cir. 2000) (summary judgment case); *Kenny v. Cleary*, 47 A.D.2d 531, 531 (N.Y. App. Div. 2d Dep't 1975) (dismissing only those claims arising from statements that were subject to the absolute privilege granted to statements made during judicial proceedings).

means publication with 'knowledge that [the statement] was false or . . . reckless disregard of whether it was false or not.'" (*Id.*) (quoting *Liberman*, 80 N.Y.2d at 438). "'Reckless disregard' as to falsity means that the statement is 'made with [a] high degree of awareness of [the publication's] probably falsity' or 'while the defendant in fact entertained serious doubts as to the truth of [the] publication.'" (*Id.*) (quoting *Liberman*, 80 N.Y.2d at 438) (internal quotation marks omitted).

Here, Dr. Conti pleads that Doe published the statements at issue with "ill-will, vengefulness, hatred, or reckless disregard" of Doe's rights. (FAC ¶ 58). Moreover, this allegation is substantiated by a cursory reading of Doe's communications. Furthermore, Defendant's statements concern his own personal experiences in the doctor-patient relationship with Plaintiff, and therefore, he had to know that what he wrote was false. Accordingly, Dr. Conti has met any burden he has to plead malice sufficient to overcome a qualified privilege, if one even applies. *See also Ferrara*, 153 A.D.3d at 673 ("'[A] plaintiff has no obligation to show evidentiary facts to support [his or her] allegations of malice on a motion to dismiss pursuant to CPLR 3211(a)(7).'" (quoting *Colantonio v. Mercy Med. Ctr.*, 115 A.D.3d 902, 903 (N.Y. App. Div. 2d Dep't 2014)) (internal quotes omitted).

**POINT III:**    **DOE STATES CLAIMS UNDER OHIO CRIMINAL STATUTES**

Dr. Conti has pleaded claims for Doe's violation of the following criminal statutes in Doe's home state of Ohio: Ohio Revised Code ("R.C.") §§ 2917.21 (telecommunications harassment), 2903.22 (menacing), 2903.21 (aggravated menacing), and 2903.211 (menacing by stalking). As Defendant now concedes, under Ohio law, persons injured by criminal acts may recover against the perpetrator in a civil action pursuant to R.C. § 2307.60(A)(1). After this admission proved detrimental to his position, Doe now argues that Oregon law, not Ohio's, applies in this case. Ironically, Doe goes so far as to accuse Dr. Conti of ignoring choice-of-law principles and treating

19

the laws of various jurisdictions as an "*a-la-carte* menu" from which Dr. Conti can "choose as he wishes." (Defendant's MOL, at 2). It is perhaps fitting in a case involving a psychiatrist that Defendant has indulged in Freudian projection. As noted *supra*, prior to filing this motion, Defendant had contended that Ohio criminal law "would govern the conduct alleged here if anything did...." (Doc. No. 29 at 9). As also argued above, now that Plaintiff has reasonably relied upon Defendant's prior position to his detriment, Defendant should be estopped from changing his choice-of-law position to suit his current whim.

Moreover, the inescapable facts set forth in the FAC – which must be taken as true on a Rule 12(b)(6) motion – are that Doe, an Ohio domiciliary, engaged in a course of conduct against Dr. Conti that violates Ohio's criminal laws. Ohio certainly has a stronger interest in regulating criminal conduct in violation of Ohio law that occurs within its borders than Oregon. Because Doe is domiciled in Ohio, it should be presumed at this stage that the actionable conduct occurred in Ohio.[10] In addition to serving the interests of justice, applying Ohio law is compelled by New York conflict of laws principles as interpreted by the Second Circuit. The overriding principle is that "[t]he law of the jurisdiction having the greatest interest in the litigation will be applied." *Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012) (citations and internal quotation marks omitted). "Interest analysis is a flexible approach intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has

---

[10]     *State v. Cody*, 34 N.E.3d 189 (Ohio App. Ct. 2015), which is cited by Doe, is not to the contrary. In that case, the court held that Ohio did not have jurisdiction over identity fraud counts where "none of the identity fraud elements occurred in Ohio." (*Id.* at 193). The court recognized that its decision was guided by R.C. § 2901.11(A)(1), which provides that "a person is subject to criminal prosecution and punishment in the state of Ohio if a person commits an offense under Ohio law [and] any element of which takes place in this state." (*Id.*) Here, because Doe presumably sent some messages while in Ohio, he should be subject to Ohio criminal laws.

the greatest concern with the specific issue raised in the litigation." (*Id.* at 157-58) (citations and internal quotation marks omitted). Under this flexible analysis, Doe – an Ohio domiciliary – should be answerable for his violations of Ohio criminal law.

Even under the choice-of-law analysis applicable in traditional tort cases, Dr. Conti can assert claims under Ohio Law.[11] Doe contends that because Ohio law permits Dr. Conti's claims while Oregon law does not, the conflict is over a "loss-allocating" rule. Doe takes this position in order to argue that under the "loss-allocating" choice-of-law analysis from *Neimeier ex rel. Neumeier v. Keuhner*, 31 N.Y.2d 121 (1972), the law of the place of injury – presumptively, Dr. Conti's domicile of Oregon – would apply. (Defendant's MOL at 16 (citing *Youngman v. Robert Bosch LLC*, 923 F. Supp. 2d 411, 419 (E.D.N.Y. 2013)) (emphasis added). However, the conflict at issue here is over a "conduct-regulating" rule, not a "loss-allocating" rule. The relevant Ohio statute, R.C. § 2307.60(A)(1), does not "'prohibit, assign, or limit liability *after* the tort occurs.'" *Licci*, 672 F.3d at 158 (quoting *De Masi*, 34 A.D.3d at 721) (emphasis supplied). It *creates* the tort in the first place. Therefore, it is appropriately characterized as a "conduct-regulating" rule, because it creates a civil action for the commission of a criminal act. Indeed, the cases cited by Doe where the court held that the conflict was over a "loss-allocating" rule involve far different laws than R.C. § 2307.60(A)(1).[12]

---

[11]   "In tort-law disputes, interest analysis distinguishes between two sets of rules: conduct-regulating rules and loss-allocating rules." *Licci*, 672 F.3d at 158. "Conduct-regulating rules are those that 'people use as a guide to governing their primary conduct[.]'" (*Id.*) (quoting *K.T. v. Dash*, 37 A.D.3d 107, 112 (N.Y. App. Div. 1st Dep't 2006)). "Loss-allocating rules . . . are laws that prohibit, assign, or limit liability after the tort occurs[.]" (*Id.*) (quoting *De Masi v. Rogers*, 34 A.D.3d 720, 721 (N.Y. App. Div. 2d Dep't 2006)).

[12]   *See Neumeier v. Kuehner*, 31 N.Y.2d 121, 124, 128 (1972) (determining whether to apply an Ontario statute limiting a driver's liability for damages resulting from injury or death to a guest-passenger); *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 75 (1993) (determining whether to
(continued...)

Under New York law, as interpreted by the Second Circuit in *Licci*, 672 F.3d 155, where the alleged conflict concerns a "conduct-regulating" rule, "'it is the location of the defendant's conduct that controls.'" *Lyman Commerce Solutions, Inc. v. Lung*, No. 12-cv-4398, 2014 WL 476307, at *3 (S.D.N.Y. Feb. 4, 2014) (quoting *Wultz v. Bank of China Ltd.*, 865 F. Supp. 2d 425, 428 (S.D.N.Y. 2012)). In *Licci*, the court held that New York had the greatest interest in a litigation where the challenged conduct primarily involved bank transfers in New York, but the plaintiffs were domiciled in Israel and their injuries occurred there. *See* 672 F.3d at 158: "New York, not Israel, has the stronger interest in regulating the conduct of New York-based banks operating in New York." Here, Ohio has the stronger interest in regulating the criminal conduct of an Ohio domiciliary that occurred in Ohio.[13] Furthermore, Doe cannot claim that it offends his reasonable expectations to be held accountable to Ohio's criminal laws for any criminal behavior he engages in while in Ohio.[14]

In terms of pleading the elements of these criminal statutes, Doe admits that if Ohio law applies, Dr. Conti states a claim for violation of R.C. § 2917.21 (telecommunications harassment). (Defendant's MOL, at 18). Doe argues that, by contrast, Dr. Conti has not plausibly pled violations of R.C. §§ 2903.22, 2903.21, or 2903.211, because Doe did not threaten to physically harm Dr. Conti

---

[12](...continued)
apply a Missouri workers' compensation statute shielding employers from contribution claims).

[13]     *See also Lyman Commerce Solutions, Inc.*, 2014 WL 476307, at *3 (holding that where defendant's conduct occurred is determinative in a choice-of-law analysis involving a fraudulent conveyance claim); *Wultz*, 865 F. Supp. 2d at 429 (holding that Chinese law applied because "China's interest in regulating bank conduct within its borders is dispositive").

[14]     *See Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 77 (1993) (explaining that "the protection of reasonable expectations" should, "at times, play a role in choice of law") (citing *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 327 (1981) ("A choice-of-law decision that frustrates the justifiable expectations of the parties can be fundamentally unfair.") (Stevens, J., concurring)).

22

or cause him mental distress.  (Defendant's MOL, at 18).  These arguments are without merit.[15]  It is unclear how Doe can even argue with a straight face that "[n]one of the Messages contain threats of violence, force, or any kind of physical confrontation."  (Defendant's MOL, at 18).  Doe makes express or implicit threats to physically harm Dr. Conti in at least the following messages: "I will fuckong destroy you face fuck YOU back to where you fucking belong you son of a Bitch"  (Exhibit A to the FAC, p. 1).  "I hope you getting fucking gang raped by the fucking gay community of SAN Fran"  (*Id.*, p. 3)

> I'm going to fucking destroy u and put your ass behind bars you fraudulent fuck
> Call the cops u mother fucker
> Call them

(*Id.*)

> I will fucning bash your mother fucking ass to the mother fucning curb you cock sucking mother fucker
> I will fuck you all the way back to fucking entering

(*Id.*, p. 5; *see also id.*, p. 14: "BUDDY IF YIU KNEW MY SNGER YOU WOULD BE SCSRED")

> You better fucking fear me. . You put a narrative on me you mother fucking I'm going to destroy your ass.

(Exhibit L to the FAC; *see also* Exhibit K to the FAC: "I will fucking bury your ass alive.")

---

[15]     Doe also suggests that Dr. Conti's claims under §§ 2903.22, 2903.21 or 2903.211 are fatally undermined by lack of a *pro forma*, conclusory assertion that Doe "knowingly" caused Dr. Conti to fear being harmed.  (Defendant's MOL, at 18).  However, Dr. Conti has necessarily asserted that Doe knowingly intended to cause him fear of harm by claiming that Doe violated these statutes, all of which require the defendant to have "knowingly" caused fear of harm.  Furthermore, Doe cannot dispute that he intentionally sent the messages to Dr. Conti.  Whether he did so "knowing" he would cause fear of harm is a question for the finder of fact.  Of course, if Plaintiff had simply pled that Doe "knowingly" caused him to fear harm, Doe would have complained that Dr. Conti had pled no more than a conclusory assertion.

Vile threats to "face fuck" and "fucking destroy" Dr. Conti, "fucning bash [his] mother fucking ass to the mother fucning curb," and "fucking bury [his] ass alive" carry with them a threat of physical violence. If Dr. Conti had any doubts about these threats, Doe's taunt to "[c]all the cops you mother fucker" and his warning that "[y]ou better fucking fear me" erased them. Furthermore, Doe's access to unlimited funds and his ties to organized crime provided Dr. Conti with an eminently reasonable basis to fear that Doe would follow through on his threats. (FAC ¶ 27(b)). These threats were sufficiently graphic to satisfy R.C. § 2903.21's requirement that the harm be "serious."[16]

Doe has also adequately pleaded that he suffered mental distress as a result of the messages Doe sent him. Mental distress is only an element of § 2903.211 (menacing by stalking). *See* R.C. § 2903.211(A)(1). Moreover, "for a conviction of menacing by stalking, the statute does not require that the victim actually suffered mental distress." *State v. Beckwith*, 82 N.E.3d 1198, 1202 (Ohio Ct. App. 2017). Rather, "'[t]he state need only show that a defendant knowingly caused the victim to believe that he would cause her mental distress or physical harm.'" (*Id.*) (quoting *State v. Horsley*, No. 05AP-350, 2006 WL 658849, at *9 (Ohio Ct. App. Mar. 16, 2006)). "[T]he trier of fact can refer to its own experiences to determine whether the defendant's conduct caused the emotional distress." (*Id.*) It frankly goes without saying that Doe's diatribes would cause emotional distress.

---

[16]     In a footnote, Doe contends that "[a]ny conclusion that Doe's Messages violated a criminal statute would also raise serious First Amendment concerns, as applied to the facts of this case." (Defendant's MOL, at 21 n.7). While coarse speech can be protected, threats that cause real fear of physical harm are not. *See e.g., R.A.V. v City of St. Paul, Minn.*, 505 US 377, 388 (1992) ("[T]hreats of violence are outside the First Amendment....").

## POINT IV

## DR. CONTI HAS STATED A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

New York law sets a high bar for pleading intentional infliction of emotional distress ("IIED") claims.  Nevertheless, Plaintiff meets it here where Doe's verbal assault on Dr. Conti included threats of physical violence and reference to extremely depraved acts.

Only two additional points must be addressed.  **First**, deleting, blocking, or ignoring communications from Doe, as his counsel suggests, would have been extremely dangerous for Dr. Conti for reasons discussed above in the "PRELIMINARY STATEMENT".  **Second**, Dr. Conti's IIED claim is not impermissibly duplicative of his defamation claim.  *See Hanly v. Powell Goldstein, LLP*, No. 05 CV 5089, 2007 WL 747806, at *6 n.9 (S.D.N.Y. Mar. 9, 2007) ("Because the injuries are different, the defamation claim does not fully embrace the IIED claim").  As noted above, while some of Doe's statements are defamatory, others are not.  For instance, the threats of physical harm quoted in POINT III are not defamatory, while the statements discussed in POINT II are.[17]

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, as well as all prior proceedings heretofore had herein, Plaintiff respectfully requests that this Court enter an Order denying Defendant's Motion to Dismiss with prejudice; together with such other and further relief as the Court deems proper.

Dated: April 13, 2018, New York, New York

Respectfully submitted,

JUDD BURSTEIN, P.C.

By: _____

Peter B. Schalk

G. William Bartholomew

---

[17]    Dr. Conti agrees that the Court cannot enter a permanent injunction if his substantive claims are dismissed.  But here, they should not be dismissed and the injunction claim stands.

25