UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL CONTI,

                Plaintiff,

   -against-                                 No. 17-CV-9268 (VEC)

JOHN DOE,

                Defendant.

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

# TABLE OF CONTENTS

**PAGE NO.**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.     AS A WHOLE AND IN CONTEXT, THE MESSAGES ARE NOT
          REASONABLY SUSCEPTIBLE OF A DEFAMATORY MEANING .................2

          A.     Properly Considered as a Whole, The Messages Are Not Factual ..............2

          B.     Conti Fails to State a Claim Even Based on the Snippets
                He Isolates ........................................................................................................4

    II.    CONTI'S STATUTORY CLAIMS MUST BE DISMISSED .................................6

          A.     The Court Should Reject Conti's Effort to Manufacture
                a "Concession" ................................................................................................6

          B.     Oregon Law Prevails in the Conflict Over "Loss-Allocating"
                Rules .................................................................................................................7

          C.     The FAC Disclaims Any Threat from the Supposedly
                Threatening Messages ....................................................................................8

    III.   CONTI CONCEDES HIS FAILURE TO ALLEGE EXTREME
          AND OUTRAGEOUS CONDUCT ......................................................................10

CONCLUSION .............................................................................................................................11

## **TABLE OF AUTHORITIES**

**PAGE NO.**

**Cases**

*600 W. 115th St. Corp. v. Von Gutfeld,*
    80 N.Y.2d 130 (1992) ................................................................................................... 3

*Albert v. Loksen,*
    239 F.3d 256 (2d Cir. 2001) ...................................................................................... 4, 5

*Alfajr Printing & Pub. Co. v. Zuckerman,*
    230 A.D.2d 879 (2d Dep't 1996) .................................................................................. 4

*Brian v. Richardson,*
    87 N.Y.2d 46 (1995) ................................................................................................ 2, 4

*Bus. for a Better N.Y. v. Angello,*
    341 F. App'x 701 (2d Cir. 2009) .................................................................................. 8

*Celle v. Filipino Reporter Enter. Inc.,*
    209 F.3d 163 (2d Cir 2000) .......................................................................................... 2

*Dillon v. City of New York,*
    261 A.D.2d 34 (1st Dep't 1999) ................................................................................... 2

*Hanly v. Powell Goldstein, LLP,*
    No. 05-CV-5089, 2007 WL 747806 (S.D.N.Y. Mar. 9, 2007) ................................... 10

*Hawkins v. City of New York,*
    No. 99-CV-11704, 2005 WL 1861855 (S.D.N.Y. Aug. 4, 2005) .................................. 5

*Hobbs v. Imus,*
    266 A.D.2d 36 (1st Dep't 1999) ................................................................................... 3

*Howell v. N.Y. Post,*
    81 N.Y.2d 115 (1993) ................................................................................................ 10

*K.T. v. Dash,*
    37 A.D.3d 107 (1st Dep't 2006) ................................................................................... 7

*Labajo v. Best Buy Stores,*
    478 F. Supp. 2d 523 (S.D.N.Y. 2007) ........................................................................ 10

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
    672 F.3d 155 (2d Cir. 2012) ......................................................................................... 7

*Mann v. Abel,*
    10 N.Y.3d 271 (2008) ................................................................................................... 3

*Padula v. Lilarn Props. Co.*,
    84 N.Y.2d 519 (1994) ................................................................................................ 7

*Reed Const. Data Inc. v. McGraw-Hill Cos.*,
    49 F. Supp. 3d 385 (S.D.N.Y. 2014) ......................................................................... 7

*Sabharwal & Finkel, LLC v. Sorrell*,
    117 A.D.3d 437 (1st Dep't 2014) .............................................................................. 4

*Serles v. Beneficial Or., Inc.*,
    756 P.2d 1266 (Or. Ct. App. 1988) ...................................................................... 6, 8

*Steinhilber v. Alphonse*,
    68 N.Y.2d 283 (1986) ................................................................................................ 5

*Sweeney v. Prisoners' Legal Servs. of N.Y., Inc.*,
    146 A.D.2d 1 (3d Dep't 1989) ................................................................................ 10

*United States v. Turner*,
    720 F.3d 411 (2d Cir. 2013) ....................................................................................... 9

*Wahrendorf v. City of Oswego*,
    72 A.D.3d 1604 (4th Dep't 2010) ............................................................................. 3

*Youngman v. Robert Bosch LLC*,
    923 F. Supp. 2d 411 (E.D.N.Y. 2013) ....................................................................... 7

**Other Authorities**

15 U.S.C. § 1125 ................................................................................................................ 8

Ohio Rev. Code § 2307.60(B)(1)(a) ................................................................................. 8

Ohio Rev. Code § 2903.21 ................................................................................................ 9

Ohio Rev. Code § 2903.211 ........................................................................................ 9, 10

Ohio Rev. Code § 2903.22 ................................................................................................ 9

Ohio Rev. Code § 2917.21 ................................................................................................ 6

**PRELIMINARY STATEMENT**

Paul Conti's damages lawsuit against his psychiatric patient, John Doe, began as an action for intentional infliction of emotional distress (IIED) and violations of the New York Penal Law.  Conti then overhauled the case in his First Amended Complaint ("FAC," Dkt. #31), claiming defamation and violations of four Ohio penal statutes.  Now, Conti abandons IIED and goes out of his way to falsely portray Doe as some kind of cartoon mobster—even though that depiction has nothing to do with the gravamen of his case, which is the reputational harm he supposedly suffered when Doe copied a handful of Doe's close associates on a series of crude electronic communications (the "Messages," FAC Exs. A-O) that Conti then sent to his own colleagues.  Conti's throw-it-at-the-wall-and-see-what-sticks approach reveals this case for what it is: a shakedown of a prominent family in search of a colorable legal theory.

Contravening clear precedent of the New York Court of Appeals, Conti improperly bases his defamation claim on selected snippets of the Messages rather than the communications in their entirety.  Read as a whole, with the necessary attention to tone and context, the rambling, vitriolic Messages are not reasonably susceptible of being read as stating objective facts.  As such, they are not defamatory as a matter of law.  *See infra* § I.

Because he cannot overcome the presumption that Oregon law governs the existence of an implied cause of action to enforce criminal statutes in this case, Conti attempts to manufacture a "concession" by Doe that Ohio law applies.  No such concession exists.  Doe no more "conceded" that Ohio law applies by discussing Ohio law in his brief than he "conceded" that Oregon law applies by discussing the law of *that* state in the same brief.  *See infra* § II.A.  Conti therefore has no cause of action to enforce Ohio penal statutes.  *See infra* § II.B.  Even if he did, his statutory claims fail because Conti cannot escape his own words.  The evidence that Conti attached to his own pleadings, which Conti entirely ignores, shows that he "*do[es] not mind*"

Doe's insults, except when they threaten his image, and he certainly does not believe that they are genuine threats.  *See infra* § II.C.

The Court should dismiss all of Conti's claims.

## ARGUMENT

**I.     AS A WHOLE AND IN CONTEXT, THE MESSAGES ARE NOT REASONABLY SUSCEPTIBLE OF A DEFAMATORY MEANING**

In an effort to save his meritless defamation claim, Conti does exactly what the law says he may not do: isolate snippets of the Messages and argue that they state facts on their own.  *See* Pltf.'s Memo of Law in Opp'n to Mot. to Dismiss FAC ("Pltf.'s Opp'n," Dkt. #47) at 8-10.  But the threshold question of law for the Court to decide on Doe's motion to dismiss is whether, viewing the Messages *as a whole*, a reasonable reader would understand them to be stating facts.  *See Dillon v. City of New York*, 261 A.D.2d 34, 38 (1st Dep't 1999); *Celle v. Filipino Reporter Enter. Inc.*, 209 F.3d 163, 178-79 (2d Cir 2000).  Because the answer to that question is no, Conti's defamation claim fails.

**A.     Properly Considered as a Whole, the Messages Are Not Factual**

The New York Court of Appeals has held that the Court must *not* do precisely what Conti does in his brief: "sift[] through a communication for the purpose of isolating and identifying assertions of fact."  *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995).  Rather, the Court must "look to the over-all context in which the assertions were made" and determine how a reasonable reader would view the communications as a whole.  *Id.*

Viewed as a whole, Doe's late-night, stream-of-consciousness emails to a handful of close associates are clearly venting frustration and expressing distaste for Conti, not presenting facts.  Conti's attempt to distinguish the authority cited in Doe's motion is unpersuasive.  *See* Pltf.'s Opp'n 13 n.5.  Of course this case does not involve a radio shock jock, *see Hobbs v. Imus*,

2

266 A.D.2d 36, 37 (1st Dep't 1999), an opinion column, *see Mann v. Abel*, 10 N.Y.3d 271, 276-77 (2008), or a frustrated citizen at a public hearing, *see 600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 141 (1992)—every fact pattern is different, and this one is particularly unique. These cases all make clear, however, that an ordinary reader would not understand over-the-top rhetoric, crude insults, or table-pounding rants as assertions of *fact*. The overall tone and context are critical in determining whether statements are susceptible of a defamatory meaning. *See Mann*, 10 N.Y.3d at 276; *600 W. 115th St. Corp.*, 80 N.Y.2d at 141.

Here, the overall tone and context of the Messages compels the conclusion that they are not factual. They are replete with crude insults, caustic criticism, and hyperbolic statements of discontent. For example: "You're the sickest mother f*cker I have ever met. I would rather die as a degenerate xanax gambler than a f*cking fraud like yourself." FAC Ex. B. And: "Your a fraud. A Coward. Scum of the f*cking earth. I wouldn't piss on you if you were on fire. Other than that Have a great Easter holiday f**k face." *Id.* Ex. D. And: "I have a gambling problem????? Really Mr Conti? Like I said I didn't need to go to Portland to get that assessment." *Id.* Ex. F. These are precisely the kinds of communications that a reasonable reader would view "with an appropriate amount of skepticism" and would not understand to be stating objective facts. *600 W. 115th St. Corp.*, 80 N.Y.2d at 144; *see Wahrendorf v. City of Oswego*, 72 A.D.3d 1604, 1605 (4th Dep't 2010).

Conti fails to explain how a reader could reasonably understand the Messages as factual when considered as a whole. He only expresses a concern that speakers should not be allowed to "sprinkle" their statements with "over-the-top insults" to avoid defamation liability. Pltf.'s Opp'n 12-13. This concern has no weight. What matters is not authorial intent, but the fair meaning an average audience would ascribe to the words. *See Alfajr Printing & Pub. Co. v.*

3

*Zuckerman*, 230 A.D.2d 879, 880 (2d Dep't 1996).  Even if a speaker were to engage in a devious plot to hide false statements of fact in an avalanche of insults, his statements would not be defamatory as a matter of law if his audience would not fairly understand them as factual.

Conti's heavy reliance on *Albert v. Loksen*, 239 F.3d 256 (2d Cir. 2001), is misplaced.  In *Albert*, a physicist was terminated from his job at a hospital.  His supervisor told others that the physicist had been "dishonest" about an incident involving mishandled radioactive material and had "compromised the welfare of a patient."  *Id.* at 267.  The physicist sued for defamation.  The Second Circuit held that the supervisor's statements were actionable because they "in effect accused [the physicist] of failing to inform [a doctor] of the change in the strength of the radioactive sources she was administering to a patient," "of leaving misplaced sources in a way that endangered co-workers," and of "lying about what he did in an attempt to cover it up"—all of which are "capable of objective proof."  *Id*.  *Albert* stands for the uncontroversial point that false accusations of specific bad acts, even if implied rather than express, can be defamatory.  *See id.*  It has little to say about the critical question here: whether Doe's Messages can fairly be understood as factual at all.  The formality and sobriety of the statements in *Albert*—made during a workplace investigation—stand in stark contrast to Doe's aggrieved late-night rambling.

**B.     Conti Fails to State a Claim Even Based on the Snippets He Isolates**

Even improperly evaluating the five excerpts that Conti plucks from the Messages in isolation, *cf. Brian*, 87 N.Y.2d at 51, Conti fails to state a defamation claim.

As an initial matter, the second of the purportedly defamatory statements—that Conti is a "whore" who "equate[s] everything to money"—is the purest of pure opinion.  Doe is speculating that Conti is mainly motivated by money in his work.  *See Sabharwal & Finkel, LLC v. Sorrell*, 117 A.D.3d 437, 437-38 (1st Dep't 2014) (characterizing lawsuit as "extort[ion]"

4

attempt was nonactionable statement of opinion about motivation). Conti fails to explain how, in his view, this statement fairly implies that he "engaged in fraudulent billing." Pltf.'s Opp'n 9.

The main thrust of the four remaining snippets is that Conti "abandoned" Doe in treatment. *See id.* at 8-10. This assertion cannot give rise to liability for defamation. Whether a doctor "abandoned" a patient depends entirely on what the speaker means by "abandon[ment]." In other words, it is a matter of opinion: it is "indefinite and ambiguous," lacks "a precise meaning which is readily understood," and is not "capable of being objectively characterized as true or false." *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 292 (1986). To the extent Doe can be fairly understood to be claiming that Conti lied about the grounds for his termination of treatment, any such statements also cannot be defamatory. A statement that a physicist lied to cover up safety violations can be defamatory because competent professionals do not cause safety risks or cover them up. *See Albert*, 239 F.3d at 267. Here, in contrast, Conti does not dispute that a competent psychiatrist may terminate his treatment relationship with a patient for any reason he pleases, as long as he transitions care responsibly. *See* Def.'s Memo. of Law in Support of Mot. to Dismiss FAC ("FAC MTD," Dkt. #42) at 10.

Finally, Conti's slander claim must fail. The law is clear: Conti must give Doe notice of "the particular person or persons to whom" he made the alleged statements and the "time and manner" in which they were made. *Hawkins v. City of New York*, No. 99-CV-11704, 2005 WL 1861855, at *18 (S.D.N.Y. Aug. 4, 2005)**Error! Bookmark not defined.**. Conti fails to do so. The FAC says only that Doe "falsely communicated to employees and clinicians at Pacific" that Conti was drunk when Doe called him. FAC ¶ 33. That is not enough. *See Hawkins*, 2005 WL 1861855, at *18.[1]

---

[1] For the reasons explained in Doe's opening brief, the common interest privilege also protects his communications with his parents, lawyer, psychiatrist, therapist, and assistant. *See* FAC MTD 11-12.

## II.   CONTI'S STATUTORY CLAIMS MUST BE DISMISSED

Conti's damages claims for violations of Ohio penal statutes must be dismissed because Conti has no private right of action to enforce those statutes. Oregon law applies, and as Conti concedes, it recognizes no such right of action. *See Serles v. Beneficial Or., Inc.*, 756 P.2d 1266, 1270 (Or. Ct. App. 1988). Moreover, Conti makes clear in his own words, incorporated into the pleadings, that he did not feel threatened by the Messages he now claims were threatening.

### A.   The Court Should Reject Conti's Effort to Manufacture a "Concession"

In moving to dismiss the initial Complaint, Doe clearly explained that *either* Oregon law *or* Ohio law would apply, but that it was unnecessary to decide which one applied if they were the same: "In the end, on the question whether a criminal statute gives rise to an implied civil tort claim, it is immaterial whether Oregon law or Ohio law applies." Def.'s Memo. of Law in Support of Mot. to Dismiss Compl. ("Original MTD," Dkt. #29) at 11; *see generally id.* at 7-11.

Citing Doe's statement that the Ohio telecommunications harassment statute, Ohio Rev. Code § 2917.21, "would govern the conduct alleged here if anything did," *id.* at 9, Conti now claims that Plaintiff conceded the applicability of Ohio law. *See* Pltf.'s Opp'n 3, 20. The Court should reject this attempt to manufacture a concession that does not exist. In context, Doe's statement clearly means that § 2917.21 is the Ohio penal statute most relevant to the facts alleged here if Ohio law applies. *See* Original MTD 9. Similarly, in the immediately preceding paragraph, Doe discussed the Oregon harassment statute that would be most relevant if Oregon law applied. *See id.* at 8-9 (discussing Or. Rev. Stat. § 166.065). None of this comes close to a "concession" that Ohio law trumps Oregon law in the event of a conflict between the two.[2]

---

[2]   In Conti's opposition to Doe's motion to stay discovery, Conti relied on a *different* snippet of text from Doe's brief to claim that Doe had conceded the applicability of Ohio law. *See* Pltf.'s Memo of Law in Opp'n to Mot. for Stay (Dkt #32) at 3 (quoting Doe's statement that "the substantive law of either Oregon or Ohio applies"). Conti's inability to get his story straight about when Doe made this supposed "concession" further demonstrates that

6

### B. Oregon Law Prevails in the Conflict Over "Loss-Allocating" Rules

Oregon law applies here because the locus of the tort presumptively prevails in a conflict between two jurisdictions' "loss-allocating rules." *See Youngman v. Robert Bosch LLC*, 923 F. Supp. 2d 411, 419 (E.D.N.Y. 2013). Conti does not dispute that there can be no private right of action to enforce penal statutes if Oregon law applies. *See* Pltf.'s Opp'n 20-22. Nor does he challenge the presumption in favor of Oregon law. *See id.* Instead, he argues that the law governing whether penal statutes can be enforced in a civil damages action is a "conduct-regulating rule" instead. *See id*.

Conti fundamentally misunderstands the difference between a conduct-regulating rule and a loss-allocating rule. The former determines whether conduct is lawful; the latter determines whether and under what circumstances someone can sue over allegedly unlawful conduct. *See Padula v. Lilarn Props. Co.*, 84 N.Y.2d 519, 522 (1994). Here, the conduct-regulating rules are the penal statutes. They are the rules that people "use as a guide to governing their primary conduct"—they tell people whether certain behavior is allowed. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 158 (2d Cir. 2012) (quoting *K.T. v. Dash*, 37 A.D.3d 107, 112 (1st Dep't 2006)). The principles of law that govern whether a private plaintiff can bring a civil damages claim to enforce a penal statute are classic loss-allocating rules. Like vicarious liability statutes and immunity rules, they do not concern the lawfulness of real-world behavior; they concern the conditions under which someone can bring a lawsuit *if* injured by another's legally proscribed conduct. *See Padula*, 84 N.Y.2d at 522.

Because this conflict of laws concerns loss-allocating rules, Oregon law prevails. Oregon has made the judgment that supposed crime victims should seek redress from law enforcement—

---

it did not happen. The law is also clear, in any event, that a party cannot waive a choice-of-law argument until a "late stage" of the case. *Reed Const. Data Inc. v. McGraw-Hill Cos.*, 49 F. Supp. 3d 385, 423 (S.D.N.Y. 2014).

which Conti never did—not in suits for money.[3]  *See Serles*, 756 P.2d at 1270.

Even if Conti were somehow correct about the nature of the conflict of laws in this case, he acknowledges that Ohio law could only apply at most to conduct occurring in Ohio.  *See* Pltf.'s Opp'n 20, 22 (discussing Ohio's interest in enforcing its laws with respect to conduct occurring in Ohio).  The Court should therefore, at a minimum, dismiss the Second through Sixth Causes of Action to the extent they rely on conduct outside Ohio.

Conti fails to plead that *any* relevant conduct occurred in Ohio, so the claims should be dismissed in their entirety.  Attempting to paper over this fatal defect, Conti asserts—without any support—that Doe should be "presumed" to have sent the Messages from Ohio because he is allegedly domiciled there.  Pltf.'s Opp'n 20.  But to invoke this Court's jurisdiction, Conti alleged that Doe sent some of the Messages *from New York*.  *See* FAC ¶ 14.  Having done so, he cannot now claim the benefit of a "presumption" that all of the Messages were sent from Ohio. The FAC amply documents Doe's peripatetic schedule—Israel, New York, Los Angeles, Las Vegas, and, of course, many months in Portland—but never once mentions a stop in Ohio.  *See* FAC ¶¶ 10, 27, 34, 37.  Conti is well aware of Doe's travel habits, but he twice chose not to plead that Doe was ever in Ohio at any relevant time.  The consequences of that choice are clear: Even on Conti's erroneous view of the law, his Ohio statutory claims must be dismissed.

**C.     The FAC Disclaims Any Threat from the Supposedly Threatening Messages**

Conti utterly fails to engage with the documentary evidence that he attached to his own pleadings showing that the Messages did not bother him, except to the extent that he was concerned about his image.  *See* FAC MTD at 18-20 (discussing this evidence in detail).  Conti's

---

[3]     Conti's suggestion that the Court should eschew the analysis required by New York law because this not a "traditional tort" case has no basis. Pltf.'s Opp'n 21. This *is* a tort case. By its own terms, the Ohio cause of action that Conti invokes creates a tort cause of action: it authorizes "a civil action for damages for injury, death, or loss to person or property other than a civil action for damages for a breach of contract." Ohio Rev. Code § 2307.60(B)(1)(a). Statutory torts are still torts. *See, e.g.*, 15 U.S.C. § 1125 (Lanham Act); *Bus. for a Better N.Y. v. Angello*, 341 F. App'x 701, 705 (2d Cir. 2009) (discussing New York scaffold law).

own words show that he did not fear physical harm from Doe and did not experience genuine distress from the Messages. *See* Ohio Rev. Code §§ 2903.21, 2903.22, 2903.211. The FAC includes no plausible allegations to the contrary.

<u>No Fear</u>. Nowhere in the FAC does Conti allege, even in a conclusory way, that he feared Doe would commit violence against him. Nowhere does Conti allege that he believed he was in danger. Nowhere does Conti allege that he changed the locks, or called the police, or did anything a person might do if he truly feared physical harm from criminal threats of violence.

The few supposedly threatening statements that Conti identifies in his brief are not in fact threats. *Cf.* Pltf.'s Opp'n 23. Doe's statements about "bash[ing]" Conti "to the curb" and "face f*ck[ing]," and his regrettably derogatory comment about "gang rape," are classic hyperbole that cannot qualify as true threats. *See United States v. Turner*, 720 F.3d 411, 421 (2d Cir. 2013). Conti does not claim that he took these statements literally. And Doe's repeated statements that he will "destroy" Conti are, in context, plainly a statement about Conti's professional reputation.

More important, for Conti to state a claim under these Ohio statutes, it would not be enough that someone *could* see the statements as threatening. Conti must plausibly allege that *he believed* Doe was going to physically hurt him. *See* Oh. Rev. Code §§ 2903.21, 2903.22. Conti makes clear in his own words that he did not feel this way. According to the FAC, Doe's statements about "destroy[ing]" Conti made Doe's "intention to *ruin* Dr. Conti unmistakably plain"—to ruin, not to physically harm. FAC ¶ 46 (emphasis added). Even after receiving the Messages that he now claims are threatening, Conti wrote that he "*does not mind* [Doe] insulting or cursing at me." *Id.* Ex. C (emphasis added). In Conti's clinical view, Doe's use of angry rhetoric was "illustrative" of Doe's mental illness and his efforts to exert control over others. *Id.* Conti "saw in it primarily [Doe's] suffering." *Id.* One of Doe's most "infamous" emails even

"led to a few good teaching moments in [Conti's] office." *Id.* Conti never once claimed to be worried about his safety. He was only concerned about his image: "I cannot let myself be intimidated by wealth . . . , nor can I let myself be slandered or defamed . . . ." *Id.* Conti even sent the Messages to his colleagues. *See, e.g.*, *id.* Ex. D (Conti adding his staff to the chain).

Absent even a cursory allegation that Conti felt endangered, and given the documentary evidence that he did not, the Court must dismiss his menacing claims. *See Labajo v. Best Buy Stores*, 478 F. Supp. 2d 523, 528 (S.D.N.Y. 2007) (court may disregard conclusory allegations contradicted by documentary evidence attached to pleadings).

No Distress. Conti's admission that he "do[es] not mind" Doe "insulting or cursing" at him, FAC Ex. C, and his repeated acknowledgments that he viewed Doe's Messages as a clinical manifestation of his illness, *see id.*; *id.* Ex. D, similarly defeat any claim for menacing by stalking arising from "mental distress." *See* Ohio Rev. Code § 2903.211.

### III. CONTI CONCEDES HIS FAILURE TO ALLEGE EXTREME AND OUTRAGEOUS CONDUCT

Conti's perfunctory assertion that he meets the "high bar" for pleading IIED under New York law, without citation to a single case, dooms his Sixth Cause of Action. Pltf.'s Opp'n 25. Conti fails to plead conduct so extreme and outrageous as to be regarded as atrocious and utterly intolerable in a civilized society. *See Howell v. N.Y. Post*, 81 N.Y.2d 115, 122 (1993).

Conti's IIED claim is also impermissibly duplicative. Every pair of IIED and defamation claims involves different injuries—one emotional, the other reputational. *Cf.* Pltf.'s Opp'n 25 (citing *Hanly v. Powell Goldstein, LLP*, No. 05-CV-5089, 2007 WL 747806, at *6 n.9 (S.D.N.Y. Mar. 9, 2007)). The correct question under New York law is whether the conduct at issue can more naturally be pleaded, even if unsuccessfully, as a traditional tort claim. *Sweeney v. Prisoners' Legal Servs. of N.Y., Inc.*, 146 A.D.2d 1, 7 (3d Dep't 1989). Here, it can.

## CONCLUSION

The Court should grant Doe's motion and dismiss the FAC in its entirety.

Dated: April 20, 2018
       New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP


_____/s/_____
Andrew G. Celli, Jr.
Katherine Rosenfeld
Douglas E. Lieb

600 Fifth Avenue, 10th Floor
New York, New York 10020

(212) 763-5000

*Attorneys for Defendant*