UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/27/2019

------------------------------------------------------ X

PAUL CONTI,                                :
                                           :
                        Plaintiff,         :
                                           :        17-CV-9268 (VEC)
            -against-                      :
                                           :        OPINION
JOHN DOE,                                  :
                                           :
                        Defendant.         :
                                           :
------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

Plaintiff Paul Conti, a psychiatrist, has sued his former patient, Defendant John Doe, for

defamation, intentional infliction of emotional distress, and violations of several state criminal

statutes.[1]  *See* Am. Compl., Dkt. 31.  Defendant has moved to dismiss for failure to state a claim,

pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Notice of Mot., Dkt. 41.  For the

following reasons, Defendant's motion to dismiss is GRANTED IN PART AND DENIED IN

PART.

## BACKGROUND[2]

Plaintiff is a psychiatrist practicing in Portland, Oregon.  *See* Am. Compl. ¶¶ 10, 19.

Beginning in May 2016, Plaintiff provided psychiatric treatment to Defendant, a domiciliary of

Ohio, as Defendant was addicted to Xanax, was an excessive gambler, and had repeatedly

engaged in threatening and destructive behavior.  *See id.* ¶¶ 3, 16–18.  Within a few months,

---

[1]     The Court has allowed Defendant to proceed anonymously for now and to redact other information that
might tend to reveal his identity.  *See* Order (Feb. 5, 2018), Dkt. 28; Order (Dec. 27, 2017), Dkt. 9.

[2]     On this motion to dismiss, the Court accepts all factual allegations in the pleadings as true and draws all
reasonable inferences in the light most favorable to Plaintiff.  *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir.
2013).

Plaintiff diagnosed Defendant with "Narcissistic Personality Disorder, including Borderline and Antisocial traits." *Id.* ¶ 25. Plaintiff recommended that Defendant taper off his use of Xanax, with the goal of eventually ceasing it altogether, a process known as titration. *See id.* ¶¶ 26, 28. Defendant, however, continued to abuse Xanax and to engage in other destructive behaviors while under Plaintiff's care. *See id.* ¶ 27. In April 2017, Plaintiff terminated his treatment of Defendant. *See id.* ¶ 36. Plaintiff told Defendant and his family that treatment could not be continued safely because Defendant was continuing to abuse drugs, refusing to comply with Plaintiff's treatment program, and sending Plaintiff threatening text messages. *See id.* ¶¶ 35–36; *id.* Ex. D.

Between April and November 2017, Defendant sent Plaintiff numerous emails and text messages accusing Plaintiff, *inter alia*, of committing "fraud" and "malpractice." *See id.* ¶¶ 37–51; *id.* Exs. E–I. The emails were laced with profanity and other invectives. *See, e.g., id.* Exs. B, C, E, F. In several emails, Defendant stated that Plaintiff had "abandoned" him by being "unreachable" while Defendant was attempting to reduce his use of Xanax. *See, e.g., id.* ¶¶ 40, 43; *id.* Exs. C, E, F, H, N, O. Defendant also stated that Plaintiff had lied to Defendant's family about Defendant's failure to follow Plaintiff's course of treatment and about the reasons that Plaintiff terminated his treatment of Defendant. *See, e.g., id.* ¶¶ 42, 44; *id.* Exs. H, I, J, K. Additionally, Defendant stated that his parents had "caught" Plaintiff "red handed" committing misconduct. *Id.* Ex. I; *see also id.* Exs. C, J. Defendant stated that Plaintiff's actions caused Defendant to "relapse" in his drug abuse, *id.* Exs. C, F, and caused Defendant severe "mental pain," *id.* Ex N; *see also id.* ¶¶ 42, 44; *id.* Exs. I, M.[3]

---

[3]    In one email, for example, Defendant stated:

The part which will never be understood for how much you spoke about the dangers of xanax and getting off of it, I was doing the hardest work I had ever done. I went from 5 mg down to 1.5 mgs,

2

In these emails, Defendant threatened to "ruin [Plaintiff's] name" *id.* Ex. J; to bring legal action against Plaintiff, *see, e.g.*, *id.* Ex. H ("I'm advising you get a legel [*sic*] team because I'm coming with everything I can . . . ."); *id.* Ex O ("I'm going to do everything in the power of the law to destroy [you]"); and to otherwise cause harm to Plaintiff, *see, e.g.*, *id.* Ex. H ("I want to drain you of all your resources . . . ."); *id.* Ex. K ("I will f*****g bury your a** alive."); *id.* Ex. L. Defendant also stated that Plaintiff had spent his life "[b]ilk[ing] people out of money," *id.* Ex. B, and that, when working in a prior position at Brigham and Women's Hospital, Plaintiff did not do "the most bang up job," *id.* Ex. C. Defendant copied numerous third parties on these emails, including an attorney on faculty at Harvard Law School, several professors of psychiatry, Defendant's parents, and several members of Plaintiff's psychiatry practice. *See id.* ¶¶ 6, 37, 39, 42–45, 50–51.[4]

In addition to these emails, Defendant orally told several employees and clinicians in Plaintiff's psychiatry practice that Plaintiff had conducted "a therapeutic telephone call while 'drunk'" and had "solicited prostitutes while on a work trip." *Id.* ¶ 57; *see also id.* ¶ 33.

---

every week being on edge and adding more to my anxiety wondering if I was ever going to get the meds. You looked me in the eye and told me you were the quarterback. The anxiety of getting OF THE xanax was harder than hell. Every f*****g week why did we had to add more anxiety to even if I was going to be able to get the script to continue this titration. You were no where to be found. Dovi [Defendant's personal assistant] couldn't never get ahold of amber [Plaintiff's assistant]. You always deflected blame on someone else, Amber Dovi myself. . . . Had I not called your a** out when I thought you were going to apologize when my parents were in town when we couldn't even get a hold of you. You were running this titration process which I was doing the work by myself. I have dignity. I don't need to beg like an animal for a drug so wicked like this one to[ ]get off. . . . YOU WERE UNREACHABLE YOU PIECE OF S***. . . . You abandoned me when I could have gotten out. You piece of s***. You abandoned your patient when he got himself from 5mgs to 1.5mgs. And your f*****g right I freaked out, I didn't have a dr and I beyond relapsed.

Am. Compl. Ex. F (profanity omitted; spelling and grammatical errors in original).

[4]     Among other people, Defendant copied Alan Dershowitz, an attorney affiliated with Harvard Law School, Am. Compl. ¶ 6; Michael Jenike, a professor of psychiatry at Harvard Medical School, *id.*; and Robin Lippert, "a clinical psychologist affiliated with Harvard," *id.* ¶ 42.

Plaintiff brings claims against Defendant under New York and Ohio law. As to New York law, Plaintiff brings a claim for defamation, which combines a claim for libel (based on Defendant's emails and text messages) and a claim for slander (based on Defendant's oral statements). *See id.* ¶¶ 54–58. Plaintiff also brings a claim for intentional infliction of emotional distress ("IIED") under New York law. *See id.* ¶¶ 76–79. As to Ohio law, Plaintiff brings four claims pursuant to that state's criminal statutes, which Plaintiff argues provide him a private right of action.[5] *See id.* ¶¶ 59–75. Defendant has moved to dismiss all claims, pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Notice of Mot.

## DISCUSSION

### I. Standard of Review

To survive a motion to dismiss, "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [the court] '[is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain details or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Kieler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (internal citation omitted).

---

[5] Plaintiff also brings a claim for an "injunction." Am. Compl. ¶¶ 80–83. The parties agree that this should be construed as a remedy for Plaintiff's other claims, not a freestanding cause of action. *See* Def.'s Mem. of Law at 25; Pl.'s Resp. Mem. of Law at 25 n.17; *see also Kwan v. Schlein*, No. 05-CV-0459, 2008 WL 4755345, at *4 (S.D.N.Y. Oct. 30, 2008) ("A permanent injunction is clearly a form of remedy, rather than a cause of action.").

## II.     Plaintiff's Defamation Claims

### A.     Defendant's Motion to Dismiss Plaintiff's Libel Claim Is Granted in Part and Denied in Part

#### 1.     Introduction

Defendant moves to dismiss Plaintiff's claim for libel on the ground that Defendant's emails and texts are not reasonably susceptible of a defamatory construction.  The statements in Defendant's emails that Plaintiff abandoned Defendant in treatment, that Plaintiff lied to Defendant's family about the reasons for terminating treatment, and that Plaintiff was "caught" committing misconduct are all reasonably susceptible of a defamatory construction; accordingly, Defendant's motion to dismiss is DENIED as to those statements.  The statements in Defendant's emails that Plaintiff "[b]ilked people out of money" and that Plaintiff did not do a "bang up job" while working at Brigham and Women's Hospital, however, cannot support a defamatory construction; accordingly, Defendant's motion to dismiss is GRANTED as to those statements.

#### 2.     The Applicable Law

The parties agree that New York law applies to Plaintiff's defamation claim.[6]  *See* Def.'s Mem. of Law, Dkt. 42, at 5; Pl.'s Mem. of Law, Dkt. 47, at 7 n.2.  A plaintiff must allege five elements to state a claim for libel under New York law:  "(1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and

---

[6]      Specifically, the parties agree that the elements of defamation are the same in all jurisdictions relevant to this case:  Oregon (where Plaintiff is domiciled), Ohio (where Defendant is domiciled), and New York (where this Court is located).  *See* Def.'s Mem. of Law at 5 & n.1; Pl.'s Mem. of Law at 7 n.2.  Because there is no conflict of law among the relevant jurisdictions, New York law applies.  *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012) (per curiam).

(5) special damages or *per se* actionability." *Celle v. Filipino Reporter Enterprises Inc.*, 209

F.3d 163, 176 (2d Cir. 2000); *see also, e.g.*, *Hughes v. Twenty-First Century Fox, Inc.*, 304 F.

Supp. 3d 429, 452 (S.D.N.Y. 2018).

Defendant's motion focuses primarily on the first element. *See* Def.'s Mem. of Law at 4–

11. "Whether particular words are defamatory presents a legal question to be resolved by the

court in the first instance." *Celle*, 209 F.3d at 177 (quoting *Aronson v. Wiersma*, 65 N.Y.2d 592,

593 (1985)); *see also Davis v. Boeheim*, 24 N.Y.3d 262, 268 (2014). The Court must determine

"whether the contested statements are reasonably susceptible of a defamatory connotation,"

*Davis*, 24 N.Y.3d at 268 (quoting *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 380

(1995)), that is, "whether any reading of the complaint supports" a defamatory construction, *id.*

at 272. "If any defamatory construction is possible, it is a question of fact for the jury whether

the statements were understood as defamatory." *Purgess v. Sharrock*, 33 F.3d 134, 140 (2d Cir.

1994).

A "defamatory" writing is one that contains a statement of fact, rather than a statement of

"pure opinion." *See Davis*, 24 N.Y.3d at 268–69 (quoting *Gross v. New York Times Co.*, 82

N.Y.2d 146, 153 (1993)); *see also Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014); *Purgess*, 33

F.3d at 140. New York courts apply a three-factor test to determine whether a reasonable person

would consider a statement a "fact" or a nonactionable "opinion":

> (1) whether the specific language in issue has a precise meaning which is readily
> understood; (2) whether the statements are capable of being proven true or false; and
> (3) whether either the full context of the communication in which the statement appears
> or the broader social context and surrounding circumstances are such as to signal . . . [to]
> readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Davis*, 24 N.Y.3d at 270 (quoting *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008)); *see also Gross*, 82

N.Y.2d at 153. In applying this test, "the court must give the disputed language a fair reading in

the context of the publication as a whole." *Armstrong*, 85 N.Y.2d at 380; *see also Celle*, 209

F.3d at 177; *Davis*, 24 N.Y.3d at 270.

In addition, New York courts distinguish between statements of "pure opinion" and those

of "mixed opinion." *Davis*, 24 N.Y.3d at 269; *see also Chau*, 771 F.3d at 129; *Steinhilber v.*

*Alphonse*, 68 N.Y.2d 283, 289 (1986). Statements of "pure opinion" cannot support a

defamation claim, as they are protected from liability under New York's constitution, but

statements of "mixed opinion" can. *See Celle*, 209 F.3d at 178; *Davis*, 24 N.Y.3d at 269;

*Steinhilber*, 68 N.Y.2d at 289–90. A statement of "mixed opinion" is one that "implies that it is

based upon facts which justify the opinion but are unknown to those reading or hearing it."

*Davis*, 24 N.Y.3d at 269 (quoting *Steinhilber*, 68 N.Y.2d at 289); *see also Chau*, 771 F.3d at 129.

Put differently, a statement of mixed opinion is one that "may be reasonably understood as

implying the assertion of undisclosed facts justifying the opinion." *Celle*, 209 F.3d at 178

(quoting *Steinhilber*, 68 N.Y.2d at 289). A statement of "pure opinion," on the other hand, is one

that "does not imply that it is based upon undisclosed facts," or one that is fully "accompanied by

a recitation of the facts upon which it is based." *Davis*, 24 N.Y.3d at 269; *see also Chau*, 771

F.3d at 129; *Gross*, 82 N.Y.2d at 154–55; *Steinhilber*, 68 N.Y.2d at 289–90.

### 3. Defendant's Statements Regarding Plaintiff's Alleged Abandonment, Misrepresentations, and Misconduct Are Reasonably Susceptible of a Defamatory Connotation

Defendant's emails contain several clear statements of fact. In numerous emails,

Defendant stated that Plaintiff "abandoned [him] in treatment," Am. Compl. Ex. B, including by

being "unreachable" while Defendant was attempting to reduce his use of Xanax, *id.* Ex. C.

Defendant provided examples and details to support these allegations, asserting that Plaintiff was

"out of town at least 2 weeks of the month" during which Defendant was attempting to reduce

his Xanax use, *id.* Ex. H, and that, in one instance, Defendant "had to beg and plead with [Plaintiff's] assistant [to] get ahold [of]" Plaintiff, *id.* Ex. E.[7]  Defendant stated that Plaintiff's unavailability caused Defendant to "relapse" in his drug abuse.  *Id.* Ex. C.[8]  These statements refer to specific instances of Plaintiff's conduct and, thus, have a precise meaning and are readily capable of being proven true or false.  They are therefore susceptible of a defamatory connotation.  *See, e.g.*, *Albert v. Loksen*, 239 F.3d 256, 267–68 (2d Cir. 2001) (accusations that a hospital worker "compromised the welfare" of a patient and was "dishonest" about safety violations were actionable defamatory statements; "Those accusations are more than statements of opinion about [the plaintiff's] work performance; they are specific statements of fact— statements capable of objective proof—about what [he] did and did not do.").

Defendant's accusations that Plaintiff lied to Defendant's family and that Plaintiff was caught committing misconduct are also reasonably susceptible of a defamatory connotation. According to Defendant, Plaintiff told Defendant's family that Plaintiff had to terminate his treatment of Defendant because Defendant "wasn't following the titration process."  Am. Compl. Ex. H.  In his messages, Defendant asserted that this explanation was false and a "poor attempt of deflection."  *Id.*; *see also, e.g.*, *id.* Ex. J ("You flat out lied about the titration.").  Defendant stated that the true reason that Plaintiff terminated treatment was that Defendant's parents "caught" Plaintiff committing some sort of misconduct.  *See, e.g.*, *id.* Ex. C ("[T]he only reason you terminated treatment was because my parents caught you . . . ."); *id.* Ex. I ("[Y]ou got red

---

[7]     *See also, e.g.*, Am. Compl. Ex. C ("You were no where [*sic*] to be found"; "You abandoned your patient when he got himself from 5 mgs to 1.5 mgs"); *id.* Ex. H ("[Y]ou were not there in Portland most of the time . . . . I was told you would be there but you weren't."); *id.* Exs. N, O.

[8]     *See also, e.g.*, Am. Compl. Ex. C ("I didn't have a dr and I beyond relapsed. . . . [Y]ou knew by not having a caring dr I would relapse."); *id.* Ex. H; *id.* Ex. I ("You know when you stopped the treatment it killed me."); *id.* Ex. N ("I will kill myself because of the titration you abandoned me on . . . . This is mental pain you caused a human being under your watch."); *id.* Ex. O.

handed caught."); Ex. J ("I still ask myself why . . . did you end treatment??  Was it because it

was disrespectful?  Was it you were spending to [*sic*] much time on my case shaming me[?]  No

it's you got caught. . . . You were caught red handed.").  But Defendant did not specify *what* his

parents caught Plaintiff doing, nor did Defendant otherwise describe the factual basis for this

assertion.  *See id.* Exs. C, I, J.  Drawing all inferences in Plaintiff's favor, as the Court must at

this stage, a reader could reasonably infer that some of these statements were assertions of fact

(such as the statements that Plaintiff lied to Defendant's family about the reasons for terminating

treatment) and others were statements of "mixed opinion" (such as the statements that implied

undisclosed facts about misconduct that Plaintiff was "caught" doing).  Thus, these statements

are actionable under the defamation laws.  *See Davis*, 24 N.Y.3d at 269; *see also, e.g.*, *Biro v.

Conde Nast*, 883 F. Supp. 2d 441, 462 (S.D.N.Y. 2012) (statement that the plaintiff had been

"[caught] in different lies" implied undisclosed facts about the plaintiff's conduct and, therefore,

was an actionable defamatory statement).[9]

　　　　The Court is mindful that Defendant's messages were filled with insults, profanity, and

other invective, *see, e.g.*, Am. Compl. Ex. F ("Your [*sic*] nothing but a coward."); *id.* Ex. J

("Your [*sic*] a f*****g true definition of cruelty."), and that rhetorical hyperbole, name-calling,

and generalized insults are not, without more, actionable under the defamation laws, *see Treppel

v. Biovail Corp.*, No. 03-CV-3002, 2004 WL 2339759, at *12 (S.D.N.Y. Oct. 15, 2004)

---

[9]　　　　Defendant argues that "statements about a person's motivation for certain conduct," such as a psychiatrist's reasons for deciding to terminate his relationship with a patient, "are generally not actionable because they are non-factual and thus non-verifiable."  Def.'s Mem. of Law at 10 (collecting cases).  Defendant also argues that these statements do not hold Plaintiff up to "ridicule, opprobrium, or obloquy," as required by the defamation laws, because a psychiatrist "is free to choose what patients to serve and may freely terminate a patient relationship" if he so chooses.  *Id.*; *see also* Def.'s Reply Mem. of Law at 5.  Both of these arguments fail.  Defendant did more than make a statement about Plaintiff's subjective motivation or about Plaintiff's choice to terminate a relationship with a patient:  he accused Plaintiff of lying about the motivation for that decision and of doing so in order to cover up misconduct.

(collecting cases); *see also, e.g.*, *McNamee v. Clemens*, 762 F. Supp. 2d 584, 603–04 (E.D.N.Y. 2011) (accusations that plaintiff "wanted to shake [defendant] down," that plaintiff "is constantly lying," and that plaintiff is "really just crawling up your back to make a buck" were not actionably defamatory); *Wahrendorf v. City of Oswego*, 72 A.D.3d 1604, 1605 (4th Dep't 2010) (defendant's statements that plaintiffs were "slumlords" and "sociopaths," and that plaintiffs' rental property was a "garbage heap" and a "pig pen" were not actionable). Defendant, however, did more than hurl generalized insults at Plaintiff: Defendant alleged specific instances of Plaintiff's misconduct, including occasions when Plaintiff was allegedly unavailable to help Defendant and particular misrepresentations that Plaintiff allegedly made to Defendant's family. Because these statements are capable of being proven true or false, they can reasonably be viewed as statements of fact. *See, e.g.*, *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 154–55 (2d Cir. 2000); *Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 516–17 & n.8 (S.D.N.Y. 2017) (distinguishing between a statement that an attorney "was subject to a conflict of interest" in a particular case (which was actionable) and a statement that an attorney was generally "uncooperative, abrasive, and dilatory" (which was not actionable); "When the criticism takes the form of accusations of criminal or unethical conduct, or derogation of professional integrity in terms subject to factual verification, the borderline between fact and opinion has been crossed."); *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 721–22 (S.D.N.Y. 2014); *Starace v. Chicago Tribune Co.*, No. 85-CV-9704, 1990 WL 71504, at *3 (S.D.N.Y. May 24, 1990); *Armstrong*, 85 N.Y.2d at 379 n.5 (accusation that an attorney suborned perjury and committed other unethical conduct was "based not on 'opinion' but on alleged factual misstatements").

Defendant argues that no reasonable reader could understand his messages as containing statements of fact, as the messages were a "series of late-night email rants with non-linear contents, frequent misspellings, questionable grammar, and over-the-top vulgarity." Def.'s Mem. of Law at 7. While the Court agrees with Defendant's description of these messages, the Court disagrees with Defendant's legal conclusion. Defendant's rambling and non-linear tone would not be wholly unexpected to a reasonable reader aware of his psychiatric condition. Defendant had been diagnosed with a personality disorder, the symptoms of which included "erratic and impulsive behavior" and "verbal threats," Am. Compl. ¶ 25, and his emails repeatedly stated that he was depressed and suffering emotional distress. *See, e.g.*, *id.* Ex. I ("I'm sitting here with a depression I never thought I could feel."); *id.* Ex. M ("You have zero idea the alienation you have caused and me not wanting to live in the world anymore."). Under these circumstances, a reasonable reader might find it unsurprising that Defendant did not take a "business-like and solemn tone," Def.'s Mem. of Law at 7, when complaining about Plaintiff's alleged misconduct. A reasonable reader could discount the erratic and emotional tone from these messages and, nevertheless, view them as expressing underlying, verifiable statements of fact.

Of course, a reasonable reader could also draw the opposite conclusion: that Defendant was so unstable that his messages were simply emotional rants, not statements of fact. But at this stage, the Court's task is to determine whether "*any* reading of the complaint supports" a defamatory connotation. *Davis*, 24 N.Y.3d at 272 (emphasis added); *see also Purgess*, 33 F.3d at 140 ("If any defamatory construction is possible, it is a question of fact for the jury whether the statements were understood as defamatory."). In light of the specific allegations of

misconduct in Defendant's messages, the question whether the messages are defamatory cannot be resolved on a motion to dismiss.[10]

For all these reasons, Defendant's motion to dismiss Plaintiff's libel claim is denied as to the statements that Plaintiff abandoned Defendant, that Plaintiff lied about the reasons for terminating his treatment of Defendant, and that Plaintiff was caught committing misconduct.

> **4.** **Defendant's Statements Regarding Plaintiff's Billing Practices and Plaintiff's Work at Brigham and Women's Hospital Are Not Reasonably Susceptible of a Defamatory Connotation**

In one email, Defendant complained about Plaintiff's billing practices and stated that Plaintiff has "[b]ilked people out of money." Am. Compl. Ex. B ("[W]hat the f*** have you done in your life?? Bilked people out of money. . . . I realized you equate everything to money you whore."); *id.* ("Why was Iam [*sic*] being billed for those appointments. . . . And in all this sadness I have the only thing you care about is $$$$$$."). Plaintiff argues that these statements

---

[10] Defendant's remaining arguments are without merit. First, Defendant cites *600 W. 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 134 (1992), in support of his motion. *See* Defs.' Mem. of Law at 7–8. That case is distinguishable. In *Von Gutfeld*, the defendant stated at a public hearing that the plaintiff's lease to create a sidewalk café "is as fraudulent as you can get and it smells of bribery and corruption." 80 N.Y.2d at 134–35. The New York Court of Appeals held that the statement was not actionable, because the use of the term "smells of" conveyed that the defendant had "no hard facts, only generalized suspicions," and because the "general tenor of the remarks" was an "angry, unfocused diatribe," rather than a "factual presentation." *Id.* at 143–44. Although Defendant's messages could also be fairly characterized as angry diatribes, the messages contain far more specific allegations than the one in *Von Gutfeld*. In addition, unlike the language in *Von Gutfeld* ("smells of"), the allegations in Defendant's messages do not contain phrasing that would signal unfounded, generalized suspicions. *See Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 293 (E.D.N.Y. 2015) (discussing "rhetorical indicators" that signal "that the writer or speaker is expressing an opinion"), *aff'd*, 670 F. App'x 731 (2d Cir. 2016). Finally, the statements in *Von Gutfeld* were made at a public forum; liability for statements made in that context raises more significant constitutional concerns than liability for the statements that Defendant made in emails.

Defendant also cites *Frechtman v. Gutterman*, 115 A.D.3d 102, 105 (1st Dep't 2014), in support of his motion. *See* Def.'s Mem. of Law at 8–9. This case is also inapposite. In *Frechtman*, the defendants disseminated a letter containing the following statement regarding their attorney: "We believe your failure to act in our best interest . . . may equate to misconduct, malpractice, and negligence. . . . We believe that your future representation on this matter only became necessary, as a result of mistakes and oversights made by you acting as counsel." 115 A.D.3d at 103–04. The Appellate Division held that these statements were non-actionable opinion. *See id.* at 106. Unlike Defendant's statements, the statements in *Frechtman* expressed a subjective evaluation about the attorney's performance. *See, e.g., id.* at 104 (stating that the attorney's conduct "*may equate* to misconduct" (emphasis added)). Defendant's statements, in contrast, discussed specific instances of Plaintiff's conduct, statements that are objectively provable as true or false.

are tantamount to allegations that Plaintiff engaged in "fraudulent billing" and, therefore, that they are actionable defamatory statements. Pl.'s Mem. of Law at 9, 16–17. The Court disagrees. Read in context, these statements are clearly hyperbole: they indicate that Defendant was dissatisfied with Plaintiff's services and that, in Defendant's opinion, Plaintiff's treatment sessions were not worth the money. No reasonable reader could interpret these statements as alleging concrete, provable facts, such as that Plaintiff engaged in overbilling or other misconduct. Thus, these statements are not reasonably susceptible of a defamatory connotation.[11] *See, e.g.*, *McNamee*, 762 F. Supp. 2d at 603–04; *Von Gutfeld*, 80 N.Y.2d at 134; *Wahrendorf*, 72 A.D.3d at 1605.

Defendant also stated that Plaintiff did not do "the most bang up job" when Plaintiff was working at Brigham and Women's Hospital. Am. Compl. Ex. C ("[Y]ou work at brighams women's hospital I hear you didn't [do] the most bang up job."). Plaintiff argues that this statement is actionable because it "implies that other, undisclosed people, for undisclosed reasons, hold a low opinion of [Plaintiff's] performance" at Brigham and Women's Hospital. Pl.'s Mem. of Law at 9 n.3. The Court disagrees. Whether third parties believe that Defendant did not do a "bang up job" is not a fact that is provable as true or false, because the term "bang up job" is imprecise and not readily understood. In addition, the argument that this statement

---

[11] Defendant called Plaintiff a "whore" who "equate[s] everything to money" in response to Plaintiff's request to bill Defendant for additional time that Plaintiff had planned to spend counseling Defendant after the parties' relationship broke down. *See* Am. Compl. Ex. B ("I would also request authorization to bill for any time spent in clinical conversation. I have spent a fair amount of unbillable time since we ended care, and there is also a small outstanding balance from before which I would appreciate clearing."). Additionally, the email in which Defendant stated that Plaintiff "[b]ilked people out of money" contained numerous complaints about Plaintiff's course of treatment generally. *See id.* Read in this context, Defendant's statements about "billing" were clearly a rhetorical device used to express Defendant's opinion about Plaintiff's performance, not a verifiable allegation of fact.

A different statement in Defendant's emails, that Plaintiff failed to give his "full undivided attention" to Defendant during their telephonic therapy sessions, *id.* Ex. C, comes closer to expressing a verifiable statement of fact. Plaintiff does not, however, rely on this statement as an independent basis for his libel claim. *See* Pl.'s Mem. of Law at 9, 16–17.

implies something about Plaintiff's professional reputation is a stretch: the statement merely asserts that Defendant "hear[d]" the opinion about Plaintiff's performance, without implying that the opinion is widely held. Accordingly, no reasonable reader could interpret this statement as defamatory.[12]

For all these reasons, Defendant's motion to dismiss is granted as to the statements in his emails about Plaintiff's billing practices and about Plaintiff's performance at Brigham and Women's Hospital.

### B. Defendant's Motion to Dismiss Plaintiff's Slander Claim Is Granted with Leave to Amend

#### 1. Introduction

Plaintiff also sues for slander, alleging that Defendant orally told members of Plaintiff's psychiatry practice that Plaintiff held "a therapeutic telephone call while 'drunk'" and "solicited prostitutes while on a work trip." Am. Compl. ¶ 57; *see also id.* ¶ 33. Defendant moves to dismiss this claim on the grounds that Plaintiff has failed to allege special damages[13] and that Plaintiff has failed to allege the claim with specificity. *See* Def.'s Mem. of Law at 12–13. The Court holds that Plaintiff is not required to plead special damages for this claim; however,

---

[12]     Plaintiff cites to *Pub. Relations Soc. of Am., Inc. v. Rd. Runner High Speed Online*, 799 N.Y.S.2d 847, 853 (N.Y. Sup. Ct. 2005), in support of his argument that a statement that an opinion is "shared by other persons" may be actionably defamatory. *See* Pl.'s Mem. of Law at 9 n.3. The statement at issue in that case was as follows: "Here's my take, which is shared by many: Catherine can manage a budget and deliver a powerful presentation with Powerpoint. That's it. She is a fast-talking nonstrategic PR person. She cannot manage or lead an organization. Her quarterly reports to staff are garbage, often met with rolling eyes . . . ." 799 N.Y.S. at 853. Compared with Defendant's statement, this statement was far more explicit in saying that an opinion about the plaintiff was shared by other persons. *See id.* ("Here's my take, which is *shared by many*" (emphasis added)). In addition, the opinion expressed in that case (that the plaintiff had poor leadership skills and turned in inadequate quarterly reports) was more specific and susceptible to objective proof than Defendant's statement (that Plaintiff had not done a "bang up job"). Accordingly, that case does not alter this Court's conclusion.

[13]     Special damages are "the loss of something having economic or pecuniary value." *Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992).

because Plaintiff has failed to allege the claim with adequate specificity, Defendant's motion to dismiss is granted with leave to amend.

### 2. Plaintiff Is Not Required to Plead Special Damages

In order to bring a claim for slander, a plaintiff must either plead special damages or show that the claim falls within one of four "established exceptions." *See Liberman*, 80 N.Y.2d at 434. The four exceptions, known collectively as "slander *per se*," are statements that: charge the plaintiff with a serious crime; tend to injure the plaintiff in his or her trade, business or profession; imply that the plaintiff has a loathsome disease; or impute unchastity to a woman. *Id.* "When statements fall within one of these categories, the law presumes that damages will result, and [special damages] need not be alleged or proven." *Id.*

Defendant's alleged statement that Plaintiff was "drunk" during a therapeutic session is slander *per se* because it tends to injure Plaintiff in his profession. "To be actionable as words that tend to injure another in his or her profession, the challenged statement must be more than a general reflection upon [the plaintiff's] character or qualities. Rather, the statement must reflect on her performance or be incompatible with the proper conduct of her business." *Golub v. Enquirer/Star Grp., Inc.*, 89 N.Y.2d 1074, 1076 (1997). The assertion that Plaintiff was intoxicated while conducting a telephonic therapy session bears directly on his fitness to perform his professional duties. *Cf. Rutman v. Giedel*, 67 A.D.2d 662, 662 (2d Dep't 1979) ("The false accusation that a police officer was drunk or intoxicated while on duty is slanderous *per se* and requires no allegation or proof of special damages."). Accordingly, because Defendant's statement tended to injure Plaintiff in his profession, it is actionable without proof of special damages.

Defendant's statement regarding Plaintiff's having solicited prostitutes is slander *per se* because it charges Defendant with a "serious crime." *See Casper v. Lew Lieberbaum & Co.*, No. 97-CV-3016, 1998 WL 150993, at *7 (S.D.N.Y. Mar. 31, 1998) (prostitution is a "sufficiently serious crime[] for the purposes of slander *per se*"). A crime is "serious" for purposes of the defamation laws if it is "(a) punishable by imprisonment in a state or federal institution, or (b) regarded by public opinion as involving moral turpitude." *Id.* (quoting *Restatement (Second) of Torts* § 571); *see also Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 62 (2d Cir. 1993). Patronizing a prostitute is a Class A Misdemeanor under New York law, *see* N.Y. Penal Law § 230.04, punishable by up to one year in prison, *see id.* § 70.15(1). This crime is sufficiently "serious" to support a claim for slander *per se*. *See Casper*, 1998 WL 150993, at *7; *see also Weldy*, 985 F.2d at 62 (misdemeanors under New York law may be "serious" crimes for purposes of slander *per se*).[14]

For all these reasons, Plaintiff need not plead special damages as to his claim for slander because he has alleged statements that are slander *per se*. Defendant's motion to dismiss Plaintiff's slander claim on this ground is, therefore, denied.

---

[14] In addition, numerous Courts of Appeals have held that solicitation of prostitution is a "crime involving moral turpitude," albeit in a different context (specifically, whether such a conviction can serve as a basis for removal under the immigration laws). *See Reyes v. Lynch*, 835 F.3d 556, 560 (6th Cir. 2016); *Gomez–Gutierrez v. Lynch*, 811 F.3d 1053, 1058–59 (8th Cir. 2016); *Florentino-Francisco v. Lynch*, 611 F. App'x 936, 938–39 (10th Cir. 2015); *Rohit v. Holder*, 670 F.3d 1085, 1090–91 (9th Cir. 2012). Although these cases do not address whether the crime is one of "moral turpitude" for purposes of the defamation laws, they are persuasive evidence that it is.

The Court also notes that Defendant failed to address his argument regarding special damages in his reply brief, despite the fact that Plaintiff responded to this argument in his opposition brief, *see* Def.'s Reply Mem. of Law at 5; Pl.'s Mem. of Law at 17; accordingly, even if the argument were not meritless, Defendant has abandoned it, *see Galin v. Hamada*, No. 15-CV-6992, 2016 WL 2733132, at *3 (S.D.N.Y. May 10, 2016); *In re Hoti Enterprises, L.P.*, No. 10-CV-24129, 2014 WL 1244779, at *4 (S.D.N.Y. Mar. 26, 2014) (collecting cases), *aff'd*, 605 F. App'x 67 (2d Cir. 2015).

### 3.  Plaintiff Has Not Alleged Slander with the Required Specificity

Defendant also moves to dismiss Plaintiff's slander claim on the ground that the

Amended Complaint fails to plead it with specificity.  *See* Def.'s Mem. of Law at 12–13.  Unlike

in state court, defamation claims brought in federal court are not subject to a heightened pleading

standard.  *See Biro*, 883 F. Supp. 2d at 456.  Nevertheless, allegations of defamation pleaded in

federal court must "be specific enough to afford [the] defendant sufficient notice of the

communications complained of to enable him to defend himself."  *Id.* (quoting *Gristede's Foods,

Inc. v. Poospatuck (Unkechauge) Nation*, No. 06-CV-1260, 2009 WL 4547792, at *8–9

(E.D.N.Y. Dec. 1, 2009)).  Specifically, a complaint must "identify the allegedly defamatory

statements, the person who made the statements, the time when the statements were made, and

the third parties to whom the statements were published."  *Neal v. Asta Funding, Inc.*, No. 13-

CV-2176, 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014) (quoting *Mobile Data Shred, Inc.

v. United Bank of Switzerland*, No. 99-CV-10315, 2000 WL 351516, at *6 (S.D.N.Y. Apr. 5,

2000)).

 Here, the Amended Complaint alleges vaguely that Defendant told various "employees

and clinicians at Pacific," Plaintiff's practice group, that Plaintiff was "drunk" when he

participated in a therapeutic call with Defendant from London and that Plaintiff was "in the

company of prostitutes" at around the same time.  Am. Compl. ¶ 33; *see also id.* ¶ 57.  The

Amended Complaint does not, however, identify precisely to whom Defendant made these

statements or the approximate date on which they were made.[15]  This information is necessary

---

[15]     Plaintiff argues that the Amended Complaint adequately identifies the timeframe during which the statement was made, as it alleges that the statement was made "at some point after" Plaintiff's March 2017 trip to London.  Pl.'s Mem. of Law at 17.  This allegation is not specific enough to comply with federal pleading standards, and the Court is confident that Plaintiff can delineate the timeframe with greater precision.

for Defendant to mount a defense based on the common interest privilege, to identify witnesses

for depositions, and to take other steps as part of his defense.

Accordingly, Defendant's motion to dismiss Plaintiff's slander claim is granted. Plaintiff

is granted leave to file a Second Amended Complaint to include more specific allegations

regarding the timing of the oral statements and the identity of the person(s) to whom the

statements were made.

### C. Defendant's Motion to Dismiss Plaintiff's Defamation Claims Based on the Common Interest Privilege Is Denied

Defendant moves to dismiss both defamation claims on the ground that the allegedly

defamatory statements are protected by the common interest privilege. Under New York law,

"communication[s] made by one person to another upon a subject in which both have an

interest" are subject to a "qualified privilege," known as the common interest privilege.

*Liberman*, 80 N.Y.2d at 437; *see also Boyd v. Nationwide Mut. Ins. Co.*, 208 F.3d 406, 409–10

(2d Cir. 2000) ("[G]ood faith communications of a party having an interest in the subject, or

a moral or societal duty to speak, are protected by a qualified privilege if made to a party having

a corresponding interest or duty."). "The qualified privilege creates a rebuttable presumption of

good faith that may constitute a complete defense." *Boyd*, 208 F.3d at 410 (internal quotation

marks omitted).

Defendant argues that his statements are protected by the common interest privilege,

because the people to whom Defendant sent the emails and made the oral statements all "share a

common interest in [Defendant's] health and well-being." Def.'s Mem. of Law at 11–12. This

argument fails, as the pleadings do not contain factual allegations to support it. Defendant, for

example, asserts that Alan Dershowitz and Dr. Robin Lippert, who were copied on several

messages, are members of Defendant's legal and psychiatric team, respectively; the Amended

Complaint and its exhibits, however, do not contain factual allegations to support that assertion. *See id.* at 11–12. Because the Court may not look outside the pleadings when deciding a motion to dismiss, *see Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007), Defendant's argument is without merit. Additionally, the Second Circuit has cautioned district courts against dismissing defamation claims based on the common interest privilege when deciding a Rule 12(b)(6) motion, holding that the privilege is better considered on a motion for summary judgment. *See Boyd*, 208 F.3d at 410–11; *Yukos Capital S.A.R.L. v. Feldman*, No. 15-CV-4964, 2016 WL 4940200, at *7 (S.D.N.Y. Sept. 14, 2016). Accordingly, Defendant may re-raise this defense in a future motion for summary judgment if the facts support it.

For all these reasons, Defendant's motion to dismiss Plaintiff's defamation claims based on the common interest privilege is denied.[16]

## III. Defendant's Motion to Dismiss Plaintiff's Claims for Violations of Ohio Criminal Statutes Is Granted

Plaintiff brings claims pursuant to four Ohio penal statutes, arguing that Ohio law allows private causes of action for violations of the state's criminal provisions.[17] *See* Am. Compl. ¶¶ 59–75; Pl.'s Mem. of Law at 19–24. Defendant moves to dismiss these claims, arguing that Oregon, not Ohio, law applies and that, under Oregon law, no such private right of action exists. *See* Def.'s Mem. of Law at 13–17; Def.'s Reply Mem. of Law at 6–8.

---

[16] Because the Court finds that the pleadings do not support the common interest privilege, the Court need not rule on Plaintiff's argument that Defendant has forfeited the privilege by acting with malice. *See* Pl.'s Mem. of Law at 18–19.

[17] Specifically, Plaintiff brings claims for telecommunications harassment, Ohio Rev. Code Ann. § 2917.21; menacing, *id.* § 2903.22; aggravated menacing, *id.* § 2903.21; and menacing by stalking, *id.* § 2903.211. *See* Am. Compl. ¶¶ 59–75.

### A.      Legal Standards

"A federal court sitting in diversity . . . must apply the choice of law rules of the forum state," here, New York.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157 (2d Cir. 2012) (per curiam) (hereinafter *Licci I*) (quoting *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989)); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Under New York's choice-of-law rules for tort cases, "[t]he first step . . . is to determine whether there is an actual conflict between the laws of the jurisdictions involved."  *Licci I*, 672 F.3d at 157 (quoting *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415 (2d Cir. 2006)); *see also In re Allstate Ins. Co.*, 81 N.Y.2d 219, 223 (1993).  If an "actual conflict" exists, "[t]he law of the jurisdiction having the greatest interest in the litigation will be applied."  *Licci I*, 672 F.3d at 157 (quoting *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 384 (2d Cir. 2006)); *see also Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (1985).  "Interest analysis is a 'flexible approach intended to give controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.'"  *Licci I*, 672 F.3d at 157–58 (quoting *Finance One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 337 (2d Cir. 2005)); *see also Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993).

"[I]nterest analysis distinguishes between two sets of rules:  conduct-regulating rules and loss-allocating rules."  *Licci I*, 672 F.3d at 158.  Conduct-regulating rules are those that "people use as a guide to governing their primary conduct."  *Id.*  Loss-allocating rules are those that "prohibit, assign, or limit liability after the tort occurs."  *Id.*  If the conflict concerns conduct-regulating rules, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."  *Id.* (quoting

*GlobalNet*, 449 F.3d at 384). If the conflict concerns loss-allocating rules, then the choice-of-law analysis requires application of the three-step test articulated in *Neumeier v. Kuehner*, 31 N.Y.2d 121, 128 (1972). *See Sheldon v. PHH Corp.*, 135 F.3d 848, 853 (2d Cir. 1998); *Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 521 (1994); *Cooney*, 81 N.Y.2d at 73–74.

Pursuant to *Neumeier*, if the plaintiff and defendant are domiciled in the same state, then the law of that state controls. *See Cooney*, 81 N.Y.2d at 73. If the parties are domiciled in different states, then the court must determine whether the law of each state favors its respective domiciliary; if it does, then the law of the state in which the relevant injury occurred should generally be applied. *See id.* at 73–74. In all other situations, the law of the place of injury[18] presumptively applies, unless "displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants." *Id.* at 74 (quoting *Neumeier*, 31 N.Y.2d at 128); *see also Atlantica Holdings*, 813 F.3d at 109. This framework is to be applied flexibly; the overriding question is always which state has the greater interest in having its law applied. *See Cooney*, 81 N.Y.2d at 73–74; *see also, e.g.*, *Licci II*, 739 F.3d at 50; *Sheldon*, 135 F.3d at 853; *Hamilton v. Accu-Tek*, 47 F. Supp. 2d 330, 337 (E.D.N.Y. 1999).

## B.    Application to This Case

The parties agree that there is an "actual conflict" between the laws of Oregon, where Plaintiff is domiciled, and those of Ohio, where Defendant is domiciled. *See* Def.'s Mem. of

---

[18]    To be precise, the law of the state "where the tort occurred" presumptively governs in these circumstances. *See Cooney*, 81 N.Y.2d at 72. The courts, however, have generally defined the "situs of the tort" as "the place of injury" when the conflict involves loss-allocating rules. *Cooney*, 81 N.Y.2d at 73–74; *see also Restatement (Second) of Conflict of Laws* § 146, cmt. e (1971); *Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 109 (2d Cir. 2016); *Fargas v. Cincinnati Mach., LLC*, 986 F. Supp. 2d 420, 424 (S.D.N.Y. 2013). The situs of the tort may be defined differently when a conflict involves conduct-regulating rules. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 50–51 (2d Cir. 2013) (per curiam) (hereinafter *Licci II*).

Law at 15; Pl.'s Mem. of Law at 20. Ohio has created a statutory cause of action for damages

resulting from any criminal act. *See* Ohio Rev. Code Ann. § 2307.60(A)(1) ("Anyone injured in

person or property by a criminal act has, and may recover full damages in, a civil action" brought

pursuant to the relevant criminal statute); *Jacobson v. Kaforey*, 149 Ohio St. 3d 398, 400 (2016).

Oregon, in contrast, allows private parties to bring statutory causes of action only in limited

circumstances, specifically, only if allowing the action "would be consistent with the [relevant]

statute, appropriate for promoting its policy, and needed to ensure its effectiveness." *Doyle v.

City of Medford*, 356 Or. 336, 363 (2014). Due to this narrow approach, Oregon's state and

federal courts have never created a private right of action to enforce a criminal statute (as far as

this Court is aware).[19] The difference between these states' rules is sufficient to find an "actual

conflict" of laws. *See Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 68 (2d Cir. 2017)

(quoting *Finance One*, 414 F.3d at 331–32).[20]

---

[19]  *See, e.g.*, *Sehat v. Progressive Universal Ins. Co. of Illinois*, No. 3:14-CV-01433-PK, 2016 WL 8199188, at *7 (D. Or. Nov. 22, 2016) (declining to create a private right of action for "simulating legal process," a crime under Oregon law), *report and recommendation adopted*, 2017 WL 462187 (D. Or. Feb. 2, 2017); *Great Am. Ins. Co. v. Linderman*, 116 F. Supp. 3d 1183, 1191 (D. Or. 2015) (declining to create a private right of action to enforce Oregon's criminal theft statutes); *Burnette v. Wahl*, 284 Or. 705, 707 (1978) (declining to create a private right of action to enforce Oregon's civil and criminal child welfare statutes).

[20]  Although the parties agree that there is an actual conflict, the Court notes some further ambiguity on this point. Under Ohio law, only individuals "injured in person or property" may sue under the state's criminal statutes. Ohio Rev. Code Ann. § 2307.60(A)(1). Presumably, this means that Ohio allows such claims only if parties seek to recover for bodily harm and damage to property. Here, Plaintiff sues under various harassment and menacing statutes, suggesting that he seeks to recover for emotional distress, not damage to his person or property. It is possible, then, that Plaintiff cannot state a claim under Ohio law.

This point does not change the Court's analysis. If Ohio law does not provide Plaintiff a right of action, then there is no conflict between the laws of Ohio and Oregon. "If no actual conflict exists, and if New York is among the relevant jurisdictions, the court may simply apply New York law." *Licci I*, 672 F.3d at 157. New York law does not ordinarily allow parties to bring private causes of action to enforce criminal statutes. *See Hammer v. Am. Kennel Club*, 1 N.Y.3d 294, 299 (2003); *Cablevision Sys. Corp. v. Commc'ns Workers of Am. Dist. 1*, 131 A.D.3d 1087, 1088 (2d Dep't 2015). Accordingly, even if no actual conflict of laws existed, Plaintiff's claims would still be dismissed.

This conflict concerns loss-allocating rules. Conduct-regulating rules establish the standards for determining whether conduct is wrongful, whereas loss-allocating rules determine the remedy for such wrongful conduct. *See GlobalNet*, 449 F.3d at 384; *Cooney*, 81 N.Y.2d at 72; *Schultz*, 65 N.Y.2d at 198. Put differently, conduct-regulating rules lay down the behavioral "rules of the road," *GlobalNet*, 449 F.3d at 384, whereas loss-allocating rules "prohibit, assign, or limit liability" for violations of those rules, *Padula*, 84 N.Y.2d at 522; *see also Cooney*, 81 N.Y.2d at 72 (referring to loss-allocating rules as "postevent remedial rules"); *Schultz*, 65 N.Y.2d at 198. Here, Ohio's and Oregon's criminal statutes establish the rules for appropriate conduct in those states. In contrast, a private right of action to enforce those statutes determines how to compensate people once those rules have been broken. The private right of action defines the remedy, not the wrong. It is, therefore, a loss-allocating rule under New York's choice-of-law principles.[21]

Because the conflict here concerns loss-allocating rules, the Court must apply the *Neumeier* framework to determine which state's law applies. *See Cooney*, 81 N.Y.2d at 73–74. Plaintiff and Defendant are not domiciled in the same state, and the law of each state does not favor its respective domiciliary (because the state of Defendant's domicile, Ohio, would provide a cause of action for Plaintiff, whereas the state of Plaintiff's domicile, Oregon, would not). Thus, the law of the state where Plaintiff sustained his injuries, Oregon, presumptively applies, unless applying a different state's law would advance the purposes of the "relevant substantive

---

[21] Like the private right of action at issue, many other rules are loss-allocating because they determine who can sue and be sued for tortious conduct, without changing the applicable standards of care. *See, e.g., Greene-Wotton v. Fiduciary Tr. Co. Int'l*, 324 F. Supp. 2d 385, 390 (S.D.N.Y. 2003) ("The provision in the workers' compensation law barring employer liability for work-related injuries or deaths is a loss-allocating rule, for it allocates losses between competing compensation schemes and does not govern duties owed by employers."); *see also, e.g., Fargas*, 986 F. Supp. 2d at 424 (same analysis for a statute of repose); *Long v. Pan Am. World Airways, Inc.*, 16 N.Y.2d 337, 342 (1965) (same analysis for rules that determine which of a decedent's survivors may sue for wrongful death).

law" without "impairing the smooth working of the multistate system" or producing uncertainty.[22] *Id.*

Plaintiff cannot defeat the presumption that Oregon law applies, as Ohio has a minimal interest in applying its law to this case. Having created a private right of action arising under the state's criminal laws, Ohio has an interest in ensuring that its residents are fully compensated for crimes that cause them injury. This case, however, concerns a resident of Oregon—not Ohio. The Court is hard-pressed to see why Ohio would care whether an Oregon resident were able to recover for violations of Ohio's criminal laws. *See Sheldon*, 135 F.3d at 854 (when plaintiffs were New York residents, and Michigan law allowed a cause of action for loss of parental consortium but New York law did not, New York law applied; although Michigan had an interest in compensating its residents for this loss, "Michigan can have no appreciable interest in securing that recovery for . . . New Yorkers"); *see also Caruolo v. John Crane, Inc.*, 226 F.3d 46, 58–59 (2d Cir. 2000) ("[B]ecause plaintiffs were Rhode Island domiciliaries, Rhode Island has a significant interest in ensuring that they are adequately compensated . . . . New York, on the other hand, has at best a lesser interest . . . because neither party is a New York domiciliary . . . ."); *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 13 (2d Cir. 1996) ("[A]ny interest that Scotland may have in application of its laws to [a case involving an airplane crash in Scotland] is minimal. Scotland has a legitimate and strong interest in promoting safe air travel and in preventing future accidents in its skies. But that interest is not advanced by the assessment of the loss suffered by this plaintiff [an American domiciliary]." (citation omitted)).

---

[22] The parties agree that Oregon is the place of injury, although the Amended Complaint does not entirely make that clear. *See* Defs.' Mem. of Law at 17; Pl.'s Mem. of Law at 21; *see also* Am. Compl. ¶¶ 10, 19, 28.

The Court acknowledges that civil causes of action are often intended not only to compensate victims for wrongful conduct, but also to punish and deter that conduct. *See, e.g.*, *Restatement (Second) of Conflict of Laws* § 146, cmt. e. To the extent that a rule is intended to punish conduct, the state in which the conduct occurred would presumably have a stronger interest in applying its law, in order to police that conduct. *See id.* Invoking this principle, Plaintiff argues that "Ohio. . . has a stronger interest in regulating criminal conduct in violation of Ohio law that occurs within its borders than Oregon." Pl.'s Mem. of Law at 20; *see also id.* at 22. The Court is not persuaded. First, it is not clear that Defendant sent the emails and text messages at issue from Ohio. Defendant's connection to Ohio during the relevant time period is tenuous at best: throughout 2016 and 2017, Defendant traveled to Israel, New York, and Las Vegas, and he lived in Oregon for several months while Plaintiff was treating him. *See* Am. Compl. ¶¶ 17, 19, 24, 27–28. Defendant also moved to Los Angeles at around the time that he began sending the emails and texts at issue. *See* Am. Compl. ¶ 34. There is no indication in the Amended Complaint that Defendant subsequently returned to Ohio and continued communicating with Plaintiff from there. Because there is no indication that Defendant's allegedly criminal conduct took place in Ohio, Ohio's interest in punishing and deterring that conduct is minimal.[23]

Additionally, by its plain terms, Ohio's right of action does not appear to be intended to punish criminal conduct, as much as it is intended to compensate victims for that conduct. The statute creating the right of action limits Plaintiff's recovery to compensatory damages, and does

---

[23]     Plaintiff argues that the Court should "presume[]" that Defendant sent the emails from Ohio because Defendant is an Ohio domiciliary. *See* Pl.'s Mem. of Law at 20. The Court disagrees. The Amended Complaint fails to allege that Defendant spent *any* time in Ohio during the relevant time period. Drawing the inference that Plaintiff requests would be too speculative a leap on a motion to dismiss. Moreover, even if Plaintiff amended his pleading to include allegations that Defendant communicated with him from Ohio, that would not alter the Court's conclusion, given that Ohio's private right of action is intended to compensate parties, not to punish them.

not allow punitive damages absent special circumstances.[24]  *See* Ohio Rev. Code. Ann.

§ 2307.60(A)(1).  In sum, because Ohio has little interest in applying its law to this case, Plaintiff

cannot defeat the presumption that Oregon law applies.

This result is consistent with New York's choice-of-law principles.  Like Ohio, Oregon

also does not have a strong interest in applying its law to this case:  although Oregon restricts

private rights of action to limited circumstances, Oregon has no interest in enforcing this rule in a

lawsuit in a federal court in New York.  When, as here, "the interest of each State in enforcement

of its law is roughly equal . . . the situs of the tort is appropriate as a 'tie breaker' because that is

the only State with which both parties have purposefully associated themselves in a significant

way."  *Cooney*, 81 N.Y.2d at 74 (citation omitted).  Under these circumstances, "the place of

injury," Oregon, is "the traditional choice of law crucible."  *Id.*

For all the foregoing reasons, Oregon law applies to Plaintiff's statutory causes of action.

Because Oregon would not allow a private right of action under these circumstances, Plaintiff's

statutory claims are dismissed with prejudice.[25]

---

[24]     By way of contrast, other causes of action under Ohio law appear more directed at punishment than compensation.  Had Plaintiff sued under the state's criminal identity theft statute, for example, he would have been entitled to treble damages.  *See* Ohio Rev. Code Ann. § 2307.611.

[25]     Because the Court finds that Ohio law does not apply, the Court need not reach Defendant's argument that Plaintiff failed to state a claim under Ohio law.  *See* Def.'s Mem. of Law at 17–21; Def.'s Reply Mem. of Law at 8–10.  Additionally, because leave to amend Plaintiff's Ohio claims would be futile, those claims are dismissed with prejudice.

Plaintiff also argues that Defendant should be estopped from arguing that Oregon law applies because, in Defendant's first motion to dismiss, Defendant allegedly conceded that Ohio law applies.  *See* Am. Compl. ¶ 60; Pl.'s Mem. of Law at 2–4, 19–20.  Plaintiff's argument lacks merit.  In his original Complaint, Plaintiff brought a claim pursuant to a New York Penal Law provision criminalizing harassment, *see* Compl., Dkt. 13, ¶¶ 54–56; Defendant moved to dismiss, arguing that New York law did not apply to the claim and that, instead, *either* Ohio *or* Oregon law applied, *see* Def.'s First Mem. of Law, Dkt. 29, at 5 ("Conflicts-of-law principles dictate that, in this case, the substantive law of either Oregon or Ohio applies . . . ."); *id.* at 11 ("In the end, on the question whether a criminal statute gives rise to an implied civil tort claim, it is immaterial whether Oregon law or Ohio law applies . . . .").  At no point in that motion did Defendant concede that Ohio law necessarily applies.

**IV.** **Defendant's Motion to Dismiss Plaintiff's Claim for Intentional Infliction of Emotional Distress Is Granted with Leave to Amend**

The parties agree that New York law applies to Plaintiff's IIED claim.[26]  *See* Def.'s Mem. of Law at 21 n.8; Pl.'s Mem. of Law at 25.  Under New York law, a plaintiff must allege four elements to state a claim for IIED:  "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress."  *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993).  As to the fourth element, "the emotional distress suffered by the plaintiff must be so severe that no reasonable [person] could be expected to endure it."  *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 490 (S.D.N.Y. 2013) (quoting *Wiener v. Unumprovident Corp.*, 202 F. Supp. 2d 116, 122 (S.D.N.Y. 2002)); *see also Restatement (Second) of Torts* § 46, cmt. j (1965).  A plaintiff must usually present medical evidence in order to make this showing.  *See Allam v. Meyers*, 906 F. Supp. 2d 274, 282–83 (S.D.N.Y. 2012) (collecting cases); *Pepe v. Maklansky*, 67 F. Supp. 2d 186, 187 n.1 (S.D.N.Y. 1999).

Here, Plaintiff fails to allege any facts suggesting that he experienced severe emotional distress.  On the contrary, Plaintiff's responses to Defendant's emails suggest that, as a trained clinician, Plaintiff remained calm and largely unaffected by Defendant's harangues.  *See, e.g.*, Am. Compl. Ex. C ("I do not mind him insulting or cursing at me."); *id.* Ex. D (telling Defendant that "while it is hard not to find [a recent text message] offensive, I see in it primarily your suffering, and it moves me to even greater hope that you will at some point engage in real treatment."); *id.* ("I truly wish you well, and I have tried to be as respectful and collaborative as

---

[26]     Specifically, as with Plaintiff's defamation claim, New York law applies to Plaintiff's IIED claim because there is no conflict of law with respect to the elements of IIED among the relevant jurisdictions.  *See* Def.'s Mem. of Law at 21 n.8; *Licci I*, 672 F.3d at 157.

possible."). Because there are no facts in the Amended Complaint that plausibly allege that Plaintiff suffered severe emotional distress, Plaintiff has not stated a claim for IIED.

For all these reasons, Defendant's motion to dismiss Plaintiff's IIED claim is GRANTED. Although the Court has serious doubts that Plaintiff can allege facts supporting a plausible inference of severe emotional distress, the Court will allow Plaintiff to amend his pleading to attempt to do so, if he wishes. Accordingly, the IIED claim is DISMISSED WITH LEAVE TO AMEND.[27]

## CONCLUSION

For all the foregoing reasons, Defendant's motion to dismiss the Amended Complaint is GRANTED IN PART AND DENIED IN PART. Specifically:

1. Defendant's motion to dismiss Plaintiff's libel claim is DENIED as to the statements that Plaintiff abandoned Defendant in treatment, that Plaintiff lied to Defendant's family about the reasons for terminating treatment, and that Defendant's parents caught Plaintiff committing misconduct. Defendant's motion is GRANTED as to the statements in Defendant's emails that Plaintiff engaged in improper billing practices and that Plaintiff did not do "a bang up job" while working at Brigham and Women's Hospital.

2. Defendant's motion to dismiss Plaintiff's slander claim is GRANTED for failure to plead the claim with sufficient specificity; the slander claim is DISMISSED WITH LEAVE TO AMEND. Plaintiff is not required to plead special damages for this claim.

3. Defendant's motion to dismiss Plaintiff's Ohio statutory claims is GRANTED; those claims are DISMISSED WITH PREJUDICE.

---

[27] Because the Amended Complaint fails to allege severe emotional distress, the Court need not address Defendant's other arguments relating to this claim at this time.

4.      Defendant's motion to dismiss Plaintiff's claim for IIED is GRANTED; that

claim is DISMISSED WITH LEAVE TO AMEND.

5.      The Clerk of Court is respectfully directed to close the open motion at Dkt. 41.

**SO ORDERED.**

**Date: February 27, 2019**
**New York, NY**                                    _____
                                                    **VALERIE CAPRONI**
                                                    **United States District Judge**