| UNITED STATES DISTRICT COURT | USDC SDNY |
| SOUTHERN DISTRICT OF NEW YORK | DOCUMENT |
| -------------------------------------------------------------X | ELECTRONICALLY FILED |
| PAUL M. CONTI, | DOC #: |
| | DATE FILED: 8/20/2019 |
| Plaintiff, | |
| | 17-CV-9268 (VEC) |
| -against- | |
| | MEMORANDUM |
| JOHN DOE, | OPINION AND ORDER |
| | |
| Defendant. | |
| -------------------------------------------------------------X | |

VALERIE CAPRONI, United States District Judge:

Plaintiff Paul Conti, a psychiatrist, has sued Defendant John Doe, Plaintiff's former patient, for defamation under New York law. *See* First Amended Complaint ("FAC"), Dkt. 31. Plaintiff moves for leave to amend his pleading, to add a claim for stalking under Oregon law. *See* Notice of Mot., Dkt. 90. For the following reasons, Plaintiff's motion is DENIED.

## BACKGROUND

The Court will assume familiarity with the facts of this case, which have been set forth in a prior opinion (the "MTD Opinion"). *See* MTD Opinion (Feb. 27, 2019), Dkt. 57, *available at* 2019 WL 952281.

Plaintiff filed this case on November 27, 2017, bringing claims for harassment and intentional infliction of emotional distress ("IIED") under New York law. *See* Compl., Dkt. 13, ¶¶ 54–61. On December 27, 2017, the Court entered a case management plan and allowed the parties to begin fact discovery. *See* Dkt. 10. On February 7, 2018, Plaintiff filed the FAC. The FAC asserted claims for defamation and IIED under New York law and for telecommunications harassment, menacing, aggravated menacing, and menacing-by-stalking under Ohio law. *See* FAC ¶¶ 54–79; MTD Opinion, 2019 WL 952281, at *2, *9 n.17 (slip op. at 4, 19 n.17).

In March and April 2018, Defendant moved to dismiss the FAC and to stay depositions of fact witnesses pending resolution of the motion to dismiss. *See* Dkts. 41, 50. In May 2018, while the motion to dismiss was still pending, the Court granted the motion to stay depositions of fact witnesses but ordered that all other fact discovery be completed by May 31, 2018 (other than third-party document discovery, which the Court ordered be completed by June 29, 2018). *See* Dkts. 53, 56.

On February 27, 2019, the Court granted in part and denied in part Defendant's motion to dismiss the FAC. *See* MTD Opinion; *see also* Order (Feb. 27, 2019), Dkt. 58. As relevant here, the Court dismissed Plaintiff's Ohio-law claims, finding, after a choice-of-law analysis, that Oregon law applied to that part of Plaintiff's case. *See* MTD Opinion, 2019 WL 952281, at *12 (slip op. at 26). Almost a month later, on March 22, 2019, the Court held a conference with the parties, lifted the stay on depositions of fact witnesses, and ordered that all such depositions be completed by July 31, 2019. *See* Dkt. 61.

Throughout the following two months, the parties deposed most of their fact witnesses. Plaintiff deposed Defendant, and Defendant deposed at least seven non-party witnesses located in Oregon, including members of Plaintiff's psychiatric practice, Plaintiff's own treating physician, and Plaintiff's wife. *See* Pl.'s Mem. of Law, Dkt. 92, at 5; Schalk Decl., Dkt. 91, ¶ 12; Celli Decl., Dkt. 107, ¶ 4; Schalk Reply Decl., Dkt. 127, ¶¶ 5, 8–9; Def.'s Ltr. (June 10, 2019), Dkt. 74, at 1.

On June 11, 2019, Plaintiff, for the first time, notified the Court that he intended to move for leave to file a Second Amended Complaint ("SAC"), in order to add a claim for stalking under Oregon law.[1] *See* Ltr. (June 11, 2019), Dkt. 75; Pl.'s Mem. of Law at 6; Proposed SAC,

---

[1] Plaintiff appears to have notified Defendant on June 10, 2019 of Plaintiff's intent to seek leave to file the SAC. *See* Pl.'s Ltr., Dkt. 75; Def.'s Ltr., Dkt. 74.

2

Schalk Decl. Ex. E. Defendant deposed Plaintiff one day later, on June 12, 2019. *See* Pl.'s Mem. of Law at 6.

## DISCUSSION

### I. Standard of Review

Pursuant to Federal Rule of Civil Procedure 15, "[t]he court should freely give leave" to a party to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). A district court may deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).[2]

### II. Plaintiff Unduly Delayed Moving for Leave to Amend

#### A. The Applicable Law

When a party "had an opportunity to assert [an] amendment earlier" in a case but failed to do so, "a court may exercise its discretion more exactingly" in deciding whether to grant leave to amend. *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008). A district court "plainly has discretion . . . to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990); *see also, e.g.*, *McCarthy*, 482 F.3d at 201; *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (affirming denial of leave to amend because "[w]hen he commenced this action . . . [the plaintiff] had all the information necessary to support a breach of contract claim, and nothing he

---

[2] Because the Court finds that leave to amend is not warranted under Rule 15, the Court need not address Defendant's argument that leave to amend is not warranted under the more stringent standards of Rule 16.

learned in discovery or otherwise altered that fact."). "The burden is on the party who wishes to amend to provide a satisfactory explanation for [any] delay." *Cresswell*, 922 F.2d at 72.

### B. Plaintiff Delayed Amending His Pleading for At Least Three Months Longer Than Necessary

Plaintiff argues that until the Court ruled in the MTD Opinion that Oregon law applied to this case, he could not fairly have known of the need to amend his pleading to add a claim under Oregon law. *See* Pl.'s Mem. of Law at 5; Pl.'s Reply Mem. of Law, Dkt. 126, at 7–9. The Court will assume for purposes of this motion that Plaintiff could not have been expected to propose his amendment until the Court entered the MTD Opinion, on February 27, 2019.[3] But Plaintiff waited until June 11, 2019, or more than three months *after* the Court entered that Opinion, to give notice of his proposed amendment. Those three months were critical to this case, as that is the time that Defendant conducted most of his depositions. Plaintiff offers no plausible explanation for this delay.

Plaintiff asserts that he needed these three months "to analyze the law, incorporate relevant facts, and draft the SAC." Pl.'s Reply Mem. of Law at 9; *see also* Pl.'s Mem. of Law at 4 n.2. This argument is unpersuasive. It could not reasonably have taken Plaintiff three months to research Oregon law and draft an amended pleading. The amendment does not raise any complex legal issues, *see* Pl.'s Mem. of Law at 8–9, and the statute underlying the proposed claim is easy to find, as it has been the subject of several recent opinions. *See, e.g.*, *M.K.F. v.*

---

[3] Plaintiff's strategy, however, of alleging harassment under New York law (a state in which neither party resides), and his fallback strategy of alleging similar claims under Ohio law (the state in which Defendant resides), before attempting to allege an analogous claim under Oregon law (where Plaintiff resides and where, presumably, he was injured by Defendant's conduct) is more than a little curious.

*Miramontes*, 352 Or. 401, 403 (2012) (en banc); *Delgado v. Souders*, 334 Or. 122, 141 (2002); *Elkins v. City of Portland*, No. 08-CV-799, 2009 WL 928686, at *5 (D. Or. Apr. 2, 2009).[4]

Nor could it reasonably have taken Plaintiff three months to "incorporate relevant facts" into his amended pleading. Pl.'s Reply Mem. of Law at 9. The claim proposed in the SAC, stalking, is nearly identical to claims that were alleged in the Complaint and the FAC, harassment and menacing-by-stalking (respectively). These three claims share many of the same elements, and all rely on the same general legal theory: an allegation that Defendant engaged in a course of conduct that put Plaintiff in fear for his safety. *See* SAC ¶¶ 62, 65; FAC ¶ 73; Compl. ¶¶ 55–56. Further, all three claims rely on the same set of operative facts: a series of emails and text messages that Defendant sent to Plaintiff between April and November 2017. These communications were discussed extensively in Plaintiff's first two pleadings. *See* FAC ¶¶ 5–6, 35–51; Compl. ¶¶ 5–6, 35–51. In short, the facts underlying the SAC are essentially the same as those underlying the Complaint and the FAC; the SAC simply re-alleges (under a different state's law) a claim that the Court dismissed in the MTD Opinion. It remains a mystery, then, why Plaintiff needed three months to make this change.

### C. The Facts Adduced in Discovery Do Not Excuse Plaintiff's Delay

Plaintiff argues that he was unable to propose his amendment until he learned certain facts in discovery in May and June 2019, specifically, facts adduced during Defendant's deposition, in a declaration opposing a motion for an independent medical examination ("IME"), and in certain medical records produced by one of Defendant's treatment providers. *See* Pl.'s Mem. of Law at 1, 5–7; Pl.'s Reply Mem. of Law at 7–9 & n.10; Tr. of June 27, 2019 Conf., Dkt. 104, at 44–45. This argument is unpersuasive.

---

[4] The case on which Plaintiff's motion principally relies, *Elkins*, 2009 WL 928686, is in the top ten results of a Westlaw search for federal cases in the Ninth Circuit containing the terms "stalking & Oregon."

### 1. Defendant's Deposition Testimony

Plaintiff points to a number of facts that he supposedly "learned" during Defendant's deposition, *see* Pl.'s Mem. of Law at 5–7, 11–12; Pl.'s Reply Mem. of Law at 9 n.10, but all were adduced or alleged in this case well before Plaintiff sought leave to file the SAC. As shown in the chart below, the facts alleged in the SAC that are drawn from Defendant's deposition testimony were either already asserted in the FAC or produced in earlier discovery:

| Allegation in the SAC | Similar Allegation in the FAC or in Prior Discovery |
|---|---|
| Defendant "enlisted" an unnamed rabbi to "procure" Xanax for him in Israel. (SAC ¶ 27(a)). | The same rabbi "secretly delivered . . . unprescribed, illicit Xanax" to Defendant in the United States. (FAC ¶ 27(a)). |
| Defendant "struck" one of his employees after the employee's dog "interacted" with Defendant's dog. (SAC ¶ 27(d); *see also id.* ¶ 53(a)). | Defendant "punch[ed] an employee in the face after the employee's dog showed dominant behavior over [Defendant's] dog." (FAC ¶ 27(d)). |
| Defendant intended his 2017 emails and text messages to "alarm and coerce" Plaintiff. (SAC ¶ 53). Defendant sent the emails and text messages because he wanted to "hurt" Plaintiff and to make Plaintiff feel "shame." (*Id.* ¶ 53(a)). | In an April 2017 email, Plaintiff told Defendant's parents that Defendant "is willing to lie, to threaten, and to be as hurtful as possible." (Schalk Decl. Ex C at PC000269). Defendant's mother responded that Defendant has made a "calculated attack" on Plaintiff in order to make Plaintiff feel "vulnerable and exposed." (*Id.* at PC000267).[5] |
| Defendant "has poor impulse control and lashes out at others who he feels have shamed him," including Plaintiff and Defendant's parents. (SAC ¶ 53(a)). | Defendant "verbally and profanely insult[s] and threaten[s] his parents and others around him." (FAC ¶ 16(a)). |

---

[5] Plaintiff cites to these emails in support of his motion for leave to amend and includes allegations relating to them in the proposed SAC. *See* Pl.'s Mem. of Law at 3; SAC ¶ 53(a). It is not at all clear, however, why these emails could not have been the basis for allegations in Plaintiff's earlier pleadings, inasmuch as Plaintiff sent and received the emails prior to the time that this litigation commenced.

6

| | |
|---|---|
| Defendant told his mother that she was "sick" and made other disparaging remarks to her. (SAC ¶ 53(a)). | Defendant subjected his mother to a "constant barrage of profane insults" (FAC ¶ 22). |
| Defendant "has engaged in illegal conduct," including purchasing Xanax without a prescription and borrowing more than $1 million from a "loan shark" in order to feed his gambling addiction. (SAC ¶ 53(b)). | Defendant obtained "unprescribed, illicit Xanax" on at least one occasion. (FAC ¶ 27(a)). Defendant "stole in excess of $1 million from his parents" and told a therapist that he obtained funds for gambling from "individuals to whom he alluded as being members of organized crime." (*Id.* ¶ 27(b)). |
| Defendant "comes from a world of unimaginable wealth and has vast financial resources at his disposal . . . ." (SAC ¶ 53(c)).[6] | Defendant "was born into a life of incredible luxury. He is a son of one of the wealthiest families" in the area in which he lives. (FAC ¶ 3). He has "gambl[ed] away millions of dollars." (*Id.* ¶ 20). He lives an "extravagant lifestyle," which includes "a private jet and unlimited cash." (*Id.* ¶ 27(c)). |

As set forth above, none of the facts adduced during Defendant's deposition that are alleged in the SAC was unknown to Plaintiff earlier in this case; the deposition, therefore, does not excuse Plaintiff's three-month delay.

### 2. Declaration Opposing Defendant's Motion for an IME

On May 29, 2019, Plaintiff submitted to the Court a declaration in opposition to Defendant's motion to conduct an IME. *See* Schalk Decl. Ex. A; Pl.'s Decl., Dkt. 99. The declaration asserted that Defendant's 2017 emails and text messages caused Plaintiff ongoing anxiety, even though they were sent two years prior, because patients with personality disorders often present an "escalating threat" over time. Pl.'s Reply Mem. of Law at 5–6 (quoting Schalk

---

[6] The SAC includes other allegations that detail the ways in which Defendant "has vast financial resources at his disposal." SAC ¶ 53(c). Although many of these details were not alleged in the Complaint or the FAC, they are entirely cumulative. The overarching point that Defendant is extremely wealthy was indisputably known to Plaintiff at the outset of this litigation.

Decl. Ex. A ¶ 8). According to the declaration, patients "are often reined in by their family members" early in the treatment process, but family members' "vigilance" gradually decreases, making the patient more dangerous over time. *Id.*

Plaintiff asserts that the concept of an "escalating threat" is critical to his proposed stalking claim, inasmuch as the claim requires him to prove that his fear of Defendant is objectively reasonable. *See* Pl.'s Mem. of Law at 2–3, 12–14; Pl.'s Reply Mem. of Law at 5–6. According to Plaintiff, the escalating-threat concept was not "raised" in this case until he submitted his May 29, 2019 declaration opposing the motion for an IME. Pl.'s Reply Mem. of Law at 5–6; *see also See* Pl.'s Mem. of Law at 2–3, 12–14. Plaintiff, therefore, argues that he could not have amended his pleading earlier than May 29, 2019, the date that this issue was first "raised." Pl.'s Reply Mem. of Law at 6; *see also* Pl.'s Mem. of Law at 2–3, 12–14.

This argument is absolute nonsense. The assertions in *Plaintiff's* declaration about an "escalating threat" arise out of *his* expertise as a psychiatrist; there is no reason, therefore, that the assertions could not have been added to his pleading earlier in this case. Essentially, Plaintiff argues that he was unable to rely on his own expertise and personal knowledge to amend his pleading until he shared that knowledge with the Court and Defendant in a formal declaration. That argument defies logic. Furthermore, taking the FAC's allegations as true, it is clear that Defendant's family *never* "reined" him in, as the FAC is replete with allegations that the family "enable[d] him" and "took no action" to make him "feel the consequences of his . . . misconduct." FAC ¶¶ 27, 27(a); *see also id.* ¶¶ 9, 29. This argument, in short, is frivolous.[7]

---

[7] Had the Court been so inclined, this argument could have been the subject of sanctions.

### 3. Medical Records

On June 21, 2019, medical records were produced to Plaintiff from one of Defendant's treatment providers. *See* Pl.'s Mem. of Law at 6; Schalk Decl. ¶ 5; *id.* Ex. B. The records show that, in late 2018, Defendant reported to his doctors that he had engaged in "homicidal ideation" about Plaintiff. Schalk Decl. Ex. B at DEF000934. Plaintiff argues that he could not have amended his pleading before he received these documents because they, like Plaintiff's declaration opposing the IME, show that Plaintiff's fear of Defendant was objectively reasonable. *See* Pl.'s Mem. of Law at 1, 6; Tr. of June 27, 2019 Conf. at 44–45.

This argument is not persuasive. Plaintiff's stalking claim arises out of emails and text messages that Defendant sent in mid-2017. To state the claim, Plaintiff would need to allege, among other things, that these communications caused him alarm and that this alarm was objectively reasonable. *See* Pl.'s Mem. of Law at 8. But whether Defendant harbored homicidal ideations in 2018 says nothing about whether Plaintiff's fear in 2017—more than a year earlier— was objectively reasonable. To be sure, the ideations could be probative of the reasonableness of Plaintiff's *ongoing* fear from Defendant's 2017 communications, if there were evidence that Plaintiff experienced fear as late as 2018 and 2019, but that evidence was not *necessary* to state the stalking claim in the first instance. It is, therefore, is not a valid excuse for Plaintiff's three-month delay.

Moreover, prior to the time that these records were produced, Plaintiff already had ample evidence of the objective reasonableness of his alleged fear. In opposing Defendant's motion to dismiss the FAC, for example, Plaintiff argued that he "had good reason to be fearful of Defendant's violent tendencies" because of Defendant's alleged history of violence, drug abuse, lack of "impulse control," and "ties to organized crime." Pl.'s Mem. of Law in Opp. to Def.'s

Mot. to Dismiss (Apr. 13, 2018), Dkt. 47, at 1; *see also id.* at 24 ("[Defendant's] access to unlimited funds and his ties to organized crime provided [Plaintiff] with an eminently reasonable basis to fear that [Defendant] would follow through on his threats."). At best, the medical records bolstered—marginally—what was already a plausible inference; they in no way excuse Plaintiff's three-month delay.[8]

For all these reasons, none of Plaintiff's excuses for waiting more than three months after entry of the MTD Opinion to move for leave to amend is persuasive. That weighs heavily against granting leave to amend.

### III. Defendant Would Be Prejudiced by Plaintiff's Amendment

#### A. The Applicable Law

A court may deny leave to amend if the amendment would cause undue prejudice to the non-moving party. *McCarthy*, 482 F.3d at 200 (citing *Forman*, 371 U.S. at 182). "In gauging prejudice," a court may consider "whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *Ruotolo*, 514 F.3d at 192 (internal quotation marks omitted); *see also, e.g.*, *Werking v. Andrews*, 526 F. App'x 94, 96–97 (2d Cir. 2013). A court may also consider whether "the amendment substantially changes the theory on which the case has been proceeding," 6 Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Prac. & Proc. Civ.* § 1487 (3d ed.), or, alternatively, whether "the new claims are related to the existing ones," *United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 285 F. Supp. 3d 759, 766

---

[8] *See Sadhu Singh Hamdard Tr. v. Ajit Newspaper Advert., Mktg. & Commc'ns, Inc.*, No. 04-CV-3503, 2009 WL 10701800, at *3 (E.D.N.Y. Jan. 8, 2009) ("Certainty of success is not an essential element in determining whether" to amend a pleading; a party wishing to propose an amendment must do so "at the earliest possible moment" (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983))), *aff'd*, 394 F. App'x 735 (2d Cir. 2010).

(S.D.N.Y. 2018); *see also, e.g.*, *In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481, 2016 WL 1629350, at *5–6 (S.D.N.Y. Apr. 25, 2016).

### B. Plaintiff's Amendment Would Require a Do-Over of Fact Depositions

In the MTD Opinion, the Court dismissed all claims in the FAC except for common-law libel. *See* MTD Opinion, 2019 WL 952281, at *13 (slip op. at 28–29); FAC ¶¶ 54–58. Defendant, therefore, deposed his fact witnesses on the assumption that he was defending against "a libel case—and a libel case only." Def.'s Mem. of Law, Dkt. 106, at 2; *see also* Tr. of June 27, 2019 Conf. at 41–43. That assumption was understandable: the live claims in a pleading provide a defendant with notice of the grounds upon which the plaintiff's case rests; "[h]aving received such notice, a defendant may conduct his trial preparation accordingly and is not required . . . to anticipate future claims that a plaintiff might intend to pursue." *McCarthy*, 482 F.3d at 201–02 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512–14 (2002)).

Defending against a stalking claim is entirely different than defending against a libel claim. Although both claims seek damages for Plaintiff's alleged emotional distress, they allege emotional distress resulting from different causes (for libel, defamatory statements; for stalking, unwanted contacts). Further, unlike the libel claim, the stalking claim requires that any emotional distress that Plaintiff experienced be objectively reasonable. And Plaintiff's alleged fear is an element of liability for stalking, whereas it is only a form of damages for libel; the issue, therefore, merits greater attention when raised in the context of stalking.[9]

Permitting Plaintiff to amend would, therefore, require significant additional discovery. Defendant represents that, had the stalking claim been timely pleaded, he would have asked members of Plaintiff's psychiatric practice in-depth questions designed to explore the

---

[9] Indeed, were Defendant betting that he could win summary judgment as to liability for the libel claim, he would have little reason to conduct discovery on damages for that claim.

reasonableness of Plaintiff's fear of Defendant, given that Plaintiff is a psychiatrist and that making empty threats is a symptom of Defendant's personality disorder. *See* Def.'s Mem. of Law at 11–14; FAC ¶ 25; Schalk Decl. Ex. C. Defendant could also have conceivably retained an expert to opine on this issue, both to advise his strategy during fact discovery and to serve as an expert witness. *See* Def.'s Mem. of Law at 14. Further, at least two witnesses that Defendant deposed have knowledge both of the facts underlying Defendant's 2017 communications (information that bears on whether the allegedly libelous statements were false) and on Plaintiff's emotional response to those communications (information that bears on whether the statements caused Plaintiff reasonable fear and alarm). *See id.* at 12–13. Had a stalking claim been at issue, Defendant would have more exhaustively probed Plaintiff's emotional state in these depositions and spent less time on the falsity issue. *See id.* Defendant would also have issued third-party subpoenas to other friends and associates of Plaintiff, in order to question them on matters bearing on the credibility of Plaintiff's alleged fear. *See id.* at 11–12; Pl.'s Reply Mem. of Law at 4 (Plaintiff's interrogatory responses, disclosing more than ten witnesses who could testify about his fear and alarm). And although Defendant has conducted some discovery of Plaintiff's alleged emotional distress, Defendant would have been entitled to explore this issue with multiple witnesses because the veracity and cause of Plaintiff's fear (as opposed to any emotional distress caused by the crudity of the communications) would likely be a contested issue in this case if stalking were included.[10]

---

[10] Plaintiff points to a series of snippets of deposition testimony to argue that Defendant adequately questioned his witnesses on the elements of the stalking claim. *See* Pl.'s Mem. of Law at 16; Pl.'s Reply Mem. of Law at 4–5. These questions, however, were extremely limited. For example, Defendant asked a few witnesses about whether they believed that Defendant was dangerous and whether members of Plaintiff's psychiatric practice took security measures in response to Defendant's alleged threats. *See* Pl.'s Mem. of Law at 16; Def.'s Mem. of Law at 11–12; Celli Decl. Ex. B at 169–70, 286–87; *id.* Ex. C at 199. But Defendant asked these questions in the context of exploring a defense to his counterclaim for breach of fiduciary duty. *See* Def.'s Mem. of Law at 11–12. (The counterclaim is based on Plaintiff's alleged disclosure of confidential medical information; a defense to the counterclaim could be that the disclosure was necessary to prevent imminent harm to a third party. *See id.*) Had

In short, granting leave to amend at this juncture would cause considerable prejudice to Defendant. That fact weighs against granting leave to amend.

## IV. Plaintiff's Conduct Evinces a Dilatory Motive

Leave to amend may be denied if the movant's delay in seeking the amendment was the result of a "dilatory motive." *Ruotolo*, 514 F.3d at 191 (quoting *Foman,* 371 U.S. at 182). A movant, for example, who "delay[s] seeking [an] amendment to secure some kind of tactical advantage" may properly be denied leave to amend. *Zeller v. PDC Corp.*, No. 13-CV-5035, 2015 WL 1223719, at *2 (E.D.N.Y. Mar. 17, 2015); *see also State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990); *Millgard Corp. v. E.E. Cruz/Nab/Frontier-Kemper, E.E. Curz & Co.*, No. 99-CV-2952, 2002 WL 31812710, at *5 (S.D.N.Y. Dec. 12, 2002) (collecting cases).

Plaintiff's conduct smacks of game-playing. During the time that Defendant's motion to dismiss was under the Court's consideration, depositions of fact witnesses were stayed. *See* Dkt. 53. Those depositions remained stayed until March 22, 2019, or nearly a month after the Court ruled on Defendant's motion. *See* Dkt. 61. If Plaintiff was truly conducting research

---

these facts been squarely at issue in a stalking claim, it is fair to assume that Defendant would have explored them in much greater depth.

Plaintiff also argues that Defendant should have been on notice to depose all witnesses that Plaintiff identified, in early 2018, as having relevant testimony about his fear and alarm. *See* Pl.'s Reply Mem. of Law at 3–4. The Court disagrees. After Plaintiff's Ohio-law claims for menacing and menacing-by-stalking were dismissed, Defendant was entitled to assume that these witnesses were no longer relevant to the case. *See McCarthy*, 482 F.3d at 201–02.

Finally, Plaintiff argues that Defendant should have been on notice to conduct discovery into the elements of stalking because the FAC seeks punitive damages as part of Plaintiff's libel claim. *See* Pl.'s Reply Mem. of Law at 2. This argument fails. Punitive damages for libel requires a showing of "common-law malice." *Prozeralik v. Capital Cities Commc'ns, Inc.*, 82 N.Y.2d 466, 479–80 (1993). That inquiry "focuses on the *defendant's* mental state" in making the allegedly defamatory statements, *id.* (emphasis added), specifically, whether the defendant made the statements out of "hatred, ill will [or] spite," *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 184 (2d Cir. 2000). Discovery relating to the stalking claim, on the other hand, would focus on *Plaintiff's* mental state, specifically, whether Defendant's communications caused Plaintiff to be alarmed for his safety and whether that alarm was objectively reasonable.

into Oregon law and contemplating a possible amendment during this time, he could easily have notified the Court and his adversary of that possibility, in order to allow the Court to consider extending the stay of depositions until the motion for leave to amend could be decided. That would have avoided prejudicing Defendant and, therefore, made it more likely that a motion for leave to amend would have been granted. Yet while the parties attended numerous depositions, Plaintiff dropped not a hint to this Court that he might amend his pleading and fundamentally rework his theory of the case. *See, e.g.*, Ltr. (Mar. 14, 2019), Dkt. 60, at 1 (parties' joint status letter stating that "[n]o . . . motions are anticipated at this time" other than a motion for an IME, a motion to dismiss Defendant's counterclaim, motions for summary judgment, and motions relating to expert discovery). And to date, Plaintiff has provided no plausible explanation for his three-month delay.

This conduct raises an inference that Plaintiff delayed proposing his amendment in order to gain a tactical advantage in this litigation. That sort of dilatory motive cuts against granting leave to amend.

## CONCLUSION

For all the foregoing reasons, Plaintiff's motion for leave to amend is DENIED. The Clerk of Court is respectfully directed to terminate the open motions at Dkts. 90, 93, 108.

**SO ORDERED.**

**Date: August 20, 2019**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

14