RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
HAL R. LIEBERMAN
DANIEL J. KORNSTEIN
O. ANDREW F. WILSON
ELIZABETH S. SAYLOR
KATHERINE ROSENFELD
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO

# EMERY CELLI BRINCKERHOFF & ABADY LLP

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbalaw.com

DIANE L. HOUK

ALISON FRICK
DAVID LEBOWITZ
DOUGLAS E. LIEB
ALANNA KAUFMAN
EMMA L. FREEMAN
DAVID BERMAN
HARVEY PRAGER
SCOUT KATOVICH
NICK BOURLAND
ANDREW K. JONDAHL

**MEMO ENDORSED**

December 6, 2019

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/6/2019

*By ECF*

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York

   Re: *Conti v. Doe*, No. 17-CV-9268

Your Honor:

   We write on behalf of Defendant John Doe to seek leave of the Court to reopen the deposition of nonparty witness Amber Blum for 90 minutes, by video, in light of material new information that calls into question the truthfulness of her prior testimony, demonstrates her bias as a witness, and sheds light on important issues concerning Mr. Doe's defense of substantial truth to Plaintiff Paul Conti's defamation claim. Because Ms. Blum is a nonparty witness beyond the Court's subpoena power whose appearance at trial is in no way guaranteed, it is critical that Mr. Doe be able to explore this new information through deposition testimony. As noted in the parties' November 27 status report, we had planned to raise this issue at the scheduled December 6 status conference and do not want to delay any further.[1]

   Ms. Blum is Dr. Conti's executive assistant and a key witness in this case. Her duties included managing Dr. Conti's calendar of appointments with patients, including Mr. Doe; booking Dr. Conti's travel; communicating with him on all matters while he was away from the office; and handling nearly all communications about Mr. Doe's prescriptions through Mr. Doe's own assistant. Her testimony bears most directly on the issue of substantial truth, a key defense to Dr. Conti's defamation claim. The allegedly defamatory statements in suit include Mr. Doe's assertions that Dr. Conti "abandoned" Mr. Doe in treatment, committed "malpractice" or "misconduct," and fired Mr. Doe as a patient under false pretenses when Mr. Doe's parents "caught" Dr. Conti in that wrongdoing. To the extent those statements can be construed as factual in nature, they appear to refer, at least in part, to: (i) Dr. Conti's frequent travel,

---

[1] Because we seek leave to conduct fact discovery beyond the deadline set by the Court, which has passed with limited exceptions (*see* Dkt. #116), we have addressed this request to Your Honor, rather than to Magistrate Judge Lehrburger, to whom discovery disputes have been referred.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 2

unavailability to meet in person with Mr. Doe, and conduct while abroad; and (ii) Dr. Conti's repeated failure to timely fill prescriptions for psychoactive medication on which Doe was dependent, leading, in one case, to a highly stressful incident in which Dr. Conti called in a prescription late and was unreachable while Mr. Doe's parents waited for the medication.

Within the last four weeks, an investigator retained by this firm spoke with a witness who stated that Ms. Blum lives in a house that Dr. Conti owns and appears to have purchased for her benefit. In mid-2016, we believe, Ms. Blum selected a house for purchase by Dr. Conti, around the time she informed her then-husband she was leaving him. On November 28, 2016, Dr. Conti purchased the house. We are informed that Ms. Blum left her then-husband and moved into the house on December 2, 2016, the same week Dr. Conti purchased it; that Ms. Blum continues to live in the house today; and that Dr. Conti stores one of his vehicles in the house's garage. In May 2017, Dr. Conti conveyed title to the house from himself to an LLC of which he was the manager and of which we believe him to be the ultimate beneficial owner. We have no information about whether Ms. Blum pays rent on the house.

The new information we have learned about Ms. Blum's living situation is therefore highly material to this case, for the following reasons:

<u>Underlying Events</u>. To the extent that Doe's assertions of "abandonment" may be construed as statements of fact asserting that Dr. Conti was not sufficiently available to him because of his extensive travel away from Portland, their truth or falsity depends in part on where Dr. Conti traveled, how often, and why, and how unavailable Dr. Conti was and why. As Dr. Conti's executive assistant, Ms. Blum is the single most knowledgeable nonparty witness on those subjects.

We know that Dr. Conti, who lives in Portland and is married, traveled frequently, that Ms. Blum arranged his travel, and that she sometimes traveled with him. What we did not know when we took Ms. Blum's deposition is that Ms. Blum's relationship with Dr. Conti is not limited to the office. At the very least, she lives in a home that he owns; the circumstances suggest the possibility of a deeper personal relationship. Either way, we did not know about this non-work relationship because, as described below, in her deposition, Ms. Blum concealed the fact that she resides in a home owned by Dr. Conti. Doe is entitled to explore the nature of the relationship between Dr. Conti and Ms. Blum as it relates to the reasons for and extent of his unavailability, what Ms. Blum knew about those matters, and whether she and Dr. Conti had reason to conceal or misrepresent his or their travel plans or availability during the relevant period in ways that would support Doe's assertions that Conti "abandoned" him or engaged in other "misconduct."

The nature of Ms. Blum's relationship with Dr. Conti is also important to understand the failure to timely fill Mr. Doe's prescription on March 28, 2017 (a few months after Ms. Blum moved into the house Dr. Conti bought). Dr. Conti previously acknowledged in writing that he called in the prescription late, and that that led Mr. Doe's parents to become upset with Dr. Conti. Dr. Conti's colleagues also stated as much in contemporaneous writings. At his deposition, however, Dr. Conti claimed that he had not called the prescription in late. Mr. Doe's medical chart contains an unusual entry by Ms. Blum—the only such entry she ever made—

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 3

indicating that Dr. Conti called in the prescription after Doe and his parents complained to Ms. Blum that the prescription was late.  Def. Ex. 1058.  Contemporaneous texts state that Ms. Blum *herself*, who is not a physician, called in the prescription that day.  Def. Ex. 1033.

Given the conflicting accounts of Dr. Conti and his colleagues about what happened with the prescription and who was to blame, and their clear relevance to Doe's statement that Dr. Conti's treatment of him was substandard, Mr. Doe is entitled to explore whether Dr. Conti was covering for a mistake by Ms. Blum, whether Ms. Blum was covering for a mistake by Dr. Conti, or something else—and why.  The nature of their personal relationship is relevant to that question.  The nature of their personal relationship is also relevant to whether Ms. Blum was in fact incapable of reaching Dr. Conti for an extended period on the date in question, as she claimed at time.

<u>Credibility</u>.  At her deposition on May 8, 2019, which lasted less than four-and-a-half hours, Ms. Blum was asked the following questions and gave the following answers:

> Q: Do you know if [Dr. Conti] owns any real estate?
> A: I believe so.
> Q: So, what do you know about any ownership of real estate by Dr. Conti?
> A: His home.
> Q: Okay.  ***Do you know if he owns real estate other than his home?***
> A: ***No.***

Blum Tr. 51:18-52:2.  The information we have received strongly suggests that Ms. Blum's testimony was false or misleading.  Ms. Blum does know that Conti owns real estate other than his home—because she lives in it and, it appears, selected it for him to purchase.  Mr. Doe is entitled to examine her further on this subject.

<u>Bias</u>.  To say the least, it is atypical for a doctor's executive assistant to live in a house that he owns and picked out with her for her apparent benefit, and where he stores one of his personal vehicles.  Mr. Doe is entitled to understand whether Ms. Blum may have reasons other than her employment to be biased in Dr. Conti's favor.

Under these circumstances, Mr. Doe is entitled to reopen Ms. Blum's deposition to address this subject.  *See, e.g.*, *Sloup v. Loeffler*, No. 05-CV-1766, 2007 WL 9719263, at *1 (E.D.N.Y. July 27, 2007) ("Courts will typically reopen a deposition where there is new information on which a witness should be questioned."); *Ganci v. U.S. Limousine Serv., Ltd.*, No. 10-CV-3027, 2011 WL 4407461, at *2 (E.D.N.Y. Sept. 21, 2011) (reopening deposition of nonparty witness for two hours in response to new information obtained from FOIL requests).  We propose to do so by video in the interest of efficiency because Ms. Blum lives in Oregon.

We have conferred with counsel for Dr. Conti on this issue.  While not denying the factual accuracy of the new information we have learned, counsel for Dr. Conti has declined to consent to reopening the deposition, arguing that the information can be used "during cross."  This position is without merit.  Mr. Doe cannot be guaranteed an opportunity to use the material "during cross" because there may not *be* a cross.  Ms. Blum is thousands of miles beyond the

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 4

subpoena power of the Court. *See* Fed. R. Civ. P. 45(c). Mr. Doe took her deposition in part to perpetuate her testimony for use at trial. Even if Dr. Conti presently intends to bring Ms. Blum to New York as a trial witness, there is no guarantee that he will choose to do so and no guarantee that Ms. Blum will still be his employee or otherwise under his control at the time of trial. If Dr. Conti changes his mind or Ms. Blum no longer works for him whenever trial occurs, Mr. Doe will have no ability to examine Ms. Blum about this material information.

Finally, no delay or other prejudice to Dr. Conti will result from reopening the deposition. Mr. Doe previously consented to reopen the deposition of his current treating psychiatrist, Dr. Michael Jenike, to allow Dr. Conti's counsel to conduct limited follow-up. Mr. Doe proposes to complete the reopened deposition by January 22, 2020, the recently extended deadline for expert discovery, Dkt. #177, which will have no effect on any other deadline set by the Court.

This request is referred to Magistrate Judge Lehrburger for decision. If Magistrate Judge Lehrburger grants the request to reopen the deposition, it must be taken before the expert discovery deadline of **January 22, 2020.**

Respectfully submitted,

/s/

Andrew G. Celli, Jr.
Katherine Rosenfeld
Douglas E. Lieb

SO ORDERED.

12/6/2019

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE