UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

DR. PAUL M. CONTI,

        *Plaintiff-Counterclaim Defendant*,

        – against –

JOHN DOE,

        *Defendant-Counterclaim Plaintiff.*

-----------------------------------------------------------------X

Case No. 17-CV-9268 (VEC)

**PLAINTIFF-COUNTERCLAIM DEFENDANT DR. PAUL M. CONTI'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE THE EXPERT
REPORTS AND TESTIMONY PROFFERED BY DEFENDANT-COUNTERCLAIM
PLAINTIFF JOHN DOE**

JUDD BURSTEIN, P.C.
5 Columbus Circle, Suite 1501
New York, New York 10019
(212) 974-2400
*Attorneys for Plaintiff-Counterclaim
Defendant Dr. Paul M. Conti*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ....................................................................................................1

STATEMENT OF RELEVANT PROCEDURAL HISTORY.........................................1

STANDARD OF REVIEW .......................................................................................4

ARGUMENT ..........................................................................................................7

POINT I

DR. APPELBAUM'S TESTIMONY SHOULD BE EXCLUDED IN ITS ENTIRETY ...............7

    A.  CERTAIN OF DR. APPELBAUM'S OPINIONS ARE NOT RELEVANT
        TO DOE'S COUNTERCLAIM.....................................................................7

    B.  DR. APPELBAUM'S OPINION INTERPRETING THE APPLICABLE
        ETHICAL STANDARD USURPS THE ROLE OF THE COURT ............................8

    C.  DR. APPELBAUM'S LEGAL CONCLUSIONS ARE PROPERLY LEFT TO THE
        FINDER OF FACT, AND IN ANY EVENT ARE NOT RELIABLE.......................12

          1.  Dr. Conti's Response to the Messages.............................................13

          2.  Dr. Conti's Decision to File a Lawsuit ...........................................14

          3.  Dr. Conti's Alleged Overdisclosure of Doe's Confidential Information.........16

          4.  Dr. Conti's Transfer of Care ........................................................17

    D.  ANY PROBATIVE VALUE TO DR. APPELBAUM'S TESTIMONY
        IS OUTWEIGHED BY THE RISK OF UNFAIR
        PREJUDICE AND CONFUSION .................................................................18

POINT II

DR. COHEN'S TESTIMONY SHOULD BE EXCLUDED IN ITS ENTIRETY ......................18

    A.  DR. COHEN'S REPORT DRAWS IRRELEVANT CONCLUSIONS.....................18

    B.  COHEN'S REPORT DRAWS IMPERMISSIBLE AND REDUNDANT LEGAL
        CONCLUSIONS.....................................................................................21

C.  DR. COHEN'S FACTUAL NARRATIVE, SPIN, AND CREDIBILITY DETERMINATIONS SHOULD BE EXCLUDED ....................................................22

D.  ANY PROBATIVE VALUE OF DR. COHEN'S REPORT IS OUTWEIGHED BY THE RISK OF UNFAIR PREJUDICE........................................................................23

CONCLUSION.................................................................................................................24

TABLE OF AUTHORITIES

<u>CASES</u>

*Amnesty Int'l USA v. Clapper*,
    638 F.3d 118 (2d Cir. 2011),
    *rev'd on other grounds*, 133 S. Ct. 1138 (2013) ........................................................... 8-9

*Amorginaos v. Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002) ..................................................................................6

*Anderson News, L.L.C. v. Am. Media, Inc.*,
    09 Civ. 2227 (PAC),
    2015 U.S. Dist. LEXIS 110358 (S.D.N.Y. Aug. 20, 2015) .............................................22

*Andrews v. Metro North Commuter R.R. Co.*,
    882 F.2d 705 (2d Cir. 1989)....................................................................................5

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*,
    814 F.3d 132 (2d Cir. 2016).................................................................................. 8-9

*Boucher v. U.S. Suzuki Motor Corp.*,
    73 F.3d 18 (2d Cir. 1996) ..................................................................................... 6-7

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)............................................................................................ 5-7

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997) ........................................................................................7, 12

*Hygh v. Jacobs*,
    961 F.2d 359 (2d Cir. 1992) ........................................................................... 5, 9-10

*In re IPO Securities Litigation*,
    174 F. Supp. 2d 61 (S.D.N.Y. 2001)..........................................................................9

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)............................................................... 5-6, 9-10

*Joffe v. King & Spalding LLP*,
    17-CV-3392 (VEC),
    2019 U.S. Dist. LEXIS 163671 (S.D.N.Y. Sept. 24, 2019)...................................... *passim*

*Niesig v. Team I*,
    76 N.Y.2d 363 (1990) ........................................................................................11

*Nimely v. City of New York,*
      414 F.3d 381 (2d Cir. 2005)...................................................................................4, 7

*Nolan v. State of New York,*
      158 A.D.3d 186 (1st Dep't 2018) ...........................................................................18-19

*Restivo v. Hessemann,*
      846 F.3d 547 (2d Cir. 2017).....................................................................................6

*SEC v. Lek Sec. Corp.,*
      370 F Supp 3d 384 (S.D.N.Y. 2019).......................................................................5

*United States v. Bilzerian,*
      926 F.2d 1285 (2d Cir. 1991)...................................................................................10, 12

*United States v. Lumpkin,*
      192 F.3d 280 (2d Cir. 1999).....................................................................................5

*United States v. Ulbricht,*
      858 F.3d 71 (2d Cir. 2017).......................................................................................6

*United States v. Williams,*
      506 F.3d 151 (2d Cir. 2007).....................................................................................5

## STATUTES AND OTHER AUTHORITIES

Fed.R.Evid. 401 .............................................................................................................5, 8

Fed.R.Evid. 403 ............................................................................................................. 7-8, 21

Fed.R.Evid. 702 ............................................................................................................. 4-5

## INTRODUCTION

Plaintiff-Counterclaim Defendant Dr. Paul M. Conti ("Plaintiff" or "Dr. Conti") respectfully submits this Memorandum of Law in support of his Motion pursuant to Federal Rules of Evidence 401, 403, and 702 to exclude the expert reports and testimony of Dr. Paul S. Appelbaum ("Dr. Appelbaum") and Dr. Ziv E. Cohen ("Dr. Cohen") proffered by Defendant-Counterclaim Plaintiff John Doe ("Defendant" or "Doe").

## STATEMENT OF RELEVANT PROCEDURAL HISTORY

The facts underlying this case are well known to the Court, and are detailed in Dr. Conti's First Amended Anonymized Complaint with Exhibits ("FAC," Dkt. No. 31). Accordingly, Dr. Conti will not engage in a recitation of those facts here, but instead respectfully incorporates herein by reference the facts set forth in the FAC. However, the procedural history of this case is central to the Court's determination of whether the expert opinions of Dr. Appelbaum and Dr. Cohen are relevant to the live claims in this case. Accordingly, a brief overview of the procedural history of this case is warranted.

Dr. Conti commenced this case on November 27, 2017 by filing a Civil Case Cover Sheet and the Original Complaint under seal with this Court. On December 27, 2017, the Court unsealed the case and directed Dr. Conti to file an anonymized Original Complaint with "additional redactions that the Court approved." (Dkt. No. 9). Prior to the filing of the redacted and anonymized Original Complaint, Doe's attorneys had an opportunity to comment on proposed redactions, and while they focused on concealing various individuals' names so as to keep the public from ascertaining Doe's identity, they did not identify a single allegation that should be

redacted so as to prevent the alleged excessive disclosure of confidential medical information that serves as the gravamen of Doe's counterclaim.  (Exhibits G and H).[1]

The Original Complaint asserted claims for (i) harassment in violation of New York Penal Law §§ 240.25 and 240.26 and 18 U.S.C. § 2261A; (ii) intentional infliction of emotional distress; and (iii) a permanent injunction barring Doe from communicating with Dr. Conti or making harassing statements to third persons about Dr. Conti.  (Dkt. No. 13, at ¶¶ 54-65).  On January 26, 2018, Doe moved to dismiss the Original Complaint arguing, *inter alia*, that New York law would not apply to Dr. Conti's statutory harassment claim.  (Dkt. No. 29, at 7).

Responding in part to Doe's assertion that New York law would not apply to Dr. Conti's statutory claims, Dr. Conti filed the FAC as of right pursuant to Fed. R. Civ. P. 15(a) on February 7, 2018.  (Dkt. No. 31).  The FAC, which is Dr. Conti's operative Complaint in this case, asserts common law claims for defamation, intentional infliction of emotional distress ("IIED"), and for an injunction, as well as claims for recovery based on violations of Ohio criminal statutes concerning stalking and harassment.  (Dkt. No. 31, at ¶¶ 54-83).

Doe moved to dismiss the FAC, and this Court entered an Opinion on February 27, 2019 denying in part and granting in part Doe's motion.  (Dkt. No. 57).   This Court entirely dismissed Dr. Conti's Ohio law claims, dismissed the defamation claim only insofar as it relied on certain allegedly slanderous statements spoken by Doe, and dismissed the IIED claim without prejudice and with leave to replead.  (Dkt. No. 57, at 28-29).  Dr. Conti chose not to replead his IIED claim, therefore leaving his defamation claim based on certain written messages sent by Doe (the "Messages") as his only live claim in this case.

---

[1]     All Exhibits referenced herein are those annexed to the March 20, 2020 Declaration of G. William Bartholomew ("Bartholomew Dec.").

On March 13, 2019, Doe filed his Answer to the FAC and Counterclaim (the "Counterclaim") alleging one cause of action for common law breach of fiduciary duty.  (Dkt. No. 59, at ¶¶ 94-106).  In the Counterclaim, Doe alleges in vague terms that "[o]ne of the nation's leading experts in psychiatric ethics" – revealed at his deposition to be Dr. Appelbaum – has reviewed the FAC as well as "relevant materials," and has "concluded that Dr. Conti's pleadings in this case included more information about Doe tha[n] was ethically permissible, that Dr. Conti did not comply with the applicable standards of ethical conduct in his profession, and that Dr. Conti's conduct risks inflicting harm on Doe."  (Dkt. No. 59, at ¶ 101).[2]  Doe does not make clear how Dr. Conti fell below "the applicable standards of ethical conduct in his profession," or even identify what those standards are.  Doe's only specific claim is that Dr. Conti breached his fiduciary duties to Doe "[b]y unnecessarily disclosing – indeed, weaponizing – Doe's confidential medical information for personal financial gain."  (Dkt. No. 59, at ¶ 102).

On May 10, 2019, each party filed a motion to compel the other party to undergo an independent mental examination ("IME").  (Dkt. Nos. 64-65, 67-68, 82).  This Court heard oral argument on the parties' IME motions on June 27, 2019.  During that argument, Doe's counsel explained that an IME of Dr. Conti was necessary to challenge Dr. Conti's claim for mental damages arising from the defamatory emails:

> MR. LIEB:   **Dr. Hamilton, [Dr. Conti's] treating psychiatrist, diagnosed Dr. Conti with serious mental disorders as a result of our client's allegedly defamatory e-mails.**  Your Honor recalls that this is a defamation case about three specific kinds of messages.  So there is a very serious issue here, your Honor, as to whether Dr. Conti is, in fact, suffering from a serious psychiatric disorder **as a result of the allegedly defamatory statements that our client is saying**. . . .

(Dkt. No. 104, at 10:14-22 (emphasis supplied)).

---

[2]     As addressed previously in this case, in the event that the Court precludes Dr. Applebaum's testimony in this case, Plaintiff will seek to strike this allegation.  (*See* Dkt. No. 62).

The Court agreed with Doe's counsel, and explained the reasons it thought an IME of Dr. Conti would be appropriate to be as follows:

> THE COURT:        No, because a lot of times it's very different.  If you have got an employee who says, I am suffering emotional distress because I was discriminated against and not promoted, that's the sort of emotional distress that's within the ken of a lay jury.  You're talking [about] someone who allegedly has got a significant psychological diagnosis and so that is different.  **In trying to separate out by a lay jury what is going on in his life caused by the defamation versus what was caused or what is evidence by his other diagnoses is a little different.**

(Dkt. No. 104, at 13:5-14 (emphasis supplied)).

This Court granted both parties' motions for an IME on the record during oral argument (*see* Dkt. No. 104, at 17-18), and entered an Order to that effect on June 28, 2019 (*see* Dkt. No. 89).  The parties exchanged the reports of their IME and ethics experts on October 8, 2019, and have completed all expert depositions.

## STANDARD OF REVIEW

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  It provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> a.  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> b.  the testimony is based on sufficient facts or data;
>
> c.  the testimony is the product or reliable principles and methods; and
>
> d.  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions[.]"  *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005).

"Nevertheless, the district court must act as a gatekeeper against unreliable expert testimony." *Joffe v. King & Spalding LLP*, 17-CV-3392 (VEC), 2019 U.S. Dist. LEXIS 163671, at *6 (S.D.N.Y. Sept. 24, 2019) (citing *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007)). "The proponent of expert testimony carries the burden of establishing its admissibility by a preponderance of the evidence." *SEC v. Lek Sec. Corp.*, 370 F Supp 3d 384, 403 (S.D.N.Y. 2019) (citing *Williams*, 506 F.3d at 160).

Rule 401 of the Federal Rules of Evidence applies to expert testimony just as it applies to the testimony of lay persons. Pursuant to Rule 401, evidence is only relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." (Fed. R. Evid. 401). "An expert's opinion is relevant if it will 'help the trier of fact to understand the evidence or to determine a fact in issue.'" *Lek*, 370 F. Supp. 3d at 403 (quoting Fed. R. Evid. 702(a)); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993). Proffered expert testimony cannot be directed to "lay matters which a jury is capable of understanding and deciding without the expert's help." *Andrews v. Metro North Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989). "Expert testimony that usurps the role of the fact finder . . . must be excluded." *Lek*, 370 F. Supp. 3d at 403 (citing *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999)). "Thus, although an expert may give an opinion to help the jury decide an issue in the case, he or she may not tell the jury what result to reach or communicate 'a legal standard – explicit or implicit – to the jury.'" *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (quoting *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992)). "This principle requires the exclusion of testimony that states a legal conclusion, although factual conclusions on an ultimate issue to be decided by the jury are permissible." *Id.*

An expert's opinion must also have "a reliable basis in the knowledge and experience of [the expert's] discipline." *Daubert*, 509 U.S. at 592.  In general, a court should consider "the 'extent to which [the expert's theory] has been subjected to peer review and publication,' whether the technique is 'subject to standards controlling the technique's operation,' the 'known or potential rate of error,' and the 'degree of acceptance within the relevant scientific community.'" *United States v. Ulbricht*, 858 F.3d 71, 116 n.50 (2d Cir. 2017) (citation omitted).  However, this reliability assessment is a flexible inquiry, and there is no "'definitive checklist or test' for the reliability of expert testimony." *Id.* (citation omitted).  There is also no requirement that all expert testimony express opinions or conclusions that have been "established to a degree of scientific certainty[.]" *Restivo v. Hessemann*, 846 F.3d 547, 577 (2d Cir. 2017).  Instead, a court must "assess whether the expert employs 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* at 577 (citation omitted).  It would "border on the absurd" to "permit 'experts' to tender purely subjective views in the guise of expert opinions." *In re Rezulin*, 309 F. Supp. 2d at 544.

"[E]xpert testimony should be excluded if it is speculative or conjectural…, or if it based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith' or to be in essence 'an apples and oranges comparison[.]'" *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996 (per curiam) (citation omitted).  An expert's analysis must be "reliable at every step." *Amorginaos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002).  Some contentions than an expert's "assumptions are unfounded 'go to the weight, not the admissibility, of the testimony.'" *Boucher*, 73 F.3d at 21 (citation omitted).  "'[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Amorgianos*, 303 F.3d at 267

6

(quoting *Daubert*, 509 U.S. at 596).  However, "[n]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to the existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "Admission of expert testimony based on speculative assumptions is an abuse of discretion." *Boucher*, 73 F.3d at 21-22.

Rule 403 of the Federal Rules of Evidence also applies to expert testimony.  Accordingly, expert testimony "'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Nimely*, 414 F.3d at 397 (citing Fed. R. Evid. 403).

## ARGUMENT

## POINT I

## DR. APPELBAUM'S TESTIMONY SHOULD BE EXCLUDED IN ITS ENTIRETY

### A.    CERTAIN OF DR. APPELBAUM'S OPINIONS ARE NOT RELEVANT TO DOE'S COUNTERCLAIM

As noted above, Doe's Counterclaim asserts one cause of action against Dr. Conti for common law breach of fiduciary duty.  (Dkt. No. 59, at ¶¶ 94-106).  While Doe makes vague references in his Counterclaim to Dr. Appelbaum thinking that Dr. Conti did not act ethically, he only identifies one specific way in which Dr. Conti breached his fiduciary duty: by unnecessarily disclosing Doe's confidential information.  (Dkt. No. 59, at ¶ 102).  Accordingly, assuming that Doe's Counterclaim proceeds to trial, the question for the finder of fact will be whether Dr. Conti breached his fiduciary duty to Doe by "overdisclosing" Doe's confidential medical information.

At his deposition, Dr. Appelbaum testified that he understood the ethical issues that he was to review "to be whatever issues [he] could identify, if there were any, related to Dr. Conti's initiation of the lawsuit against the patient."  (Exhibit B, the Transcript of Dr. Appelbaum's

Deposition, held January 21, 2020, at 82:2-6.  This lack of focus is evidenced in Dr. Appelbaum's Report, as its conclusions far exceed the scope of Doe's Counterclaim.

In particular, Dr. Appelbaum's Report concludes that Dr. Conti "did not meet the applicable professional standard of ethical conduct" in four areas: (1) responding to the Messages; (2) evaluating whether to commence a lawsuit against John Doe; (3) safeguarding Doe's confidences and privacy when he did initiate litigation; and (4) transferring Doe's care to another psychiatrist.  (Exhibit A at § I.4).  Thus, only the third topic of Dr. Appelbaum's report ("safeguarding Doe's confidences and privacy when he did initiate litigation") is arguably relevant to Doe's Counterclaim against Dr. Conti for allegedly unnecessarily disclosing Doe's confidential information.  Accordingly, Dr. Appelbaum's first, second, and fourth conclusions, and Sections IV.A and IV.C of his Report, as well as any related testimony, should be excluded on relevance grounds pursuant to Rule 401 of the Federal Rules of Evidence.

While these first, second, and third opinions are not even relevant to the issues in this case, at a minimum, they fail the balancing test under Rule 403 of the Federal Rules of Evidence, as their only purpose is to attack Dr. Conti personally on irrelevant matters, and therefore the "probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, [and] needlessly presenting cumulative evidence."  (*See* Fed. R. Evid. 403).

### B.  DR. APPELBAUM'S OPINION INTERPRETING THE APPLICABLE ETHICAL STANDARD USURPS THE ROLE OF THE COURT

Dr. Appelbaum's opinion should be excluded insofar as it sets forth his interpretation of the ethical standard applicable to this case, because it is the Court's role to instruct the trier of fact on the law – a principle that the courts have extended to cover ethical rules governing a profession.  (*See infra*).  It is a "longstanding rule" in the Second Circuit that "expert testimony on issues of

domestic law is not to be considered." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 144 (2d Cir. 2016) (citing *Amnesty Int'l USA v. Clapper*, 638 F.3d 118, 128 n.12 (2d Cir. 2011), *rev'd on other grounds*, 133 S. Ct. 1138 (2013)). Here, Doe does not identify in his Counterclaim what the applicable ethical standard is, however Dr. Appelbaum's Report and deposition testimony make clear that he believes it to be the American Psychiatric Association's *Principles of Medical Ethics, with Annotations Especially Applicable to Psychiatry* (2013 Edition) (the "APA Principles"). (Exhibit A at § II.5; Exhibit B at 84:2-23, 85:2-8). Dr. Appelbaum previously served as, among other things, the President of the APA and the Chair of the APA's Ethics Appeals Board. (Exhibit A at § I.1). At trial, Doe will undoubtedly seek to exploit Dr. Appelbaum's pedigree to present him as the final arbiter of the applicable legal standard in this case. [3]

The APA Principles are not a statute, and Dr. Conti does not concede that they articulate a common law standard, the breach of which would cause Dr. Conti to be legally liable to Doe. However, Dr. Conti will not contest that the APA Principles are a relevant guideline upon which the trier of fact could rely in determining whether Dr. Conti breached a legal duty. Should the Court find the APA Principles relevant to Doe's Counterclaim, the trier of fact can review the APA Principles. Dr. Appelbaum's testimony concerning what the APA Principles mean, though, would impermissibly usurp the role of the Court to determine the applicable legal standard, and to instruct the trier of fact on it. "In our adversarial system, lawyers make arguments, judges write legal opinions – and there is no such thing as an expert opinion when it comes to interpreting a statute unless that opinion belongs to a court." *In re IPO Securities Litigation*, 174 F. Supp. 2d 61, 69

---

[3]     To be sure, Plaintiff has presented an equally qualified expert, Dr. Donald Meyer, who came to conclusions that are 180 degrees opposed to those of Dr. Applebaum. (*See* Exhibit E, Dr. Meyer's curriculum vitae and expert report).

(S.D.N.Y. 2001); *see also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 541 ("[A]lthough an expert may give an opinion to help the jury decide an issue in the case, he or she may not tell the jury what result to reach or communicate 'a legal standard – explicit or implicit – to the jury.'") (quoting *Hygh*, 961 F.2d at 364).

Here, if Dr. Appelbaum were to testify on the meaning of the APA Principles, the trier of fact would look to Dr. Appelbaum, and not the Court, to provide instruction on the relevant legal standard. This proffered standard, as further discussed below, is in fact nothing more than what Dr. Appelbaum thinks the APA Principles say Dr. Conti should have done. The court in *Hygh* summarized the problem posed by expert testimony on a legal standard in the following way:

> The basis of expert capacity, according to Wigmore (§ 555), may "be summed up in the term 'experience.'" But experience is hardly a qualification for construing a document for its legal effect when there is a knowledgeable gentleman in a robe whose exclusive province it is to instruct the jury on the law. The danger is that the jury may think that the "expert" in the particular branch of the law knows more than the judge--surely an inadmissible inference in our system of law.

961 F.2d at 364. It is up to this Court – not Dr. Appelbaum – to decide what the relevant legal standard is and then instruct the trier of fact accordingly. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 558. ("Dr. Furberg's testimony on the 'basic rights of patients' communicates a legal standard and so would encroach on the court's prerogative to instruct on the law. Dr. Furberg would fare no better if the Court were to view Dr. Furberg's opinions as articulating a 'medical community standard' rather than a legal one: 'testimony encompassing an ultimate legal conclusion based upon the facts of the case is not [admissible] **and may not be made so simply because it is presented in terms of industry practice**.'") (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991) (emphasis in original))).

This Court's recent opinion in *Joffe v. King & Spalding LLP*, 17-CV-3392 (VEC), 2019 U.S. Dist. LEXIS 163671 (S.D.N.Y. Sept. 24, 2019), is instructive. In that case, this Court

addressed whether defendant King & Spalding LLP ("K&S") could introduce testimony from an ethics expert, Bruce Green ("Green"), about whether the plaintiff, a former K&S associate, had a reasonable belief that other K&S attorneys had violated New York's Rules of Professional Conduct (the "RPC"). *See Joffe*, 2019 U.S. Dist. LEXIS 163671, at *42-43.  This Court excluded Green's opinion in its entirety because it "invade[d] the province of the Court to charge the jury on the scope of New York's Rules of Professional Conduct." *Id.*, at *52.  This Court reasoned that

> Green's interpretation of the RPC is not helpful to the jury because it is not based on his assessment of ordinary legal custom or practice.  Instead, he seeks to testify as to the contents of the RPC, a topic on which the court can capably instruct the jury. . . .  **Here, because Green's opinion rests entirely on his interpretation of the text of the RPC, it is not admissible**.

*Id.*, at *50-51 (emphasis supplied).

Additionally, the Court explained that while the RPC does not have the force of law, its "interpretation is nevertheless governed by judicial precedent."  *Id.*, at *51 (citing *Niesig v. Team I*, 76 N.Y.2d 363, 369 (1990)).  Accordingly, "an expert opinion as to the meaning of the RPC must be consistent with controlling caselaw for it to be valid – and yet, if the testimony were to be premised on the expert's interpretation of judicial precedent, the testimony would impinge on the Court's obligation to instruct the jury on the law."  *Id.*

Here, Dr. Appelbaum testified at his deposition that his opinion is based exclusively on his interpretation of the APA Principles:

> Q:     Have you – did you review any other documents containing ethical rules governing a psychiatrist's conduct before – in reaching your opinion?
>
> A:     No.
>
> Q:     Did you review any statutory statutes governing the issues – governing a psychiatrist's conduct with respect to the issues on which you opined in your report?
>
> A:     No.

Ms. ROSENFELD:    Objection to the form.

Q:    Did you review any decisions of the medical board or other or other state administrative body addressing the issues that are identified in your report as the ones you opined on?

A:    No.

Q:    Is there a reason why you did not do that?

A:    Insofar as I was asked to testify to the ethical issues as I saw them in this case, **the guiding principles of medical ethics for psychiatrists are embodied in this document and I didn't see a need to explore elsewhere.**

(Exhibit B at 84:3 – 85:8) (emphasis supplied).

Because Dr. Appelbaum's opinion is premised only upon **his** interpretation of what the APA Principles require, it should be excluded as improperly invading the province of the Court to instruct the finder of fact on the law.  The Court should reach this result even though, as in *Joffe*, the ethical principles at issue do not themselves carry the force of law.  Should this Court find the APA Principles to be relevant and helpful to the determination of Doe's Counterclaim, the finder of fact may review them without Dr. Appelbaum's commentary.

## C.    DR. APPELBAUM'S LEGAL CONCLUSIONS ARE PROPERLY LEFT TO THE FINDER OF FACT, AND IN ANY EVENT ARE NOT RELIABLE

Dr. Appelbaum should also be precluded from presenting his opinion that Dr. Conti's conduct did not meet the standard articulated in the APA Guidelines.  Dr. Appelbaum's opinions in this regard are nothing more than legal conclusions that must be decided by the finder of fact. His conclusions would not be admissible even if they were presented in terms of "industry practice."  *See Bilzerian*, 926 F.2d at 1295.  Here, as noted above and further discussed *infra*, Dr. Appelbaum does not even purport to go that far.  Instead, his conclusions are based on nothing more than his *ipse dixit*, which cannot be the basis for admissible expert testimony.  *See Gen. Elec. Co.*, 522 U.S. at 146.

12

Indeed, when asked at his deposition whether he had in his "own mind an estimate of what percentage of the psychiatric community would agree with [his] conclusions?" – his answer was a straightforward "No." (Exhibit B at 253:25-254:6). If Dr. Applebaum cannot even estimate what percentage of the psychiatric community shares his conclusions in this case, *a fortiori*, the opinions of those who disagree with him – *e.g.*, Plaintiff's expert Dr. Donald Meyer – cannot be said to be unreasonable. To be sure, Dr Applebaum immediately sought to walk back his admission, stating that "I would think at the very least a plurality but – indeed a majority" would agree with him, but he still had to concede that "I don't think I can put a number on that." (*Id.*, at 254:6-17). And while Dr. Applebaum further contended that his "conclusions with regard to this case in fact would represent the views of a clear majority of psychiatrists and the dominant view in the profession[,]" that thought was based on nothing more than his **sense** of the ethics of psychiatry and the ways in which those ethics are applied to specific questions in psychiatry." (*Id.*, at 255:3-15) (emphasis supplied). Dr. Appelbaum even testified that he does not "think anything is universally accepted by the psychiatric community[,]" (*Id.*, at 129:25 – 130:3), raising doubt that it would even be possible for Dr. Appelbaum to rest his conclusions on any "industry practice." As further discussed below, Dr. Appelbaum's deposition testimony reveals that he has no support for his conclusions other than his personal view of what is called for by the applicable standards of ethical conduct.

### 1. Dr. Conti's Response to the Messages

Dr. Appelbaum reaches a conclusion in his Report that "[b]ased on [his] review of the materials above, it is [his] opinion that Dr. Conti's response to John Doe's emails was not consistent with professional standards for ethical behavior by a trained psychiatrist in response to patient provocations and threats." (Exhibit A at § IV.A.11). At his deposition, Dr. Appelbaum

testified that he thinks there "are generally accepted standards in psychiatry today" regarding how Dr. Conti should have responded to the Messages. (Exhibit B at 26:9-11). However, he was not aware of any peer-review articles, written rules, or anything in the APA Principles that specifically addresses how Dr. Conti should have responded to the Messages, especially after terminating care when Doe was no longer a patient. (*Id.*, at 25:10 – 26:3; 29:20 – 30:23). He admitted that he was "not prepared to say there's just one right response" for a psychiatrist presented with hostile texts (*Id.*, at 32:17-19), and that "as a general matter" a psychiatrist does not violate confidentiality by bringing a defamation lawsuit against a patient. (*Id.*, at 238:14-23). Dr. Appelbaum's testimony reveals that he has no authority to support his claim that Dr. Conti acted inappropriately in responding to the Messages except his personal opinion.

### 2.    Dr. Conti's Decision to File a Lawsuit

In his Report, Dr. Appelbaum offers the following conclusion regarding Dr. Conti's decision to file a lawsuit against Doe:

> Without outside consultation, Dr. Conti's decision to respond to the Messages by filing the lawsuit against Doe was both disproportionate to the "threat" posed by Doe, and inconsistent with Dr. Conti's stated fears of physical assault and legal liability. Filing a lawsuit is unlikely to be an effective means of protection from genuine threats of harm from an angry and vindictive patient.

(Exhibit A at § IV.A.15).

However, Dr. Appelbaum testified that he is not aware of any (i) body of literature, (ii) peer review articles, (iii) rules or standards issued by any association such as the APA, or (iv) state authority, medical board, or court rulings addressing a physician's right to commence a lawsuit against a former patient other than for nonpayment of fees. (Exhibit B at 36:12 – 39:23; 237:5-10). Dr. Appelbaum admitted that it was not *per se* unethical for a psychiatrist to sue a patient based upon receipt of threats or other abusive conduct by a patient. (*Id.*, at 89:15-20). He also stated that, since he was unaware of any other case where a psychiatrist sued a patient for

14

defamation, he did not know of any standard expressed in the ethical rules as to what the dividing line is on when such a lawsuit is appropriate.  (*Id.*, at 246:12 – 247:7).

In assessing the reasonableness of Plaintiff filing suit, Dr. Applebaum testified that efforts to settle the dispute and without a need for bringing suit to stop Doe's communications was "arguably" relevant.  (*Id.*, at 220:14-21).  Nonetheless, Dr. Applebaum admitted that he never reviewed the settlement communications (*Id.*, at 221:3-5), and indeed never asked to see them (*id.*, at 219:7-9).

Dr. Appelbaum should also not be able to present his opinion that Dr. Conti was not justified in filing a lawsuit because Doe was not a genuine threat to Dr. Conti, either physically or professionally.  Dr. Appelbaum premised his conclusion that Dr. Conti should not have filed a lawsuit on his belief that the Messages "were so obviously the product of an irrational response by an angry patient that no experienced psychiatrist would have taken them as a factual account of what transpired in John Doe's treatment, and in my opinion it is highly unlikely that lay people would either." (Exhibit A at § IV.A.16).  As an initial matter, Dr. Appelbaum should not be able to testify about how the persons who received the Messages would perceive them, as that is a legal conclusion that directly bears on Dr. Conti's claim for defamation.  Moreover, he has no basis to express a conclusion about the level of threat posed by Doe.  Dr. Appelbaum did not personally examine Doe, and did not hear from Dr. Cohen "in any great detail what the explicit basis was for his belief that Dr. Conti had exaggerated the threat." (Exhibit B at 69:13-17).  Dr. Appelbaum further stated that he "had the general sense that [Doe] was not an easy patient to treat[,]" but that he was "not prepared to diagnose him." (*Id.*, at 74:14-16; 75:16-17).  Because Dr. Appelbaum has no basis to evaluate the threat posed by Doe, his opinion that Dr. Conti should not have filed his lawsuit is unreliable.

Ultimately, Dr. Applebaum conceded that "I can't guarantee that any two people would necessarily agree" on any given risk assessment. (*Id.*, at 133:16-18). In this case, after reviewing certain of Doe's messages, Dr. Conti's own treating psychiatrist testified during his deposition that "they're worse than I had anticipated." (Exhibit F, relevant excerpts of Dr. Hamilton's Transcript, at 187:5). Similarly, Plaintiff's expert, Dr. Meyer, concluded that Doe's messages posed a legitimate threat: "Doe persisted in his threatening, baiting messages. Dr. Conti reasonably concluded that his person and business and professional reputation were under threat…." (*See* Exhibit E, Dr. Meyer's report, at p. 13 and *passim*). Based upon Dr. Applebaum's admission, he has no basis to challenge these contrary conclusions as unreasonable.

### 3.    Dr. Conti's Alleged Overdisclosure of Doe's Confidential Information

Dr. Appelbaum opined that Dr. Conti breached his ethical duties because "the amount of detail that Dr. Conti provides about his patient, Doe, in the Complaint is unnecessary and excessive." (Exhibit A at § IV.B.18). Then, in the very next sentence of his Report, Dr. Appelbaum admits that "[a]s a psychiatrist, [he] cannot address which facts are legally required in a complaint. That is a question for lawyers." (*Id.*). He is right. Dr. Applebaum has no expertise in the area of deciding what is necessary to include in a pleading, and his opinion on this matter is not reliable and not helpful to the trier of fact.

Furthermore, Dr. Appelbaum testified that he was not aware of any standards or articles addressing the issue of safeguarding confidences and privacy when a psychiatrist sues a patient for reasons other than nonpayment of fees. (Exhibit B at 41:11-23). He also revealed that he was "not aware of any of the details of the process" by which Dr. Conti's pleading was filed as an anonymized complaint, making him unqualified to opine on whether Dr. Conti breached his fiduciary duty during this process. (*Id.*, at 45:18-22). Because Dr. Appelbaum admittedly cannot

opine on what facts are required in a pleading and is not even aware of the process by which Dr. Conti's pleadings were filed in this case, his opinions on these matters are unreliable, unhelpful, and must be excluded.

### 4.  Dr. Conti's Transfer of Care

Dr. Appelbaum concludes that "[t]he materials that [he] reviewed indicate that Dr. Conti refused to discuss [Doe's] treatment with his current psychiatrist, Dr. Jenike, without compensation, a fact confirmed by Dr. Jenike at his deposition."  (Exhibit A at § IV.C.26).  This question is patently irrelevant as a trial issue, considering that Doe's counterclaim is premised upon the alleged excessive publication of confidential information, not failure to produce his case file to a successor psychiatrist.  Regardless, even if it were relevant, and it is not, the issue would be a question of fact turning on the finder of fact's interpretation of relevant communications and assessment of the credibility of competing testimony.  Indeed, Dr. Appelbaum bases his conclusion on an email from Dr. Conti that he reads as saying that Dr. Conti would not speak to Dr. Jenike under any circumstances unless he was paid for his time.  (Exhibit B at 267:16 – 268:7).  The finder of fact can read that email, hear testimony from Dr. Conti and Dr. Jenike, and decide for themselves.[4]

Furthermore, when pressed at his deposition, Dr. Appelbaum testified that Dr. Conti had no obligation to speak to Dr. Jenike, that he could have just sent Dr. Jenike his files on Doe, and that it was not unreasonable for Dr. Conti to request that Doe satisfy an outstanding balance. (Exhibit B at 266:15-25).  Moreover, Dr. Appelbaum testified that he was not aware of any peer-

---

[4]       In reality, in the email in question, Dr. Conti referenced a "small outstanding balance" that he would "appreciate clearing" but in no way conditioned any assistance on payment.  (Dkt No. 31-2, at 3).  Moreover, the record is bereft of any communication where Dr. Jenike even requested Doe's case file, let alone where Dr. Conti refused to provide it, and no such communications ever took place.  As Dr. Applebaum himself admits, Dr. Conti's only ethical obligation was to do produce the case file on request, and neither Dr. Jenike nor anybody else ever asked him for it.  (*See* immediately *infra*).

review articles or anything from the APA Principles addressing a psychiatrist's obligations regarding transferring patient care when care is terminated after the patient sends threatening emails.  (*Id.*, at 29:20 – 30:23).  Accordingly, Dr. Appelbaum's opinion on whether Dr. Conti did not meet his obligations with regard to transferring care improperly invades the province of the jury, and is in any event unreliable.

### D.  ANY PROBATIVE VALUE TO DR. APPELBAUM'S TESTIMONY IS OUTWEIGHED BY THE RISK OF UNFAIR PREJUDICE AND CONFUSION

For reasons discussed *supra*, Dr. Appelbaum's opinions on Dr. Conti's ethical duties and how Dr. Conti purportedly breached those duties are, at minimum, not based on clear-cut standards.  This drastically lowers the probative value of his opinions.  *See Joffe*, 2019 U.S. Dist. LEXIS 163671, at *53 ("Under the facts of this case, because Plaintiff's duty to report is not clear-cut when assessed against the RPC, Green's testimony is only marginally probative.").  Also, as in *Joffe*, Dr. Appelbaum's opinion risks creating a mini-trial on ancillary issues, namely – whether Dr. Conti was reasonable to perceive Doe to be a threat, and how he reached his decision to file a lawsuit.  This would create a "sideshow" that would distract from the only relevant issue on Doe's Counterclaim that could be tried: whether Dr. Conti breached a legal duty to Doe by purportedly overdisclosing his confidential information.  *See Joffe*, 2019 U.S. Dist. LEXIS 163671, at *53.

### POINT II

### DR. COHEN'S TESTIMONY SHOULD BE EXCLUDED IN ITS ENTIRETY

### A.  DR. COHEN'S REPORT DRAWS IRRELEVANT CONCLUSIONS

Dr. Cohen's Expert Report, dated October 7, 2019, bears no relevance to Dr. Conti's claim for mental damages proximately caused by Doe's defamation.  As noted above, the FAC included an IIED claim as well as claims for violation of Ohio statutes regarding harassment and stalking. However, those claims have been dismissed.  Dr. Conti's only remaining claim is for defamation

arising from certain written communications sent by Doe.  Thus, the relevant question for the trier of fact will be whether Dr. Conti suffered mental harm as a result of being defamed by Doe.  Such damages are recoverable under New York law.  *See Nolan v. State of New York*, 158 A.D.3d 186, 194 (1st Dep't 2018).  ("Indeed, the model charge for compensatory damages in defamation cases in the Pattern Jury Instructions provides that the jury 'may not presume that plaintiff has been damaged.  Rather, plaintiff must prove damages to (his, her) reputation or standing in the community, or damages such as personal humiliation, mental anguish and suffering' (PJI 3:29B)." (emphasis omitted)).  This Court further refined the purpose of Dr. Cohen's IME of Dr. Conti as intended to assist "[i]n trying to separate out by a lay jury what is going on in his life caused by the defamation versus what was caused or what is evidence by his other diagnoses…."  (Dkt. No. 104, at 13:5-14).

Dr. Cohen's Report does not discuss whether a trier of fact could conclude that Dr. Conti suffered mental harm from being defamed, let alone how to separate out his other diagnoses from emotional injury attributable to the defamation.  Instead, Dr. Cohen concludes that Dr. Conti could not have reasonably feared harm from Doe, and engages in a broadside criticism of Dr. Conti's handling of Doe and general business practice.  In the "Assessment" section of his Report, Dr. Cohen draws the following conclusions:

    i.    "It is therefore my opinion, to a reasonable degree of medical certainty, that a reasonable psychiatrist, who had terminated with a patient whom he assessed to have borderline personality, could not plausibly interpret these messages as a direct threat on his person.  The messages clearly and explicitly threaten legal action and are highlighted with explicit and profane language." (Exhibit C at 22).

    ii.  

iii.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

iv.     "It is therefore my opinion, to a reasonable degree of medical certainty, that Dr. Conti's subsequent assessment that John Doe is a psychopath is factually inconsistent with the evidence Dr. Conti presents in support of his argument." (*Id*., at 28).

v.     "It is therefore my opinion, to a reasonable degree of medical certainty, that a reasonable psychiatrist in Dr. Conti's position would not view John Doe as a 'sociopath' to be feared and would consult an expert in personality disorders if he was unsure of how to assess or respond to the patient's reaction to termination." (*Id*., at 29).

vi.     "It is therefore this writer's opinion, to a reasonable degree of medical certainty, that avenues other than a lawsuit were available to Dr. Conti as a psychiatrist with concerns regarding a former patient's behavior.  These other avenues would have been addressed in a call to his malpractice insurer and consultation with a colleague with expertise in personality disorders." (*Id*., at 30).

vii.     "Based on the available evidence presented in this report, it is this writer's opinion, to a reasonable degree of medical certainty, that Dr. Conti's countertransference towards John Doe was not and is not currently well managed by Dr. Conti, and that it plays a significant role in his attitudes towards and assessment of John Doe." (*Id*., at 31).

viii.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Dr. Cohen's only even arguably relevant opinion is that Dr. Conti does not suffer from ▮▮▮ or ▮▮▮. (*See* First and Second Opinions).  Yet this opinion is only relevant to the extent that Dr. Conti seeks to recover damages at trial for or ▮▮▮ or ▮▮▮ arising from his surviving claim for defamation.  However, to the extent the Court allows Dr. Cohen to give testimony on those issue, it should be strictly limited to those questions so that Doe does not use Dr. Cohen's testimony in the same manner as his written opinions – as a method to attack Dr. Conti personally and professionally, as opposed to the only issue for which the Court authorized him to opine,

20

namely in assisting the jury in separating out the causes of any emotional injury suffered by Dr. Conti.  (Dkt. No. 104, at 13:5-14).  In all events, the scope of that testimony should await the Court's ruling on the motions for summary judgment that are contemplated by the parties.

**B.     COHEN'S REPORT DRAWS IMPERMISSIBLE AND REDUNDANT LEGAL CONCLUSIONS**

In addition to opining that Dr. Conti does not suffer from █████ or █████ Dr. Cohen's first and fourth through eighth conclusions state, in substance, that it was unreasonable for Dr. Conti to perceive Doe as a threat and that he did not properly act appropriately in response to the Messages.  However, those matters are the subject of Dr. Appelbaum's Report, and therefore should be excluded as redundant.  Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is outweighed by a danger of . . . wasting time, or needlessly presenting cumulative evidence.").  Moreover, for the reasons stated *supra*, opinions addressing these matters should be excluded as improper legal conclusions that usurp the role of the trier of fact.

In addition, besides Dr. Cohen's second and third conclusions opining that Dr. Conti does not suffer from █████ or █████ only Dr. Cohen's first conclusion – that no reasonable psychiatrist would be threatened by the Messages – even concerns Dr. Conti's mental state.  Dr. Cohen's fourth through eighth conclusions all concern whether Dr. Conti accurately diagnosed Doe or took appropriate action in response to the Messages.  Dr. Cohen's view that Plaintiff should have pursued a different avenue than filing a lawsuit to address the messages is completely untethered to the question of whether Dr. Conti was emotionally damaged by Doe's messages.  (*See* Dr. Cohen's Fourth Opinion).  Further, Dr. Cohen's conclusions about Doe's mental condition are especially unreliable because he never met with Doe or communicated with Doe in writing.

(Exhibit D at 31:5-9).[5]  Moreover, both Doe's counsel and this Court made clear that an IME would be performed on Dr. Conti to determine whether he suffered mental damages from being defamed by Doe.  (Dkt. No. 104, at 10:14-18, 13:5-14).  Accordingly, Dr. Cohen's fourth through eighth conclusions and all related testimony should also be excluded on the grounds that they are outside the scope of the IME and completely irrelevant to the issue of Dr. Conti's mental damages.

## C.   DR. COHEN'S FACTUAL NARRATIVE, SPIN, AND CREDIBILITY DETERMINATIONS SHOULD BE EXCLUDED

In *Joffe*, this Court explained that portions of expert reports may be "excluded as factual narrative and spin because they do not rely on any specialized knowledge and expertise."  2019 U.S. Dist. LEXIS 163671, at *49.  As explained by the court in *Anderson News, L.L.C. v. Am. Media, Inc.*, 09 Civ. 2227 (PAC), 2015 U.S. Dist. LEXIS 110358 (S.D.N.Y. Aug. 20, 2015):

> Also inadmissible are "expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise," *Nimely*, 414 F.3d at 398, as well as testimony regarding "the intent or motive of parties," or a "party's state of mind," *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004); *LaSalle Bank Nat'l Assoc, v. CIBC, Inc.*, 2012 U.S. Dist. LEXIS 18503, 2012 WL 466785, at *7 (S.D.N.Y. Feb. 14, 2012).

*Id.*, at *7.

The sections in Dr. Cohen's Report that begin with the headings "Personal History," "Treatment of John Doe," and "Past Psychiatric History" contain nothing more than factual narratives that do not require reliance on Dr. Cohen's specialized knowledge.  (*See* Exhibit C at 2-18).  Doe should not be able to introduce any of these background facts at trial through Dr. Cohen's

---

[5]     With respect to Dr. Cohen's complaints about Dr. Conti's susceptibility to transference, he is seeking to mask an ethical attack as being a medical conclusion from an IME.  As Dr. Meyer confirmed, Dr. Conti acted appropriately from an ethical standpoint regarding any transference/countertransference concerns by consulting with his own experienced psychiatrist, Dr. Hamilton, before filing suit.  (*See* Dr. Meyer's Report, Exhibit E, at 11-12).  But in all events, if anything, transference concerns raise questions of ethics, not any emotional damage that Dr. Conti may have suffered as a result of Doe's communications.  Once again, this is an attempt to attack Dr. Conti's professional ethics in the guise of an IME determination.

testimony.  Instead, any such facts should be elicited from witnesses with firsthand knowledge, and not improperly buttressed through unsubstantiated testimony from an expert witness.

Moreover, in his Report, Dr. Cohen displays a penchant for providing his personal spin on many factual matters.  For instance, Dr. Cohen:

i.   outright concludes that there was "no direct physical threat from John Doe" (Exhibit C at 25)

ii.  characterizes Doe's emails as being "alternatively mournful and angry" and "expressing the hurt he believed Dr. Conti caused him and explicitly threatening a lawsuit," and Doe's mother's suggestion to Dr. Conti that Doe was trying to "get a reaction" out of him as "helpful"  (*Id.*, at 10, 21);

iii. opines on the credibility of Dr. Conti's claims he did not enact plans to buy a house and expand his practice because of his fear of Doe, and that he did not have time to speak to his malpractice insurer (*Id.*, at 12, 30);

iv.  contends that Dr. Hamilton's opinion cannot be considered authoritative because he never read the Messages and his diagnosis of Dr. Conti was not contemporaneous with events (*Id.*, at 21, 24); and

v.   criticizes Dr. Conti for having a practice different from his own and pejoratively calls him "a psychiatrist on a plane" (*Id.*, at 24).

The trier of fact has no need to hear Dr. Cohen's editorializations.  They should be excluded.

### D.   ANY PROBATIVE VALUE OF DR. COHEN'S REPORT IS OUTWEIGHED BY THE RISK OF UNFAIR PREJUDICE

For reasons stated above, only the portion of Dr. Cohen's Report concerning whether Dr. Conti has ▮▮▮ or ▮▮▮ is even potentially relevant to Dr. Conti's damages claim in this case.

The rest of his Report consists of narrative, spin, credibility determinations, and criticisms of Dr. Conti's handling of Doe and the Messages.  Dr. Cohen's unfocused opinions on a wide range of matters related to this case creates a severe risk that he will attempt to testify at trial as an expert on any and all disputed factual issues concerning Dr. Conti's relationship with Doe.  This Court should not condone that, as it creates a serious risk of confusing or misleading the jury.  The only potential subject about which Dr. Cohen should be permitted to testify at trial concerns whether Dr. Conti suffered ██ or ██ as a result of being defamed by the Messages, and in the event he is allowed to give such testimony, Dr. Cohen should be strictly instructed to not stray beyond those matters.  If Dr. Conti does not contend at trial that he suffered ██ or ██ as a result of being defamed by the Messages, Dr. Cohen's Report and testimony should be entirely excluded.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, those set forth in the accompanying Bartholomew Dec., and all prior proceedings heretofore had herein, Dr. Conti respectfully requests that this Court enter an Order pursuant to Federal Rules of Evidence 401, 403, and 702 excluding the expert reports and testimony of Dr. Appelbaum and Dr. Cohen in their entirety, as well as granting Dr. Conti such other and further relief as this Court deems just and proper.

Dated: New York, New York
      March 20, 2020

Respectfully submitted,

JUDD BURSTEIN, P.C.


By: /s/ G. William Bartholomew
      Peter B. Schalk
      G. William Bartholomew
5 Columbus Circle, Suite 1501
New York, New York 10019
Tel.: (212) 974-2400
Fax: (212) 974-2944
pschalk@burlaw.com
*Attorneys for Plaintiff-Counterclaim Defendant Dr. Paul M. Conti*

25