UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

DR. PAUL M. CONTI,

        *Plaintiff-Counterclaim Defendant*,

        – against –

                                 Case No. 17-CV-9268 (VEC)

JOHN DOE,

        *Defendant-Counterclaim Plaintiff*.

-------------------------------------------------------------X


### PLAINTIFF-COUNTERCLAIM DEFENDANT DR. PAUL M. CONTI'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT-COUNTERCLAIM PLAINTIFF JOHN DOE'S MOTION TO PRECLUDE EXPERT REBUTTAL TESTIMONY


JUDD BURSTEIN, P.C.
5 Columbus Circle, Suite 1501
New York, New York 10019
(212) 974-2400
*Attorneys for Plaintiff-Counterclaim
Defendant Dr. Paul M. Conti*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ..................................................................................................... 1

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF RELEVANT PROCEDURAL HISTORY ...................................... 5

STANDARD OF REVIEW ........................................................................................ 7

ARGUMENT ............................................................................................................ 9

POINT I

TESTIMONY FROM ETHICS EXPERTS MAY NOT BE NECESSARY ................... 9

POINT II

THE OPINIONS DOE SEEKS TO EXCLUDE ARE NOT BASED ON
"IGNORANT SPECULATION" ABOUT THE LAW .............................................. 12

    A.  The Court Should Permit Dr. Meyer to Respond to Dr. Appelbaum's
        Opinion About Dr. Conti's Pleadings ......................................................... 12

    B.  The Court Should Permit Dr. Meyer to Respond to Dr. Appelbaum's
        Opinion About Dr. Conti's Pre-Filing Consultation .................................... 15

    C.  The Court Should Permit Dr. Meyer to Testify About a Psychiatrist's
        Right to File a Lawsuit in Response to a Former Patient's Conduct ............ 16

CONCLUSION ......................................................................................................... 18

TABLE OF AUTHORITIES

<u>CASES</u>

*2002 Lawrence R. Buchalter Alaska Trust v. Phila. Fin. Assur. Co.*,
    12 Civ. 6808 (KMK) (PED),
    2016 U.S. Dist. LEXIS 31771 (S.D.N.Y. Mar. 11, 2016) ...................................................5

*Amorgianos v. Amtrak*,
    303 F.3d 256 (2d Cir. 2002)...................................................................................................8

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*,
    04 Civ. 10014 (PKL),
    2009 U.S. Dist. LEXIS 89183 (S.D.N.Y. Sept. 28, 2009)...........................................4, 16

*Boucher v. U.S. Suzuki Motor Corp.*,
    73 F.3d 18 (2d Cir. 1996)......................................................................................................8

*Belliveau v. Barco, Inc.*,
    C.A. No. AU-17-CA-00379-SS,
    2019 U.S. Dist. LEXIS 177658 (W.D. Text. July 26, 2019) .............................................11

*California Motor Transp. Co. v. Trucking Unlimited*,
    404 U.S. 508 (1972).............................................................................................................2

*Carter v. CIOX Health, LLC*,
    260 F. Supp. 3d 277 (W.D.N.Y. 2017) .........................................................................1, 14

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)..........................................................................................................1, 14

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993).............................................................................................................8

*Eppley v. Iacovelli*,
    No. 1:09-cv-386,
    2010 U.S. Dist. LEXIS 85133 (S.D. Ind. Aug. 17, 2010) ..................................................2

*Hygh v. Jacobs*,
    961 F.2d 359 (2d Cir. 1992)..................................................................................................9

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)...................................................................................9

*Joffe v. King & Spalding LLP*,
    17-CV-3392 (VEC),
    2019 U.S. Dist. LEXIS 163671 (S.D.N.Y. Sept. 24, 2019)........................3, 8, 11

*Karavitis v. Makita U.S.A., Inc.*,
    243 F. Supp. 3d 235 (D. Conn. 2017) ...................................................... 11-12

*Nimely v. City of New York*,
    414 F.3d 381 (2d Cir. 2005)...........................................................................8

*Restivo v. Hessemann*,
    846 F.3d 547 (2d Cir. 2017)...........................................................................8

*SEC v. Lek Sec. Corp.*,
    370 F. Supp. 3d 384 (S.D.N.Y. 2019)..........................................................8-9

*Tarasoff v. Regents of University of California*,
    551 P.2d 334 (Cal. 1976) ............................................................................ 9-10

*United States v. Lumpkin*,
    192 F.3d 280 (2d Cir. 1999)...........................................................................9

*United States v. Williams*,
    506 F.3d 151 (2d Cir. 2007)...........................................................................8


STATUTES AND OTHER AUTHORITIES

Fed. R. Civ. P. 4 ...............................................................................................11

Fed. R. Civ. P. 11 .............................................................................................16

Fed. R. Civ. P. 12 ...............................................................................................2

Fed. R. Evid. 702 ........................................................................................... 7-8

## INTRODUCTION

Plaintiff-Counterclaim Defendant Dr. Paul M. Conti ("Plaintiff" or "Dr. Conti") respectfully submits this Memorandum of Law in opposition to the Motion filed by Defendant-Counterclaim Plaintiff John Doe ("Defendant" or "Doe") for an Order pursuant to Rule 702 of the Federal Rules of Evidence precluding Dr. Conti from offering at trial anticipated expert rebuttal testimony of Dr. Donald Meyer ("Dr. Meyer") only to the extent that Dr. Meyer would testify to following three opinions: (1) that Dr. Conti's disclosures of purportedly confidential patient information in his pleadings in this case were permissible because it is the type of information that the Court would want to know or find helpful; (2) that psychiatrists should respond differently to patient behavior depending on whether it is illegal; and (3) that Dr. Conti consulted with his counsel in this case before disclosing Doe's purportedly confidential information.

## PRELIMILARY STATEMENT

After enduring offensive, threatening, and defamatory communications (the "Messages") from Doe for over seven months with no end in sight, Dr. Conti exercised his right to commence a civil lawsuit against Doe for monetary damages and injunctive relief.[1]   When Dr. Conti's defamation claim survived a pre-answer motion to dismiss, Doe sought to make good on his repeated threats to have his "team com[e] after" Dr. Conti "to throw [him] in jail," "bring [Dr.

---

[1]    Doe claims that Dr. Conti "did not seek an injunction in the complaint in which he first made the disclosures." (*See* Dkt. No. 188, at p. 14 n.3).  **This is false**.  (*See* Dkt. No. 13, at p. 20 (pleading cause of action for permanent injunction barring Doe from communicating with Dr. Conti or making harassing statements to third persons about Dr. Conti)).  Dr. Conti also seeks injunctive relief in his First Amended Anonymized Complaint ("FAC"), which is his operative Complaint in this case.  (*See* Dkt. No. 31, at ¶ 83 (seeking same injunctive relief)).  The fact that Dr. Conti sought such relief critically undercuts Doe's apparent position that Dr. Conti did not need to plead allegations bearing on Doe's ability to harm or defame him in the future.  *See Carter v. CIOX Health, LLC*, 260 F. Supp. 3d 277, 287 (W.D.N.Y. 2017) ("To have standing to seek injunctive relief, a plaintiff must demonstrate a 'real or immediate threat' of future injury." (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111-12 (1983)).

Conti] down on malpractice," "drain [Dr. Conti] of all [his] resources," and generally "do everything in the power of the law to destroy" Dr. Conti.  (Dkt. No. 31-1, at p. 13; Dkt. No. 31-5, at p. 1; Dkt. No. 31-8, at p. 3; Dkt. No. 31-15, at p. 1).

To carry out their client's wishes, Doe's "team" has come up with a counterclaim for breach of doctor-patient confidentiality.  However, Doe is faced with the inconvenient fact that Dr. Conti commenced this lawsuit under seal, and only publicly filed an anonymized version of his original Complaint at the direction of this Court after counsel for all parties had the opportunity to propose redactions.[2]  (*See* Exhibits G and H to the Declaration of G. William Bartholomew, dated March 20, 2020 ("03/20/20 GWB Dec."), which were filed under seal in this case; *see also* Dkt. No. 9).

To counter this problem, Doe's team has been forced to take the remarkable position that Dr. Conti breached his fiduciary duty, even though he commenced this lawsuit under seal, because he necessarily had to disclose deanonymized confidential information to his attorneys and certain court personnel.  Doe's team is also undoubtedly mindful that it would be completely untenable for Doe to maintain that Dr. Conti should be subject to legal liability merely because he is using the court process to seek redress for a former patient's malfeasance.  *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (holding that "[t]he right of access to the courts is indeed but one aspect of the right of petition" protected by the Bill of Rights); *see also Eppley v. Iacovelli*, No. 1:09-cv-386, 2010 U.S. Dist. LEXIS 85133, at *17 (S.D. Ind. Aug. 17, 2010) (granting summary judgment to physician on his defamation claim against a former patient).  Accordingly, they have advanced the theory that Dr. Conti made an impermissible "overdisclosure" of Doe's confidential medical information in his pleadings – or, in other words,

---

[2]     Notably, even well over two years after the commencement of this case, Doe has made no attempt to strike any of the allegations in Dr. Conti's pleadings as "immaterial, impertinent, or scandalous" pursuant to Fed. R. Civ. P. 12(f).

that Dr. Conti included more purportedly confidential information about Doe in his sealed or anonymized pleadings than necessary to state his claims.

Doe's sole support for this novel theory comes from his ethics expert, Dr. Paul S. Appelbaum, who he retained to review and opine on "whatever issues [Dr. Appelbaum] could identify, if there were any, related to Dr. Conti's initiation of the lawsuit against the patient." (Dkt. No. 192-2, at 82:2-6). According to Dr. Appalbaum, Dr. Conti did not meet the "applicable professional standard" of ethical conduct in four areas: (1) responding to the Messages; (2) evaluating whether to commence a lawsuit against Doe; (3) safeguarding Doe's confidences and privacy when he did initiate litigation; and (4) transferring Doe's care to another psychiatrist. (Dkt. No. 192-1, at § I.4). Yet, Dr. Appelbaum revealed at his deposition that his conclusions were premised only on **his** interpretation of what is required by the *Principles of Medical Ethics, with Annotations Especially Applicable to Psychiatry* (2013 Edition) (the "APA Principles"). (Dkt. No. 192-1, at § II.5; Dkt. No. 192-2, at 84:3-85:8). Doe's transparent strategy in this case is to present Dr. Appelbaum – who attached an 80-page *curriculum vitae* to his Expert Report – as the final arbiter in this case of not only what legal rules bind Dr. Conti, but also whether Dr. Conti's conduct breached those rules. This is impermissible. *See, e.g.*, *Joffe v. King & Spalding LLP*, 17-CV-3392 (VEC), 2019 U.S. Dist. LEXIS 163671, at *50-51 (S.D.N.Y. Sept. 24, 2019) (holding opinion of legal ethics expert inadmissible).

Dr. Appelbaum's Report and proffered testimony also suffers from the problem of being largely irrelevant. Doe's counterclaim only identifies one specific way in which Dr. Conti purportedly breached his fiduciary duty: by unnecessarily disclosing Doe's confidential information. (*See* Dkt. No. 59, at ¶ 102). Therefore, only Dr. Appelbaum's opinion on whether Doe sufficiently safeguarded Doe's confidences during litigation is even arguably relevant to

Doe's Counterclaim.  (*See also* Dkt. No. 193, at pp. 7-8).  As to this issue, though, Dr. Appelbaum admits that he is completely unqualified to give an expert opinion:  "As a psychiatrist, I cannot address which facts are legally required in a complaint.  That is a question for lawyers."  (Dkt. No. 192-1, at § IV.B.18).

Ironically, Doe now seeks to prevent Dr. Conti's rebuttal expert, Dr. Meyer, from offering certain testimony on the ground that it is based on Dr. Meyer's "ignorant speculation" about the law.  (Dkt. No. 188, at p. 12)  However, as further explained below, the testimony Doe seeks to exclude does not rest on Dr. Meyer's understanding of **legal** principles.  Rather, the gravamen of Dr. Meyer's challenged testimony is that certain matters in Dr. Conti's pleadings would be relevant to a **psychiatrist's** assessment of Doe's likelihood of carrying out his threats, and that psychiatrists are not ethically barred from including information relevant to their claims in legal pleadings they file against former patients.  (*See* Dkt. No. 192-5, at pp. 6, 13-14)  In addition, Doe seeks to prevent Dr. Meyer from merely mentioning that Dr. Conti consulted with his attorneys before filing the lawsuit, even though Dr. Appelbaum bases his opinions on his belief that Dr. Conti did not engage in adequate pre-suit consultation. (*See* Dkt. No. 192-1, at § IV.A.15).  Dr. Meyer should be permitted to rebut Dr. Appelbaum's assertion by stating that Dr. Conti consulted with his attorneys, even though Dr. Meyer is not privy to the substance of those discussions.  This testimony would be permissible, and would not waive any attorney-client privilege.  *See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.*, 04 Civ. 10014 (PKL), 2009 U.S. Dist. LEXIS 89183, at *44-45 (S.D.N.Y. Sept. 28, 2009).

To be sure, Dr. Meyer's testimony will become moot if this Court excludes Dr. Appelbaum's testimony. However, if Dr. Appelbaum is permitted to testify at trial, Dr. Meyer should be afforded the opportunity to present the rebuttal testimony Doe seeks to exclude.[3]

## STATEMENT OF RELEVANT PROCEDURAL HISTORY

The facts underlying this case are well known to the Court, and are detailed in Dr. Conti's First Amended Anonymized Complaint with Exhibits (the "FAC," Dkt. No. 31). Accordingly, Dr. Conti will not engage in a recitation of those facts here. However, the procedural history of this case is germane to the Court's determination of Doe's present Motion. Accordingly, a brief review is warranted.

Dr. Conti filed his original Complaint under seal on November 27, 2017. Three days later, on November 30, 2017, the Court directed the parties to show cause as to why the case should not be unsealed and the Complaint filed on the public docket with limited redactions. (Exhibits G and H to the 03/20/20 GWB Dec., which were filed under seal). After counsel for both parties had the opportunity to comment on proposed redactions, this Court entered an order on December 27, 2017

---

[3]    Doe begins his Memorandum of Law in support of his Motion by making the frivolous contention that Dr. Conti has waived the attorney-client privilege through asserting a so-called "my-lawyers-made-me-do-it-defense." (*See* Dkt. No. 188, at p. 1). Although the argument is irrelevant to Doe's present Motion, it warrants a brief response. As an initial matter, Dr. Conti has not pleaded an advice-of-counsel defense, and he did not testify at his deposition that he was relying on one. Moreover, an implied waiver of attorney-client privilege is only appropriate in situations "involving a party's state of mind concerning a question of law[,] such as a party's belief as to the lawfulness of its conduct." *2002 Lawrence R. Buchalter Alaska Trust v. Phila. Fin. Assur. Co.*, 12 Civ. 6808 (KMK) (PED), 2016 U.S. Dist. LEXIS 31771, at *7 (S.D.N.Y. Mar. 11, 2016). According to Doe's counsel, the elements of Doe's breach of fiduciary duty claim do not require him to prove that Dr. Conti had any culpable intent. (*See* Dkt. No. 188, at p. 4 (citing N.Y. Pattern Jury Instructions § 3:59 (Breach of Fiduciary Duty – Physicians and Medical Corporations)). Therefore, according to Doe's own formulation of his claim, whether Dr. Conti relied on the advice of his counsel in authorizing the filing of his pleadings is not a relevant issue. In short, there was no waiver, and Doe has no need to know the content of Dr. Conti's communications with his counsel.

directing Dr. Conti to file an anonymized version of the original Complaint with "additional redactions that the Court approved" on the public docket.  (Dkt. No. 9).

The original Complaint asserted claims for (i) harassment in violation of the New York Penal Law; (ii) intentional infliction of emotional distress; and (iii) a permanent injunction barring Doe from communicating with Dr. Conti or making harassing statements to third persons about Dr. Conti.  (Dkt. No. 13, at ¶¶ 54-65).  After Doe moved to dismiss the original Complaint on the ground that, *inter alia*, New York law would not apply to Dr. Conti's harassment claim (Dkt. No. 29, at p. 7), Dr. Conti filed the FAC, which is Dr. Conti's operative Complaint in this case.  The FAC asserts claims for defamation, intentional infliction of emotional distress, violation of Ohio criminal stalking and harassment statutes, and also seeks to enjoin Doe from making future harassing and defamatory statements to or about Dr. Conti.  (Dkt. No. 31, at ¶¶ 54-83).

Doe moved to dismiss the FAC, and the Court entered an Opinion on February 27, 2019 that left Dr. Conti's defamation claim based on certain of the written Messages as his only live claim in the case.[4]  (*See* Dkt. No. 57).  On March 13, 2019, Doe filed his Answer to the FAC and Counterclaim (the "Counterclaim") alleging one cause of action for common law breach of fiduciary duty.  (Dkt. No. 59, at ¶¶ 94-106).

Doe's Counterclaim alleges that Dr. Conti breached his fiduciary duty to Doe "[b]y unnecessarily disclosing – indeed, weaponizing – Doe's confidential medical information for personal financial gain[.]"  (Dkt. No. 59, ¶ 102).  He further claims that "[o]ne of the nation's leading experts in psychiatric ethics" – later revealed to be Dr. Appelbaum – "has reviewed the First Amended Anonymized Complaint and relevant materials, and concluded that Dr. Conti's

---

[4]     As noted in the Court's February 27, 2019 Opinion, the parties agreed that Dr. Conti's claim for an injunction should be construed as a remedy, not a freestanding cause of action.  (Dkt. No. 57, at p. 4, n. 5).

pleadings in this case included more information about Doe tha[n] was ethically permissible[.]" (Dkt. No. 59, at ¶ 101; Exhibit A to the Declaration of G. William Bartholomew, dated April 17, 2020 ("4/17/20 GWB Dec."), at 60:3-23.  In his Memorandum of Law in support of his present Motion, Doe represents that Dr. Conti's "pleadings in this case – the initial complaint and the amended complaint – form the principal basis for Doe's claim."  (Dkt. No. 188, at p. 3).  He also suggests that the elements of this claim will be "(1) the existence of a physician-patient relationship; (2) the physician's acquisition of information relating to the patient's treatment or diagnosis; (3) the disclosure of such confidential information to a person not connected with the patient's medical treatment, in a manner that allows the patient to be identified; (4) lack of consent for that disclosure; and (5) damages."  (Dkt. No. 188, at p. 4 (citing N.Y. Pattern Jury Instructions § 3:59 (Breach of Fiduciary Duty – Physicians and Medical Corporations))).

As noted above, Doe retained Dr. Appelbaum to opine on "whatever issues [he] could identify, if there were any, related to Dr. Conti's initiation of the lawsuit against the patient."  (Dkt. No. 192-2, at 82:2-6).  Doe now seeks to prevent Dr. Conti's proffered ethics expert, Dr. Meyer, from being able to respond fully to Dr. Appelbaum's conclusions.

## STANDARD OF REVIEW

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  It provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> a.  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> b.  the testimony is based on sufficient facts or data;
>
> c.  the testimony is the product or reliable principles and methods; and

> > d.  the expert has reliably applied the principles and methods to the facts of the
> > case.

Fed. R. Evid. 702.

"It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions[.]"  *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005). "Nevertheless, the district court must act as a gatekeeper against unreliable expert testimony." *Joffe*, 2019 U.S. Dist. LEXIS 163671, at *6 (citing *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007)).  "The proponent of expert testimony carries the burden of establishing its admissibility by a preponderance of the evidence." *SEC v. Lek Sec. Corp.*, 370 F. Supp. 3d 384, 403 (S.D.N.Y. 2019) (citing *Williams*, 506 F.3d at 160).

An expert's opinion must have "a reliable basis in the knowledge and experience of [the expert's] discipline."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993).  This reliability assessment is a flexible inquiry, and there is no "'definitive checklist or test for the reliability of expert testimony.'"  *Lek Sec. Corp.*, 370 F. Supp. 3d at 403 (citation omitted).  There is also no requirement that all expert testimony express opinions or conclusions that have been "established to a degree of scientific certainty[.]"  *Restivo v. Hessemann*, 846 F.3d 547, 577 (2d Cir. 2017).  Instead, a court must "assess whether the expert employs 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field[.]'"  *Id.* at 577 (citation omitted).  Some contentions that an expert's "assumptions are unfounded 'go to the weight, not the admissibility, of the testimony.'"  *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (citation omitted).  "'[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'"  *Amorgianos v. Amtrak*, 303 F.3d 256, 267 (2d Cir. 2002) (quoting *Daubert*, 509 U.S. at 596).

8

Also, "[e]xpert testimony that usurps the role of the fact finder . . . must be excluded." *Lek Sec. Corp.*, 370 F. Supp. 3d at 403 (citing *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999)). "Thus, although an expert may give an opinion to help the jury decide an issue in the case, he or she may not tell the jury what result to reach or communicate 'a legal standard – explicit or implicit – to the jury.'" *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (quoting *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992)). "This principle requires the exclusion of testimony that states a legal conclusion, although factual conclusions on an ultimate issue to be decided by the jury are permissible." *Id.*

## ARGUMENT

## POINT I

## TESTIMONY FROM ETHICS EXPERTS MAY NOT BE NECESSARY

Doe argues that Dr. Conti can only possibly escape liability for his "overdisclosure" of Doe's confidential information by proving that such disclosure was justified under the so-called *Tarasoff* standard articulated by the Supreme Court of California in *Tarasoff v. Regents of University of California*, 551 P.2d 334 (Cal. 1976). (Dkt. No. 188, at p. 5). Doe incorrectly states that the *Tarasoff* standard is "a principle of law and psychiatric ethics holding that mental health professionals may disclose confidential patient information to the extent minimally necessary to prevent serious physical harm to self or others." (Dkt. No. 188, at p. 5). Through casting "justification" under an incorrect interpretation of the *Tarasoff* standard as Dr. Conti's only possible defense, Doe hopes to turn this case into a test devised and graded by Dr. Appelbaum of every single action Dr. Conti took in responding to Doe's harassing and defamatory Messages. This Court should not permit him to do so.

Contrary to Doe's claim, the court in *Tarasoff* did not state that a mental health professional may only disclose a patient's confidential information to the extent "minimally necessary" to

9

prevent the patient from causing serious physical harm.  Rather, the court held that "[w]hen a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he **incurs an obligation** to use **reasonable care** to protect the intended victim against such danger."  *Tarasoff*, 551 P.2d at 340 (emphasis supplied).  Accordingly, the *Tarasoff* standard does not limit the situations in which a mental health professional can disclose confidential information.  It instead creates an affirmative **obligation** for the mental health professional to use "reasonable care" to protect the patient's intended target.  Indeed, Dr. Conti invoked *Tarasoff* during his deposition to explain he believed he had an affirmative duty to disclose pertinent information about Doe to prevent him from causing harm.  (Exhibit B to 4/17/20 GWB Dec., at 169:21 – 170:6 ("There is a standard which is frequently called the *Tarasoff* standard, and the standard establishes a duty to protect.  And if you feel that there is a duty to protect someone, then you not only can release information that's pertinent, but you should release information that's pertinent.")).  Therefore, it simply is not true – as Doe would have it – that Dr. Conti's only possible defense to the Counterclaim is to prove that he made a reasonable choice to sue Doe to prevent Doe from causing serious physical harm to himself or others.  As Dr. Conti intends to show in the context of a future motion for summary judgment, any disclosures made by Dr. Conti of Doe's purportedly confidential information to his attorneys or to this Court under seal cannot subject Dr. Conti to liability in the first place.[5]

---

[5]    By way of brief summary, Doe states that one of the elements of his Counterclaim is "the disclosure of such confidential information to a person not connected with the patient's medical treatment, **in a manner that allows the patient to be identified**[.]" (Dkt. No. 188, at p. 4 (citing N.Y. Pattern Jury Instructions § 3:59 (Breach of Fiduciary Duty – Physicians and Medical Corporations)) (emphasis supplied)).  Since Doe cannot base his Counterclaim on any anonymized filing, he must claim that Dr. Conti breached his fiduciary duty to Doe by disclosing purportedly confidential information to (i) court personnel when he commenced this lawsuit by filing a Civil Case Cover Sheet and un-anonymized Complaint under seal, or (ii) his lawyers.  Both positions are untenable for several reasons, as they would effectively bar a physician from accessing the

Also, for reasons set forth in Dr. Conti's Memorandum of Law in support of his Motion to exclude the testimony of Doe's proffered experts, Dr. Appelbaum's testimony should be excluded in its entirety because it is not relevant, not reliable, unduly prejudicial, and usurps the roles of the court and finder of fact.  (*See* Dkt. No. 193, at pp. 7-18).  Notably, Dr. Appelbaum testified that his opinion was based only on **his** interpretation of what the APA Principles require, and that he could not even give an estimate of what percentage of the psychiatric community would agree with his conclusions.  (Dkt. No. 192-2, at 84:3 – 85:8, 253:25 – 254:6).  Dr. Appelbaum simply will not be able to testify to any generally accepted "industry practice" that should have controlled or guided Dr. Conti's actions, which is the only possible way his testimony would be relevant and useful at trial.  *See Joffe*, 2019 U.S. Dist. LEXIS 163671, at *50 ("Green's interpretation of the RPC is not helpful to the jury because it is not based on his assessment of ordinary legal custom or practice."); *see also Karavitis v. Makita U.S.A., Inc.*, 243 F. Supp. 3d 235, 245 (D. Conn. 2017) ("Without detailing generally accepted tests and analyses used to determine handheld circular saw safety and then presenting the results of those tests when performed on the Circular Saw, Barbe's conclusions would not be useful to a fact finder.  Barbe's statement that he is 'a safety engineer and all of [his] opinions are engineering opinions, stated to be a reasonable degree of engineering

---

court system to sue a person who happens to be a former patient if that patient's confidential information could be relevant to the lawsuit.  Notably, Dr. Conti would not have been able to commence a lawsuit at all without naming the defendant.  *See* Fed. R. Civ. P. 4(a)(1)(A).  He also could not have properly developed his claims or defenses, or even complied with his discovery obligations, without turning over Doe's purportedly confidential information to his lawyers.  *See Belliveau v. Barco, Inc.*, C.A. No. AU-17-CA-00379-SS, 2019 U.S. Dist. LEXIS 177658, at *12 (W.D. Text. July 26, 2019) (granting summary judgment to defendant on a trade secret misappropriation claim based on disclosures to his attorneys because Fed. R. Civ. P. 26 "required him to disclose the alleged trade secret documents in his possession to opposing counsel to the extent [he] intended to use those documents to support his claims or defenses[,]" and he was entitled to identify those documents with the help of his attorneys).

certainty' is insufficient by itself to render his report useful or his conclusions admissible under *Daubert*.") (citation omitted)).

For these reasons, and others that undoubtedly will be further discussed in forthcoming briefing, testimony of ethics experts will likely be unnecessary in this case.  However, if this Court finds such testimony necessary, Dr. Meyer's rebuttal testimony should be admitted.

**POINT II**

**THE OPINIONS DOE SEEKS TO EXCLUDE
ARE NOT BASED ON "IGNORANT SPECULATION" ABOUT THE LAW**

**A.      The Court Should Permit Dr. Meyer to Respond to Dr. Appelbaum's Opinion
          About Dr. Conti's Pleadings**

In his present Motion, Doe contends that Dr. Meyer should not be able to testify about what states a "credible claim" and what a Court would "want to know."  (*See* Dkt. No. 188, at pp. 12-13).  Doe argues that while an expert in psychiatry can opine about "risk assessment," he or she cannot opine about what "information about 'risk assessment' **the law** or the courts may require or desire in a pleading."  (Dkt. No. 188, at p. 15 (emphasis in original)).  However, Doe has cast Dr. Appelbaum's opinion as the lynchpin of his Counterclaim by specifically relying on Dr. Appelbaum's opinion to plead his breach of fiduciary duty claim.  (*See* Dkt. No. 59, at ¶ 101; Exhibit A to 4/17/20 GWB Dec., at 60:3 – 61:5).  In his Report, Dr. Appelbaum opines that Dr. Conti's "Complaint includes many allegations that go beyond what is appropriate to this situation[,]" and offers a list of allegations that he believes to be "extraneous" to Dr. Conti's causes of action.  (Dkt. No. 192-1, at § IV.B.19).  Simply put, Doe is seeking to have his cake and eat it too by basing his claim on Dr. Appelbaum's opinion about what Dr. Conti was allowed to plead, and then preventing Dr. Meyer from responding to Dr. Appelbaum's pronouncements.  This should not be condoned.  If Dr. Appelbaum is permitted to testify about what he thinks Dr. Conti could ethically include in his pleadings, logic dictates that Dr. Meyer should be too.

12

Furthermore, Doe's contention that Dr. Meyer bases his opinion on his belief about what states a "credible claim" and what a court would "want to know" is simply wrong. (*See* Dkt. No. 188, at pp. 12-13). Rather, Dr. Meyer made clear in his Report that he thought certain facts would be relevant to a psychiatrist's risk assessment of Doe:

> Of note, Mr. Doe also had access to millions of dollars of family assets that historically had been used to pay gambling debts, purchase drugs illegally, allegedly to hire prostitutes and to extricate himself from the consequences of his maladaptive conduct. These later facts provide historical context for the assessment of Mr. Doe's risk for future misconduct, a matter of legitimate concern to Dr. Conti concerning both Dr. Conti's safety and the assessment of Doe's threat to Conti's reputation and property. **These facts would also be of legitimate concern to any mental health provider treating Mr. Doe.** So too is the medical fact that Mr. Doe has a first cousin who committed suicide. That fact alone raises the relative risk of Mr. Doe's violence to himself.

(Dkt. No. 192-5, at p. 3) (emphasis supplied).

Dr. Meyer also directly addressed the allegations that Dr. Appelbaum identified as going "beyond what is appropriate," and opined that the factual allegations that were pleaded were relevant to risk assessment. (Dkt. No. 192-5, at pp. 13-14). For example, Dr. Meyer stated that Doe's "drug addiction and the role of his immediate family are relevant to the clinical risk assessment of Doe." (Dkt. No. 192-5, at p. 14, ¶ 19(a)). He also explained that "wealth is a relevant factor for consideration to risk assessment since it may inform the relative capacity to carry out a threat." (Dkt. No. 192-5, at p. 14, ¶ 19(e)).

Dr. Meyer further opined that psychiatrists are not ethically barred from including information relevant to their claims in legal pleadings they file against patients or former patients. (Dkt. No. 192-5, at p. 10 ("Consistent with the wording of [APA] Principle 4, confidential material may be ethically used in the process of legal redress if it is relevant to the legal action being taken.")). Referring to Section 3 of the APA Principles stating that "[p]hysicians lose no right of citizenship on entry into the profession of medicine," Dr. Meyer explained that "[t]he fact that Doe

13

was [Dr. Conti's] former patient does not deprive Dr. Conti of the legal rights afforded ordinary citizens[.]"  (Dkt. No. 192-5, at p. 6).  This includes Dr. Conti's "lawful right as a citizen to bring civil suit in response to unlawful threats against his personal safety and in response to defamation by Mr. Doe."  (Dkt. No. 192-5, at p. 6).

As a matter of logic, Dr. Meyer's opinions lead to the conclusion that information relevant to risk assessment can ethically be included in a pleading if risk assessment is relevant to a claim. (*See* Dkt. No. 192-5, at pp. 6, 13-14).  That is in fact the case here, where Dr. Conti was required to show a threat of future harm from Doe to, at minimum, seek injunctive relief.  *See Carter*, 260 F. Supp. 3d at 287 ("To have standing to seek injunctive relief, a plaintiff must demonstrate a 'real or immediate threat' of future injury." (quoting *City of Los Angeles*, 461 U.S. at 111-12)).

Doe appears to take issue with Dr. Meyer making that logical leap in his deposition, even though Dr. Meyer was responding to direct questions from Doe's counsel asking why he thought it was ethical for Dr. Conti to include certain information **in the pleadings** in this case.  The testimony from Dr. Meyer that Doe seeks to exclude was elicited after Doe's counsel asked Dr. Meyer the following question: "Why, in your opinion, is it permissible for Dr. Conti **to disclose in the complaint** that Doe's father had been scarred by a devastating family suicide when he was younger?" (Dkt. No. 187-2, at 227:10-14 (emphasis supplied)).  Doe's counsel then followed-up by asking Dr. Meyer why what Doe's father will do is in "any way **relevant to the claims for harassment or defamation asserted in this lawsuit**[,]" and why it would be "**legally relevant**" to Dr. Conti's case.  (Dkt. No. 187-2, at 228:6-9; 229:14-16 (emphasis supplied)).  Dr. Meyer simply answered the questions posed to him.  If Doe's counsel asks Dr. Meyer similar questions at trial, Dr. Meyer should be permitted to respond accordingly.

This Court should permit Dr. Meyer to testify about what is relevant to a psychiatrist's risk assessment of Doe, and that a psychiatrist is not ethically prohibited from including relevant allegations about a former patient in a pleading.  Also, Dr. Meyer should not be prevented from responding to direct questions from Doe's counsel about what allegations he believes Dr. Conti could ethically include in his pleadings.[6]

**B.    The Court Should Permit Dr. Meyer to Respond to Dr. Appelbaum's Opinion About Dr. Conti's Pre-Filing Consultation**

In his Report, Dr. Appelbaum offers the opinion that "[w]ithout outside consultation, Dr. Conti's decision to respond to the Messages by filing the lawsuit against Doe was both disproportionate to the 'threat' posed by Doe, and inconsistent with Dr. Conti's stated fears of physical assault and legal liability."  (Dkt. No. 192-1, at § IV.A.15).  As to Doe's legal threats, Dr. Appelbaum criticizes Dr. Conti for failing "to contact his malpractice insurer to alert it to the perceived threats and to ask for its guidance with regard to risk management, the first step that any consultant would advise in such circumstances and a step that psychiatrists are advised to take by their insurers immediately after a threat is received."  (Dkt. No. 192-1, at § IV.A.15).  To rebut Dr. Appelbaum's conclusion, Dr. Meyer pointed out in his Report that Dr. Conti consulted with both his treating psychiatrist and his counsel in this case.  (Dkt. No. 192-5, at p. 12).  Doe now seeks to preclude Dr. Meyer from even mentioning that Doe consulted with his attorneys before filing his lawsuit.

---

[6]      In his Memorandum of Law, Doe contends that Dr. Meyer "acknowledged that a family history of suicidality is not relevant to Doe's risk of committing violence for hire against Conti – the kind of violence that Conti claims to fear."  (Dkt. No. 188, at p. 13) (emphasis omitted).  This is not an accurate representation of Dr. Meyer's testimony.  Dr. Meyer explained that "the anxiety that Doe's father has about Doe, and what he historically has been motivated to do to assure himself that his son won't suicide when his son threatens he might . . . . seem to me to be relevant facts in assessing Doe's risks."  (Dkt. No. 187-2, at 227:18-24).  In other words, Doe's family history is "relevant to what Doe's father will do to enable his son."  (Dkt. No. 187-2, at 228:3-5).  The lengths Doe's father will go to enable his son increase Doe's ability to carry out his threats.

It would be fundamentally unfair to permit Dr. Appelbaum to offer his opinion that Dr. Conti did not engage in adequate consultation about the legal risks he faced while prohibiting Dr. Meyer from noting that, according to his understanding, Dr. Conti did consult with his attorneys in this case.  To be sure, and as Doe correctly notes, Dr. Meyer does not have knowledge of the substance of Dr. Conti's consultations with his counsel.  (*See* Dkt. No. 187-2, at 64:19-25). Accordingly, Dr. Meyer will not be able to testify about the quality of those discussions.  However, he should be able to testify that he understands that Dr. Conti had consultations with his lawyers if Dr. Appelbaum opines at trial that Dr. Conti did not engage in adequate pre-lawsuit discussions.[7]

Furthermore, Doe cannot reasonably contest the fact that Dr. Conti consulted with his attorneys before filing his lawsuit.  Dr. Conti's attorneys signed the pleadings, meaning that they, at minimum, have reviewed the pleadings and warranted that to the best of their "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,]" that Dr. Conti's claims are, *inter alia*, nonfrivolous.  *See* Fed. R. Civ. P. 11(b).  Dr. Meyer should not be prohibited from mentioning the uncontestable fact that Dr. Conti consulted with his attorneys before filing the lawsuit to respond to Dr. Appelbaum's opinion.

**C.      The Court Should Permit Dr. Meyer to Testify About a Psychiatrist's Right to File a Lawsuit in Response to a Former Patient's Conduct**

Doe has seized on Dr. Meyer's use of the term "illegal" to try to exclude portions of his testimony.  If the Court prohibits Dr. Meyer from using this term, it should permit him to substitute

---

[7]      Doe contends that Dr. Conti would be waiving his attorney-client privilege if Dr. Meyer testifies that Dr. Conti sought legal advice from his attorneys in this case.  (Dkt. No. 188, at p. 18 n.4).  This is incorrect.  As noted, Dr. Meyer does not have knowledge about the substance of Dr. Conti's communications with his counsel.  He can only testify to his understanding that Dr. Conti sought legal advice from his attorneys.  This does not waive the privilege.  *See Aristocrat Leisure Ltd.*, 2009 U.S. Dist. LEXIS 89183, at *44-45 ("The Court agrees with the Bondholders that, subject to the limitations described below, merely stating that individual Bondholders sought advice of counsel on a particular topic does not place the actual content of the advice at issue or otherwise waive privilege.").

it with the terms "potentially illegal," "potentially tortious," or another term making it clear that Dr. Meyer is not offering his expert opinion on the technical legality of any conduct.  At his deposition, Dr. Meyer clarified that he meant to use the word "illegal" according to its "ordinary, lay" meaning, and he rejected Doe's counsel's charge that the illegality of Doe's conduct was a "central theme" of his opinion.  (Exhibit C to the 4/17/20 GWB Dec., at 108:23-25, 116:3-8).  Indeed, Dr. Meyer's Report, read as a whole, shows that his opinion about the propriety of Dr. Conti's response to the Messages is not predicated on his determination that Doe's conduct was technically illegal.  Permitting Dr. Meyer to substitute the word "illegal" for a more suitable term would preserve the core of his testimony.

Dr. Meyer used the term "illegal" in the context of addressing Dr. Appelbaum's opinion that Dr. Conti's failure to "recognize Doe's behavior as a manifestation of the patient's transference" led him to respond to the Messages inappropriately, including by filing a lawsuit. (Dkt. No. 192-1, at § IV.A.11).  To rebut this opinion, Dr. Meyer noted that "[m]ental health providers who do not protect the limits of the therapeutic setting put themselves at increased risk of being victimized by the very patients they seek to treat."  (Dkt. No. 192-5, at p. 10).  He explained that while he agreed with Dr. Appelbaum that "patients may discuss their negative feelings with friends or relatives[,] . . . . patient[s'] right[s] to say what they think and feel [are] not unlimited."  (Dkt. No. 192-5, at p. 10).  Accordingly, "[t]he fact that the illegal conduct may have arisen from transferential feelings is not exculpatory."  (Dkt. No. 192-5, at p. 10).  Moreover, Dr. Meyer opined, the mere fact that Doe is Dr. Conti's former patient "does not deprive Dr. Conti of the legal rights afforded [to] ordinary citizens," which includes the right to bring a civil lawsuit. (Dkt. No. 192-5, at p. 6).

If the Court agrees with Doe that Dr. Meyer should not be able to use the term "illegal," it should preserve his ability to testify on a psychiatrist's right to commence a lawsuit in response to potentially illegal or tortious conduct.  Whether that conduct is technically tortious or illegal is not a central theme of Dr. Meyer's proffered testimony.

<u>**CONCLUSION**</u>

**WHEREFORE**, for the foregoing reasons, and all prior proceedings heretofore had herein, Dr. Conti respectfully requests that this Court enter an Order denying Doe's Motion to preclude certain portions of Dr. Meyer's anticipated rebuttal testimony, and granting Dr. Conti such other and further relief as this Court deems just and proper.

Dated: New York, New York
      April 17, 2020

                                    Respectfully submitted,

                                    JUDD BURSTEIN, P.C.

                                    By: <u>/s/ G. William Bartholomew</u>
                                          Peter B. Schalk
                                          G. William Bartholomew
                                  5 Columbus Circle, Suite 1501
                                  New York, New York 10019
                                  Tel.: (212) 974-2400
                                  Fax: (212) 974-2944
                                  pschalk@burlaw.com
                                  wbartholomew@burlaw.com
                                  *Attorneys for Plaintiff-Counterclaim Defendant Dr. Paul M. Conti*