# Exhibit B

## American Psychiatric Association

# The Principles of Medical Ethics

## With Annotations Especially Applicable to Psychiatry

**2013 Edition**

Copyright © 2010 American Psychiatric Association
ALL RIGHTS RESERVED
Manufactured in the United States of America
08 07 06 3 2 1

The Principles of Medical Ethics

2013 Edition
(Previous editions 1973, 1978, 1981, 1984, 1985, 1989, 1992, 1993, 1995, 1995 Revised, 1998, 2001, 2001 Revised, 2006, 2008, 2009. 2009 Revised, and 2010

American Psychiatric Association
1000 Wilson Boulevard #1825
Arlington, VA 22209

# THE PRINCIPLES OF MEDICAL ETHICS

With Annotations Especially
Applicable to Psychiatry
2013 Edition

In 1973, the American Psychiatric Association (APA) published the first edition of *The Principles of Medical Ethics with Annotations Especially Applicable to Psychiatry.* Subsequently, revisions were published as the APA Board of Trustees and the APA Assembly approved additional annotations. In July of 1980, the American Medical Association (AMA) approved a new version of the *Principles of Medical Ethics* (the first revision since 1957), and the APA Ethics Committee[1] incorporated many of its annotations into the new *Principles*, which resulted in the 1981 edition and subsequent revisions. This version includes changes to the *Principles* approved by the AMA in 2001.

## Foreword

ALL PHYSICIANS should practice in accordance with the medical code of ethics set forth in the *Principles of Medical Ethics* of the American Medical Association. An up-to-date expression and elaboration of these statements is found in the Opinions and Reports of the Council on Ethical and Judicial Affairs of the American Medical Association.[2] Psychiatrists are strongly advised to be familiar with these documents.[3]

However, these general guidelines have sometimes been difficult to interpret for psychiatry, so further annotations to the basic principles are offered in this document. While psychiatrists have the same goals as all physicians, there are special ethical problems in psychiatric practice that differ in coloring and degree from ethical problems in other branches of medical practice, even

[1]The committee included Herbert Klemmer, M.D., Chairperson, Miltiades Zaphiropoulos, M.D., Ewald Busse, M.D., John R. Saunders, M.D., and Robert McDevitt, M.D. J. Brand Brickman, M.D., William P. Camp, M.D., and Robert A. Moore, M.D., served as consultants to the APA Ethics Committee.

[2]*Current Opinions with Annotations of the Council on Ethical and Judicial Affairs*, Chicago, American Medical Association, 2002–2003.

[3]Chapter 7, Section 1 of the Bylaws of the American Psychiatric Association (May 2003 edition) states, "All members of the Association shall be bound by the ethical code of the medical profession, specifically defined in the *Principles of Medical Ethics* of the American Medical Association and in the Association's *Principles of Medical Ethics With Annotations Especially Applicable to Psychiatry*." In interpreting the Bylaws, it is the opinion of the APA Board of Trustees that inactive status in no way removes a physician member from responsibility to abide by the *Principles of Medical Ethics*.

though the basic principles are the same. The annotations are not designed as absolutes and will be revised from time to time so as to be applicable to current practices and problems.

Following are the AMA *Principles of Medical Ethics*, printed in their entirety, and then each principle printed separately along with an annotation especially applicable to psychiatry.

**Principles of Medical Ethics**
**American Medical Association**

## Preamble

The medical profession has long subscribed to a body of ethical statements developed primarily for the benefit of the patient. As a member of this profession, a physician must recognize responsibility to patients first and foremost, as well as to society, to other health professionals, and to self. The following *Principles* adopted by the American Medical Association are not laws, but standards of conduct which define the essentials of honorable behavior for the physician.

*Section 1*
A physician shall be dedicated to providing competent medical care, with compassion and respect for human dignity and rights.

*Section 2*
A physician shall uphold the standards of professionalism, be honest in all professional interactions, and strive to report physicians deficient in character or competence, or engaging in fraud or deception, to appropriate entities.

*Section 3*
A physician shall respect the law and also recognize a responsibility to seek changes in those requirements which are contrary to the best interests of the patient.

*Section 4*
A physician shall respect the rights of patients, colleagues, and other health professionals, and shall safeguard patient confidences and privacy within the constraints of the law.

*Section 5*
A physician shall continue to study, apply, and advance scientific knowledge, maintain a commitment to medical education, make relevant information available to patients, colleagues, and the public, obtain consultation, and use the talents of other health professionals when indicated.

*Section 6*
A physician shall, in the provision of appropriate patient care, except in emergencies, be free to choose whom to serve, with whom to associate, and the environment in which to provide medical care.

*Section 7*
A physician shall recognize a responsibility to participate in activities contributing to the improvement of the community and the betterment of public health.

*Section 8*
A physician shall, while caring for a patient, regard responsibility to the patient as paramount.

*Section 9*
A physician shall support access to medical care for all people.

## Principles with Annotations

Following are each of the AMA *Principles of Medical Ethics* printed separately along with annotations especially applicable to psychiatry.

**Preamble**
The medical profession has long subscribed to a body of ethical statements developed primarily for the benefit of the patient. As a member of this profession, a physician must recognize responsibility to patients first and foremost, as well as to society, to other health professionals, and to self. The following Principles adopted by the American Medical Association are not laws, but standards of conduct which define the essentials of honorable behavior for the physician.[4]

*Section 1*
*A physician shall be dedicated to providing competent medical care with compassion and respect for human dignity and rights.*

1. A psychiatrist shall not gratify his or her own needs by exploiting the patient. The psychiatrist shall be ever vigilant about the impact that his or her conduct has upon the boundaries of the doctor–patient relationship, and thus upon the well-being of the patient. These requirements become particularly important because of the essentially private, highly personal, and sometimes intensely emotional nature of the relationship established with the psychiatrist.

2. A psychiatrist should not be a party to any type of policy that excludes, segregates, or demeans the dignity of any patient because of ethnic origin, race, sex, creed, age, socioeconomic status, or sexual orientation.

---

[4]Statements in italics are taken directly from the American Medical Association's *Principles of Medical Ethics*.

3. In accord with the requirements of law and accepted medical practice, it is ethical for a physician to submit his or her work to peer review and to the ultimate authority of the medical staff executive body and the hospital administration and its governing body. In case of dispute, the ethical psychiatrist has the following steps available:

a. Seek appeal from the medical staff decision to a joint conference committee, including members of the medical staff executive committee and the executive committee of the governing board. At this appeal, the ethical psychiatrist could request that outside opinions be considered.

b. Appeal to the governing body itself.

c. Appeal to state agencies regulating licensure of hospitals if, in the particular state, they concern themselves with matters of professional competency and quality of care.

d. Attempt to educate colleagues through development of research projects and data and presentations at professional meetings and in professional journals.

e. Seek redress in local courts, perhaps through an enjoining injunction against the governing body.

f. Public education as carried out by an ethical psychiatrist would not utilize appeals based solely upon emotion, but would be presented in a professional way and without any potential exploitation of patients through testimonials.

4. A psychiatrist should not be a participant in a legally authorized execution.

*Section 2*

*A physician shall uphold the standards of professionalism, be honest in all professional interactions and strive to report physicians deficient in character or competence, or engaging in fraud or deception to appropriate entities.*

1. The requirement that the physician conduct himself/herself with propriety in his or her profession and in all the actions of his or her life is especially important in the case of the psychiatrist because the patient tends to model his or her behavior after that of his or her psychiatrist by identification. Further, the necessary intensity of the treatment relationship may tend to activate sexual and other needs and fantasies on the part of both patient and psychiatrist, while weakening the objectivity necessary for control. Additionally, the inherent inequality in the doctor-patient relationship may lead to exploitation of the patient. Sexual activity with a current or former patient is unethical.

2. The psychiatrist should diligently guard against exploiting information furnished by the patient and should not use the unique position of power afforded him/her by the psychotherapeutic situation to influence the patient in any way not directly relevant to the treatment goals.

3. A psychiatrist who regularly practices outside his or her area of professional competence should be considered unethical. Determination of professional competence should be made by peer review boards or other appropriate bodies.

4. Special consideration should be given to those psychiatrists who, because of mental illness, jeopardize the welfare of their patients and their own reputations and practices. It is ethical, even encouraged, for another psychiatrist to intercede in such situations.

5. Psychiatric services, like all medical services, are dispensed in the context of a contractual arrangement between the patient and the physician. The provisions of the contractual arrangement, which are binding on the physician as well as on the patient, should be explicitly established.

6. It is ethical for the psychiatrist to make a charge for a missed appointment when this falls within the terms of the specific contractual agreement with the patient. Charging for a missed appointment or for one not canceled 24 hours in advance need not, in itself, be considered unethical if a patient is fully advised that the physician will make such a charge. The practice, however, should be resorted to infrequently and always with the utmost consideration for the patient and his or her circumstances.

7. An arrangement in which a psychiatrist provides supervision or administration to other physicians or nonmedical persons for a percentage of their fees or gross income is not acceptable; this would constitute fee splitting. In a team of practitioners, or a multidisciplinary team, it is ethical for the psychiatrist to receive income for administration, research, education, or consultation. This should be based on a mutually agreed-upon and set fee or salary, open to renegotiation when a change in the time demand occurs. (See also Section 5, Annotations 2, 3, and 4.)

*Section 3*
*A physician shall respect the law and also recognize a responsibility to seek changes in those requirements which are contrary to the best interests of the patient.*

1. It would seem self-evident that a psychiatrist who is a law-breaker might be ethically unsuited to practice his or her profession. When such illegal activities bear directly upon his or her practice, this would obviously be the case. However, in other instances, illegal activities such as those concerning the right to protest social injustices might not bear on either the image of the psychiatrist or the ability of the specific psychiatrist to treat his or her patient ethically and well. While no committee or board could offer prior assurance that any illegal activity would not be considered unethical, it is conceivable that an individual could violate a law without being guilty

of professionally unethical behavior. Physicians lose no right of citizenship on entry into the profession of medicine.

2. Where not specifically prohibited by local laws governing medical practice, the practice of acupuncture by a psychiatrist is not unethical per se. The psychiatrist should have professional competence in the use of acupuncture. Or, if he or she is supervising the use of acupuncture by nonmedical individuals, he or she should provide proper medical supervision. (See also Section 5, Annotations 3 and 4.)

*Section 4*
*A physician shall respect the rights of patients, colleagues, and other health professionals, and shall safeguard patient confidences and privacy within the constraints of the law.*

1. Psychiatric records, including even the identification of a person as a patient, must be protected with extreme care. Confidentiality is essential to psychiatric treatment. This is based in part on the special nature of psychiatric therapy as well as on the traditional ethical relationship between physician and patient. Growing concern regarding the civil rights of patients and the possible adverse effects of computerization, duplication equipment, and data banks makes the dissemination of confidential information an increasing hazard. Because of the sensitive and private nature of the information with which the psychiatrist deals, he or she must be circumspect in the information that he or she chooses to disclose to others about a patient. The welfare of the patient must be a continuing consideration.

2. A psychiatrist may release confidential information only with the authorization of the patient or under proper legal compulsion. The continuing duty of the psychiatrist to protect the patient includes fully apprising him/her of the connotations of waiving the privilege of privacy. This may become an issue when the patient is being investigated by a government agency, is applying for a position, or is involved in legal action. The same principles apply to the release of information concerning treatment to medical departments of government agencies, business organizations, labor unions, and insurance companies. Information gained in confidence about patients seen in student health services should not be released without the students' explicit permission.

3. Clinical and other materials used in teaching and writing must be adequately disguised in order to preserve the anonymity of the individuals involved.

4. The ethical responsibility of maintaining confidentiality holds equally for the consultations in which the patient may not have been present and in which the consultee was not a physician. In such instances, the physician consultant should alert the consultee to his or her duty of confidentiality.

5. Ethically, the psychiatrist may disclose only that information which is relevant to a given situation. He or she should avoid offering speculation as fact. Sensitive information such as an individual's sexual orientation or fantasy material is usually unnecessary.

6. Psychiatrists are often asked to examine individuals for security purposes, to determine suitability for various jobs, and to determine legal competence. The psychiatrist must fully describe the nature and purpose and lack of confidentiality of the examination to the examinee at the beginning of the examination.

7. Careful judgment must be exercised by the psychiatrist in order to include, when appropriate, the parents or guardian in the treatment of a minor. At the same time, the psychiatrist must assure the minor proper confidentiality.

8. When, in the clinical judgment of the treating psychiatrist, the risk of danger is deemed to be significant, the psychiatrist may reveal confidential information disclosed by the patient."

9. When the psychiatrist is ordered by the court to reveal the confidences entrusted to him/her by patients, he or she may comply or he/ she may ethically hold the right to dissent within the framework of the law. When the psychiatrist is in doubt, the right of the patient to confidentiality and, by extension, to unimpaired treatment should be given priority. The psychiatrist should reserve the right to raise the question of adequate need for disclosure. In the event that the necessity for legal disclosure is demonstrated by the court, the psychiatrist may request the right to disclosure of only that information which is relevant to the legal question at hand.

10. With regard for the person's dignity and privacy and with truly informed consent, it is ethical to present a patient to a scientific gathering if the confidentiality of the presentation is understood and accepted by the audience.

11. It is ethical to present a patient or former patient to a public gathering or to the news media only if the patient is fully informed of enduring loss of confidentiality, is competent, and consents in writing without coercion.

12. When involved in funded research, the ethical psychiatrist will advise human subjects of the funding source, retain his or her freedom to reveal data and results, and follow all appropriate and current guidelines relative to human subject protection.

13. Ethical considerations in medical practice preclude the psychiatric evaluation of any person charged with criminal acts prior to access to, or availability of, legal counsel. The only exception is the rendering of care to the person for the sole purpose of medical treatment.

14. Sexual involvement between a faculty member or supervisor and a trainee or student, in those situations in which an abuse of power can occur, often takes advantage of inequalities in the working relationship and may be unethical because:

a. Any treatment of a patient being supervised may be deleteriously affected.
b. It may damage the trust relationship between teacher and student.
c. Teachers are important professional role models for their trainees and affect their trainees' future professional behavior.

*Section 5*
*A physician shall continue to study, apply, and advance scientific knowledge, maintain a commitment to medical education, make relevant information available to patients, colleagues, and the public, obtain consultation, and use the talents of other health professionals when indicated.*

1. Psychiatrists are responsible for their own continuing education and should be mindful of the fact that theirs must be a lifetime of learning.

2. In the practice of his or her specialty, the psychiatrist consults, associates, collaborates, or integrates his or her work with that of many professionals, including psychologists, psychometricians, social workers, alcoholism counselors, marriage counselors, public health nurses, and the like. Furthermore, the nature of modern psychiatric practice extends his or her contacts to such people as teachers, juvenile and adult probation officers, attorneys, welfare workers, agency volunteers, and neighborhood aides. In referring patients for treatment, counseling, or rehabilitation to any of these practitioners, the psychiatrist should ensure that the allied professional or paraprofessional with whom he or she is dealing is a recognized member of his or her own discipline and is competent to carry out the therapeutic task required. The psychiatrist should have the same attitude toward members of the medical profession to whom he or she refers patients. Whenever he or she has reason to doubt the training, skill, or ethical qualifications of the allied professional, the psychiatrist should not refer cases to him/her.

3. When the psychiatrist assumes a collaborative or supervisory role with another mental health worker, he or she must expend sufficient time to assure that proper care is given. It is contrary to the interests of the patient and to patient care if the psychiatrist allows himself/herself to be used as a figurehead.

4. In relationships between psychiatrists and practicing licensed psychologists, the physician should not delegate to the psychologist or, in fact, to any nonmedical person any matter requiring the exercise of professional medical judgment.

5. The psychiatrist should agree to the request of a patient for consultation or to such a request from the family of an incompetent or minor patient. The psychiatrist may suggest possible consultants, but the patient or family should be given free choice of the consultant. If the psychiatrist disapproves of the professional qualifications of the consultant or if there is a difference of opinion that the primary therapist cannot resolve, he or she may, after suitable notice, withdraw from the case. If this disagreement occurs within an institution or agency framework, the differences should be resolved by the mediation or arbitration of higher professional authority within the institution or agency.

*Section 6*
*A physician shall, in the provision of appropriate patient care, except in emergencies, be free to choose whom to serve, with whom to associate, and the environment in which to provide medical care.*

1. Physicians generally agree that the doctor-patient relationship is such a vital factor in effective treatment of the patient that preservation of optimal conditions for development of a sound working relationship between a doctor and his or her patient should take precedence over all other considerations. Professional courtesy may lead to poor psychiatric care for physicians and their families because of embarrassment over the lack of a complete give-and-take contract.

2. An ethical psychiatrist may refuse to provide psychiatric treatment to a person who, in the psychiatrist's opinion, cannot be diagnosed as having a mental illness amenable to psychiatric treatment.

*Section 7*
*A physician shall recognize a responsibility to participate in activities contributing to the improvement of the community and the betterment of public health.*

1. Psychiatrists should foster the cooperation of those legitimately concerned with the medical, psychological, social, and legal aspects of mental health and illness. Psychiatrists are encouraged to serve society by advising and consulting with the executive, legislative, and judiciary branches of the government. A psychiatrist should clarify whether he/ she speaks as an individual or as a representative of an organization. Furthermore, psychiatrists should avoid cloaking their public statements with the authority of the profession (e.g., "Psychiatrists know that").

2. Psychiatrists may interpret and share with the public their expertise in the various psychosocial issues that may affect mental health and illness. Psychiatrists should always be mindful of their separate roles as dedicated citizens and as experts in psychological medicine.

3. On occasion psychiatrists are asked for an opinion about an individual who is in the light of public attention or who has disclosed information about himself/herself through public media. In such circumstances, a psychiatrist may share with the public his or her expertise about psychiatric issues in general. However, it is unethical for a psychiatrist to offer a professional opinion unless he or she has conducted an examination and has been granted proper authorization for such a statement.

4. The psychiatrist may permit his or her certification to be used for the involuntary treatment of any person only following his or her personal examination of that person. To do so, he or she must find that the person, because of mental illness, cannot form a judgment as to what is in his/ her own best interests and that, without such treatment, substantial impairment is likely to occur to the person or others.

5. Psychiatrists shall not participate in torture.

*Section 8*
*A physician shall, while caring for a patient, regard responsibility to the patient as paramount.*

1. Psychiatrists' relationships with companies, organizations, the community, or larger society can affect their interactions with patients.

2. When the psychiatrist's outside relationships conflict with the clinical needs of the patient, the psychiatrist must always consider the impact of such relationships and strive to resolve conflicts in a manner that the psychiatrist believes is likely to be beneficial to the patient.

3. When significant relationships exist that may conflict with patients' clinical needs, it is especially important to inform the patient or decision maker about these relationships and potential conflicts with clinical needs.

4. In informing a patient of treatment options, the psychiatrist should assist the patient in identifying relevant options that promote an informed treatment decision, including those that are not available from the psychiatrist or from the organization with which the psychiatrist is affiliated.

*Section 9*

*A physician shall support access to medical care for all people.*

# PROCEDURES FOR HANDLING COMPLAINTS OF UNETHICAL CONDUCT

## INTRODUCTION

The medical profession has long subscribed to a body of ethical statements developed primarily for the benefit of the patient. As a member of this profession, a physician must recognize responsibility not only to patients but also to society, the profession, other health professionals, and to self. The *Principles of Medical Ethics with Annotations Especially Applicable to Psychiatry (*hereafter referred to as the *"Principles")*, adopted from the American Medical Association, are not laws but standards of conduct that define the essentials of honorable behavior for the physician.

Complaints charging members of the American Psychiatric Association (APA) with unethical behavior or practices shall be investigated and resolved in accordance with procedures approved by the APA Assembly and the APA Board of Trustees. These procedures are congruent with the minimum requirements under the Health Care Quality Improvement Act. A District Branch (DB) of the APA may adopt additional requirements to comply with any additional or more stringent requirements of state law. A District Branch should notify the APA if additional requirements are adopted.

Ethics cases are confidential. The allegations, the names of the parties and other information are made available only to persons directly participating in the proceedings. Information regarding an ethics case is made public in limited circumstance as set forth in these procedures and only after a final determination has been reached when required by law or necessary to protect the public.

## PART I: INITIAL PROCEDURES

### A. The Complaint

1. An ethics complaint can be filed by a patient or guardian, a family member of a patient, an APA member or other individual with personal knowledge of the alleged unethical conduct.

2. The individual submitting the complaint is the "Complainant" and the APA member charged with ethics violations is the "Accused Member."

3. Complaints charging an APA member with unethical behavior shall be:

    a. In writing;

    b. Signed by the Complainant and

c. Addressed to the DB of the Accused Member. If addressed to the APA, the complaint shall be referred by the APA to the Accused Member's DB.

**B. Proceeding on Extrinsic Evidence**:

1. A complaint may be based on extrinsic evidence, including any documents attached to the complaint.
2. A DB may initiate an ethical proceeding without a Complaint based upon extrinsic evidence which it receives or otherwise becomes aware that a member has potentially acted unethically in violation of the *Principles.* In such proceeding, there is no Complainant.
3. Extrinsic evidence includes formal judicial or administrative reports, sworn deposition or trial testimony, medical or hospital records, and similar reliable documents.

**C. Review for Jurisdiction**

1. Once a complaint is received, the DB shall review the complaint to determine if the DB has jurisdiction over the matter. This review shall take place before the Accused Member is notified that a complaint was filed.
2. This review will consider:

   a. Is the Accused Member a member of the APA and the DB? Only complaints against APA members can be investigated. If the Accused Member is not a member, the DB shall notify the Complainant that it cannot pursue the complaint because the Accused Member is not a member of the APA and no further action can be taken.

   b. Is the Accused Member a member of the DB? If not, the complaint shall be forwarded to the APA Office of Ethics.

   c. Does the complaint allege unethical conduct that took place over ten (10) years ago? A complaint alleging unethical conduct must be received within ten (10) years of the alleged conduct. In the case of a minor patient, the ten (10) year limit will not begin until the patient reaches the age of 18. If the alleged conduct took place outside of the ten year limit, the DB shall notify the Complainant in writing that no further action can be taken.

3. If the complaint meets these jurisdictional standards, the DB shall evaluate the complaint as set forth in Part II below to determine whether it alleges conduct that violates the *Principles*.

4. The DB's determination that a complaint does not meet these jurisdictional standards is final and there is no review by the Chair of the APA Ethics Committee.

**D.** **Notice:** Any "Notice" required in these procedures should be sent by a delivery system that requires a verifying of receipt, such as certified or overnight mail.

## PART II: REVIEW OF ALLEGATIONS

The DB Ethics Committee (DBEC) shall review the complaint to determine whether it alleges a recognized ethics violation of the *Principles*.

**A.** **Preliminary Determinations**

1. The DBEC shall determine whether the complaint alleges on its face an ethics violation(s) as set forth in the *Principles*.

2. This is not a determination on the merits of the complaint. Rather, it is a determination of whether a recognized ethics violation is alleged assuming the facts in the complaint are true. This review is limited to reviewing the allegations in the complaint and a determination of whether those allegations assert a recognized ethics violation as set forth in the *Principles*.

3. If the complaint alleges conduct that does not violate the *Principles*, the DBEC shall notify the Complainant in writing (with a copy to the APA Ethics Office) that no further action will be taken and also inform the Complainant that he/she may request within 30 days a review of this decision by the Chair of the APA Ethics Committee as set forth in Part II.C.1.

4. Before initiating this below Review phase, a signed Confidentiality Agreement shall be obtained from the Complainant (including any attorney representing the Complainant) by which the Complainant agrees that all information and documents concerning the ethical procedures and all communications from the APA and DB, including their ethics committees and Hearing Panels, are confidential and shall be used solely in connection with the ethical proceedings and not for other purposes or legal proceedings.

**B.** **Review of Allegations**

1. This phase is the period during which the DBEC begins to look at the

merits of the case. The purpose of this process is to assess all information provided by the Complainant and then evaluate whether there is a basis for the allegation of unethical conduct. The DBEC can choose whether or not to contact and advise the Accused Member of the ethics complaint during this stage.

2. The DB ethics chair shall appoint a member(s) to review the allegations in the complaint. The individual(s) shall submit a written or oral report to the DBEC.

3. To help ensure fairness, it is desirable that the DBEC arrange for those who do the review and those who serve on the hearing panel to be separate teams. Sometimes what surfaces during this review is not always relevant to or admissible at the hearing, and thus this separation of functions minimizes the chances that the hearing panel will have been influenced by an earlier phase of the case.

4. The review is accomplished by reviewing the allegations and any related materials provided to them by the Complainant. During the review phase, the reviewer(s) may seek additional information from the Complainant. The additional information can be obtained by written request, phone conference or in person interview.

5. During this Review of Allegations phase, the DBEC may, but is not required to, notify the Accused Member of the complaint and invite additional information from him or her. The additional information can be obtained by written request, phone conference or in person interview.

6. If the DBEC finds the complaint does state a potential ethics violation, it shall notify the Accused Member and invite additional information from him or her before proceeding with a formal investigation of the member pursuant to Part III.

7. If the DBEC finds the complaint does not state a potential ethics violation under the ethical standards established by the *Principles* and thus there is no basis to proceed, it shall notify the Complainant in writing of the conclusion. This Notice shall also inform the Complainant that he/she has 30 days to request a review of this decision by the Chair of the APA Ethics Committee as set forth in Part II.C.1.

8. If the DBEC determines there is a basis to proceed, it must notify the APA Secretary as well as the Complainant and the Accused Member and proceed to the exchange of information phase.

9. DBECs should postpone adjudication of ethics complaints until all other pending actions such as civil, criminal or licensing board proceedings have been resolved.

### C. <u>Review by the Chair of the APA Ethics Committee</u>

1. If the DBEC determines the complaint does not allege an ethics violation of the *Principles,* the Complainant may request a review of a DB's decision by the Chair of the APA Ethics Committee. The request for a review must be sent to the DB and the Chair of the APA Ethics Committee within 30 days of the date of the Notice by the DB not to proceed.

2. If the Chair of the APA Ethics Committee determines that the complaint identifies a potential violation, he/she will request that the DB proceed with processing the complaint, and will provide the DB with a written explanation for this decision.

3. If the Chair of the APA Ethics Committee determines that the complaint does not warrant further action, then he/she will notify the Complainant and DB of this decision and that the case is closed.

## PART III: <u>EXCHANGE OF INFORMATION</u>

### A. <u>Notice to Accused Member</u>

**1.** If the DBEC decides to proceed, the DBEC must notify the Accused Member of the ethics complaint and that the DBEC will proceed to determine whether the Accused Member violated the *Principles*. The Notice should include:

a. A copy of the complaint;

b. All documents that were attached to the complaint or obtained during the initial review phase; and

c. Copies of the Principles and Procedures for Handling Complaints of Unethical Conduct;

d. The ethical principle(s) the Accused Member is accused of violating.

**2.** The DBEC should also notify the Accused Member of his or her due process rights. These include the right:

a. To request a hearing;

b. To be represented by an attorney or other person of the Accused Member's choice (hereafter referred to as "Counsel");

c. To have a record made of the proceedings (but not the Ethics Committee's subsequent deliberations, which will not have been preserved), copies of which

may be obtained by the Accused Member upon payment of any reasonable charges;

d. To call, examine, and cross-examine witnesses;

e. To present evidence determined to be relevant by the hearing panel, regardless of its admissibility in a court of law;

f. To submit a written statement or make an oral statement at the close of the hearing;

g. To receive a written decision; and

h. To appeal any adverse decision to the APA Ethics Committee.

**3.** When applicable, the DBEC shall obtain and provide the Accused Member with valid written authorization(s) from the patient(s) involved to provide relevant medical records and other information about the patient, and, if applicable, psychotherapy notes.

**B. Accused Member's Response**

**1.** The Accused Member shall provide a written response to the complaint, including copies of all documents and a list of all witnesses he or she intends to present at the hearing. The Accused Member is not limited at the hearing to the evidence and witnesses identified in his or her response.

**2.** The DBEC may also consider additional information prior to any scheduled hearing. On the basis of information in the Accused Member's response, or other information that surfaces during the Exchange of Information phase but prior to the hearing, the DBEC may decide to dismiss the case. A decision by the DBEC to dismiss in this phase requires review by the APA Ethics Committee as set forth in Part VI.

**3.** The name of any member who resigns from the APA after an ethics complaint against him/her is received and before it is resolved shall be reported in *Psychiatric News* and in the district branch newsletter or other usual means of communication with its membership.

**C. Appointment of Hearing Panel**

The DBEC shall appoint a panel of no less than three members to hear the complaint. All members should be ethics committee members when possible, and at least one must be. One member of the panel shall be selected to chair the Hearing Panel (Hearing Panel Chair) and shall be a voting member of the panel. The Accused Member may request those with whom he/she has a conflict of interest be excused, and reasonable requests should be honored.

**D. Notice of Hearing**

1. No less than 30 days before the scheduled hearing, the DBEC shall provide a Notice to the Complainant and the Accused Member. The Notice should supply the following information:

   a. The place, date and time of the hearing;

   b. The names of the Hearing Panel Chair and the other panel members who will hear the case; and

   c. A list of witnesses expected to testify.

2. Any reasonable requests by the parties for alternative hearing dates should be honored.

**E. Education Option**

1. At any time before a final determination of whether the Accused Member violated the ethical standards established by the *Principles*, and with the agreement of the Accused Member, the complaint may be resolved in accordance with the Educational Option rather than determine whether the Accused Member violated the *Principles*. In deciding whether to use this approach, the DBEC shall consider such factors as the nature and seriousness of the alleged misconduct and any prior findings or allegations of unethical conduct.

2. If the DBEC decides to attempt to resolve the complaint by using the Educational Option as described in paragraph 1 above, it shall proceed only after:

   a. Accused Member has been informed (1) that he/she is entitled to proceed under enforcement procedures, and (2) that the DBEC reserves the right to proceed on the complaint to determine whether the Accused Member violated the *Principles* if, in its sole discretion, it determines that the Accused Member has not satisfactorily cooperated.

   b. Accused Member agrees to proceed under the Educational Option;

   c. There are appropriate education opportunities available and the DBEC has the resources to monitor compliance;

   d. The Accused Member will have the opportunity to respond to the suggestion to use the Education Option. The DBEC shall determine the procedures to be used to obtain the responses, including written submissions and/or meeting with the parties separately or together. However, in determining the procedure it will use, the DBEC shall seek to provide a format that will facilitate the Accused Member's understanding of the ethical issues raised by the complaint, including the reasons for or sources of the Complainant's concern, and to permit the DB to assess the Accused Member's understanding of these matters.

3. The DBEC shall identify a specific educational program including courses, reading and/or consultation for the Accused Member to complete within a specified period and shall notify the Accused Member and the APA Ethics Committee of the required program. The DBEC will monitor the Accused Member's compliance with any such educational requirements. The Accused Member's failure to complete the specified educational program may result in the proceedings being reopened to determine whether the Accused Member violated the *Principles*. It is preferable, but not required, that the subsequent proceeding be conducted by DBEC members other than those who participated in the process previously.

4. The DBEC shall retain records of complaints considered pursuant to this Part and of any education thereafter required of an Accused Member. The DB may consider such information in connection with a decision as to how to handle any later complaints involving the Accused Member.

5. Once the DBEC decides to resolve the complaint by using the Educational Option, it shall notify both the Complainant and Accused Member.

6. Upon completion of an Education Option requirements, the proceeding shall be terminated.

**PART IV: THE HEARING**

**A. <u>Basic Requirements</u>**

1. While the spirit of this process is a collegial one based on mutual respect among professional colleagues -- and not a court of law -- procedural safeguards are an integral aspect in order to preserve the rights of the Accused Member and provide fairness and respect for both the Accused Member and the Complainant.

2. If deemed useful and not likely to prejudice the panel, the Hearing Panel Chair may allow the individual(s) who did the review of allegations under Part II to present oral or written documentary and testimony evidence, subject to cross examination by the Accused Member or his or her counsel, for the panel's consideration. This reviewer(s) of the allegations should not participate any further in the hearing or be part of the panel's deliberations or voting.

3. Counsel's participation is subject to the continuing direction and control of the Hearing Panel Chair. The Hearing Panel Chair shall exercise his or her discretion so as to prevent the intimidation or harassment of the Complainant and/or other witnesses given the peer review nature of the proceedings. Panel members may ask questions of the Accused Member.

4. The Accused Member's voluntary waiver of a hearing shall not prevent the Hearing Panel from meeting with, and hearing the evidence of, the

Complainant and other witnesses, and reaching a decision in the case. The Accused Member may choose not to be present at the hearing and to present his/her defense through other witnesses and/or Counsel.

5. The Complainant must be present in person at the hearing to testify regarding his/her allegations unless excused by the Hearing Panel Chair, and this should occur only when, in the judgment of the Hearing Panel Chair, participation would be harmful to him/her or extrinsic evidence serves as the Complainant. Complainants may bring a support person to the hearing if approved by the Hearing Panel Chair. Complainants generally do not remain in the hearing once they have presented their testimony and evidence and been cross examined. The Hearing Panel Chair may have them wait outside during the remainder of the hearing in the event further information from the Complainant becomes needed.

**B. <u>The Hearing</u>**

1. The hearing may consist of:

   a An oral opening statement by the Complainant, and the Accused Member or his/her Counsel;

   b Testimony by the Complainant and any witnesses, and any written or oral cross examination by Accused Member or his/her Counsel;

   c Testimony by the Accused Member;

   d Questions by the Hearing Panel members; and

   e Presentation of any evidence determined to be relevant by the Hearing Panel Chair, regardless of its admissibility in a court of law.

2. The Accused Member or his Counsel shall be permitted to make an oral closing statement and/or submit a written statement at the close of the hearing or within a reasonable time thereafter.

## PART V: DISTRICT BRANCH DECISION

After the hearing, the Hearing Panel shall meet and reach a decision based on the information presented at the hearing, including the testimony from the parties and any other witnesses, the documents submitted and any other evidence provided as part of the hearing. The decision shall consist of (A) a determination of whether the Accused Member violated the ethical standards established by the *Principles*, and (B) if so, then what sanction, if any, is appropriate.

## A. Determination

1. After the conclusion of the hearing, the panel shall issue a written determination that sets forth the Hearing Panel's findings, recommendations, and reasoning.

2. In making its decision, the Hearing Panel should consider:

   a. The nature and seriousness of the alleged conduct;

   b. Whether or not there is a reasonable belief that an ethics violation occurred.

   c. The credibility of the Accused Member, Complainant and the other witnesses;

   d. Any documents submitted that the panel finds credible; and

3. The DB executive council (or the DB's governing body) must review the panel's determination. The DB executive council can accept or modify the panel's findings. In all cases, the DB shall seek to reach a decision as expeditiously possible.

4. Before notifying the Complainant and Accused Member, all determinations must be forwarded to the APA Ethics Committee for review pursuant to the procedures set forth in Part VI.

5. Unless the DBEC proceeds under the Education Option, there are two basic findings:

   a. The Accused Member did not act unethically; or

   b. The Accused Member acted unethically.

6. No Ethical Violation

   a. If the Hearing Panel decides after a hearing that no ethical violation occurred, it shall prepare a written explanation that sets forth the reasons for the determination. This determination shall be submitted to the DB executive council and the APA Ethics Committee for review as set forth in Part VI.

   b. If approved by the DB executive council and the APA Ethics Committee as set forth in Part VI, the DBEC shall notify the Complainant and Accused Member in writing of the determination.

   c. There is no appeal from this determination.

7. Ethical Violation

   a. If the panel decides after a hearing that Accused Member acted unethically, it shall prepare a written explanation that sets forth the reasons for the determination. It shall then proceed to determine the appropriate sanction. This determination shall be submitted to the DB executive committee and the APA Ethics Committee for review as set forth in Part VI.

   b. If approved by both the DB executive committee and APA Ethics Committee, only the Accused Member shall be notified in writing of the determination setting forth the reasons for the determination and the sanction. This Notice should be copied to the APA Ethics Office. This Notice shall also inform the Accused Member of his or her right to appeal the determination to the APA Ethics Committee within 30 days. The appeal right applies to all adverse findings.

   c. The Complainant is not notified of the determination until all appeals have been concluded or the time for the Accused Member to appeal has expired.

## B. Sanctions

If the panel finds that an ethical violation has occurred, it must determine the appropriate sanction. This determination may include consideration of any mitigating or aggravating circumstances such as illness or prior findings of unethical conduct that are relevant to the current violation. The three (3) sanctions in increasing order of severity are: (1) Reprimand; (2) Suspension; and (3) Expulsion.

1. Reprimand

   a. A reprimand is an official admonishment by the APA. The reprimand shall identify the conduct considered unethical and the basis of the determination.

   b. The reprimand is confidential and is not published to the general membership of the DB or the APA, or to the general public.

   c. Additional conditions may be included with the reprimand as set forth Part V.C.)

2. Suspension

   a. Suspension is a serious sanction that will be made public. An Accused Member may be suspended for a period not to exceed five (5) years.

b. A suspended member shall pay dues and is eligible for APA benefits, except that such a member will lose his/her rights to hold office, vote, nominate candidates, propose referenda or amendments to the Bylaws, and serve on any APA committee or component, including the APA Board of Trustees and the APA Assembly. If the suspended member is a Fellow, Life Fellow, Distinguished Fellow or Distinguished Life Fellow, the Fellowship will be suspended for the same period of time.

c. Each DBEC shall decide which, if any, DB privileges and benefits shall be denied the Accused Member during the period of suspension.

d. Additional conditions may be included with the suspension as set forth in Part V.C.

e. The name of any member who is suspended for an ethics violation, along with an explanation of the nature of the violation, shall be reported by the APA Office of Ethics:

i. In *Psychiatric News*;

ii. To the DB to be included in the DB newsletter or other usual means of communication with its membership;

iii. To the medical licensing authority in all states in which the member is licensed:

iv. To the National Practitioner Data Bank.

f. The DB should also consult applicable state law to assure that it adheres to any requirements.

3. Expulsion

a. Expulsion is the most serious sanction. As a result, all determinations to expel an Accused Member must be affirmed by the APA Board of Trustees.

b. Once a decision to expel a member has been approved by the DB executive council and the APA Ethics Committee, and the appeal process under Part VII has been exhausted or expired the APA Ethics Committee Chair (or his/her designee) shall present the matter and the documentary record to the APA Board of Trustees at the Board's next meeting. The APA Board of Trustees may:

i. Affirm the sanction;

ii. Impose a lesser sanction;

iii. Remand to the APA Ethics Committee or DBEC for further action or consideration in which case these procedures shall apply to those actions; or

iv. Request further information from the DBEC before voting on the decision to expel.

c. A decision to affirm an expulsion must be by a vote of two-thirds (2/3) of those Trustees present and voting. A decision to impose a lesser sanction shall be by a majority vote.

d. If the APA Board of Trustees affirms expulsion, the APA Secretary shall notify the DBEC, and the DBEC shall in turn notify the Complainant and Accused Member of the decision and that it is final.. The Accused Member shall also be provided copies of the DBEC and/or panel recommendation(s) and reasoning.

e. The name of any member who is expelled from the APA for an ethics violation, along with an explanation of the nature of the violation, shall be reported by the APA Office of Ethics:

i. In *Psychiatric News*:

ii. To the DB to be included in the DB newsletter (APA Office of Ethics will provide DBEC with language) or other usual means of communication with its membership;

iii. To the medical licensing authority in all states in which the member is licensed:

iv. To the National Practitioner Data Bank.

f. The DB should also consult applicable state law to assure that it adheres to any state requirements.

## C. <u>Additional Conditions</u>

Concurrent with the imposition of the sanctions of reprimand and suspension, additional conditions can be imposed. These conditions are designed to reinforce and facilitate ethical behavior.

1. Supervision

a. The DBEC may impose supervisory requirements on a suspended member. When such conditions are imposed, the following procedures shall apply:

i. If the DBEC imposes conditions, it shall ensure that the DB monitors compliance;

ii. If a member fails to satisfy the conditions, the DBEC may decide to recommend a new sanction; and

iii. If the DBEC determines that a member should be expelled for noncompliance with conditions, the APA Board of Trustees shall review the expulsion in accordance with the provisions set forth in Part VII. E. of these procedures.

b. In determining whether to require supervision, the Hearing Panel and/or the DBEC should consider the available resources to conduct and monitor such supervision.

2. Education Requirement

a. The DBEC may impose an Education Requirement as part of the sanctions of reprimand or suspension.

b. If the DBEC decides to impose an Education Requirement, the DBEC shall identify a specific educational program including courses, reading and/or consultation for the Accused Member to complete within a specified period and shall notify the Accused Member and the APA Ethics Committee of the required program. The DB will monitor the Accused Member's compliance with any such educational requirements. The Accused Member's failure to complete the specified educational requirement(s) may result in the proceedings being reopened (e.g., to determine if a greater sanction is indicated).

3. Personal Treatment

a. As part of any sanction, personal treatment may be recommended, but not required, and any such recommendation shall be carried out in accordance with the ethical requirements governing confidentiality as set forth in the *Principles*. In appropriate cases, the DBEC may also refer the psychiatrist in question to a program responsible for considering impaired or physically ill physicians.

## PART VI: REVIEW BY THE APA ETHICS COMMITTEE

### A. APA Ethics Committee Review

1. After the DBEC decision is confirmed by its DB executive council (or the

DB's governing body), the decision and any pertinent information concerning the procedures followed or relating to the action taken shall be forwarded to the APA Ethics Committee for review. This review applies to all decisions, including those where the DBEC finds that an ethics violation has not occurred.

2. The APA Ethics Committee will appoint a panel composed of at least three (3) voting members of the APA Ethics Committee to undertake these review functions on behalf of the full APA Ethics Committee. The review shall assure that:

    a. The complaint received a comprehensive and fair review;

    b. That the review was in accordance with the applicable procedures; and

    c. The sanction imposed was appropriate.

3. If the APA Ethics subcommittee concludes that these requirements were not satisfied, it shall so advise the DBEC, and the DBEC shall remedy the deficiencies and shall make further reports to the APA Ethics Committee until such time as the APA Ethics Committee is satisfied that these requirements have been met.

4. If the APA Ethics subcommittee concludes that the sanction should be reconsidered by the DBEC, it shall provide a statement of reasons explaining the basis for its opinion, and the DBEC shall reconsider the sanction. After reconsideration, the decision of the DBEC shall be final with the exception that Expulsions must also be approved by the APA Board of Trustees.

5. The Complainant and Accused Member shall not be notified of any decision until this review is completed.

**B. <u>Notification of Decision</u>**

1. After the APA Ethics Committee or subcommittee completes the review process, the following Notices will be sent:

    a. If the determination is that no ethics violation has occurred, the DB shall provide written Notice to the Complainant and Accused Member of the decision.

    b. If the determination is that an ethical violation did occur, the DBEC shall provide written Notice to the Accused Member of the decision and the sanction. The Accused Member shall be provided: (1) copies of the DBEC and/or panel recommendation(s), (2) the DBEC decision, and (3)

notice of his/her right to Appeal the decision within 30 days of receipt of the letter. The Complainant shall not be notified until all appeals or the time for all appeals has expired.

c. If the decision is to expel the member, the DBEC shall not provide Notice until the APA Board of Trustees has approved the expulsion pursuant to Part V.B.4. Once approved by the Board, the DBEC shall provide written Notice to the Complainant and Accused Member, with a copy to APA, that Expulsion has been approved by the Board of Trustees and that the decision is final.

## PART VII: APPEALS

### A. Appeal Panel

1. All appeals shall be considered and decided by a panel of three (3) members of the APA Ethics Committee who have not been involved in a review of the case pursuant to Part VI.

2. The Chair of the APA Ethics Committee may appoint a replacement if there are not three members of the Committee who have not been involved in the case who are able to serve.

### B. Grounds for Appeal

All appeals shall be based on one (1) or more of the following grounds:

1. That there have been significant procedural irregularities or deficiencies in the case;

2. That *The Principles of Medical Ethics with Annotations Especially Applicable to Psychiatry* has been improperly applied;

3. That the findings of or sanction imposed by the DB are not supported by substantial evidence;

4. That substantial new evidence has called into question the findings and conclusions of the district branch.

### C. Accused Member's Request For Appeal

1. The Accused Member's request for an appeal must be received within 30 days of the date the Accused Member is notified of the district branch decision. Upon receipt of the Accused Member's request for an appeal, the APA Ethics Committee shall request and the DB shall provide to the APA Ethics Committee a copy of the DB file, including the recording of the hearing. The APA Ethics Committee shall make a copy the DB file available to the Accused Member upon request and compliance with any conditions set by the APA Ethics Committee.

2. In appeals heard by an APA Ethics Committee appeals panel, the panel will review and decide the appeal solely on the basis of the DB's documentary record of its actions and decision and any written appeal statements filed by the Accused Member and the district branch. The Accused Member's statement will be provided to the DB, which may file a written response. Any DB response will be forwarded to the Accused Member, who will have the opportunity to respond in writing prior to the Ethics Committee's consideration of the appeal. Filing deadlines and other procedures governing the appeal shall be established by the APA Ethics Committee.

**D. <u>Decision by APA Ethics Committee Appeal Panel</u>**

1. After reviewing all documents, the APA Ethics Committee appeals panel may take any of the following actions:

   a. Affirm the decision, including the sanction imposed by the district branch;

   b. Affirm the decision, but alter the sanction imposed by the district branch;

   c. Reverse the decision of the district branch and terminate the case; or

   d. Remand the case to the district branch with specific instructions as to what further information or action is necessary. Remands will be employed only in rare cases, such as when new information has been presented on appeal or when there is an indication that important information is available and has not been considered. After the district branch or panel has completed remand proceedings, the case shall be handled in accordance with procedures in Part VI and VII.

2. After the APA Ethics Committee appeals panel reaches a decision, if the decision is anything other than to expel a member or remand, the Chair of the APA Ethics Committee shall provide Notice to the DB of the decision. The DB shall then provide Notice to the Accused Member and the Complainant of the decision and that it is final.

3. If the decision is to expel the member, the decision would be forwarded to the APA Board of Trustees as outlined in Part V.B.4.

Index

A

Abuse of power, 7
Accused member, 11, 12, 14
appointment of hearing panel with, 16
notice to, 15–16
request for appeal, 26–27
response to notice, 16
Acupuncture, 6
Adjudication, 15
Age, 3
Allegations, review of, 13–15
AMA. See American Medical Association
American Medical Association (AMA), 1, 11
Opinions and Reports of the Council on Ethical and Judicial Affairs, 1
preamble, 2–3
principles with annotations, 3–10
American Psychiatric Association (APA), 1, 11
Assembly, 1, 11
Board of Trustees, 1, 1n3
bylaws, 1n3
District Branch (DB), 11
Ethics Committee, 1, 1n1
Ethics Committee Review, 24–25
APA. See American Psychiatric Association
Appeals, 3, 26–27
accused member's request for, 26–27
Appeal Panel, 26
decision by APA Ethics Committee Appeal Panel, 27
to governing body, 4
grounds for, 26
to state agencies, 4
Appointments, 5
Attorney, 15. See also Law

B

Brickman, J. Brand, M.D., 1n1
Busse, Ewald, M.D., 1n1

C

Camp, William P., M.D., 1n1
Certification, 9
Chair of the APA Ethics Committee, 15
Civil rights, of the patient, 6
Community, psychiatrist participation in, 9
Competence, 7
Complainant, 11, 12, 18–19
Complaints of unethical conduct, 11–27
adjudication, 15
appeals, 26–27
district branch decision, 19–24
exchange of information, 15–18
extrinsic evidence, 12
the hearing, 18–19
initial procedures, 11–13
overview, 11
review of allegations, 13–15
review by the APA Ethics Committee, 24–26
review for jurisdiction, 12–13
review process, 29

Computerization, 6
Conduct, of physician, 4
Confidentiality, 6–7
    dissemination of, 6
    ethical responsibility of, 6–7
    of ethics cases, 11
    lack of, 7
    sensitivity of, 6
Confidentiality agreement, 13
Conflicts of interest, 10
Court, 7
    redress in local, 4

Creed, 3
Criminal acts, 7

D

DBEC. See EB Ethics Committee
DB Ethics Committee (DBEC), 13–15
Deception, 2
Decision
    affirmation of, 27
    appeals, 26
    by APA Ethics Committee Appeal Panel, 27
    notification of, 25–26
    remand of the case, 27
    reversal of, 27
    written, 16
Determinations
    after conclusion of the hearing, 20–21
    preliminary, 13
Dignity, 7
Disclosure, 7
Discrimination, 3
Disputes procedures, 4
District Branch (DB), American Psychiatric Association, 11
    decision of, 19–24
Doctor–patient relationship, 9
    contractual arrangement of, 5
    in effective treatment, 8–9
    professionalism of, 4
    refusal of treatment, 9

E

Education
    advancement of, 8
    of colleagues, 4
    continuing, 8
    option, 17–18
    of the public, 4
    requirement as sanction, 24
    training materials for, 6
Ethical violation, 21
Ethics
    AMA and, 3
    confidentiality of cases, 11
    disclosure of information and, 6
    patients and, 3
    psychiatrists and, 1–2
Ethnicity, 3
Evidence, 16
Exchange of information, 15–18
    accused member's response, 16

- appointment of Hearing Panel, 16
- education option, 17–18
- notice to accused member, 15–16
- notice of hearing, 17

Execution, 4
Expulsion, 22–23
Extrinsic evidence, 12

F

Family, patient's, 8
Fee splitting, 5
Financial arrangements, 29
Fraud, 2
Freedom of choice, of physicians, 3

G

Governing body, 4
Government, psychiatrist and, 6
Guardians, 7

H

Health Care Quality Improvement Act, 11
Hearing Panels
- appointment of, 16
- basic requirements of, 18–19
- Chair of, 17, 18–19
- determination of, 20
- district branch decision of, 19
- education option, 17–18
- notice of, 17
- request of, 15
- written and/or oral statements at close of, 16

Human dignity, 3
Human rights, 3

I

Information
- availability to patients, 8
- disclosure of, 6
- exchange of, 15–18

Informed consent, 7
Insurance companies, releasing information to, 6

J

Jurisdiction, 12–13

K

Klemmer, Herbert, M.D., 1n1

L

Labor unions, releasing information to, 6
Law, court ordered treatment, 7
- changes to, 5–6
- redress in local courts, 4
- respect of, 2, 5
- violations to, 5–6

Legislation, Health Care Quality Improvement Act, 11

M

McDevitt, Robert, M.D., 1n1
Medical care
    access to, 3
    for everyone, 10
Medical code of ethics, 1
    dedication to medical care by physician, 2
    overview of, 1
Mental health care workers, 8
Mental illness, of psychiatrist, 5
Minors, treatment of, 7
Moore, Robert A., M.D., 1n1
N
National Practitioner Data Bank, 22, 23
News media, 7
Notice, 13, 14
    to accused member, 15–16
    of hearing, 17
    notification of decision, 25–26

O

Opinions and Reports of the Council on Ethical and Judicial Affairs of the American Medical Association, 1

P

Parents, 7
Patient
    Attitude of physician toward, 3
    behavior of, 4
    best interests of, 5
    civil rights of, 6
    confidentiality, 6
    contractual arrangement with psychiatrist, 5
    dignity, 7
    doctor–patient relationship, 9
    exploitation of family of, 8
    identification of, 6
    information availability, 8
    missed appointment, 5
    privacy, 2, 6
    psychiatrist and, 3
    recognition of responsibility by physician, 3
    records of, 6
    release of information about, 6
    request for consultation, 8
    respect by physicians, 6
    responsibility from physician, 3, 10
    sexual activity with physician, 3, 4
    welfare of, 5, 6
    well-being, 3
Peer review, 4
Physicians
    access to medical care for all people, 3, 10
    attitude toward patient, 3
    behavior of, 3–10
    citizenship, 6
    commitment to medical education, 2
    conduct of, 4
    dedication to medical care, 2, 3
    delegation to psychologists, 8
    exploitation of patient by, 5
    freedom of choice, 3

medical code of ethics of, 1
objectivity of, 4
participation in improvement of community and public health, 3
professionalism of, 2, 4–5
recognition of responsibility to patient, 3
respect of rights of patients, colleagues, and other health professionals, 2, 6
respect of the law, 2, 5
responsibility to patient, 3
sexual activity with patient, 4
standards of professionalism, 2
Preamble, 2
Preliminary determinations, 13
Principles of medical ethics, 1
with annotations, 3–10
Privacy, 2, 6–7
Professionalism, 2
of the physician, 4–5
Psychiatric News, 22, 23
Psychiatric records, 6
Psychiatrists
certification of, 9
collaborative role of, 8
competence of, 5
conduct of, 4
conflicts of interest, 10
continuing education of, 8
consultation with colleagues, 8
contractual arrangement with patient, 6
disclosure of patient information, 6
ethics and, 5
expertise of, 9
government and, 9
mental illness of, 5
participation in the community, 9–10
personal treatment, 24
practicing outside of professional competence, 5
professional opinion of, 9
public statements of, 9
referral to other professionals, 8
refusal to provide psychiatric treatment, 9
relationships, 10
release of confidential information of patient, 6
separate roles as citizens, 9
suitability to practice, 5–6
supervision of other physicians or nonmedical persons, 5
treatment goals, 5
Psychiatry. See also Opinions and Reports of the Council on Ethical and Judicial Affairs of the American Medical Association
Public education, 4
Public health, 3
Public media, 9

R

Race, 3
Records, patient, 1
Redress, 4
Remand, 27
Reprimand, 21
Research, funded, 7
Review of allegations, 13–15

S

Sanctions, 21–23

education requirement, 24
expulsion, 22–23
personal treatment, 24
reprimand, 21
supervision, 23–24
suspension, 21–22
Saunders, John R., M.D., 1n1
Scientific knowledge, advancement of, 2, 8
Security, 7
Sexual activity
between faculty member or supervisor and trainee or student, 7
with patient, 4
Sexual orientation, 3, 7
Social injustices, 5–6
Socioeconomic status, 3
Standards of conduct, 2, 3
Students, permission to release information about, 6
Supervision, 23–24
Suspension, 21–22

T

Teacher–student relationship, 7
Testimony, 19
Torture, 9
Treatment and treatment options, 10

V

Violations
ethical, 21
not ethical, 20