UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL CONTI, | |
|                 Plaintiff / Counterclaim-Defendant | |
| -against- | No. 17-CV-9268 (VEC) |
| JOHN DOE, | |
|                 Defendant / Counterclaim-Plaintiff. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF JOHN DOE'S PARTIAL MOTION TO PRECLUDE REBUTTAL EXPERT TESTIMONY**

Emery Celli Brinckerhoff & Abady LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

**PRELIMINARY STATEMENT**

The words of Paul Conti's own brief best capture the essential fallacy of his opposition to John Doe's motion to preclude certain opinions offered by Conti's rebuttal expert, Dr. Donald Meyer. According to Conti, if Doe's expert, Dr. Paul Appelbaum, "is permitted to testify about what he thinks Dr. Conti should ethically include in his pleadings, logic dictates that Dr. Meyer should too." Conti Br. in Opp'n to Mot. ("Conti Opp'n," Dkt. #200) at 12.

That is not how Federal Rule of Evidence 702 works. Each side must put forward a qualified expert who offers opinions within the scope of his expertise that are: (a) helpful to the jury in understanding the evidence or resolving a factual dispute; (b) have a sufficient factual basis; and (c) are grounded in reliable principles and methods, (d) reliably applied. *See* Fed. R. Evid. 702. In exercising its important gatekeeping function under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), the Court scrutinizes the specific conclusions and reasoning of each expert to determine whether the expert's opinions are reliable.

The anticipated testimony by Dr. Meyer challenged on this motion is based upon his personal beliefs about what is "illegal" and what a court would find "credible" or "want to know." Those beliefs are not only wrong; they are well beyond his expertise in any event. Dr. Appelbaum, in contrast, does not base his conclusions upon such uninformed speculation about the law or the courts; to the contrary, he leaves those issues to the side. For these reasons, even as Drs. Appelbaum and Meyer may opine about the same subject matter, Dr. Appelbaum's opinions are reliable and should be admitted, while Dr. Meyer's are not and should be precluded.

**I. CONTI'S PUTATIVE "UNDER SEAL" AND "ACCESS TO THE COURTS" DEFENSES ARE IRRELEVANT TO THE NEED FOR EXPERT TESTIMONY**

Before proceeding to the heart of the matter—whether Dr. Meyer's challenged opinions are reliable—it is necessary to emphasize again what will be in dispute at trial in this case.

1

Contrary to Conti's assertion, Doe has never claimed that Conti's "*only possible defense* to the Counterclaim is to prove that he made a reasonable choice to sue Doe to prevent Doe from causing serious physical harm to himself or others." Conti Opp'n 10 (emphasis added). Rather, Doe asserts that Conti's *principal* defense *at trial* will be that he was justified in disclosing confidential information to prevent Doe from using his family wealth to hire someone to cause harm to Conti or Conti's family. See Doe Br. in Support of Mot. ("Doe Br.", Dkt. #188) at 3-7. That is unquestionably true. Conti's motion gestures at two other legal defenses, but neither is a jury issue, both are meritless, and neither affects the need for expert testimony on standard practices and ethical principles in the profession of psychiatry to guide the jury at trial.

The first is the "under seal" defense. Conti suggests that he "cannot" be held liable for his disclosures about Doe in the publicly filed version of his complaint because it is anonymous on its face, Conti Br. 10 n.5, and that trying to hold him liable for his disclosures in his sealed complaint is somehow "novel" or "remarkable," *id.* at 2, 3. Conti is wrong on both counts.

Conti certainly can be held liable even for his anonymized disclosures. The law recognizes that a disclosure of confidential medical information can have the effect of identifying the patient even if does not do so explicitly. That is why the law forbids any disclosure made "in a manner that *allows the patient to be identified*," as opposed to only those disclosures that include the patient's name. N.Y. Pattern Jury Instructions § 3:59 (emphasis added). Here, Doe will argue that disclosing his detailed confidential medical information in a publicly filed lawsuit allowed him to be identified, especially given the many identifying details included about Doe's family and the overwhelming likelihood that any trial would be public. Indeed, Doe *was in fact* identified by several news outlets that reported on the complaint in this case; these outlets attached Doe's real last name and his father's photograph to Conti's most

sensitive (and scurrilous) allegations.[1]  The moment he included Doe's (irrelevant) confidential medical information in a publicly filed lawsuit, anonymized or not, Conti "allow[ed]" that information to be identified with Doe's true name.  *Id.*

There is nothing "novel" or "remarkable" about holding Conti liable for his sealed disclosures to attorneys, law office employees, court staff, stenographers, deposition videographers, and the Court.  The principle comes from the New York Court of Appeals.  In *Chanko v. American Broadcasting Corp.*, 27 N.Y.3d 46 (2016), a hospital allowed a television crew to film a dying patient without his consent.  The broadcast blurred the patient's face, concealing his identity, but the Court of Appeals held that the plaintiff had a claim for breach of confidence for the "improper disclosure of medical information to the ABC employees who filmed and edited the recording."  *Id.* at 55.  This case is directly analogous:  Even if the broadcast (here on PACER, not ABC) did not allow Doe to be identified, Doe still has a claim for the disclosure to the persons who learned his real identity before the anonymization.

Nor is there anything special, let alone dispositive of Doe's counterclaim, about the fact that Conti made his disclosure to the sealed records clerk, law clerks, lawyers, stenographers, videographers, and others associated with the court system.  The second additional defense at which Conti gestures—call it the "access to courts" defense, invoking the general principle that the First Amendment protects the right to petition the courts, *see* Conti Opp'n 2 (citing *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972))—is equally meritless.

By its very nature, doctor-patient confidentiality substantially restricts physicians' First Amendment rights.  Physicians freely accept such restrictions as a condition of the ethical practice of medicine—and the restrictions are amply justified by the compelling public policy

---

[1] To avoid further disclosure, we are not citing these articles but can make copies available if the Court so desires.

3

interest in encouraging sick people to seek treatment for sensitive problems. Newsgathering by a television film crew is at least as constitutionally protected as the filing of a damages lawsuit about a private matter, if not more so, but it can still give rise to liability for disclosing patient confidences without consent. *See Chanko*, 27 N.Y.3d at 55. That confidentiality does, should, and must limit physicians' otherwise protected First Amendment activity is especially true of *psychiatrists* like Conti who treat addiction, mental disorder, and family dysfunction. The prevailing standards of the psychiatric profession impose significant limits on expression that do not apply to citizens at large. *See* Meyer Tr. 107:14-108:16 (discussing the "Goldwater Rule" governing psychiatrists, which restricts diagnosis of public figures). And there is nothing untoward, or even unusual, about it. Just as the speech rights of public employees are cabined by important countervailing considerations attendant to their jobs, *see Garcetti v. Ceballos*, 547 U.S. 410 (2006)—an FBI agent does not have a constitutional right to speak to *The New York Times* about a sensitive criminal investigation—a psychiatrist cannot violate his ethical obligations to his patients without consequence, all in the name of his right to petition the courts.

In addition to being meritless, both of these putative defenses are fundamentally legal questions, not jury issues. Should Conti raise them on summary judgment, the Court will decide whether Conti can be held liable for disclosures of confidential information in the context of a lawsuit and whether his publicly available anonymized complaint is actionable, or only the version containing defendant's actual name, which was disclosed to court officials. Once the Court resolves those issues, the heart of the matter at trial will be whether Conti's disclosures of confidential information were *justified* to protect himself from violence orchestrated by Doe. Conti can only prevail on that justification defense if: (1) self-defense, rather than greed and/or revenge, is genuinely his motivation for the disclosures; (2) he reasonably believed that Doe

posed a serious physical threat; (3) filing a lawsuit was a reasonable means of responding to any threat; and (4) the specific information disclosed in this lawsuit was minimally necessary.

As explained in Doe's moving papers and in his opposition to Conti's motion to preclude (Dkt. #202), the last three issues, at least, cry out for expert guidance about prevailing professional standards and practices for responding to the kinds of provocative patient communications to which psychiatrists are often exposed. The core of Dr. Appelbaum's testimony is that a psychiatrist must evaluate such communications in their therapeutic context, manage his own emotional response to ensure he maintains clinical objectivity, consult with an experienced, independent forensic colleague to help assess any threat, and seek advice from law enforcement and/or his insurer about risk. If the psychiatrist concludes, in a reasoned exercise of clinical judgment, that breaching confidentiality is necessary, he should do so with circumspection and great care. That Conti did none of these things is highly probative of whether his disclosures were justified, and of whether he really perceived any threat at all.

## II.     DR. MEYER'S OPINIONS BASED UPON SPECULATION ABOUT THE LAW AND THE COURTS ARE UNRELIABLE AND BEYOND HIS EXPERTISE

The Court should preclude Dr. Meyer's opinions based upon speculation about the law and the courts that is beyond his expertise, unreliable, and simply inaccurate. In arguing otherwise, Conti ignores the specific defects in Dr. Meyer's reasoning identified by Doe.

### A.     The Court Should Preclude Dr. Meyer from Opining that Conti's Specific Disclosures in His Pleadings Were Permissible

Dr. Meyer's unambiguous deposition testimony demands the preclusion of his response to Dr. Appelbaum's opinion that Conti disclosed more confidential medical information than permissible in his pleadings. When asked about Conti's disclosure in his pleadings of the fact that Doe's father had been "scarred by a devastating family suicide when he was younger and was afraid that Doe was going to take his own life," Dr. Meyer testified as follows:

5

> Q. So your opinion, as a matter of psychiatric ethics, that this disclosure is permissible is based on your assumption that a Court would want to know the likelihood of Doe carrying out future threats of defamation?
>
> A. *Yes. And I think it also goes to the heart of Conti stating a claim that would be credible in court.*

Meyer Tr. 229:24-230:8 (emphasis added); *see also id.* at 231:9-232:6 (asserting that this disclosure is minimally necessary because "a court would want to know" it). In defending this line of testimony, Conti does not argue that Dr. Meyer is competent to identify what the Court would "want to know" or what would "state a credible claim." *See* Conti Opp'n 12-14. This is hardly surprising, because Dr. Meyer cannot credibly claim expertise on such matters. Instead, Conti asserts, curiously, that that Dr. Meyer's deposition testimony—and his eventual trial testimony along these lines—was appropriate and within his expertise because it came in response to questioning about "why he thought it was ethical for Dr. Conti to include certain information **in the pleadings** in this case." *Id.* at 14 (emphasis in original). Conti's argument only proves Doe's point. Whether Doe's confidential medical information was a necessary part of "the pleadings" in this case is the *central issue on the counterclaim*. The pleadings are where Conti chose to make his disclosure of Doe's confidential medical information. To the extent Dr. Meyer's opinion on this subject is based on his uninformed view of "what the court would want to know" or what is required to "state a credible claim," it is unreliable as a matter of law and should be precluded. *See* Meyer Report 14-15 (opining about the pleadings line-by-line).

Nor can Conti rescue Dr. Meyer's testimony by recharacterizing it as an opinion that "information relevant to risk assessment can ethically be included in a pleading if risk assessment is relevant to a claim." *Cf.* Conti. Opp'n 13-14. As an initial matter, that is not an opinion that Dr. Meyer discloses anywhere in his report; in the words of Conti's brief, it is a "logical leap." *Id.* at 14. More important, Dr. Meyer is not competent to know to what legal

claims "risk assessment" may be relevant, which is why Conti does not cite to any portion of Dr. Meyer's report or deposition testimony for that proposition, but rather to *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).[2]  *See* Conti Opp'n 14.  Whether "risk assessment" is relevant to a particular "claim" is a matter for lawyers, not for psychiatrists.

In stark contrast to Dr. Meyer's efforts to "fill in the gaps" of his opinion by citing his beliefs about the law, Dr. Appelbaum is crystal clear that his opinion is not based in any way upon his own understanding of what is legally relevant to Conti's causes of action or upon any other legal principle beyond Dr. Appelbaum's expertise.  At no point in any of the briefing on the parties' *Daubert* motions has Conti identified any assumption about the law or the legal system on which Dr. Appelbaum's testimony improperly relies.  To the contrary, Dr. Appelbaum forthrightly acknowledges that he cannot address, as a nonlawyer, what facts are legally required in a complaint.  Appelbaum Report ¶ 18.  He explains that Conti was required to plead the least amount of information needed to establish even a valid claim; exercise his own judgment about what to disclose rather than delegate to his lawyers; and limit his disclosure to only that which is necessary to the situation.  *Id.* ¶¶ 18-19.  For this reason, Conti's "good for the goose, good for the gander" argument for the admissibility of Dr. Meyer's opinion is without merit.

> **B.     The Court Should Preclude Dr. Meyer's Response Concerning Conti's Failure to Contextualize Doe's Messages as Transferential**

As Dr. Appelbaum explains, it is not uncommon for psychiatrists to receive intemperate expressions of anger from patients.  Appelbaum Report ¶ 8.  Such communications often involve the patient "acting out within the therapeutic relationship the same dynamics that affect their

---

[2] Conti accuses Doe of falsely claiming that Conti did not seek an injunction in his initial complaint.  *See* Conti Opp'n 1 n.1.  But Conti's accusation rests upon a misquotation of the relevant portion of Doe's brief.  At page 14 of Doe's brief, Doe correctly pointed out that Conti did not seek an injunction *against defamation* in his initial complaint.  *See* Doe Br 14 n.3; *cf.* Conti Opp'n 1 n.1 (omitting the word "such" from the relevant quotation).

7

behaviors toward other people in their lives," a phenomenon known as transference. *Id.* ¶ 7. "Well-trained psychiatrists attempt to deal with such anger within the therapeutic relationship." *Id.* ¶ 8. Psychiatrists are also trained to recognize and channel their own emotional responses to the patient's behavior, known as countertransference, to ensure that "[p]atient behaviors that evoke those responses are not . . . taken as personal attacks for which retaliation is appropriate, but as symptoms of the patient's disorder." *Id.* ¶ 9. Dr. Appelbaum opines that Conti failed to contextualize Doe's messages as a manifestation of Doe's transference, and responded to those messages based upon countertransferential emotions rather than objective clinical judgment.

In response, Dr. Meyer opines that Dr. Appelbaum "wrongly conflates 1) a patient's expression of intense negative emotion to the therapist with 2) a . . . patient's misconduct not rising to illegality and 3) a . . . patient's misconduct that is illegal. They are not the same thing *and they require different responses from a therapist*." Meyer Report 9 (italics added). Dr. Meyer explains what he sees as the difference between these categories and how a psychiatrist should respond to each. *Id.* at 9-10. Doe challenged this opinion as unreliable on the basis that Dr. Meyer does not understand what "illegal" means and has no basis to conclude that Doe's conduct was "illegal." Doe Br. 15-17. Dr. Meyer's second category—"misconduct not rising to illegality"—includes criminal conduct, such as intentional destruction of property. *Id.* at 17. Dr. Meyer's third category—misconduct "that is illegal"—purports to include Doe's messages to Conti. *Id.* Because Dr. Meyer's categories do not make sense and are based solely on erroneous lay speculation about what is "illegal," Dr. Meyer cannot reliably opine that patient behavior requires a different psychiatric response based on the category into which it falls.

In response, Conti makes no attempt to defend the substance of Dr. Meyer's challenged opinion or even Dr. Meyer's understanding of what is "illegal." *See* Conti Opp'n 15-17. He

8

simply suggests that Dr. Meyer be "permit[ted]" to "substitute" the terms "potentially illegal" or "potentially tortious" instead. *Id.* at 17. It is unfair to Doe to amend the concededly unreliable opinion disclosed by Dr. Meyer into a different opinion that Doe has not had the chance to probe in discovery. *See Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co.*, 769 F. Supp. 2d 269, 278 (S.D.N.Y. 2011) ("[E]xperts are not free to . . . continually supplement their opinions."). Moreover, this "substitution" would do nothing to fix the defects in Dr. Meyer's opinion, which are matters of substance, not labeling. Dr. Meyer has no legal training and cannot reliably identify what is "potentially" or actually illegal. For example, he seems to think that negligence is "illegal," but intentional property destruction is not. *See* Meyer Tr. 112:7-14, 113:10-15; Meyer Report 9. Dr. Meyer cites nothing from the canon of psychiatric ethics or any other authority, including his own experience, to suggest that whether a patient's conduct is "illegal" or "tortious" is a crucial factor in whether a psychiatrist can breach patient confidentiality. His own incoherence about what these terms mean further confirms that his opinion in this area is unmoored from prevailing professional standards about how practicing psychiatrists are expected to respond to real-world patient behavior.

### C. The Court Should Preclude Dr. Meyer from Opining About Conti's Consultations with Counsel, or Find the Attorney-Client Privilege Waived

Dr. Appelbaum opines that a psychiatrist in Conti's situation acting consistent with professional standards would "seek outside consultation from an experienced colleague, in this case especially someone with forensic or other experience evaluating threats, with regard to understanding and managing the situation." Appelbaum Report ¶ 12. Conti failed to satisfy this obligation. *Id.* ¶ 14. In response, Dr. Meyer asserts that Conti consulted with his own psychiatrist, Dr. Hamilton, who "opined there was significant risk to Dr. Conti," and with his current counsel, who "opined that Doe's misconduct was also illegal." Meyer Report 12. The

9

latter assertion is not based upon any factual knowledge, but solely upon an erroneous assumption that lawyers must believe their litigation position to be correct. *See* Doe Br. 18-19.

In opposition, Conti all but acknowledges that Dr. Meyer cannot properly testify about what counsel "opined," but argues that Dr. Meyer must nonetheless be permitted to *mention* Conti's consultation with counsel. *See* Conti Opp'n 15-16. The Court should not permit Dr. Meyer to *imply* that which he has no basis to opine or testify about—namely, that Conti's counsel validated Conti's assessment of the risks posed by Doe or Conti's decision to disclose patient confidences. That Conti consulted his lawyers about *something* before filing this case has no probative value in determining whether his breach of confidentiality was justified. Dr. Meyer's point is that Conti consulted his lawyers about how to manage the risk posed by Doe, and that *the content* of what Conti's lawyers said—that Doe's "misconduct" was "illegal"—lent support to Conti's assessment and thus to his decision to breach confidentiality. That is why Dr. Meyer mentioned the substance of what Conti's counsel purportedly "opined" about.

Aside from Dr. Meyer's inaccurate speculation that Conti's counsel must have believed Doe's conduct to be "illegal," no reason exists to assume that Conti's counsel told him anything relevant to the question of justification. Absent a privilege waiver, no one knows whether Conti consulted his lawyers about the alleged physical threat posed by Doe or the permissibility of disclosing patient confidences. It is entirely possible—indeed likely, given his $1.25 million pre-filing demand—that Conti's consultations with his lawyers focused on how best to exploit Doe's intimate secrets to extract as much money from his family as possible. If Conti wants to invoke his discussions with counsel to justify his breach of confidentiality, Doe is entitled to probe the substance of those conversations. Conti cannot use the privilege "at once as a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).

## CONCLUSION

The Court should grant Doe's motion to preclude Dr. Meyer's opinions in part.

Dated: May 1, 2020
New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP

/s/
Andrew G. Celli, Jr.
Katherine Rosenfeld

600 Fifth Avenue, 10th Floor
New York, New York 10020

(212) 763-5000

*Attorneys for John Doe*