USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   10/21/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
DR. PAUL M. CONTI,                                            :
                                                             :
            Plaintiff and Counterclaim Defendant,            :
                                                             :          17-CV-9268 (VEC)
                                                             :
                    -against-                                :          OPINION
                                                             :
JOHN DOE,                                                    :
                                                             :
            Defendant and Counterclaim Plaintiff.            :
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

This action stems from a series of insulting and profane messages sent by Defendant John

Doe to his former psychiatrist, Dr. Paul Conti.  Dr. Conti sued Doe for defamation based on the

messages.[1]  Am. Compl., Dkt. 31.  Doe counterclaimed for breach of fiduciary duty, arguing that

Dr. Conti breached the duty of doctor-patient confidentiality by disclosing his medical

information in the amended complaint.  Answer, Dkt. 59.  Now before the Court are:

(i) Plaintiff's motion to exclude the opinion and testimony of Defendant's experts Drs. Paul

Appelbaum and Ziv Cohen, and (ii) Defendant's motion to exclude portions of the opinion and

testimony of Plaintiff's rebuttal expert Dr. Donald Meyer.  Dkts. 186, 191.  For the following

reasons, both motions are GRANTED in part and DENIED in part.

---

[1]      The Court previously dismissed Dr. Conti's claims for intentional infliction of emotional distress, slander,
and violations of various state criminal statutes.  *See* Dkts. 57, 61.

## BACKGROUND[2]

Dr. Conti, a psychiatrist, began treating Defendant John Doe in May 2016 for drug addiction and erratic, threatening, and destructive behavior.  *See* Am. Compl. ¶¶ 3, 10, 16-19. By late 2016, Dr. Conti had diagnosed Doe with "Narcissistic Personality Disorder, including Borderline and Antisocial traits."  *Id.* ¶¶ 3, 24-25.  Dr. Conti recommended that Doe wean himself from Xanax and that his parents "set behavioral boundaries" for him.  *See id.* ¶¶ 26, 28. Despite Dr. Conti's recommendations, Doe continued to abuse Xanax and to engage in destructive behavior.  *See id.* ¶ 27.  On April 6, 2017, Dr. Conti terminated his treatment of Doe; Dr. Conti explained to Doe and his parents that he could not continue to treat Doe because Doe was continuing to abuse drugs, refusing to comply with Dr. Conti's treatment program, and sending Dr. Conti hostile text messages.[3]  *See id.* ¶¶ 35–36; Ex. D.

Between April and November 2017, Doe continued to send Dr. Conti profane emails and text messages accusing Plaintiff, *inter alia*, of committing "fraud" and "malpractice."  *See id.* ¶¶ 35–51; Exs. B–I.  Doe stated that his parents had "caught" Dr. Conti "red handed" committing misconduct.  *Id.* Exs. C, I, J.  In several emails, Doe claimed that Dr. Conti had "abandoned" him by being "unreachable" when Doe was attempting to reduce his use of Xanax.  *Id.* Ex. C.  Doe

---

[2]      The Court will refer to the relevant submissions as follows: Dr. Conti's Memorandum of Law in support of his motion to preclude expert testimony, Dkt. 190 as "Conti Mem. of Law"; Dr. Conti's Reply Memorandum of Law in support of his motion to preclude expert testimony, Dkt. 210 as "Conti Reply"; Dr. Conti's Deposition, Dkt. 203-1 as "Conti Dep."; Dr. Appelbaum's Expert Report, Dkt 192-1 as "Appelbaum Report"; Dr. Appelbaum's Deposition, Dkt. 192-5 as "Appelbaum Dep."; Dr. Cohen's Expert Report, Dkt. 190-1 as "Cohen Report"; Doe's Memorandum of Law in support of his partial motion to preclude rebuttal expert testimony, Dkt. 188 as "Doe's Mem. of Law"; Dr. Meyer's Expert Report, Dkt. 187 as "Meyer Report"; Dr. Meyer's Deposition, Dkt. 187-2 as "Meyer Dep.".

[3]      On April 6, 2017, Doe sent Dr. Conti a text message, stating: "Let me say one thing to first start.  Your one big f*****g fraud.  You're a f*****g con.  That's it. A f*****g fraud.  What the narrative you put on me about being a gambler???  Addicted to xanax??  You dumb f**k Steve wonder could see that from a f*****g mile you little f*****g f*****t."  Am. Compl. ¶ 35.  Dr. Conti terminated treatment later the same day.  *Id.* ¶¶ 35–36.

claimed that Dr. Conti's actions led him to "relapse" in his drug abuse and caused him severe "mental pain." *Id.* ¶¶ 40-44, 50; Exs. E, F, H, I, M-O.

Doe also sent Dr. Conti messages threatening to "ruin [his] name," and to bring legal action against him. *See, e.g.*, *id.* Ex. A ("I will own you in a Courtroom"); Ex. H ("I'm advising you get a legel [*sic*] team because I'm coming with everything I can . . . ."); Ex. J ("Get your legel [*sic*] team because I'm getting mine…I'm going to ruin your f******g name."); Ex. O ("I'm going to do everything in the power of the law to destroy [you]").  Doe warned that he would "drain [Conti] of all of [his] resources," that he would "bury [his] a** alive," that he was "coming for [Conti]," and that Dr. Conti should "f*****g fear [Doe]" because he was "going to destroy [Conti's] a**."  *See id.* Exs. H, K, L.  Doe copied numerous third parties on these emails, including an attorney on faculty at Harvard Law School, several professors of psychiatry, Doe's parents, and various members of Dr. Conti's psychiatry practice.  *See id.* ¶¶ 6, 37, 39, 42–45, 50–51.

Dr. Conti brought this action for defamation, seeking both monetary and injunctive relief.  Doe counterclaimed for breach of fiduciary duty, arguing that Dr. Conti breached his duty of confidentiality by "unnecessarily disclosing – indeed, weaponizing – Doe's confidential medical information for personal financial gain."  *See* Dkt. 59 ¶¶ 94-106.

## I.    Defendant's Expert Dr. Appelbaum

Dr. Conti seeks to exclude the report and testimony of Doe's psychiatric ethics expert, Dr. Appelbaum.  Dr. Appelbaum's report concludes, *inter alia,* that Dr. Conti "did not meet the applicable professional standard of ethical conduct" when he: (i) responded to Doe's messages by commencing a lawsuit against Doe; (ii) disclosed more of Doe's confidential information in

the lawsuit than could be ethically justified; and (iii) transferred Doe's care to a new treating psychiatrist.[4]  Appelbaum Report ¶¶ 4, 10.

Dr. Appelbaum opines that Dr. Conti failed to recognize Doe's threatening messages as a "manifestation of [Doe's] transference."[5]  *Id.* ¶ 11.  As a result, Dr. Appelbaum states that Dr. Conti "acted out his [own] countertransference"[6] in response to the messages rather than managing the situation "in a manner consistent with professional ethical standards."  *Id.*  Dr. Appelbaum explains that a "psychiatrist acting consistent with professional standards of care," would take various steps after receiving threats from a patient, including: (i) consulting someone with experience evaluating patient threats; (ii) facilitating a meeting between the patient and the patient's family; (iii) alerting law enforcement; (iv) notifying his malpractice insurer; and (v) increasing security at his home and office.  *Id.* ¶¶ 12-15.  Because Dr. Conti did not take any of those steps, Dr. Appelbaum concludes that the "decision to respond to [Doe's] messages by filing the lawsuit … was both disproportionate to the 'threat' posed by Doe, and inconsistent with Dr. Conti's stated fears of physical assault and legal liability."[7]  *Id.* ¶ 15.  Moreover, Dr.

---

[4]     The Appelbaum Report indicates four opinions by breaking what the Court views as one opinion (Dr. Conti did not adhere to ethical standards by responding to Doe's messages by filing a lawsuit) into two opinions (Dr. Conti did not adhere to ethical standards "with respect to: (1) responding to his former patient John Doe's behavior when the patient sent him the Messages; [and] (2) evaluating whether to commence a lawsuit against Doe in response to the Messages.")  Appelbaum Report ¶ 10.  For purposes of the litigation, items one and two in Appelbaum's Report really collapse into a single opinion that Conti acted unethically by responding to Doe's messages with a lawsuit rather than with any number of less drastic actions.  *See id*. ¶¶ 11-16.

[5]     Psychiatrists are taught to "recognize that patients who express love, dependency, anger, or other emotions towards their psychiatrists are acting out within the therapeutic relationship the same dynamics that affect their behaviors towards other people in their lives."  Appelbaum Report ¶ 7.  This concept is known as "transference."  *Id.* ¶ 11.

[6]     Anger and other heightened emotions expressed by patients can cause emotional reactions in a treating psychiatrist.  Appelbaum Report ¶ 9.  A psychiatrist's emotional response to his patient is referred to as "countertransference."  *Id*.  When a psychiatrist responds to a patient's behavior based on his own emotional reactions, it is referred to as "acting out the countertransference."  *Id.*

[7]     Dr. Appelbaum acknowledges that Dr. Conti consulted with his own psychiatrist, Dr. Hamilton, but claims that this was insufficient to satisfy the "obligation to consult with an independent colleague," because Dr. Hamilton

Appelbaum states that, in filing a lawsuit, Dr. Conti "breached his ethical duties" by failing to "act with the welfare of his patient in mind."  *Id.* ¶ 23.

Next, Dr. Appelbaum opines that Dr. Conti disclosed an "unnecessary and excessive" amount of Doe's confidential information in the complaint.  *Id.* ¶¶ 18, 23.  Dr. Appelbaum states that, "even in the context of a valid legal claim, a psychiatrist is obligated to disclose the minimum amount of information necessary to establish the claim," and that "Dr. Conti included substantially more information about the patient than is relevant to this situation."  *Id.* ¶¶ 18-20; *see also id.* ¶ 24 ("Dr. Conti's conduct does not comport with the important ethical duty that a psychiatrist must maintain patient confidentiality with extreme care and make the minimal disclosures necessary in situations where total confidentiality is not possible.").  Dr. Appelbaum claims that the "fact that the Complaint was initially filed under seal, and later as 'John Doe,'" was insufficient to "render Dr. Conti's conduct proper or permissible," because the complaint disclosed information to "persons working within the court system, including the judge . . .  who have absolutely no right or need to know [Doe's] confidential information."  *Id.* ¶ 25.

Finally, Dr. Appelbaum opines that Dr. Conti acted unethically by refusing to discuss Doe's treatment with his new psychiatrist without compensation.  *Id.* ¶ 26.

## II.   Defendant's Expert Dr. Cohen

Dr. Conti also moves to exclude the report and testimony of Doe's independent medical examiner, Dr. Cohen.  The Court granted Doe's motion for an independent medical examination

---

was "in a supportive role to Dr. Conti" and "never read [Doe's] messages or independently reviewed any of the facts."  Appelbaum Report ¶ 14.

("IME") of Dr. Conti to determine whether, and to what extent, Doe's messages caused Dr. Conti emotional damages.[8]  *See* Dkt. 104.

Dr. Cohen concludes, *inter alia*, that Doe's messages did not cause Dr. Conti to suffer from Post-Traumatic Stress Disorder ("PTSD") or Acute Stress Disorder ("ASD").  Cohen Report at 20-23.  A diagnosis of PTSD or ASD requires that the patient: (i) suffer a "traumatic event"; and (ii) experience a "clear and consistent impairment in functioning."  *Id*.  Dr. Cohen concludes that Doe's messages do not meet the Diagnostic and Statistical Manual ("DSM 5") criteria for a "traumatic event" because they do not constitute an "objective danger," such as "exposure to war" or "threatened or actual physical assault."  *Id*. at 22.  Dr. Cohen also notes that Dr. Conti experienced no "impairment in functioning" as a result of Doe's messages; Dr. Hamilton's treatment notes, and Dr. Conti himself, confirm that he has continued to function at a high level since receiving Doe's messages.  *Id.* at 23-24.  Dr. Cohen acknowledges that Doe's messages may have caused Dr. Conti to experience nightmares, increased stress, and "intrusive thoughts" but explains that "these psychological phenomena do not indicate ASD or PTSD unless they are part of a severe and extensive constellation of symptoms that cause an impairment in functioning."  *Id.* at 16, 24-25.  According to Dr. Cohen, although Dr. Conti does not suffer from ASD or PTSD, he does "exhibit[] narcissistic personality traits," which may have caused him to "react with rage" at Doe's messages.  *Id.* at 31.

Dr. Cohen separately opines that Dr. Conti's characterization of Doe as a "sociopath" or "psychopath" was unsupported and inaccurate; Dr. Cohen claims Doe's messages are inconsistent with psychopathic behavior.  *See id.* at 26-29.  As a result, Dr. Cohen concludes that

---

[8]       Dr. Conti placed his mental state at issue in this case by claiming that Doe's messages caused him severe emotional damages, and in particular, PTSD.  *See* Dkt. 104; Dkt. 203, Ex. G.

a "reasonable psychiatrist in Dr. Conti's position would not view [] Doe as a 'sociopath' to be feared." *Id*. at 29.

### III.     Plaintiff's Rebuttal Expert Dr. Meyer

Doe seeks to exclude portions of the report and testimony of Dr. Conti's psychiatric ethics rebuttal expert, Dr. Meyer.  Dr. Meyer opines, *inter alia*, that Dr. Conti's conduct in response to Doe's messages was "well within the applicable ethical standard of care."  Meyer Report at 18.  The Court will highlight the three portions of Dr. Meyer's proffered testimony that are relevant to Defendant's pending motion.

At the outset, Dr. Meyer opines that Dr. Conti was justified in disclosing certain information about Doe in his amended complaint because disclosing "information material to psychiatric risk assessment is relevant and ethical."  Meyer Report at 13.  In other words, Dr. Meyer claims that Dr. Conti was justified in disclosing Doe's "past conduct, past and present psychiatric diagnoses, past and present drug abuse and environmental factors that might enable or restrain [his] actions," because such information is relevant to Dr. Conti's assessment of Doe's risk of violence. *Id.* at 3, 13.  Dr. Meyer also states that Dr. Conti's disclosure was justified because it is the type of information that the Court would "want to know" in assessing the credibility of Dr. Conti's defamation claim. *See* Meyer Dep. at 229:24-230:13; 231:9-232:8; 237:20-238:3.

Next, Dr. Meyer opines that psychiatrists should, and do, respond differently to a patient's transferential behavior depending on whether that behavior is "illegal."  Meyer Report at 9.  Specifically, Dr. Meyer claims that Dr. Appelbaum "wrongly conflates 1) a patient's expression of intense negative emotion to the therapist with 2) a [present or former] patient's misconduct not rising to illegality and 3) a [present or former] patient's misconduct that is

illegal." *Id.* Dr. Meyer characterizes Doe's conduct in this case as "illegal activity" and concludes that Dr. Conti was therefore justified in disclosing Doe's confidential information "in the process of [seeking] legal redress." *Id.* at 10-11, 16.

Finally, Dr. Meyer rebuts a premise of Dr. Appelbaum's opinion that Dr. Conti responded to Doe's messages "without outside consultation." *Id.* at 12. Specifically, Dr. Meyer states that, after receiving the messages, Dr. Conti consulted his own psychiatrist, Dr. Hamilton, as well as his attorney. *Id.* Dr. Meyer claims that Dr. Hamilton opined that "there was significant risk to Dr. Conti," and that Dr. Conti's attorney "opined that Doe's misconduct was . . . illegal and recommended legal action." *Id.*

## DISCUSSION

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides that a person "qualified as an expert by knowledge, skill, experience, training, or education" may offer opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions . . . ." *Nimely v. City of New York,* 414 F.3d 381, 395 (2d Cir. 2005). Nevertheless, the district court must act as the "ultimate gatekeeper" against unreliable expert testimony. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (internal quotation marks

omitted).  This gatekeeping obligation "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).  The proffering party bears the burden of establishing admissibility under Rule 702 by showing that: (1) the proposed testimony would be helpful to the trier of fact; (2) the expert is qualified; and (3) the proposed opinion is based on reliable data and methodology.  *Williams*, 506 F.3d at 160; *Nimely*, 414 F.3d at 397.

The threshold question for the Court is whether the "proffered expert testimony is relevant."  *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002).  An expert's opinion is relevant if it will "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  Proffered testimony is not helpful to the jury if it "usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it."  *Nimely,* 414 F.3d at 397 (citation omitted).  An expert's opinion will be precluded if it "undertakes to tell the jury what result to reach" and "attempts to substitute the expert's judgment for the jury's."  *Id.* (citing *United States v. Duncan,* 42 F.3d 97, 101 (2d Cir. 1994)).

If the proposed testimony is relevant, the Court must then determine "whether the proffered testimony has a sufficiently 'reliable foundation' to permit it to be considered." *Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 184 (2d Cir. 2001) (quoting *Daubert v. Merrell Dow Pharm., Inc.* 509 U.S. 579, 597 (1993)).  The Supreme Court has laid down several factors to consider in making this inquiry, including "whether a theory or technique . . . can be (and has been) tested"; "whether the theory or technique has been subjected to peer review and publication"; whether uniform "standards controlling the technique's operation" exist; and whether the theory or technique enjoys "general acceptance" within the

relevant scientific or professional community.  *Daubert*, 509 U.S. at 593-94 (internal quotation marks omitted).  There is no requirement that expert opinions or conclusions be "established to a degree of scientific certainty."  *Restivo v. Hessemann*, 846 F.3d 547, 577 (2d Cir. 2017).  Instead, the Court's objective is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co.*, 526 U.S. at 152.  The Court must "undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand."  *Amorgianos*, 303 F.3d at 267.

Finally, "in addition to the requirements of Rule 702, expert testimony is subject to Rule 403, and 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'"  *Nimely,* 414 F.3d at 397 (quoting Fed. R. Evid. 403).  Courts have recognized the "uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations."  *Id.*

## I.     Defendant's Expert Dr. Appelbaum

Dr. Conti seeks to exclude the report and testimony of Dr. Appelbaum.  Dr. Conti argues that portions of the report are irrelevant or unreliable and that Dr. Appelbaum is unqualified to offer certain opinions.  Dr. Conti's motion is granted in part and denied in part.

### A.  Relevance

The relevance of an expert opinion depends primarily on the parties' claims and defenses. *See Daubert*, 509 U.S. at 591-92 (discussing "fit" between expert testimony and "pertinent inquiry" in the case).  Here, the specific claim that has generated Dr. Appelbaum's proposed

expert testimony is Doe's counterclaim for breach of confidentiality, which is a species of breach of fiduciary duty. *See Chanko v. Am. Broad. Cos.,* 27 N.Y.3d 46 (2016); *Burton v. Matteliano,* 81 A.D.3d 1272 (4th Dep't 2011). To prove an actionable breach of doctor-patient confidentiality under New York law, Doe must prove that: (i) he had a doctor-patient relationship with Dr. Conti; (ii) Dr. Conti acquired information about Doe's treatment or diagnosis; (iii) Dr. Conti disclosed that information to a person unconnected with treatment in a manner that allowed Doe to be identified; (iv) Doe did not consent to the disclosure of the information; and (v) Doe suffered damages. *See* N.Y. Pattern Jury Instructions § 3.59.

   In defense, Dr. Conti has invoked the so-called "*Tarasoff* standard" to argue that he was justified in disclosing Doe's confidential information in this lawsuit because he "felt extremely threatened" and was trying to protect his own physical safety.[9] Conti Dep. at 169:13-18; 170:4-170:5. According to the "*Tarasoff* standard," when a "therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger," which may require the psychiatrist to, *inter alia,* "warn the intended victim . . . , notify the police, or [] take whatever other steps are reasonably necessary under the circumstances." *Tarasoff v. Regents of Univ. of California*, 17 Cal. 3d 425, 431 (1976); *see also Juric v. Bergstraesser*, 44 A.D.3d 1186, 1188 (3rd Dep't 2007) (holding that defendant-doctor may have been justified in disclosing portions of plaintiff's medical records indicating his risk of danger in the complaint in order to protect plaintiff's wife from harm); *Rea v. Pardo*, 132 A.D.2d 442, 445 (4th Dep't 1987) (explaining that "justification for disclosure, outweighing the

---

[9]      Dr. Conti argues in the alternative that he did not breach the duty of confidentiality because: (i) Doe is not identifiable based on a complaint initially filed under seal and later anonymized; and (ii) he has a right to seek legal redress. *See* Conti Opp., Dkt. 200 at 10-11. Because these arguments are not relevant to the pending *Daubert* motions, the Court will not address them at this point.

physician's duty of confidentiality, might exist where there is a need to protect the safety of the patient or others"); *MacDonald v. Clinger*, 84 A.D.2d 482, 487 (4th Dep't 1982) (explaining that a doctor's duty of confidentiality is "not absolute" and "its breach is actionable only if it is wrongful, that is to say, without justification or excuse").

As noted *supra,* Dr. Appelbaum opines that Dr. Conti "did not meet the applicable professional standard of ethical conduct": (i) by reacting to Doe's messages by commencing a lawsuit against Doe; (ii) by failing to safeguard Doe's confidential information once he initiated a lawsuit; and (iii) in how he transferred Doe's care to another psychiatrist.  Appelbaum Report ¶¶ 4, 10.  Dr. Conti argues that only Dr. Appelbaum's opinion on the second topic is relevant to Doe's breach of confidentiality claim.  The Court disagrees in part.

### i.        Dr. Conti's Decision to File a Lawsuit in Response to Doe's Messages

Dr. Appelbaum's opinion that Dr. Conti failed to act in a manner consistent with professional standards of ethical conduct in evaluating and responding to Doe's messages is relevant to Doe's counterclaim and to rebutting Dr. Conti's justification defense.  *See* Appelbaum Report ¶ 11.  Under *Tarasoff,* it is only when a therapist "does in fact determine, or under applicable professional standards reasonably should have determined, that a patient poses a serious danger of violence to others," that he may "reveal the confidence[s] entrusted to him" by a patient.  *Tarasoff,* 17 Cal. 3d at 431, 441; *see also MacDonald*, 84 A.D.2d at 487 (explaining that a doctor may be justified in disclosing confidential information "to the extent necessary" and "in appropriate circumstances" such as when "a patient may be a danger to himself or others").  Dr. Conti himself acknowledged that a psychiatrist must believe there is a "reasonable probability" that a patient poses a serious risk of injury before disclosing his confidential information.  Conti Dep. at 170:17-19.  Thus, Dr. Appelbaum's opinion that a

reasonable psychiatrist would have perceived Doe's messages as merely "the product of an irrational response by an angry patient" or a "manifestation of his transference," rather than as a threat to the psychiatrist's safety, is relevant to Dr. Conti's justification defense.[10]  In other words, although it is ultimately the jury's role to determine whether Dr. Conti in fact believed that Doe posed a threat of violence and was therefore justified in disclosing his confidential information, Dr. Appelbaum's opinion about how a reasonable psychiatrist, acting consistent with prevailing standards of ethical conduct, would perceive and respond to provocative messages from a patient will help the jury make that determination.[11]

Dr. Appelbaum's opinion that Dr. Conti's filing a lawsuit against Doe was inconsistent with prevailing professional standards of ethical conduct is similarly relevant to Doe's breach of confidentiality claim and Dr. Conti's justification defense.  The validity of a justification defense "depend[s] upon a showing of circumstances and competing interests which support the need to disclose." *Juric*, 44 A.D.3d at 1188 (quoting *MacDonald*, 84 A.D.2d at 488); *see also Tarasoff*, 17 Cal. 3d at 431 (explaining that a therapist's duty depends on the "nature of the case" and what steps are "reasonably necessary under the circumstances").  Here, Dr. Appelbaum opines that a reasonable psychiatrist, upon receiving threatening messages from a patient, would take numerous steps in lieu of (or at least before) initiating a lawsuit, including consulting with a colleague experienced in evaluating threats, arranging a meeting with the patient's family, contacting law enforcement, and notifying his malpractice carrier.  *See* Appelbaum Report ¶ 12-

---

[10]     Expert testimony about psychiatric concepts such as "transference" and "countertransference" will also help the jury understand the frequency with which psychiatrists experience emotional outbursts from patients and how psychiatrists are trained to respond to them.  *See* Fed. R. Evid. 702(a) (the court should admit expert testimony if his "specialized knowledge will help the trier of fact to understand the evidence").

[11]     Dr. Appelbaum's statements about how Dr. Conti referred to Doe during his deposition and his evaluation by Dr. Cohen, however, are irrelevant both to Doe's counterclaim and Dr. Conti's justification defense.  *See* Fed. R. Evid. 702(a) (evidence is relevant if it will "help the trier of fact to understand the evidence or to determine a fact in issue").  Accordingly, the final two sentences of paragraph eleven of Dr. Appelbaum's report are excluded.

13, 15.  This opinion is relevant to Doe's counterclaim because it will assist the jury in

determining whether Dr. Conti was justified in initiating a lawsuit prior to pursuing any

alternative tactics to reduce or eliminate any threat posed by Doe.  *See In re Fosamax Prods.*

*Liab. Litig.,* 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009) (explaining that relevance can be

understood as a question of "fit"—"whether expert testimony proffered in the case is sufficiently

tied to the facts of the case that it will aid the jury in resolving a factual dispute") (internal

quotation marks omitted).

### ii.     Dr. Conti's Transfer of Doe's Care

Dr. Appelbaum's opinion that Dr. Conti acted unethically while transferring Doe's care

to another psychiatrist is wholly irrelevant to Doe's breach of confidentiality claim.  *See*

*Daubert*, 509 U.S. at 591-92 ("Expert testimony which does not relate to any issue in the case is

not relevant and, ergo, non-helpful").  Accordingly, paragraph twenty-six of Dr. Appelbaum's

report is excluded.[12]

### B.  Qualifications

"A court should admit specialized expert testimony if the witness is 'qualified as an

expert by knowledge, skill, experience, training or education.'"  *Nora Bevs., Inc. v. Perrier*

*Group of Am. Inc.*, 164 F.3d 736, 746 (2d Cir. 1998) (quoting Fed. R. Evid. 702).  To determine

whether an expert is qualified "courts compare the area in which the witness has superior

knowledge, education, experience, or skill with the subject matter of the proffered testimony."

*United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004).  Although there is no dispute that

---

[12]     Dr. Appelbaum's opinion that Dr. Conti demonstrated a "lack of sufficient care to protect patient confidences" by responding to other patients' criticisms on the HealthGrades website and disclosing the names of other patients during his deposition testimony is also irrelevant to Doe's counterclaim and is unduly prejudicial under Rule 403.  Accordingly, paragraph twenty-one of Dr. Appelbaum's report is excluded.

Dr. Appelbaum is qualified to opine on matters of psychiatric ethics,[13] portions of the report

stray beyond his areas of expertise.

### i.      Dr. Conti's Disclosure of Confidential Information

Dr. Appelbaum opines that Dr. Conti breached his ethical duties by disclosing Doe's

confidential medical information in the amended complaint.  *See* Appelbaum Report ¶¶ 17-20.

Although the distinction is somewhat blurred, the Court finds two separate opinions within this

section of Dr. Appelbaum's report.  *See id.*  In paragraph seventeen of his report, Dr. Appelbaum

explains that "before a psychiatrist reveals confidential information about a patient, he [] must

evaluate the necessity of the disclosure and any alternatives to such a disclosure." *Id.* ¶ 17.  As a

result, Dr. Appelbaum opines that Dr. Conti was obligated to "exhaust all reasonable avenues to

evaluate and assess whether a lawsuit against his patient, disclosing the patient's confidential

treatment-related information, was truly necessary." *Id.*  Dr. Appelbaum concludes that Dr.

Conti "failed to do so and thereby breached his ethical duties as a psychiatrist" by disclosing

Doe's confidential information in a complaint.  *Id.*  In other words, Dr. Appelbaum opines that,

because a reasonable psychiatrist would not have filed a complaint against his patient in the first

instance, Dr. Conti's resulting disclosure of *any* of Doe's confidential medical information in the

complaint was inconsistent with prevailing standards of ethical conduct.  *See id.*  Dr. Appelbaum

is qualified to offer this opinion; it is rooted in principles of psychiatric ethics and is consistent

with Dr. Appelbaum's prior opinions that a reasonable psychiatrist would not have perceived

---

[13]      Dr. Appelbaum is a board-certified psychiatrist and the Director of the Center for Law, Ethics & Psychiatry at Columbia University.  Appelbaum Report ¶ 1.  He has written extensively on law and ethics in clinical practice and researches the "assessment and management of dangerous behavior by patients with mental disorders."  *Id.*  He is the past president of both the APA and the American Academy of Psychiatry and the Law and the past chair of the APA's Ethics Appeals Board.  *Id.*  Dr. Conti's concern that Doe will "seek to exploit Dr. Appelbaum's pedigree to present him as the final arbiter of the applicable legal standard in this case" is unpersuasive.  Conti Mem. of Law at 9.  Should this case proceed to trial, the Court will instruct the jury on the applicable legal standard.

Doe's messages as threatening and, even if he had, would not have commenced a lawsuit to mitigate that threat in lieu of pursuing other alternatives.

In paragraph eighteen of his report, Dr. Appelbaum opines that Dr. Conti provided an "unnecessary and excessive" amount of information in the amended complaint. Appelbaum Report ¶ 18. Dr. Appelbaum states that "in the context of a valid legal claim, a psychiatrist is obligated to disclose the minimum amount of information necessary to establish the claim" and that "Dr. Conti included substantially more information about the patient than is relevant to this situation." *Id.* Dr. Appelbaum opines that the "relevant information would include the facts comprising the patient's allegedly actionable conduct towards Dr. Conti (namely, the messages), and how those messages impacted Dr. Conti, if at all.'" *Id.* Dr. Appelbaum concludes that the complaint "includes many allegations that go beyond what is appropriate to this situation." *Id.* ¶ 19. These opinions are distinct from the opinion offered in paragraph seventeen because they focus on the specific nature and content of the disclosures. In other words, Dr. Appelbaum opines that, even if Dr. Conti believed that Doe posed a threat of violence and was justified in filing a complaint to mitigate that threat, Dr. Conti disclosed far more information than "relevant" or "appropriate for the purpose at hand." *Id.* ¶¶ 18-20.

Dr. Appelbaum has no legal training and no formal knowledge of the elements of a defamation claim; he expressly concedes that he "cannot address which facts are legally required in a complaint." *Id.* ¶ 18. As a result, Dr. Appelbaum is not qualified to opine on what facts were or were not necessary or "appropriate" for Dr. Conti to include in his complaint to state a claim for defamation; that opinion necessarily requires knowledge and understanding of what information *is* necessary to include in a complaint. Accordingly, those portions of Dr. Appelbaum's report are excluded. *See* Appelbaum Report ¶¶ 18-20. *See Marx & Co. v. Diners'*

16

*Club, Inc.,* 550 F.2d 505, 509 (2d Cir. 1977) (excluding expert's testimony that was outside his expertise).

### ii.    Dr. Conti's Decision to File the Complaint Under Seal

Dr. Appelbaum's opinion on the impact *vel non* of Dr. Conti's decision to file the complaint under seal or as an anonymized complaint is similarly excluded.  *See* Appelbaum Report ¶ 25.  Dr. Appelbaum claims that the "fact that the Complaint was initially filed under seal, and later as 'John Doe' was not sufficient to render Dr. Conti's conduct proper or permissible" because the "unredacted complaint, containing the patient's name and identifying information, as well as the unnecessary material, was disclosed to any number of persons working within the court system, including the Judge, [] who have absolutely no right or need to know the Patient's confidential information."  *Id.*  At the outset, because Dr. Appelbaum admitted he is "not aware of any of the details" regarding the standard, process, or procedures for filing a complaint under seal, this opinion is excluded.  Appelbaum Dep. at 45:18-45:22; *Disabled in Action v. City of New York,* 360 F. Supp. 3d 240, 250 (S.D.N.Y. 2019) (excluding expert's opinion after she admitted she was not familiar with information necessary to render her opinion).  Moreover, Dr. Appelbaum has neither the qualifications nor the basis to opine on what the Court would or would not "need to know" in evaluating the legal sufficiency of Dr. Conti's defamation claim.  *See Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) ("Expert testimony should be excluded if it is speculative or conjectural").  Accordingly, paragraph twenty-five of the report is excluded.[14]

---

[14]    Dr. Appelbaum's remaining statements in paragraph twenty-five that Dr. Conti's allegations about Doe have become "widely disseminated" and that the public learned Doe's identity after a "mass-circulation tabloid published an article that identified the Doe family" do not require "scientific, technical, or specialized knowledge" and are therefore excluded.  Fed. R. Evid. 702(a); *United States v. Mulder*, 273 F.3d 91, 101 (2d Cir. 2001) (courts should exclude expert testimony that is "directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help.") (quotation omitted); 4 Weinstein's Federal Evidence § 702.03 (2019)

### C.  Reliability

In all cases, "the test of reliability is flexible," and a district court has "the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination."  *Kumho Tire Co.,* 526 U.S. at 141–42 (emphasis in original and internal quotation marks omitted).  The court should exclude evidence on reliability grounds only "if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions."  *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 746 (3d Cir. 1994); *Daubert,* 509 U.S. at 590.  This approach "accords with the liberal admissibility standards of the federal rules and recognizes that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony."  *Amorgianos,* 303 F.3d at 267; *Daubert,* 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

 Here, Dr. Conti challenges Dr. Appelbaum's opinions as unreliable and based on "nothing more than his *ipse dixit*" or his "personal opinion."  Conti Mem. of Law at 12.  The Court disagrees.  To the extent that the Court has not excluded them on the basis of relevance or qualifications, Dr. Appelbaum's opinions are sufficiently reliable to be admissible.

### i.        Dr. Conti's Decision to File a Lawsuit in Response to Doe's Messages

Dr. Conti argues that Dr. Appelbaum's opinion that he acted unethically by overreacting to Doe's messages is unreliable because Dr. Appelbaum did not point to any "peer review articles, written rules, or anything in the APA Principles that specifically addresses how Dr. Conti should have responded to the messages."  Conti Mem. of Law at 14.  The Court disagrees. Dr. Appelbaum need not identify a specific peer review article or written rule to render his

---

(explaining that when proposed expert testimony offers nothing more than what lawyers "could provide during their closing arguments" it must be excluded).

opinion admissible.  *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1044 (2d Cir. 1995) (attacks

regarding an expert's lack of textual authority for his opinion, go to the weight, not the

admissibility, of the opinion).  Dr. Appelbaum's opinion that a reasonable psychiatrist would

have recognized Doe's threatening messages as "a manifestation of his transference" rather than

taking them "at face value" is reliable because it is based, *inter alia,* on his extensive experience

as a psychiatrist, his research on assessing and managing patients' dangerous behavior, and his

knowledge of "generally accepted standards in psychiatry."[15]  *See* Appelbaum Report ¶ 1;

Appelbaum Dep. at 26:9-27:3*; Kumho Tire Co.,* 526 U.S. at 156 ("[N]o one denies that an expert

might draw a conclusion from a set of observations based on extensive and specialized

experience."); *Pension Cmte. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,* 691

F. Supp. 2d 448, 464-65 (S.D.N.Y. 2010) ("the reliability of [an expert's] testimony largely

depends on whether he has drawn the proffered industry standards from an adequate source—in

this case, his experience."); Fed. R. Evid. 702 advisory cmte. note ("In certain fields, experience

is the predominant, if not sole, basis for a great deal of reliable expert testimony.").

  Moreover, Dr. Conti's argument that Dr. Appelbaum's opinion is unreliable because he

acknowledged that there is not necessarily "just one right response," App. Dep. 32:17-32:19, for

a psychiatrist who receives hostile texts from a patient is also unavailing.  *Restivo,* 846 F.3d at

577 (explaining that there is no requirement that expert opinions or conclusions be "established

to a degree of scientific certainty").  Similarly, Dr. Appelbaum's statement that nothing is

"universally accepted by the psychiatric community," App. Dep. 129:25-130:03, does not render

---

[15]      Dr. Appelbaum's acknowledgment that a patient's transference *can* constitute a real threat of violence in certain circumstances, Appelbaum Dep. at 181:8-182:6, goes to the weight of Dr. Appelbaum's testimony and can be explored on cross-examination.  *See U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.,* 112 F. Supp. 3d 122, 134 (S.D.N.Y. 2015) (explaining that "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.").

his opinion inadmissible.  *Daubert*, 509 U.S. at 594 (explaining that, to be reliable, an expert's theory must enjoy "general acceptance," not universal acceptance).  Lastly, Dr. Conti's argument that Dr. Appelbaum's opinion is unreliable because he did not personally examine Doe goes to the weight of Dr. Appelbaum's testimony, not its admissibility.  *Boucher*, 73 F.3d at 21 (claims that an expert's "assumptions are unfounded 'go to the weight, not the admissibility of the testimony.'").

Dr. Conti also argues that Dr. Appelbaum's opinion that he acted unethically by initiating a lawsuit before seeking outside consultation is unreliable because: (i) Dr. Appelbaum acknowledged that it was not "per se unethical for a psychiatrist to sue a patient based upon receipt of threats"; (ii) Dr. Appelbaum conceded that he was "unaware of any other case where a psychiatrist sued a patient for defamation"; and (iii) Dr. Appelbaum failed to review pre-litigation settlement communications between the parties.  Conti Mem. of Law at 14-15.  These arguments are entirely unpersuasive; even if factually accurate, such disputes go to the weight of Dr. Appelbaum's opinions, not their admissibility.  *See Boucher,* 73 F.3d at 21; *Amorgianos,* 303 F.3d at 267 (explaining that cross-examination is the appropriate tool to challenge "reliable, albeit debatable, expert testimony."); *In re Mirena IUD Prods. Liab. Litig*., 169 F. Supp. 3d 396, 466 (S.D.N.Y. 2016) (expert's failure to consider some allegedly relevant documents was best addressed by cross-examination).  Moreover, Dr. Meyer's opinion that Dr. Conti's consultation with his own psychiatrist before filing the lawsuit was sufficient does not render Dr. Appelbaum's contrary opinion unreliable.  *See I.M. v. United States,* 362 F. Supp. 3d 161, 194-95 (S.D.N.Y. 2019) (factual dispute between experts did not negate experts' reliability and was an issue for jury to resolve.); *In re Zyprexa Prod. Liab. Litig*., 489 F. Supp. 2d 230, 285

(E.D.N.Y. 2007) ("The mere fact that an expert's testimony conflicts with the testimony of another expert or scientific study does not control admissibility").

In sum, although Dr. Conti may disagree with Dr. Appelbaum's opinion about how a reasonable and ethical psychiatrist should have responded to Doe's messages, the opinion is based on a reliable and adequate foundation.[16]  Dr. Conti is free to probe Dr. Appelbaum's opinion during cross-examination.  *Daubert,* 509 U.S. at 596 ("Vigorous cross-examination . . . [is] the traditional and appropriate means of attacking shaky but admissible evidence.").

### ii.     Dr. Conti's Disclosure of Confidential Information

Dr. Conti challenges Dr. Appelbaum's opinion that he disclosed an "unnecessary and excessive" amount of information in the complaint as unreliable because Dr. Appelbaum "has no expertise in the area of deciding what is necessary to include in a pleading."  Conti Mem. of Law at 16.  As noted *supra,* the Court agrees that Dr. Appelbaum is not qualified to opine that Dr. Conti disclosed more information than necessary to establish a legally-sufficient defamation claim.  *See supra* I.B.

Dr. Appelbaum's opinion that Dr. Conti violated applicable ethical principles by filing a complaint and disclosing *any* of Doe's medical information in it, however, is reliable and admissible.  That opinion is rooted in the APA Principles, which state that "before a psychiatrist reveals confidential information about a patient, he or she must evaluate the necessity of the disclosure and any alternatives to such disclosure," and that "ethically, the psychiatrist may disclose only that information which is relevant to a given situation."  Appelbaum Report ¶¶

---

16      Dr. Conti argues that Dr. Appelbaum's above-referenced admissions "lead[] to the conclusion that [his] opinions are based on his subjective views" and "personal interpretation" of the APA principles.  Conti Reply at 7. The Court disagrees.  Dr. Appelbaum identified the APA Principles as the "guiding principles of medical ethics," and, accordingly, relied on them, as well as his own experience, in forming his opinions.  Appelbaum Dep. at 85:6-85:8; *Amorgianos,* 303 F.3d at 266 (explaining that the court looks at the connection between the expert's opinion and the existing data to determine whether his conclusions "reliably follow from the facts known [] and the methodology used.").

5(a); 17.  The APA Principles also state that it is only "when, in the clinical judgment of the treating psychiatrist, the risk of danger is deemed to be significant, the psychiatrist may reveal confidential information disclosed by the patient."  *Id.* ¶ 5(d).  In other words, the APA Principles provided Dr. Appelbaum with "good grounds" for his opinions that, because a reasonable psychiatrist would not have perceived Doe's messages as threatening and would not have commenced a lawsuit as a way to mitigate that threat, Dr. Conti violated prevailing ethical principles by disclosing Doe's information in the complaint.  *Amorgianos,* 303 F.3d at 267*; Daubert,* 509 U.S. at 590,

## II.     Defendant's Expert Dr. Cohen

Dr. Conti also seeks to exclude the report and testimony of Doe's IME expert, Dr. Cohen. Dr. Conti's motion is granted in part and denied in part.

As noted *supra,* the Court granted Doe's motion for an IME of Dr. Conti to determine whether, and to what extent, Doe's messages caused Dr. Conti emotional damages, including the development of ASD or PTSD.  Dr. Cohen's opinion that Doe's messages did not cause Dr. Conti to develop ASD or PTSD, as well as the bases for that opinion, is directly relevant and admissible on the issue of damages.[17]

Nevertheless, the Court agrees with Dr. Conti that portions of Dr. Cohen's report are irrelevant and inadmissible.[18]  For example, Dr. Cohen's opinion that Dr. Conti "exhibits narcissistic personality traits," which may have caused him to "react with rage" to Doe's messages, is irrelevant to whether Doe's messages caused Dr. Conti emotional damages.  Meyer

---

[17]     Dr. Conti does not challenge the reliability of Dr. Cohen's opinion or his qualifications.

[18]     The Court also agrees that there is significant overlap between Dr. Cohen and Dr. Appelbaum's reports. Should this case proceed to trial, a motion *in limine* may be appropriate to eliminate duplicative testimony.  *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is outweighed by a danger of . . . needlessly presenting cumulative evidence.").

Report at 31.  In other words, while Dr. Cohen may believe that a reasonable psychiatrist would have recognized Doe's messages as a manifestation of his transference and not "react[ed] with rage," that opinion is irrelevant to whether Doe's messages, in fact, caused Dr. Conti to develop a psychiatric condition such as ASD or PTSD.[19]

Dr. Cohen's opinion that Dr. Conti incorrectly diagnosed Doe as a psychopath or sociopath is similarly irrelevant; even accepting Dr. Cohen's opinion that Dr. Conti's diagnosis was inaccurate or outdated, that opinion has no bearing on whether Doe's messages caused Dr. Conti emotional damage.  Moreover, even if Dr. Cohen's opinion that Dr. Conti inaccurately diagnosed Doe were relevant, it would be excluded as unduly prejudicial under Rule 403 because it serves only to undermine Dr. Conti's competence as a psychiatrist, which is not relevant to any claim or defense in the case.  *Nimely,* 414 F.3d at 397 (explaining the vital role that Rule 403 plays in a court's scrutiny of expert testimony).

---

[19]    Doe argues that Dr. Conti's narcissistic traits are relevant because they provide an "alternative explanation" for Dr. Conti's emotional distress.  Doe Opp. at 28.  The Court disagrees.  Even if Dr. Conti's narcissistic traits contributed to or enhanced his reaction to Doe's messages, a defendant takes a "plaintiff as he finds him."  *Carter v. United States*, 760 F. Supp. 2d 281, 283 (E.D.N.Y. 2011) (citing *Ragin v. Harry Macklowe Real Estate Co.,* 6 F.3d 898, 908 (2d Cir. 1993)).  Although the Second Circuit in *Ragin* noted that this principle only applies to "physical injuries," that holding "addressed damages in a federal civil-rights case and it is unclear that New York follows the same rule."  *Id.*  Under New York state law, the so-called eggshell plaintiff doctrine has been "recognized in cases involving the exacerbation of psychological and emotional defects, as well as physical injuries."  *Partridge v. State*, 107 N.Y.S.3d 813 (N.Y. Ct. Cl. 2017), *aff'd, appeal dismissed*, 173 A.D.3d 86 (1st Dep't 2019); *Tobin v. Steisel*, 64 N.Y.2d 254, 259 (1965) ("The causation rule [] in tort law . . . is that an accident which produces injury by precipitating the development of a latent condition or by aggravating a preexisting condition is a cause of that injury."); *Boodram v. Brooklyn Developmental Ctr.,* 773 N.Y.S.2d 817, 832 (Civ. Ct. 2003) (explaining that the eggshell plaintiff principle "will apply even when the precipitating or aggravating factor is not physical, sudden or otherwise, as in the case of harassment.");  *Bartolone v. Jeckovich,* 103 A.D.2d 632, 634-635 (4th Dep't 1984) (explaining that the eggshell plaintiff principle applied to a plaintiff who was suffering from a "quiescent psychotic illness" until the accident "aggravated his schizophrenic condition");  *Bialik v. E.I. Dupont de Nemours & Co.,* 539 N.Y.S.2d 605, 608 (Sup. Ct. 1988) (describing plaintiff as a "mental eggshell ready to be cracked.").

### III.     Plaintiff's Rebuttal Expert Dr. Meyer

Doe moves to exclude portions of the report and testimony of Dr. Conti's psychiatric

ethics rebuttal expert, Dr. Meyer.  Doe's motion is granted in part and denied in part.

Dr. Meyer opines, *inter alia,* that Dr. Conti's conduct was "well within the applicable

ethical standard of care."  Meyer Report at 18.  Specifically, Dr. Meyer claims that Dr. Conti's

disclosure of Doe's confidential information in the Amended Complaint was justified because it

is the type of information that the Court would "want to know" and is "relevant to make this a

credible claim."  Meyer Dep. at 229:24-231:15.  The Court agrees with Doe that Dr. Meyer is

unqualified to opine on what information the Court would consider in assessing the legal

sufficiency or credibility of a defamation claim.[20]  *Marx & Co.,* 550 F.2d at 509 (excluding

expert's testimony "concerning matters outside his area of expertise")*; see also supra* I.B.

Moreover, any assumption about what the Court might "want to know" is inherently speculative

and therefore inadmissible.  *In re Rezulin Prod. Liab. Litig*., 309 F. Supp. 2d 531, 541 (S.D.N.Y.

2004) (explaining that Rule 702's "requirement of 'knowledge' guards against the admission of

subjective or speculative opinions").

Doe also challenges Dr. Meyer's opinion that psychiatrists should respond differently to a

patient's transferential behavior depending on whether the behavior is "legal" or "illegal." *See*

Meyer Report at 9-10.  Specifically, Doe claims that Dr. Meyer's distinction between conduct

that is "not illegal," such as "break[ing] things in [a therapist's] office," and conduct that is

"illegal," such as "unlawful threats," is based on "flawed and inaccurate assumptions well

beyond his expertise."  Doe Mem. of Law at 16.  In essence, Doe objects to Dr. Meyer's use of

---

[20]       Dr. Meyer concedes he has no legal training; he testified: "I understand when I assume that a court would
want to know, I am not an attorney."  Meyer Dep. at 231:13-231:15.

the word "illegal," including his characterization of Doe's conduct towards Dr. Conti as illegal. *Id.* at 16-17.  Although the Court agrees that Dr. Meyer is not qualified to offer expert testimony about what constitutes illegal conduct under applicable criminal law, any confusion regarding Dr. Meyer's testimony can be mitigated through both a limiting instruction and cross-examination.[21] *See Daubert*, 509 U.S. at 596 (rejecting "overly pessimistic" concerns about the "capabilities of the jury" and explaining that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").  This approach avoids complete preclusion and better aligns with Rule 702's "liberal standard of admissibility for expert opinions." *Nimely,* 414 F.3d at 395.

Finally, Doe challenges the admissibility of Dr. Meyer's proposed testimony regarding Dr. Conti's consultation with his attorneys.  *See* Doe Mem. of Law at 18.  Dr. Meyer states that Dr. Conti consulted both his own psychiatrist and his attorneys before initiating this lawsuit. Meyer Report at 12.  Dr. Meyer claims that Dr. Hamilton opined that "there was significant risk to Dr. Conti" and that Dr. Conti's attorneys "opined that Doe's misconduct was also illegal and recommended legal action." *Id.*  Doe argues that Dr. Meyer's opinion should be excluded because Dr. Meyer has "no factual knowledge of what Conti's lawyers did or did not tell Conti before filing suit."  Doe Mem. of Law at 18.  The Court agrees that Dr. Meyer has no basis to testify to what Dr. Conti's attorneys believed or recommended to Dr. Conti; any assumption that

---

[21]     The Court also notes that Dr. Meyer can likely offer his opinion without using the word illegal.  To the extent that Dr. Meyer does use the word illegal in his testimony, however, the Court will instruct the jury that he is using the word as a layperson.  Doe is also free to cross examine Dr. Meyer to clarify that he has no legal training or formal knowledge of what constitutes criminal behavior.

they opined that Doe's "misconduct was illegal" is entirely speculative.[22]  *Boucher*, 73 F.3d at 21

(expert testimony based on speculative assumptions is inadmissible).

## CONCLUSION

For the foregoing reasons, both motions to preclude expert testimony are GRANTED in

part and DENIED in part.

Doe's motion for summary judgment is due no later than **December 4, 2020.**  Dr. Conti's

response and counter-motion is due no later than **January 8, 2021.**  Doe's reply and response to

Dr. Conti's motion are due no later than **February 5, 2021**.  Dr. Conti's reply in support of his

motion for summary judgment is due no later than **February 19, 2021**.

The Clerk of Court is respectfully directed to close the open motions at docket entries

186 and 191.


**SO ORDERED.**

**Date:  October 21, 2020**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

---

[22]      Read in context, however, it appears that Dr. Meyer's statement regarding Dr. Conti's consultations with Dr. Hamilton and his attorneys was primarily intended to rebut Dr. Appelbaum's claim that Dr. Conti sought *no* outside consultation before filing this lawsuit.  In other words, Dr. Meyer can preserve the crux of his opinion by adjusting his testimony so as not to specify the content of the attorneys' or Dr. Hamilton's opinions but only to opine that, having consulted with his psychiatrist and an attorney, Dr. Conti satisfied any ethical obligation to obtain outside advice before concluding that Doe was sufficiently dangerous that he was permitted to disclose doctor-patient confidential information in order to protect himself.